UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Monosodium Glutamate Antitrust Litigation

Civil File No. 00-MDL-1328 (PAM)

**MEMORANDUM AND ORDER**

Four B Corp. v. Archer Daniels Midland Co., C.A. No. 03-2001-GTV

Civil File No. 03-1193 (PAM)

This matter is before the Court on two Motions to Dismiss. The first, filed by Defendant Archer Daniels Midland Co. ("ADM") contends that Plaintiffs' antitrust claims are untimely and that, in any event, the claims against ADM must be dismissed because the Court does not have personal jurisdiction over ADM. The second Motion was filed by Defendant Takeda Chemical Industries, Inc. ("Takeda"). This Motion echoes ADM's arguments about the statute of limitations. For the reasons that follow, the Court determines that although it may exercise personal jurisdiction over ADM, Plaintiffs' antitrust claims are untimely. The Court therefore dismisses the Complaint.

**BACKGROUND**

The instant case was recently transferred from Kansas state court to this Court by the Judicial Panel on Multidistrict Litigation. Although the umbrella MDL action began more than three years ago as a direct-purchaser antitrust class action alleging price fixing in the food flavor-enhancer industry, that part of the case has settled. Plaintiffs in the specific case at issue here, Four B Corp. v. Archer Daniels Midland Co., et al., are not direct purchasers of the products at issue, but rather are grocery store chains that allege that the conspiracy to

NOV 0 3 2003

NOV 0 3 2003

fix prices injured them. The particular food flavor-enhancers involved are monosodium glutamate ("MSG") and nucleotides. The essence of Plaintiffs' claims is that the artificially inflated price for MSG and nucleotides in turn inflated the price for food products that contained MSG and nucleotides, and Plaintiffs' grocery stores were injured because they were forced to pay higher prices for the food products than they would have paid absent the alleged conspiracy.

The direct-purchaser class action has now settled. Counsel for the plaintiff class secured the first settlements in November 2001 and the final defendant settled in early September 2003. The settlements procured in the direct-purchaser class action totaled $123.4 million.

## DISCUSSION

### A. Standard of Review

When analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the allegations in the pleadings and make all reasonable inferences arising from the pleadings in favor of the non-moving party. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The Court should not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." Id. A motion to dismiss will be granted only if "it appears beyond doubt that the [non-movants] can prove no set of facts which would entitle [them] to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### B. Personal Jurisdiction

ADM contends that the Kansas courts do not have personal jurisdiction over ADM

and so AMD must be dismissed from the case. According to ADM, none of the pertinent requirements of the Kansas long-arm statute are met in this case. See Kan. Stat. § 60-308(b). ADM argues that it did not manufacture MSG in Kansas, did not have a sales office to support the sales of MSG in Kansas, and did not sell MSG to any resident of Kansas, including Plaintiffs. Moreover, ADM contends that Plaintiffs do not allege that MSG committed any tortious act in Kansas.

At the hearing on this Motion, Plaintiffs relied on the so-called "conspiracy theory" of jurisdiction to support their contention that the Court has jurisdiction over ADM. According to this theory, jurisdiction lies in Kansas if:

> (1) the defendant and one or more persons conspired to do something; (2) that they could reasonably expect to lead to consequences in [Kansas]; (3) one co-conspirator commits overt acts in furtherance of the conspiracy; and (4) those acts are a type which, if committed by a nonresident, would subject the nonresident to personal jurisdiction under the long-arm statute of [Kansas].

In re Vitamins Antitrust Litig., 270 F. Supp. 2d 15, 27 (D.D.C. 2003). ADM argues that conspiracy theory jurisdiction violates fundamental notions of due process and that the Court should not base its jurisdiction on this theory.

In this instance, where ADM has no subsidiaries or offices to support the sales of MSG in Kansas, the exercise of jurisdiction pursuant to the conspiracy theory certainly stretches the Due Process Clause to its outer limits. However, the law in Kansas is clear: "the commission by a co-conspirator of tortious acts that have foreseeable consequences in Kansas will subject a defendant who is a participant in the conspiracy to jurisdiction in

Kansas." Id. at 28 (quotations omitted). Plaintiffs allege that ADM conspired with others to commit acts that injured Plaintiffs in Kansas. At this stage of the litigation, these allegations are sufficient for the exercise of personal jurisdiction over ADM.

### C. Statute of Limitations

There is no dispute that Kansas law provides a three-year statute of limitations for antitrust claims. Kan. Stat. Ann. § 60-512(2). Plaintiffs' claims in this action were filed on October 9, 2002. Takeda and ADM contend that Plaintiffs should have been aware of their claims by September 9, 1999, more than three years before the action was filed.[1]

On September 9, 1999, the Department of Justice publicly announced that several corporations, including Takeda, had pled guilty to a price-fixing conspiracy in the vitamins industry. The announcement also stated that Takeda was cooperating in an investigation into the food flavor-enhancers industry. Takeda and ADM contend that this announcement should have "excite[d] the attention" of Plaintiffs, and started the running of the statute of limitations. See In re Milk Prods. Antitrust Litig., 84 F. Supp. 2d 1016, 1024 (D. Minn. 1997) (Magnuson, J.).

The Court addressed a similar argument in Defendant Cheil Jedang's Motion for Summary Judgment in the direct-purchaser class action. Cheil Jedang contended that investigations into Defendants' conduct in the lysine, vitamins, and other food additives should have put the plaintiffs on notice of their claims regarding MSG. In that Motion, Cheil

[1] Plaintiffs instituted this action by filing a Petition, not a Complaint, in Kansas state court. It appears that a petition is the functional equivalent of a complaint.

Jedang argued that, because the plaintiffs should have known of the MSG conspiracy when these other investigations were announced, the plaintiffs could not rely on the doctrine of fraudulent concealment to toll the statute of limitations on their claims. The Court disagreed, finding that "[t]he fact that the government was investigating alleged conspiracies into some food additives does not, as a matter of law, mean that any purchaser of any food additive is on notice of the potential for a conspiracy in sale of the product he or she purchases." In re MSG Antitrust Litig., MDL No. 00-1328, slip op. at 8 (D. Minn. Feb. 6, 2003).

However, the situation in the direct-purchaser class action is very different from the situation in the instant matter. Here, the September 9, 1999, Department of Justice announcement concerned not other products, but the specific product type at issue. Moreover, Plaintiffs admit that the September 9, 1999, announcement put them on notice that they should investigate.

Plaintiffs assert that this "notice" is not sufficient to begin the running of the statute of limitations. According to Plaintiffs, the statute of limitations did not begin to run until Plaintiffs discovered enough facts to allow them to file a claim. Plaintiffs argue that the earliest they knew enough facts to file a claim was in late October 1999, less than three years before they filed their Petition. Plaintiffs offer no support for the rather novel theory that a statute of limitations begins to run not when a party is on notice that it might have a claim, but when a party has enough information to file a claim that satisfies the requirements of Rule 11 of the Federal Rules of Civil Procedure.

The statute of limitations begins to run when the party receives information that should "excite the[ir] attention." In re Milk Prods., 84 F. Supp. 2d at 1024. Plaintiffs admit throughout their papers that the September 9, 1999, Department of Justice announcement in fact "excite[d] the[ir] attention." This admission is fatal to their claims. Plaintiffs' claims are untimely and must be dismissed.

**CONCLUSION**

Plaintiffs concede that they were on notice of a duty to investigate their claims as of September 9, 1999. The statute of limitations began to run on that day. Because Plaintiffs did not file their Petition until more than three years later, their claims are untimely.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Takeda Chemical Industries' Motion to Dismiss (Clerk Doc. No. 21 (Civ. No. 03-1193)) is **GRANTED**; and
2. Defendant Archer Daniels Midland Company's Motion to Dismiss (Clerk Doc. No. 5 (Civ. No. 03-1193)) is **GRANTED in part** and **DENIED in part**; and
3. The matter of Four B Corp. v. Archer Daniels Midland Co., Civil File No. 03-1193, is **DISMISSED WITH PREJUDICE**.

Dated: November 3, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
**District of Minnesota**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*