# Exhibit A

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

DAIG CORPORATION, Respondent,
v.
Lisa A. REICH, Appellant.

No. C1-94-258.

June 28, 1994.

Appeal from District Court, Hennepin County; Marilyn Brown Rosenbaum, Judge.

Edward F. Fox, Jonathan C. Miesen, Dominic J. Cecere, Doherty, Rumble & Butler, P.A., St. Paul, for respondent.

Edward M. Glennon, Elinor C. Rosenstein, Charles J. Lloyd, Lindquist & Vennum, Thomas E. Glennon , Thomas E. Glennon & Associates, Minneapolis, for appellant.

Before Considered and decided by ANDERSON, C.J., and SCHUMACHER and HOLTAN, JJ.

UNPUBLISHED OPINION

HOLTAN, Judge. [FN*]

FN* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

***1** Appellant Lisa Reich challenges the judgment dismissing her counterclaims and granting respondent Daig Corporation's motion for declaratory judgment in an employment termination dispute. We affirm.

FACTS

Respondent, a manufacturer of medical devices, recruited appellant as a regional sales manager. Appellant was hired after several weeks of interviews and negotiations conducted in November and December 1992. Among the issues discussed during negotiations were appellant's responsibilities, staff support, and the terms of her compensation.

On December 19, 1992, appellant received a two-page letter confirming respondent's offer of employment, specifically described as "at-will" rather than for a specific period of time. The offer included an initial base salary of $70,000 per year plus commissions and bonuses, as well as a guaranteed "supplemental compensation" of $15,000, to be paid at a declining monthly rate with her commissions over the first year of employment. The letter provided that there would be no partial or prorated payment of the $15,000 if her employment ended prior to a commission payment date. Attached to the letter and included by reference was a copy of respondent's standard employment agreement. The agreement, which expressly stated that it constituted the entire agreement between the parties, declared that her employment could "be terminated by either Employee or Daig at any time with or without cause."

Two days later, appellant orally agreed to the offer and signed the employment agreement on January 11, 1993. At that time appellant also received an employee handbook. The handbook stated that while respondent hoped to provide continuous employment to all of its employees, "[a] Company initiated discharge of an individual employee also may be issued in the Company's sole discretion at any time, for any reason and without cause."

Following a short period of product training, appellant accompanied a sales representative on a number of sales calls in Ohio. Respondent subsequently received complaints about appellant's conflicts with the sales representative and with one of respondent's customers. Appellant attempted to discuss the problems but was promptly terminated, 18 days after she had started working. Respondent reassured appellant that it did not wish to hurt her career and promised to respect her wishes as to what it should tell others regarding the circumstances of her departure.

A few weeks later, appellant informed respondent through her attorney that she believed she had been wrongfully terminated. Respondent filed an action seeking declaratory judgment that it had exercised its rights to terminate appellant as an at-will

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

employee, that it had not violated the terms of the employment agreement, and that appellant was not entitled to any damages. Appellant counterclaimed with allegations of breach of employment contract, misrepresentation, employment discrimination, promissory estoppel and defamation. Respondent moved for summary judgment. The trial court granted the motion in its entirety and dismissed appellant's counterclaims.

DECISION

***2** On appeal from summary judgment, we examine the evidence in the light most favorable to the nonmoving party to determine whether material facts are disputed. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Where the material facts are not disputed, we determine whether the trial court correctly applied the law. *Id.* We review questions of law de novo. *Ross v. Northern States Power Co.,* 442 N.W.2d 296, 297 (Minn.1989).

1. Breach of Employment Contract, Promissory Estoppel, and Misrepresentation

Appellant's claims of breach of employment contract, promissory estoppel, and misrepresentation all arise from the same two factual allegations: First, that respondent hired appellant with a promise that her status would be other than at-will; and second, that respondent promised appellant would earn over $100,000 during her first year of employment, including base salary, commissions, bonuses, and $15,000 in guaranteed supplemental compensation. The trial court dismissed appellant's claims upon determining that appellant's written employment contract clearly provided for employment at-will, that appellant had discharged her in accordance with its rights, and that respondent had paid appellant all the compensation that it was obligated to pay her.

Unless otherwise agreed, an employment relationship is presumed to be at-will and an employer may summarily dismiss an employee for any reason or no reason, and the employee is under no obligation to remain on the job. *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962); *Aberman v. Malden Mills Indus.,* 414 N.W.2d 769, 771 (Minn.App.1987). It is for the court to determine as a matter of law if the statements are sufficiently definite to create an offer of something other than at-will employment. *See Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 856-57 (Minn.1986).

Appellant does not dispute that both the letter of offer and the employment agreement specifically stated that her employment would be at-will. She contends only that she had reached a conflicting prior oral agreement with respondent that rendered the at-will provisions in the subsequent written contract unenforceable. [FN1] Her only legal support for the proposition that a written contract is unenforceable where it conflicts with a prior oral agreement is our decision in *Sanborn Mfg. Co. v. Currie,* 500 N.W.2d 161 (Minn.App.1993). There, we held that a noncompete agreement an employee was induced to sign after accepting an offer of employment that did not include such a provision was unenforceable without additional consideration. *Id.* at 164. But in *Sanborn,* the prior offer of employment was clear and unequivocal, and we concluded that the parties had entered into an enforceable employment agreement once the employee had orally accepted the employer's first offer. *Id.*

FN1. Appellant also challenges the noncompete clause in the employment agreement. But because the record does not show that respondent has ever attempted to enforce the clause, and the trial court did not specifically consider whether the clause was valid, that issue is not now before this court.

Here, there was no prior contract between the parties. Appellant claims that respondent's general statements about her earning potential and its intent to provide her with long-term staff support were enforceable promises of employment for other than at-will, and at a higher rate of compensation than she ultimately received. But the record supports the trial court's findings that the oral representations that respondent made to appellant were too vague and general to constitute bona fide offers. An employer's general statements about its expectations and policies "are no more than that" and do not meet the legal requirements for an offer to contract. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626 (Minn.1983).

***3** We have held that parties are not bound by prior oral discussions, negotiations, or understandings

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

that differ from the terms of the resulting written contract. *Jara v. Buckbee-Mears Co.*, 469 N.W.2d 727, 730 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 2, 1991). " 'When parties reduce their agreement to writing, parol evidence is ordinarily inadmissible to vary, contradict, or alter the written agreement.' " *LeNeave v. North Am. Life Assurance Co.*, 854 F.2d 317, 320 (8th Cir.1988) (quoting *Flynn v. Sawyer,* 272 N.W.2d 904, 907-08 (Minn.1978)). The parol evidence rule bars proof of an alleged prior oral agreement for alteration of a contract for employment at-will, where the employer's offer of employment is reduced to writing in a letter of confirmation. *See Montgomery v. American Hoist & Derrick Co.*, 350 N.W.2d 405, 408 (Minn.App.1984). While parol evidence may be admitted when the written agreement is incomplete or ambiguous to explain the meaning of its terms, *Flynn,* 272 N.W.2d at 908, the letter of confirmation and the written employment agreement in this case clearly and unambiguously stated that appellant's employment was at-will and set forth her schedule of compensation. Because there was only one employment contract that respondent offered and appellant accepted, and because there is no dispute about the meaning of the terms of that contract, appellant's claims that the written employment contract was unenforceable and that respondent breached an earlier agreement are without merit.

Appellant also claims that the employee handbook respondent issued to her constituted a unilateral employment contract that altered her employment-at-will status. But the handbook clearly stated that respondent could discharge an employee at any time, with or without cause. Moreover, the trial court properly held that even if respondent had violated certain policies described in the handbook, appellant could not unilaterally make the handbook a part of her employment contract. To make an employee handbook part of an employment contract, there must be a definite offer communicated to the employee which the employee must accept. *See Pine River,* 333 N.W.2d at 626-27. Here, the employment agreement provided that it constituted the entire agreement between the parties concerning the terms of appellant's employment, and there was no evidence that respondent had offered to incorporate any of the policies in the handbook into appellant's employment contract. We conclude that respondent acted within its rights to terminate appellant as an employee at-will and that it did not violate the terms of the employment contract.

To sustain her claims in misrepresentation or promissory estoppel, appellant had to demonstrate that she justifiably relied on words or actions made by respondent. *See Florenzano v. Olson,* 387 N.W.2d 168, 174 n. 3 (Minn.1986) (misrepresentation); *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981) (promissory estoppel). But appellant could not reasonably rely upon oral representations allegedly made by respondent, where those representations contradicted the clear and unambiguous terms of her written employment contract. Because her reliance was not reasonable under the circumstances, respondent could not be liable for misrepresentation or promissory estoppel.

2. Defamation

***4** To establish a cause of action in defamation, appellant had to show that respondent communicated a false statement about her to another person. *See Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). Even assuming that the reasons that respondent gave appellant for discharging her were false, appellant still failed to demonstrate that respondent communicated these false statements to anybody. Appellant claims that respondent is liable because she was compelled to self-publish the allegedly defamatory statements to prospective employers, and that this compulsion was foreseeable. *See Lewis v. Equitable Life Assurance Soc. of the U.S.,* 389 N.W.2d 876, 888 (Minn.1986). But appellant offered no evidence to show it was foreseeable that she would be compelled to self-publish the statements, nor that she ever actually was compelled to do so. In the absence of such evidence, appellant cannot sustain a cause of action in defamation.

3. Employment Discrimination

Appellant claims that respondent is liable for disparate treatment based on sex. The Minnesota Human Rights Act provides that it is an unfair employment practice for an employer, on the basis of sex, to discharge an employee or to discriminate against an employee with respect to hiring, tenure, compensation, or conditions of employment. Minn.Stat. § 363.03, subd. 1(2)(b), (c) (1992). To

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

maintain a claim of employment discrimination, appellant first had to establish, by a preponderance of evidence, a prima facie case that respondent acted with a discriminatory motive to deprive appellant of opportunities that respondent made available to similarly qualified males. *See Sigurdson v. Isanti County,* 386 N.W.2d 715, 720 (Minn.1986).

Appellant alleges that she was paid less than the male regional sales managers. The trial court found that there was "no evidence in the record to support this allegation except for Reich's statement that it is true."

> A party opposing a motion for summary judgment must come forward with affirmative evidence sufficient to create a genuine issue of material fact and may not rely upon mere averments in the pleadings or unsupported allegations.

*Musicland Group, Inc. v. Ceridian Corp.,* 508 N.W.2d 524, 530-31 (Minn.App.1993), *pet. for rev. denied* (Minn. Jan. 27, 1994). The mere allegation of facts is not sufficient to raise a material issue of fact for trial. *Continental Sales & Equip. Co. v. Town of Stuntz,* 257 N.W.2d 546, 550 (Minn.1977).

Appellant contends that the manner in which she was discharged provides further evidence of sex discrimination. She states that she was treated more severely than were male employees in similar situations, because respondent was more supportive of them and gave them opportunities to improve their job performance that appellant did not receive. But appellant offered no evidence that the problems that respondent experienced with other terminated employees were in any way comparable to those that respondent experienced with her. Nor did appellant offer any direct or circumstantial evidence that any differences in treatment were attributable to a discriminatory motive on respondent's part.

***5** We also note that the same men who hired appellant were those responsible for her discharge. Edwin Boyd, respondent's national sales manager, had a prior working relationship with appellant in the medical products industry. Boyd was instrumental in recruiting appellant because he was convinced that she could be a successful regional sales manager. Appellant has not attempted to explain how respondent's decision to discharge her was necessarily motivated by gender bias when respondent was motivated to hire her in the first place on the basis of her skills and experience.

Finally, appellant alleges that her immediate supervisor made condescending references to female employees and that at least two other female former employees of respondent felt that they were victims of sex-based employment discrimination. Appellant's allegations suggest only that other females presently or formerly in the employ of respondent might have gender bias complaints of their own to make; they do not constitute evidence that respondent treated *appellant* unfairly. The trial court did not err in determining that appellant failed to establish a prima facie case of sex bias.

We conclude that the trial court properly ordered judgment for respondent and dismissed appellant's counterclaims.

Affirmed.

1994 WL 284966 (Minn.App.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works