# Exhibit B

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

Greg FIMON, et al., Appellants,
v.
KENROC DRYWALL SUPPLIES, INC., Respondent.

No. C7-02-1588.

March 18, 2003.

Hennepin County District Court, File No. CT0113900.

Karl E. Robinson, Winthrop & Weinstine, P.A., St. Paul, MN, for appellants.

Timothy J. Ewald, Brian L. McMahon, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for respondent.

Considered and decided by LANSING, Presiding Judge, SCHUMACHER, Judge, and STONEBURNER, Judge.

UNPUBLISHED OPINION

LANSING, Judge.

*1 In a dispute over an alleged ownership interest in a drywall company, the district court granted summary judgment dismissing Greg Fimon and Joe Mikalojczyk's breach-of-contract, promissory estoppel, and unjust enrichment claims and denied their motion to amend the complaint to add a claim for specific performance. Fimon and Mikalojczyk appeal. Because the evidence of an oral contract creating an ownership interest is insufficient to withstand summary judgment, and, because the record is also insufficient to show injustice that would support promissory estoppel or unjust enrichment, we affirm.

FACTS

Greg Fimon and Joe Mikalojczyk are experienced drywall workers who have been involved in drywall businesses in the Twin Cities for more than eighteen years. Both have previous management experience with various drywall companies, including negotiating contracts, setting up drywall operations, and making decisions on hiring and firing.

In 1997, Fimon and Mikalojczyk began to contact a number of drywall companies to discuss opening a branch in the Twin Cities area. One of the companies they contacted was Kenroc Drywall Supplies, Inc. Kenroc has maintained a drywall business in North America for more than thirty years. Its main offices are located in Saskatchewan, Canada.

Fimon and Mikalojczyk brought a third member into the venture, and, in a March 20, 1998, memo to that member, Kenroc summarized the arrangements. The memo, written by Kenroc's president, Brian Kusisto, outlined the salaries and a "profit-sharing" proposal "to recognize fairly the contribution of the three individuals who will be primarily responsible for getting the new Kenroc branch off the ground." Under this profit-sharing proposal, Fimon and Mikalojczyk were each to receive five percent of any profits over $500,000.

Kenroc's Minneapolis drywall business opened in April 1999. Fimon and Mikalojczyk both became employees at annual salaries of $52,000. They acknowledge that they each received distributions equal to five percent of Kenroc's net earnings for the years 1999 and 2000. At the end of 2000 these distributions, which were labeled "bonuses," equaled between $25,000 and $30,000. Fimon and Mikalojczyk claim that Kenroc fired them in July 2001. Kenroc disputes this and produced letters from its general manager in which he acknowledged Fimon's and Mikalojczyk's resignations.

Fimon and Mikalojczyk sued Kenroc, claiming that Kenroc orally agreed to give them a five percent ownership interest in exchange for assisting Kenroc in establishing a drywall business in Minneapolis. Kenroc moved for summary judgment. Fimon and Mikalojczyk opposed Kenroc's motion and moved to amend their complaint to include a claim for specific performance.

The district court granted summary judgment to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Kenroc, concluding that although Fimon and Mikalojczyk may have had a "unilateral understanding" or may have "believed" that they were owners, they failed to present sufficient evidence of an oral contract or promise with definite and certain terms. The court further concluded that the record failed to show injustice that would support either a claim of promissory estoppel or unjust enrichment because Fimon and Mikalojczyk received compensation in the form of salaries and bonuses for helping Kenroc set up operations in Minneapolis. The district court also denied Fimon and Mikalojczyk's motion to amend the complaint.

DECISION

***2** On appeal from summary judgment, we determine whether a genuine issue of material fact exists and whether the district court erred in its application of law. *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn.1997); *see also* Minn. R. Civ. P. 56.03 (stating parallel summary judgment standard for district court). In evaluating the evidence, we take the view most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N .W.2d 758, 761 (Minn.1993). But if the nonmoving party fails to raise a material fact on any element essential to establishing its case, summary judgment is appropriate. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). We apply these standards to Fimon and Mikalojczyk's contentions that the district court improperly granted summary judgment on their claims for (1) breach of contract, (2) promissory estoppel, and (3) unjust enrichment.

I

Fimon and Mikalojczyk alleged that Kenroc breached an oral contract in which Kenroc agreed to give them a five percent ownership interest in the company. The district court granted summary judgment to Kenroc on this claim, determining that the alleged oral contract "fails for uncertainty, indefiniteness, and vagueness" and that its "fundamental terms * * * cannot be ascertained with * * * reasonable certainty."

A contract does not exist unless the parties have agreed "with reasonable certainty about the same thing and on the same terms." *Peters v. Mut. Benefit Life Ins. Co.,* 420 N.W.2d 908, 914 (Minn .App.1988); *see also Jensen v. Taco John's Int'l, Inc.,* 110 F.3d 525, 527 (8th Cir.1997) (applying Minnesota law for proposition that an oral contract, to be enforceable, requires reasonably certain proof of parties' intent on fundamental terms). An alleged contract "which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable." *King v. Dalton Motors, Inc.,* 260 Minn. 124, 126, 109 N.W.2d 51, 52 (1961).

Fimon and Mikalojczyk claim that Kenroc offered them a five percent ownership interest in exchange for their assistance in setting up Kenroc's operations in Minneapolis. In support of its motion for summary judgment, Kenroc submitted excerpts from Fimon's and Mikalojczyk's depositions. Fimon could not remember any specific conversations relating to ownership. He testified generally that Kusisto "could have" called him an owner, that Kusisto called him a "partner" and then a "founder," that Kusisto told him that he and Mikalojczyk "were going to be owners" and "were going to get contracts," that he and Kusisto "never talked about defining ownership," and that Kusisto told him that he had to "wait and see" how the business did before he could be an owner. Fimon testified that he received bonuses in 1999 and 2000 because he was an owner, but also testified that these payments were "extra" to keep him on board because Kenroc was afraid that he would leave.

***3** Mikalojczyk made similar statements during his deposition. Like Fimon, he was unable to remember any specific conversations or details of any promise or agreement by Kusisto or anyone at Kenroc to support his claim of a five percent ownership interest.

In opposition to Kenroc's motion for summary judgment, Fimon and Mikalojczyk submitted affidavits that each had drafted approximately two weeks after Kenroc's summary judgment motion was filed. These affidavits list in greater detail the labor, contacts, and business knowledge that Fimon and Mikalojczyk contributed to establishing Kenroc's Minneapolis branch. Both affidavits state that before the opening of the business, Fimon and Mikalojczyk had an "understanding" that they would be partners in the new business and that approximately "6 months after beginning operations, * * * Kenroc * * * decided to simply give [them] '5% of everything'

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

as [their] share of the business."

Fimon and Mikalojczyk rely almost solely on the affidavits that they drafted after Kenroc filed its summary judgment motion. The district court refused to consider these affidavits, citing *Banbury v. Omnitrition Int'l, Inc.,* 533 N.W.2d 876, 881 (Minn.App.1995) ("self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact"). A party may correct an earlier statement made in confusion or by mistake; but a self-serving affidavit that contradicts a prior sworn statement has limited evidentiary value. *Hoover v. Norwest Private Mortgage Banking,* 632 N.W.2d 534, 541 n. 4 (Minn.2001); *see also Banbury,* 533 N.W.2d at 881.

In their deposition testimony, Fimon and Mikalojczyk both stated repeatedly that they did not remember or recall any specific details of their conversation with Kusisto about their ownership interest. The greater detail in the later- submitted affidavits is more contradictory than explanatory and constitutes the type of statements that are properly discounted as substantive proof. Consequently, the district court acted within its discretion in rejecting the affidavits. But we agree with the district court's assessment that even if these affidavits are considered, their contents are still insufficient to create genuine issues of material fact because they relate to Fimon's and Mikalojczyk's subjective understanding, not the objective evidence. *See Cederstand v. Lutheran Bhd.,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962) (stating expression of mutual assent, essential to contract formation, is judged objectively, rather than subjectively).

The court determined that based on Fimon's and Mikalojczyk's deposition testimony, it was clear that Fimon and Mikalojczyk never reached agreement with Kenroc on what constituted ownership, what they would own, how it would be valued, and when (if ever) they would receive any ownership interest. Although the testimony suggests that the issue of ownership may have been discussed, the parties did not reach a firm or clear agreement defining the terms of that ownership or its value. Fimon's and Mikalojczyk's testimony confirms that they knew that any ownership interest was contingent on the success of the business and would be offered at some future date. Because Fimon's and Mikalojczyk's own statements establish that a contract was not reached and that the fundamental terms of that contract were never finalized, summary judgment was properly granted on this claim.

II

***4** To prevail on their promissory estoppel claim, Fimon and Mikalojczyk must prove that Kenroc made a clear and definite promise to them; that Kenroc intended to induce their reliance on the promise and that they relied on it to their detriment; and that the promise must be enforced to prevent injustice. *Olson v. Synergistic Tech. Bus. Sys., Inc.,* 628 N.W.2d 142, 152 (Minn.2001). The district court ruled that Fimon and Mikalojczyk failed to prove that a clear and definite promise of ownership had been made to them. The record supports this determination. Fimon and Mikalojczyk have failed to cite any specific statements by Kenroc that would support a claim of promissory estoppel. *See Ruud v. Great Plains Supply, Inc.,* 526 N.W.2d 369, 371-72 (Minn.1995) (holding that statement "[g]ood employees are taken care of" was too ambiguous to constitute promise of permanent employment).

Even if Fimon and Mikalojczyk had provided adequate evidence of a clear and definite promise, the evidence on the element of injustice is deficient. Analysis of this element involves an examination of the reasonableness of the promisee's reliance and the "formality with which the promise is made" and "a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment ." *Faimon v. Winona State Univ.,* 540 N.W.2d 879, 883 n. 2 (Minn .App.1995), *review denied* (Minn. Feb. 9, 1996) (quotation omitted). "The injustice factor is a question of law that the court must decide." *Id.* at 883 (citation omitted).

Because Fimon and Mikalojczyk acknowledged that it was never certain that they would become owners and that any ownership interest was contingent on the financial success of the operation, reliance was not reasonable. Furthermore, evidence of injustice has not been established. Fimon and Mikalojczyk assumed none of the risks of starting up this business and were eventually compensated in the form of salaries and bonuses. Thus, the district court did not err in granting summary judgment on their promissory estoppel claim.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

III

The elements of an unjust enrichment claim include: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it. *Acton Const. Co. v. State,* 383 N.W.2d 416, 417 (Minn.App.1986), *review denied* (Minn. May 22, 1986). A claim for unjust enrichment does not "lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981) (citation omitted).

Fimon and Mikalojczyk have not shown that Kenroc's conduct was unlawful or illegal. To the contrary, both parties assumed certain risks and received certain benefits. While Kenroc may have received a greater benefit in the end, that disparity does not equate to unjust enrichment. The district court did not err in granting summary judgment on this claim.

IV

*5 Finally, we address Fimon and Mikalojczyk's claim that the district court erred in its denial of their motion to add a claim for specific performance. A motion to amend a complaint is properly denied if the party opposing the amendment would be prejudiced by the amendment or if the "amendment would serve no legal purpose." *Lumbermen's Underwriting Alliance v. Tifco, Inc.,* 465 N.W.2d 580, 584 (Minn.App.1991), *review denied* (Minn. Apr. 1, 1991). A district court's decision on a motion to amend is entitled to deference and may be reversed only if the court has abused its discretion. *Fabio* 504 N.W.2d at 761.

Specific performance is an equitable remedy, not a cause of action; it is dependent on the existence of an underlying valid contract with specific and distinct terms. *See Furuseth v. Olson,* 297 Minn. 491, 492, 210 N.W.2d 47, 49 (1973) (stating that before a contract can be specifically enforced, its terms must be so specific and distinct as to leave no reasonable doubt as to their meaning). Because we have already determined that the district court did not err in concluding that Fimon and Mikalojczyk failed to produce sufficient evidence of a valid contract, their motion to amend their complaint to add a request for specific performance would serve no legal purpose. The district court did not abuse its discretion in denying their motion to amend their complaint.

Affirmed.

2003 WL 1220240 (Minn.App.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works