# Exhibit D

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

William S. PURDY, Respondent,
v.
BURLINGTON NORTHERN RAILROAD COMPANY, Appellant.

C2-92-958.

Nov. 30, 1992.

Appeal from District Court, Hennepin County; Stephen D. Swanson, Judge.

Randall J. Fuller, Babcock, Locher, Neilson, & Mannella, Anoka, for respondent.

Susan Thurmer, Katherine Cavanor, Spence, Ricke & Thurmer, St. Paul, for appellant.

Considered and decided by AMUNDSON, P.J., and LANSING and PETERSON, JJ.

UNPUBLISHED OPINION

PETERSON, Judge.

*1 Burlington Northern appeals from the trial court's enforcement of the parties' settlement agreement arguing (1) the agreement was unenforceable because Purdy was incompetent when he agreed to the settlement; (2) the railroad could rescind the settlement because Purdy's acts repudiated the agreement, frustrated its purpose, and made it impossible to perform; and (3) the trial court abused its discretion in denying Burlington Northern's motion to dismiss. We affirm.

FACTS

While employed by appellant Burlington Northern (BN), respondent William Purdy was involved in an accident. As a result, Purdy suffered from post traumatic stress syndrome. In June 1989, Purdy filed a lawsuit against BN raising claims related to two injuries covered under the Federal Employer's Liability Act, defamation, and employment discrimination based on disability.

Shortly before trial was to begin on January 14, 1992, the parties reached a settlement. The settlement agreement was read into the record and provided:

1. It settled any and all claims arising out of the investigation of May 25, 1990 and the incidents on April 14, 1990, October 26, 1989, and September 18, 1989.
2. Purdy would remain a BN employee in name only until he acquired the months of credit necessary to apply for occupational disability with the Railroad Retirement Board and would resign after acquiring these months.
3. Purdy would submit time slips for two weeks of vacation in January 1992 and in January 1994, thereby enabling him to retain health insurance for himself and his family from BN's carrier through December 1995.
4. Purdy would stay off of and away from any properties owned by BN or its subsidiaries.
5. Purdy would not argue later that he had been incompetent when he agreed to the settlement.

A short time later, Purdy's attorney, Randall Fuller, told BN that Purdy's wife was questioning her husband's sanity because he agreed to the settlement provision ending the family's health insurance coverage in 1995. BN refused to renegotiate this provision and stated the parties had a binding agreement. BN's attorney also told Fuller twice that BN would enforce the settlement. On January 30, 1992, Fuller told BN a doctor had advised Purdy not to sign any legal documents because he was in poor mental health. Fuller also wrote to BN's attorney and to the court to advise them that Purdy's poor mental condition prevented him from signing any documents at this time and to ask what should be done about the settlement process.

On February 4, 1992, BN sent a copy of a proposed settlement agreement to Fuller with instructions to have Purdy complete and return the document as soon as possible. In addition to the terms adopted at the January 14, 1992 hearing, BN's proposed settlement provided Purdy would resign from BN on January 31, 1995. The next day, BN scheduled a motion to enforce the settlement.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

On February 6, 1992, Purdy went to a safety meeting of BN officials at the Holiday Inn in Brooklyn Center. Purdy interrupted the meeting and yelled that the officials present had blood on their hands. Purdy was verbally abusive and may have hit someone, but also suffered two black eyes and a concussion while being escorted from the meeting.

***2** The next day, BN told Fuller that Purdy's psychiatrist bill would be paid as provided in the settlement as soon as the agreement was signed and filed. However, on February 10, 1992, BN sent Purdy notice that BN would investigate his behavior on February 6, 1992. By fax letter on February 17, 1992, Fuller told BN an investigation violated the terms of the settlement because the agreement provided Purdy was a BN employee in name only. On February 18, 1992, BN responded that, based on Purdy's actions and his mental state, BN assumed he did not plan to go through with the agreement. Accordingly, BN believed the settlement no longer was in effect and planned to go ahead with the investigation. BN then changed its motion to enforce the settlement to a motion to dismiss.

On February 19, 1992, Fuller sent a revised settlement agreement signed by Purdy to BN. Purdy's revisions included limiting the settlement to claims arising on or before January 14, 1992 and changing Purdy's date of resignation to December 31, 1996. Purdy then told the Department of Human Rights he planned to drop the claim he had filed against BN with that agency because of the settlement. On February 26, 1992, Purdy signed the transcript of the settlement read into the record on January 14, 1992. The next day, Fuller told BN to clarify its position or Purdy would bring a motion to enforce the settlement.

At the investigation of the February 6 incident, Purdy collapsed and was taken to Riverside Medical Center where he was committed to the psychiatric ward. As a result of the investigation, BN terminated Purdy's employment.

At the April 9, 1992 hearing on Purdy's motion to enforce the agreement, Purdy submitted affidavits from his doctors who stated they believed Purdy had been competent when he agreed to the settlement on January 14, 1992. One doctor explained he merely advised Purdy not to sign any legal documents until February 17, 1992 when medication he prescribed for Purdy would take effect. From the bench, the trial court granted Purdy's motion and denied BN's motion to dismiss and ordered the parties to return on April 14, 1992 to review a settlement agreement.

On April 14, 1992, the trial court gave the parties a settlement agreement to sign. The settlement contained the same terms as the January 14, 1992 agreement plus a provision stating it settled only those claims arising on or before January 14, 1992. Purdy agreed to sign the settlement but BN refused. The court ordered the parties to sign the agreement within fourteen days or judgment would be entered according to the settlement. Purdy signed the settlement agreement on April 22, 1992 but BN never signed. Judgment was entered according to the trial court's order on April 29, 1992.

DECISION

I.

A trial court's finding regarding competency to enter into a contract is a finding of fact which will not be reversed on appeal unless clearly erroneous. *See State Bank v. Schrupp,* 375 N.W.2d 48, 51-52 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 13, 1985). A person is mentally capable of entering into a contract if he has "the ability to understand to a reasonable extent the nature and effect of what [he] is doing." *Id.* at 51.

***3** The trial court found Purdy was competent when he agreed to the settlement. Purdy admitted on the record on January 14, 1992 that he understood the settlement and knew what he was doing. While presiding over this hearing, the trial court had the opportunity to make its own conclusions regarding Purdy's competency. Also, Purdy submitted affidavits from four of his doctors who stated they believed Purdy reasonably understood the nature and effect of his actions on January 14, 1992. Given this evidence, the trial court's finding that Purdy was competent to enter into the settlement was not clearly erroneous.

II.

Settlements are greatly favored and will not be set aside lightly. *Beach v. Anderson,* 417 N.W.2d 709, 711-12 (Minn.App.1988), *pet. for rev. denied* (Minn. Mar. 23, 1988). A settlement agreement is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

contractual in nature and subject to the principles of contract law. *Id.* at 711. A trial court's finding that a settlement has not been rescinded is a finding of fact which will not be reversed on appeal unless clearly erroneous. *See Berg v. Ackman,* 431 N.W.2d 264, 266 (Minn.App.1988).

"Rescission is the unmaking of a contract." *Johnny's Inc. v. Njaka,* 450 N.W.2d 166, 168 (Minn.App.1990). A repudiation justifies rescission of a contract. Restatement (Second) of Contracts § 250, cont. a (1979). Repudiation is:

1. a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach under § 243, or
2. a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.

Restatement (Second) of Contracts § 250. The party claiming its rescission of a settlement was justified by repudiation must show with clear, unequivocal evidence that the other party intended to repudiate the agreement. *See Berg,* 431 N.W.2d at 266; *City of St. Charles v. Stevens,* 354 N.W.2d 884, 885 (Minn.App.1984).

In the present case, BN argues it justifiably rescinded the settlement because Purdy repudiated the agreement by claiming he was incompetent, by trying to renegotiate the insurance provision, and by attending the safety meeting. We do not agree. None of the statements cited by BN clearly indicates Purdy planned to commit the type of breach of contract that would give BN a claim for damages for total breach. Purdy made no unequivocal statements that he would not go through with the agreement unless his additional terms were met. *See* Restatement (Second) of Contracts § 250, cont. d. Finally, Purdy undertook no voluntary acts which rendered him unable to perform the agreement without a material breach. As BN failed to establish any of Purdy's acts or comments materially breached the contract or to produce any clear, unequivocal statements showing Purdy intended to repudiate the agreement, the trial court properly concluded Purdy did not repudiate the settlement.

***4** BN also claims Purdy acquiesced to its rescission by sending BN a substantially changed agreement, attending the investigation, and raising more questions about his competency. However, in the letter accompanying the revised settlement, Purdy's lawyer stated he hoped Purdy would be released by his doctor to sign the agreement when it was finalized. Fuller also warned BN that an investigation violated the terms of the settlement. Purdy signed the settlement twice before the investigation took place. These acts show Purdy did not agree to BN's rescission of the settlement agreement.

BN further maintains Purdy's visit to the safety meeting frustrated the purpose of the settlement because enforcing the agreement no longer severs the parties' relationship. Frustration of purpose excuses performance of a contract when:

1. The party's principal purpose in making the contract is frustrated;
2. without that party's fault;
3. by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

*City of Savage v. Formanek,* 459 N.W.2d 173, 176 (Minn.App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990); Restatement (Second) of Contracts § 265 . The principal purpose "must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Restatement (Second) of Contracts § 265, cont. a; *City of Savage,* 459 N.W.2d at 176.

Here, the principal purpose of the parties' settlement was not frustrated by Purdy's visit to the safety meeting because enforcing the agreement still settles all existing litigation between the parties. Totally ending all contact between the parties cannot be the agreement's principal purpose because a single contract cannot insulate BN from any and all encounters with Purdy and from any and all claims that could ever arise between the parties. Even if the settlement's principal purpose was to totally sever all future contact between the parties, Purdy's visit to a meeting held on public property was not an event, the non-occurrence of which was a basic assumption of the agreement. Accordingly, Purdy's actions did not frustrate the purpose of the agreement.

BN further argues Purdy's visit to the Holiday Inn forced it to terminate his employment, thereby

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

making it impossible for the railroad to allow him to accumulate the months of service necessary to petition for occupational disability and to obtain insurance coverage for his family. We do not agree. Impossibility excuses performance of a contract only when

> a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made.

Restatement (Second) of Contracts § 261. Although Purdy arguably violated the agreement by intentionally interrupting a BN meeting, this act did not require the railroad to terminate his employment. By firing Purdy, BN created the event that made its performance of the settlement impossible. Since BN was not without fault in making its performance impracticable, impossibility cannot justify BN's rescission of the settlement.

III.

*5 The denial of a motion to dismiss on grounds that a party failed to comply with a court order will not be reversed on appeal absent an abuse of discretion. *See Dennie v. Metropolitan Medical Ctr.,* 387 N.W.2d 401, 404 (Minn.1986) (dismissal for procedural irregularities reviewed for abuse of discretion). Dismissal is a severe sanction which rarely should be used. *See id.* at 404. BN argues the trial court abused its discretion in not granting its motion to dismiss because Purdy's actions delayed and obstructed the trial in violation of one of the district court's early orders. Evidence in the record shows Purdy did not claim to be incompetent merely to delay or to obstruct the trial. Consequently, the trial court did not abuse its discretion in denying BN's motion to dismiss.

IV.

We may consider only those issues actually presented to and considered by the trial court in deciding a case. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). The papers filed in the trial court, the exhibits, and the transcript of the proceedings constitute the record which we may examine on appeal. Minn.R.Civ.App.P. 110.01.

Purdy argues BN did not raise the issue of rescission before the trial court. However, the record shows the only issue asserted on appeal that BN did not raise below was whether its rescission of the agreement was justified because of bad faith or fraud. Thus, Purdy's motion to strike portions of BN's brief is granted only to the extent that the portions of BN's brief dealing with bad faith or fraud are stricken. BN's motion seeking to submit additional information for our consideration is denied because these documents were not before the trial court when it made its decision.

Affirmed.

1992 WL 358721, 1992 WL 358721 (Minn.App.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works