# Exhibit G

United States District Court, District of Columbia.

In re: VITAMINS ANTITRUST LITIGATION,

No. MISC 99-197(TFH).

May 9, 2000.

MEMORANDUM OPINION Re: Motions To Dismiss

HOGAN, J.

*1 Pending before the Court are numerous motions to dismiss fraudulent concealment claims and motions to dismiss for failure to state a claim or alternatively to sever claims involving choline chloride and Vitamin B-3 or niacin. While these motions have been filed by different defendants [FN1] against different plaintiffs [FN2] and although each was individually considered by the Court, all the motions raise nearly identical factual and legal issues and will thus be addressed together in this opinion.

FN1. The defendants whose fully briefed motions to dismiss are covered by this opinion include: Degussa-Huls Corporation; EM Industries, Inc; Reilly Industries, Inc.; Chinook Group, Inc.; Chinook Group Ltd.; Lonza, Inc.; UCB, Inc.; E.I. DuPont de Nemours and Co.; ConAgra, Inc.; Akzo Nobel, Inc.; DuCoa, L.P.; and DCV, Inc.

FN2. The plaintiffs whose complaints are being challenged by these motions include: the Vitamin B-3 class, NBTY, Perrigo, Natural Alternatives, Leiner Health Products, Tyson Foods, Blue Seal Feeds, Cactus Operating, Southern States, Marshall Durbin Farms, Quaker Oats, Cargill, Kellogg, Hormel Foods, Proctor & Gamble, Meijer, Publix, and Nutra-Blend.

I. BACKGROUND

The complaints filed in this litigation describe a massive, long-running international conspiracy among defendants and their co-conspirators to artificially inflate the prices of certain vitamins and vitamin products, allocate shares of the vitamin market among the defendants and their co-conspirators, predetermine sales volume in the vitamin industry, eliminate competition, limit supply, and commit other practices constituting per se violations of Section 1 of the Sherman Act. Plaintiffs allege that defendants conspired to control the global market for vitamins and vitamin pre-mixes between at least 1990 and 1998. *See NBTY, et al.* Consolidated Amended Complaint (alleging conspiracy span of at least January 1988 to September 1998); *Tyson, et al.* Complaints (alleging conspiracy from at least January 1990 through February 1999); First Consolidated Amended Vitamin B-3 Class Action Complaint (alleging a ten-year conspiracy). Plaintiffs further allege that defendants successfully avoided detection of the conspiracy, for approximately ten years, through a scheme of concealment which included: discussing and agreeing upon the prices, volume of sales, and markets in covert meetings and conversations; limiting knowledge of the conspiracy to high level personnel; deliberately refraining from creating documents; destroying records; refraining from submitting bids and submitting falsified bids; issuing agreed-upon price announcements and price quotations; formulating and rehearsing a cover story denying the vitamin cartel activity in an attempt to avoid further government investigation; and engaging in other activities designed to keep the existence of the conspiracy hidden. *See* Class Action Vitamin B-3 Complaint at ¶¶¶ 41, 42, 49; Exhibits 1-7 of Direct Action Plaintiffs Consolidated Opposition (copies of factual allegations from all direct action complaints which support fraudulent concealment claims); *NBTY, et al.* Complaint ¶ 89.

II. APPLICABLE LAW

A complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the complaint] which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The Court must accept the allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Croixland Properties Ltd. Partnership v. Corcoran,* 174 F.3d 213, 215 (D.C.Cir.), *cert denied,* 120 S.Ct. 53 (1999). This rule is particularly significant in antitrust cases, where the proof is largely in the hands of the alleged conspirators. *Hospital Bldg. Co. v. Trustees of the Rex Hosp.,* 425 U.S. 738, 744 (1976), *cert denied,* 464 U.S. 904 (1983).

III. FRAUDULENT CONCEALMENT MOTIONS TO DISMISS

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

***2** The statute of limitations for violations of the antitrust laws is four years. 15 U.S.C. § 15(b) (1997). Unless the statute of limitations is tolled, plaintiffs are estopped from alleging conduct by defendants or claiming damages for injuries occurring more than four years before the date that the original complaints were filed. Plaintiffs claim that the statute of limitations was tolled by the defendants' "fraudulent concealment" of the alleged conspiracy.

In order to prevail on a claim for fraudulent concealment under federal antitrust laws, [FN3] a plaintiff must plead with sufficient particularity (1) that the defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence. *Larson v. Northop Corp.,* 21 F.3d 1164, 1172 (D.C.Cir.1994).

FN3. The requirements for claims of fraudulent concealment under the relevant state antitrust laws will be discussed later in this opinion.

*1. Adequacy of Concealment Pleadings Under Federal Antitrust Laws*

Allegations of fraudulent concealment must meet the pleading requirements of Rule 9(b), which should be read in conjunction with Rule 8(a). *Fink v. National Sav. & Trust Co.,* 772 F.2d 951, 959 (D.C.Cir.1985). A plaintiff alleging fraudulent concealment "cannot rely upon conclusory statements to avoid the bar of limitations." *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F .2d 248, 250 (9 th Cir.1978). Instead, the plaintiff must "plead with as much particularity as possible ... the dates and circumstances constituting fraudulent concealment." *Bergen v. Rothschild,* 648 F.Supp. 582, 587 (D.D.C.1986). In essence, the rules only require that the "circumstances of fraud be pled with enough particularity to put the party on notice as to the nature of the claim." *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1489 (6 th Cir.1991); *see also Jones v. Meridian Towers Apts. Inc.,* 816 F.Supp. 762, 769 n. 7 (D.D.C.1993) ("As an initial matter, the Court rejects defendants' argument that plaintiffs have not asserted sufficiently particular allegations of fraudulent concealment to meet the requirements of Fed.R.Civ.P. 9(b). Rule 9 is to be read in tandem with the Rule 8 requirement of simplicity in drafting and flexibility in reviewing pleadings.").

Some courts have recognized the "self-concealing conspiracy" doctrine, which allows plaintiffs to satisfy the "concealment" prong by alleging "some misleading, deceptive, or otherwise contrived action or scheme, in the course of committing the wrong, that is designed to mask the existence of a cause of action." *Hobson v. Wilson,* 737 F.2d 1, 34 (D.C.Cir.1984), *cert denied,* 470 U.S. 1084 (1985). However, several courts have reserved that doctrine for bid-rigging cartels and have declined to apply it to price-fixing cases). *See Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 123-24 (4 th Cir.1995) (price fixing generally not self-concealing, although bid-rigging might be). Other courts have ruled that "affirmative acts" of concealment must be pled in tandem with the allegations of conspiracy. *See Richards v. Mileski,* 662 F.2d 65, 70 (D.C.Cir.1981) ("Under the law of the District of Columbia, fraudulent concealment requires that the defendant commit some positive act tending to conceal the cause of action from the plaintiff, although any word or act tending to suppress the truth is enough."); *see also State of Texas v. Allan Const. Co.,* 851 F.2d 1526, 1528 (5 th Cir.1988). There is no requirement that these affirmative acts of concealment be independent of the conspiracy. *In re Catfish,* 826 F.Supp. 1019, 1031 (N.D.Miss.1993). "Fraudulent concealment can be shown where the acts of concealment are intertwined with the acts of price fixing. *Id.* Under either the self-concealing standard or the affirmative act standard, plaintiffs' allegations are sufficient to satisfy the fraudulent concealment pleading requirements.

***3** In this case, secrecy was plainly integral to the formation and implementation of this world-wide conspiracy. Plaintiffs' allegations include numerous affirmative acts of concealment, such as submission of false bids, issuing price announcements for vitamins so as to create the illusion of competitive pricing, instructing members of the conspiracy not to divulge the existence of the conspiracy to any non-participants, the convening of secret meetings, confining the conspiracy plan to a small group of key officials at each company, avoiding references in documents or the creation of documents which would reveal these antitrust violations, destroying documents, using codes to conceal the identity of co-conspirators, and providing false information to law enforcement authorities. [FN4] These allegations are clearly sufficient to meet plaintiffs' pleading burden under Rule 9(b). *See In re Catfish,* 826 F.Supp. at 1031-32 ("clandestine meetings and telephone

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

conversations" are sufficient); *In re Nine West Antitrust Litig.,* 2000 U.S. Dist. LEXIS 256 at *35; *Commercial Explosives,* 1997-1 Trade Cas. (CCH) ¶ 71,723 at 79, 117 (plaintiffs' lack of knowledge of conspiracy and defendants' efforts to keep conspiracy secret, including confining knowledge to a limited group of core officers, are sufficient affirmative acts).

FN4. These allegations appear in all relevant complaints. *See* Class Action Vitamin B-3 Complaint at ¶¶¶ 41, 42, 49; Exhibits 1-7 of Direct Action Plaintiffs' Consolidated Opposition (copies of factual allegations from all Direct Action Complaints which support fraudulent concealment claims); *NBTY, et al.* Complaint ¶ 89.

The court also rejects defendants' argument that plaintiffs have not alleged any affirmative acts of concealment attributable to specific companies. "[W]here the original conspiracy contemplates concealment, or where the concealment is in furtherance of the conspiracy, affirmative acts of concealment by one or more conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations." *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1493 (D.C.Cir.1989). Concealment is generally susceptible to industry-wide proof and need not be established on a victim-by- victim basis. *In re Plywood Antitrust Litig.,* 76 F.R.D. 570 (E.D.La.1976). Thus, "[a]cts by different antitrust co-conspirators in furtherance of the conspiracy merely carry out the conspirators' agreement to restrain trade, and once a party takes the affirmative step of entering into an illegal conspiracy, that party is responsible for all the acts and consequent injury caused in furtherance of the conspiracy." *Pinney Dock & Transport Co. v. Penn Central Corp.,* 991 F.Supp. 908, 911 (N.D.Ohio 1998), *aff'd,* 196 F.3d 617 (6 th Cir.1999).

To survive a motion to dismiss, a complaint need only contain allegations from which one could reasonably infer concerted action. *Crimpers Promotions, Inc. v. Home Box Office,* 554 F.Supp. 838 (S.D.N.Y.), *aff'd,* 724 F.2d 290 (2d Cir.1983), *cert denied,* 467 U.S. 1252 (1984). There is no requirement that a plaintiff plead with particularity every overt act allegedly committed by each defendant in furtherance of a conspiracy or the precise role played by each alleged conspirator. *Barr v. Dramatists Guild, Inc.,* 573 F.Supp. 555, 559 (S.D.N.Y.1983); *Bridon American Corp. v. Mitsui & Co. (U.S.A.),* 1983 WL 1897 at *5-6 (D.D.C. Nov. 7, 1983) ("the general rule requiring specific allegations of time, place and content is relaxed somewhat as to matters peculiarly within the adverse party's knowledge or where the issues are complex or the transactions involved cover a long period of time."). In finding that the allegations of the complaint in *Bridon* satisfied the requirements of Rule 9(b), the Court held: "They give notice of the nature and basis of the claim asserted sufficient to enable the defendants to frame a responsive pleading. Perhaps ..., if only one fraudulent act were relied on, more details as to time and place would be appropriate. However, here such detail would unduly lengthen the [complaint] in violation of Rule 8(a)." *Id.* Like *Bridon,* this case is unusually complex and the burden is on plaintiffs to plead with particularity matters peculiarly within the adverse party's knowledge. Since the Court finds that the complaints at issue provide sufficient factual allegations to put defendants on notice of the claims against them, the Court finds that plaintiffs have adequately alleged concealment.

*2. Due Diligence Requirement*

***4** In this Circuit, where defendants have actively concealed the wrong, the statute is generally tolled until the wrong is actually discovered. *Foltz v. U.S. News and World Report,* 627 F.Supp. 1143, 1150 (D.D.C.1986) ("In such a situation, the plaintiff need not exercise due diligence to avail himself of the doctrine of equitable tolling.") In the case of self-concealing wrongs, the requirement of due diligence is essential. *Id.* However, the doctrine of fraudulent concealment has no applicability at all if the plaintiffs were on notice of the alleged conspiracy. *Id.* Notice includes both actual and inquiry notice. *Id.*

Since the standard of due diligence is an objective one, based upon the knowledge that would put a reasonable person on notice to inquire, the due diligence requirement can be met without proof that the plaintiffs engaged in any specific inquiry. *See Supermarket of Marlington, Inc.,* 71 F.3d at 128; *Sterlin,* 154 F.3d at 1201 ("[A]lthough a plaintiff has an obligation of diligence, the plaintiff need not show the actual exercise of diligence in order to toll the limitations period. Rather in deciding whether the statute should be tolled, it must be determined whether a reasonably diligent plaintiff would have discovered the fraud.") Defendants claim that the Supreme Court has recently made it clear that proof of actual due diligence is required. *See Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 186, 194-96 (1997)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

("reasonable diligence does matter and a plaintiff who is not reasonably diligent may not assert 'fraudulent c oncealment." '). [FN5] However, the language in the *Klehr* opinion supports plaintiffs' position that actual proof of an investigation is not required, because the test, as articulated by the Supreme Court in that case, is whether a reasonable person exercising due diligence would have discovered the claims earlier. *Id.* at 195 ("the concealment requirement is satisfied only if the plaintiff shows that he neither knew, nor, in the exercise of due diligence, *could reasonably have known* of the offense.") (emphasis added). [FN6]

FN5. In a Supplemental Memorandum, defendants point to the recent Supreme Court decision in *Rotella v. Wood* as further support for their position. *See* Supplemental Memorandum in Support of Defendant's Reply; *see also Rotella v. Wood,* 528 U.S. 549, 120 S.Ct. 1075 (2000) (attached to defendants' memorandum). However, the Court finds *Rotella* to be inapposite. In *Rotella,* plaintiff did "not deny that he knew of his injury ... when it occurred, or that his civil RICO claim was complete and subject to suit at that time"; he merely claimed that the clock should not start until he discovered the pattern of predicate acts. *Id.* at 1083. The Supreme Court referred to *Klehr* as a rejection of this "last predicate act rule." *Id.* at 1080. By contrast, in the Vitamins Antitrust Litigation, plaintiffs do not claim that they were aware of their injury earlier; in fact, they specifically allege that they were not aware of it earlier and that they could not reasonably have discovered it before they did due to defendants' affirmative acts of concealment. Therefore, this is a different case from that facing the Supreme Court in *Rotella.*

FN6. Significantly, the Supreme Court specifically refers to the due diligence requirement as a "fact-based question." *Klehr,* 521 U .S. at 196.

In the Vitamins Antitrust cases, the Complaints allege that plaintiffs could not have uncovered defendants' conspiracy earlier than they did, because defendants and their co-conspirators affirmatively concealed the existence of the combination and conspiracy from plaintiffs by submitting prearranged, complementary losing bids; allocating among themselves contracts for the sale and volume of vitamins; issuing price announcements to create the illusion of competitive pricing; confining the conspiracy plan to a small number of key officials at each company and instructing the members of the conspiracy not to divulge the plan to outsiders; conducting covert, secret meetings; avoiding references to the conspiracy in documents; destroying documents implicating the conspiracy; using code names and numbers to conceal the conspirators' identities; and providing false information to law enforcement authorities. *See* Class Action Vitamin B-3 Complaint at ¶¶¶ 41, 42, 49; Exhibits 1-7 of Plaintiffs' Consolidated Opp. (copies of factual allegations from all direct action complaints); *NBTY, et al.* ¶ 89. In pleading that due diligence would not have uncovered the conspiracy earlier due to these affirmative, deceptive, and secretive acts of the defendants, the Complaints adequately plead due diligence to survive a motion to dismiss. *In re Nine West Shoes Antitrust Litig.,* 2000 U.S. Dist. LEXIS 256, at *36 (S.D.N.Y.2000) (finding that plaintiffs had adequately pled due diligence where the complaint alleges that "[p[laintiffs and other class members could not have discovered the conspiracy at an earlier date by the exercise of due diligence because of the affirmative, deceptive practices and techniques of secrecy employed by Defendants....").

***5** Some defendants suggest that market trends, such as price increases and output reductions, should have put these plaintiffs on notice of their claims. However, notice in the context of fraudulent concealment is close to actual notice, not "the kind of notice--based on hints, suspicions, hunches or rumors--that requires a plaintiff to make such inquiries in the exercise of due diligence, but not to file suit." *Hobson,* 737 F.2d at 35. Moreover, market trends as a matter of law do not constitute notice that particular defendants were engaged in acts of price fixing. *King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147, 1156 (10 th Cir.1981), *cert denied,* 454 U.S. 1164 (1982) ("Mere knowledge that [defendant] was raising and lowering prices does not provide knowledge that [defendant] was agreeing with other members of the gasoline industry to fix prices.... The evidence pertaining to price fixing points to concealment of those activities.").

The principle cases upon which defendants rely are inapposite. First, many are rulings on motions for summary judgment, rather than motions to dismiss. *See Bender v. Rocky Mountain Drilling Assocs.,* 648 F.Supp. 330, 336 (D.D.C.1986); *Texas v. Allan Constr. Co.,* 851 F.2d 1526, 1527 (5 th Cir.1988); *In re Aluminum Phosphide Antitrust Litig.,* 905 F.Supp.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1457 (D.Kan.1995). Second, the cases are distinguishable on their facts. For example, in *Pocahontas Supreme Coal Co. v. Bethelem Steel Corp.*, 828 F.2d 211, 218 (4 th Cir.1987) and *Bender*, 648 F.Supp. at 336, the information that plaintiffs claimed was concealed was publicly available long before they filed their complaints. And in *Aluminum Phosphide*, the Court granted summary judgment on the issue of fraudulent concealment because plaintiffs devoted only one sentence in the complaint to their claim of fraudulent concealment, they could not point to any specific act of concealment in response to defendant's motion for summary judgment, and deposition testimony revealed that the class representative's president had previously conducted a marketing and purchasing survey which led to the conclusion that "something was seriously wrong in the market." *Aluminum Phosphide*, 905 F.Supp. at 1471. In fact, the Eleventh Circuit reversed one of the authorities upon which defendants rely, because defendants had pointed to no facts putting the plaintiffs on notice that an antitrust conspiracy was afoot until one of the defendants pled guilty to fixing the wholesale price of milk, even though other defendants had previously pled guilty to rigging bids for milk sold to schools in cases that had been publicized for several years. *See Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 834 (11 th Cir.1999). In this case, the Court is satisfied that plaintiffs have exercised due diligence and that the alleged conspiracy could not have been discovered earlier due to defendants' acts of concealment. [FN7]

FN7. The Court finds it significant that the complaints describe a series of surreptitious acts of the co-conspirators, including: intentional falsification to make collusive bids appear competitive, convening secret meetings in hotels and other places to avoid detection, instructing co- conspirators to destroy any documents pertaining to meetings among conspirators, using codes to identify conspirators, and fabricating and rehearsing a cover story for Dr. Kuno Sommer to relate to the DOJ denying the existence of a vitamin cartel in an attempt to quell the government's suspicions. *See* Class Action Vitamin B-3 Complaint at ¶¶¶ 41, 42, 49; Exhibits 1-7 of *Tyson, et al.* Plaintiffs' Consolidated Opp. (copies of factual allegations from direct action complaints); *NBTY, et al.* ¶ 89.

*3. Adequacy of Pleadings Under State Antitrust Laws*

*a. Fraudulent Concealment Under Michigan's Antitrust Reform Act*

***6** In Count II of the *NBTY, et al.* Complaint, plaintiff Perrigo alleges an antitrust claim under the Michigan Antitrust Reform Act ("MARA"), Mich. Comp. Laws § 445.772 et seq. MARA permits any person injured directly or indirectly in his business or property by a contract or combination in restraint of trade to bring an action for damages and injunctive relief. Mich. Comp. Laws § 445.772(2) & 445.778(8)(2).

The statute of limitations for an antitrust claim in Michigan is four years. Mich. Comp. Law § 445.781. When interpreting Michigan antitrust statutes, Michigan state courts give deference to federal courts' interpretations of comparable federal antitrust statutes. *Little Caesars Enterprises, Inc. v. Smith,* 895 F.Supp. 884, 898 (E.D.Mich.1995). To adequately plead Michigan antitrust claims beyond the statutory period, plaintiffs must allege that (1) defendants wrongfully concealed their actions; (2) plaintiffs failed to discover the operative facts underlying the basis of the cause of action within the applicable limitations period; and (3) that plaintiffs exercised due diligence until the discovery of the facts. *Id.*

Defendants argue that the MARA claim does not allege the specific conduct by which defendants concealed their conspiracy. However, paragraph 89 of the *NBTY, et al.* Complaint, which is incorporated by reference into Count II, expressly and specifically alleges affirmative conduct by which defendants concealed their conspiracy, including the submission of "prearranged, complementary losing bids ....; providing false information to law enforcement authorities ....; destroying documents ....; [and] instructing members of the conspiracy not to [talk]...." Federal courts in Michigan have found identical allegations to satisfy the pleading requirements for fraudulent concealment under MARA. *See, e.g., State of Michigan v. McDonald Dairy Co.*, 905 F.Supp. 447 (W.D.Mich.1995) (price fixing case against dairies and their executives in which district court held that allegations of "submitting prearranged complementary losing bids to give the illusion of competition; ... providing false information to law enforcement authorities regarding their involvement in the bid rigging; destroying documents before as well as after the conspiracy was detected; ... and affirmatively instructing other conspirators not to divulge the existence of the conspiracy" were sufficient to meet the requirements

to plead affirmative acts of wrongful concealment under MARA and Sixth Circuit law. *Id.* at 452; *see also State of Michigan v. C.R. Equipment Sales, Inc.*, 898 F.Supp. 509, 513 (W.D.Mich.1995) (allegations that "defendants submitted complementary, prearranged losing bids to give the illusion of competition, destroyed documents, and concealed public records" adequately plead affirmative acts of concealment in price fixing case under MARA).

Plaintiffs allegations of due diligence in the MARA claim are also legally sufficient. In *McDonald Dairy,* the court concluded that plaintiffs' allegations that they could not uncover the conspiracy because of defendants' fraudulent conspiracy and that their system of sealed bids was designed to avoid collusive bids satisfied the due diligence pleading requirement. 905 F.Supp. at 453. Like the claimants in *McDonald Dairy,* plaintiffs plead that they were unaware of the conspiracy until the criminal information and plea were unsealed, that plaintiffs could not have discovered the conspiracy despite due diligence because of defendants' affirmative acts of concealment, and that plaintiffs used a purchasing system which made them believe in good faith that they were receiving competitive prices for vitamins. Thus, plaintiffs' allegations under MARA are sufficient to survive dismissal.

*b. Fraudulent Concealment under California's Cartwright Act*

*7 In Count III of the *NBTY, et al.* Complaint, plaintiffs Leiner, NAI, Nutraceutical and Makers of Kal allege an antitrust claim under California's Cartwright Act, Cal. Bus. & Prof. § 16726 et seq. The Cartwright Act also contains a four-year statute of limitations. *Id.* It permits any person who dealt directly or indirectly with a defendant or co-conspirator, and was injured in his business or property by reason of an unlawful trust of which defendant or a co-conspirator was a member, to sue for treble damages and injunctive relief. Cal. Bus. & Prof.Code §§ 16702 & 16726.

In order to establish fraudulent concealment under California law, plaintiffs must show: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; (3) and that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315 (Cal.App.1974). Plaintiffs must also show "that in the exercise of reasonable diligence, the facts could not have been discovered at an earlier date." *Id.*

These facts are all alleged in plaintiffs' Consolidated Amended Complaint. In paragraph 87, plaintiffs allege that they discovered the conspiracy on March 2, 1999, when the Lonza criminal information was unsealed, and that they were not aware of the conspiracy until that time. In paragraph 90, plaintiffs allege that they did not and could not have discovered the conspiracy earlier through the exercise of due diligence because of defendants' fraudulent concealment. Paragraph 89 then lists in detail ten specific affirmative acts of fraudulent concealment that explain why plaintiffs could not have discovered the conspiracy earlier. Therefore, the Court finds that plaintiffs have adequately pled their fraudulent concealment claims under the Cartwright Act.

*c. Fraudulent Concealment Under New York's Donnelly Act*

In Count IV of the Consolidated Amended Complaint, plaintiffs NBTY, Twin Laboratories and Cambr f/k/a Solgar allege an antitrust claim under Section 340 of New York's antitrust statute, the Donnelly Act, N.Y. Gen. Bus. Law § 340 et seq. New York's Donnelly Act also has a four-year statute of limitations. *Id.* at § 340(5). The Donnelly Act permits any person who has been injured directly or indirectly by reason of a contract, agreement, or combination in restraint of trade, such as a price fixing agreement, to sue for damages. Antitrust plaintiffs must allege that (1) defendants concealed from plaintiffs the facts of the cause of action; (2) plaintiffs remained in ignorance of these facts until some point outside the four-year statute of limitations; and (3) plaintiffs' continuing ignorance was not attributable to the lack of diligence on their part. *New York Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.1988).

Defendants claim that plaintiffs do not allege affirmative acts of concealment in Count IV. However, paragraph 89 alleges ten separate affirmative acts undertaken by defendants to fraudulently conceal the existence of the conspiracy from plaintiffs. These allegations are incorporated into plaintiffs' Donnelly Act claim through paragraph 114 in Count IV. The allegations in paragraph 89 are equivalent to those upheld in *State of New York v. Hendrickson, Inc.*, 840 F.2d 1065 (2d Cir.), *cert denied,* 488 U .S. 848 (1988) (court ruled that the submission of complementary losing bids, the removal of documents, the agreement among

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

conspirators not to talk, the destruction of documents, and the giving of false testimony were affirmative acts of concealment under the fraudulent concealment doctrine). *Id.* at 1084.

***8** The Court in *Hendrickson* further held that the plaintiff did not have notice of defendants' bid-rigging conspiracy and could not be faulted for not detecting the conspiracy because they used a method of purchasing that led it to believe that it was receiving non-collusive bids. *Id.* at 1085. Paragraphs 88 and 90 of plaintiffs' Complaint contain similar allegations. Therefore, plaintiffs' allegations under the Donnelly Act are sufficient to survive dismissal.

*4. Appropriateness of these Motions to Dismiss*

This court agrees with the many courts which have held that the issues of fraudulent concealment and due diligence are questions of fact that should not be decided on a motion to dismiss. *See Klehr,* 521 U.S. at 196 (due diligence is a "fact-based question"); *In re Catfish,* 826 F.Supp. at 1031; *Arthur v. E.I. DuPont,* 798 F.Supp. 367, 370 (S.D.W.Va.1992) (fraudulent concealment is an issue for the jury); *King & King,* 657 F.2d at 1156 (where there is a dispute as to the existence of fraudulent concealment, question is one for the jury). In fact, this Circuit has noted the "inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense" in the context of fraudulent concealment. *See Richards v. Mileski,* 662 F.2d 65, 73 (D.C.Cir.1981) ("We do not suggest that the use of a motion to dismiss is always improper to raise a statute of limitations defense, but we do suggest that a responding party often imposes an undue burden on the trial court and impedes the orderly administration of the lawsuit when he relies on a motion to dismiss to raise such an affirmative defense."); *see also Jones v. Rogers Memorial Hospital,* 442 F.2d 773, 775 (D.C.Cir.1971) (statute of limitations defense cannot be decided on a motion to dismiss "unless it appears beyond doubt" that plaintiff can prove no set of facts to entitle him to relief).

In conclusion, this Court cannot find that it appears beyond doubt that plaintiff can prove no set of facts to entitle him to relief. Plaintiffs have sufficiently placed these defendants on notice as to the types of claims alleged and the grounds upon which they rest. Therefore, the pleadings are sufficient to meet the requirements of Rule 9(b). Furthermore, the Court finds that the issue of the plaintiffs' due diligence was adequately alleged and that ultimate resolution of the merits of this claim requires findings of fact and is thus not suitable for determination on a motion to dismiss.

## IV. MOTIONS TO DISMISS/MOTIONS TO SEVER

### A. Motions to Dismiss for Failure to State a Claim

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley,* 355 U.S. at 45-46. To survive a motion to dismiss, a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *In re Nasdaq Market-Makers Antitrust Litigation,* 894 F.Supp. 703, 709 (S.D.N.Y.1995) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7 th Cir.1984)). A short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules. *Nagler v. Admiral Corp.,* 248 F.2d 319, 322-23 (2d Cir.1957) ( "it is quite clear that the federal rules contain no special exceptions for antitrust cases"). Moreover, in "antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted sparingly." *Hospital Bldg Co.,* 425 U.S. at 746.

*1. Sufficiency of Plaintiffs Federal Antitrust Allegations*

***9** To withstand a motion to dismiss, the plaintiff in a Sherman Antitrust conspiracy claim must allege (1) concerted action; (2) by two or more persons; (3) that unreasonably restrains interstate or foreign trade or commerce. *American Ad Management, Inc. v. GTE Corp.,* 92 F.3d 781, 784 (9 th Cir.1996); *In re Nasdaq,* 894 F.Supp. at 710. Defendants do not argue that these are not the elements; instead, they argue that the elements have not been sufficiently alleged. Specifically, defendants claim that (1) plaintiffs have not defined the relevant market, (2) they have not sufficiently linked each individual defendant to the overall conspiracy, and (3) the plaintiffs' allegations do not provide defendants with fair notice of the claims against them.

*a. Relevant Market*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

In the Vitamins Antitrust Litigation, plaintiffs allege that all defendants joined and participated in a single conspiracy not to compete on the sale of vitamins to plaintiffs and others, in per se violation of Section 1 of the Sherman Act. *See, e.g., NBTY, et al.* Complaint ¶¶ 1, 81-94; *Blue Seal Feeds* Complaint ¶¶ 61-78; *Cargill* Complaint ¶¶ 44-58; *Nutra-Blend* Complaint ¶¶ 35-48; *Proctor & Gamble* Complaint ¶¶ 49-54; *Kellogg* Complaint ¶¶ 32-47; *Publix* Complaint ¶¶ 59-63. Specifically, these complaints allege that the Vitamins Inc. cartel not only set the prices charged for vitamins, but also regulated which members could sell what products to which customers and in what amounts. *Id.* The complaints further allege that defendants met regularly to exchange pricing information, set sales volumes, and divide market shares at the country, regional, and global levels, as well as to facilitate and implement the conspiracy in other respects. *Id.* According to these complaints, each member of the cartel helped enforce the conspiracy by strictly controlling the sale and transfer of the raw ingredients necessary to make vitamins, and a cartel member that stepped out of line ran the risk of having the other conspirators cut off critical supplies. *Id.*

Plaintiffs' allegations of horizontal price-fixing and market allocation are per se violations of the Sherman Act. *United States v. Topco Assoc., Inc.,* 405 U.S. 596, 607-08 (1972). Alleging a per se violation of Section 1 of the Sherman Act obviates the need to define a relevant market. *Id.* Therefore, market definition and market power play no role in the per se analysis. *FTC Superior Ct. Trial Lawyers Ass'n,* 493 U.S. 411, 432-36 (1990) (per se rules impose antitrust liability without regard to market power); *In re Nine West Shoes Antitrust Litig.,* 80 F.Supp.2d 181, 189 (S.D.N.Y.2000) ("when there is an agreement not to compete in terms of price or output, no elaborate industry analysis is required to demonstrate the anticompetitive character of such an agreement.... We have never required proof of market power in such a case.") (citing *National Collegiate Athletic Ass'n v. Board of Regents of the University of Oklahoma,* 468 U.S. 85, 109-10 (1984)); *see also MCM Partners v. Andrews-Bartlett & Assoc.,* 62 F.3d 967, 979 (7 th Cir.1995) ("To state a claim for relief under section 1, a plaintiff must allege *either* that the contract, combination, or conspiracy resulted in a per se violation ... *or* that it unreasonably restrained competition in a relevant market") (emphasis added). The reasoning is that "[v]ery few firms that lack power to affect market prices will be sufficiently foolish to enter into conspiracies to fix prices. Thus, the fact of agreement defines the market." R. Bork, *The Antitrust Paradox* 269 (1978).

***10** The cases upon which defendants rely to support their contention that plaintiffs' Section 1 claims require more detailed or different allegations about the market are inapposite because they do not relate to this kind of conspiracy. Most of the cases involve Section 2 claims [FN8] or Section 2 claims coupled with Section 1 claims where the Section 1 claim depends upon the existence of monopoly power or requires a "rule of reason" analysis; [FN9] others involve Section 1 claims or claims under the Clayton Act that require a rule of reason analysis. [FN10] And still others either are not price fixing cases [FN11] or are double-jeopardy cases. [FN12]

FN8. *See United States v. E.I. DuPont de Nemours & Co.,* 351 U.S. 377 (1956); *United States v. Eastman Kodak Co.,* 63 F.3d 95 (2d Cir.1995); *Twin Lab, Inc. v. Weider Health & Fitness,* 900 F .2d 566, 570 (2d Cir.1990); *National Communications Ass'n v. AT & T Co.,* 808 F.Supp. 1131, 1134 (S.D.N.Y.1992).

FN9. *See, e.g. Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430 (3 rd Cir.1997) (Section 2 claim, tying arrangement, exclusive dealing arrangement); *Lee v. Life Ins. Co. of North America,* 23 F.3d 14 (1 st Cir.1994) (tying arrangement); *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 952 F.2d 715 (3 rd Cir.1991); *Nifty Foods Corp. v. Great Atlantic & Pac Tea Co.,* 614 F.2d 832, 834 (2d Cir.1980) (monopolization); *Berkeley Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir.1979).

FN10. Per se cases do not require a rule of reason analysis. Therefore, cases such as *Tampa Electric Co. v. Nashville Coal Co.,* 365 U.S. 320 (1961) are inapposite.

FN11. *See TV Communications Network, Inc. v. Turner Network Television,* 964 F.2d 1022 (10 th Cir.1992) (boycott claim); *Collins Associated Pathologists, Ltd.,* 844 F.2d 473, 480 (7 th Cir.1988) (tying claim); *Genetic Sys. Corp. v. Abbott Lab,* 691 F.Supp. 407, 417 (D.D.C.1988) (vertical boycott).

FN12. *See United States v. Sargent Electric Co.,* 758 F.2d 1123 (3d Cir.1986); *United States v. Ashland-Warren, Inc.,* 537 F.Supp.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

433 (M.D.Tenn.1982).

Moreover, there is no requirement that the scope of an illegal conspiracy coincide with the scope of the relevant market. Horizontal antitrust conspiracies commonly include sellers in more than one relevant market. *Topco,* 405 U.S. 596 (finding per se violation of Section 1 even though defendants never competed in the same market); *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 357 (1982) (holding illegal per se a horizontal price fixing conspiracy among physicians representing approximately seventy percent of the physicians in Maricopa County, Arizona where the conspiracy included a wide variety of non-competing medical practices, such as surgery, anesthesiology, and psychiatry); *see also Palmer v. BRG of Georgia, Inc.,* 498 U.S. 46 (1990) (condemning as illegal per se a horizontal agreement between two competing providers of bar-review courses by which one provider agreed not to compete with the other in Georgia and, in exchange, the latter agreed not to compete with the former in the other 49 states).

In this case, as in *Topco, Maricopa County,* and *Palmer,* the alleged conspiracy allocated shares of an overall market among the conspirators. In fact, the inference to be drawn from the plaintiffs' allegations is that the lack of competition among defendants for particular products or particular geographic areas was the direct result of their agreement to eliminate such competition. *See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599 (7 th Cir.1997) (reversing summary judgment in case alleging horizontal, industry-wide conspiracy among sellers of thousands of different brand name prescription drugs, where the conspiracy covered approximately 200-300 separate product markets). Therefore, the Court finds that plaintiffs have adequately alleged a per se violation of Section 1 of the Sherman Act.

*b. Linking Defendants to this Conspiracy*

Defendants' claim that the allegations are insufficient to link each of them to the conspiracy is also without merit. An antitrust conspiracy complaint is adequate as long as there are allegations "from which an inference of an unlawful agreement can be drawn." *Brett v. First Savings & Loan Assoc.,* 461 F.2d 1155, 1158 (5 th Cir.1972). "It is not necessary to find an express agreement in order to find a conspiracy. It is enough that a concert of action is contemplated and that the defendants conformed to this arrangement." *Ambook Enterprises v. Time, Inc.,* 612 F.2d 604 (2d Cir.1979); *see also In re Nasdaq,* 894 F.Supp. 713 ("The theory of conspiracy is thus adequately alleged although the factual support at this stage in the proceeding rests primarily on inference, press reports, and circumstantial evidence.").

***11** Moreover, defendants' contention that plaintiffs must specifically allege acts committed by each defendant to show its involvement in the conspiracy is baseless. "An overt act need not be pleaded against each defendant, because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits." *In re Nasdaq,* 894 F.Supp. at 712 ("The flaw with this complaint is *not* that there is no specific act attributed to each defendant, but that there is no notice as to which stocks the plaintiffs believe are the objects of the conspiracy.") (emphasis added).

Finally, the Court rejects the notion that the guilty pleas and cooperation agreements and the class settlements foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention. *See Principles of Federal Prosecution,* United States Department of Justice, § 9-27.400 ("readily provable charges" may be dropped or bargained away "because the United States' Attorney's Office is particularly overburdened, the case would be time- consuming to try, and proceeding to trial would significantly reduce the number of cases disposed of by the office."). The antitrust statutes expressly recognize that private plaintiffs may allege a conspiracy different in some respects from the conspiracy previously alleged by the government. 15 U.S.C. § 16(i) ("Suspension of Limitations"); *Leh v. General Petroleum Corp.,* 382 U.S. 54, 65-66 (1965) (section 16(i) applied even though conspiracy alleged in private action was different in time period, geographic scope and identity of participants than conspiracy previously alleged by the government).

Moreover, the class settlements and the accompanying pleadings are not evidence of the scope of the conspiracy involved in this litigation. In evaluating defendants' motions to dismiss, the Court must consider only plaintiffs' allegations in those cases in which the motions are filed and may not refer to pleadings filed in other cases which are not presently before this Court. [FN13] The class settlements represent a compromise of contested claims; plaintiffs here have alleged a broader

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

conspiracy and at this point, the Court is bound to accept plaintiffs' allegations as true. It would be improper for the Court to reach the merits of plaintiffs' claims at this time.

FN13. Defendants argue that since plaintiffs attached the governments' indictments and plea bargains to their pleadings, they are somehow bound by these documents. The Court disagrees. There is no legal requirement that plaintiffs be bound by the scope of all documents attached to their pleadings. It is perfectly acceptable for the government and plaintiffs to take different views of the scope of this conspiracy, even if plaintiffs refer to the government's documents to support their claims of the defendants' involvement in the alleged activities. Moreover, the Court has no evidence of the government's view of the scope of this conspiracy; the fact that the government chose to divide the conspiracy into separate parts does not in any way support the defendant's position that there could not have been a single overarching conspiracy. It is fully understood that the government may undertake plea bargains in order to achieve certain strategic objectives and these goals may be different from those of private litigants.

*c. Fair Notice*

The plaintiffs have alleged that all defendants participated in a single conspiracy not to compete on the sale of vitamins to plaintiffs and others. The complaints identify the defendants and the specific products sold by each pursuant to the conspiracy. Plaintiffs state in their complaints that several of these alleged conspirators have already pleaded guilty to criminal charges of conspiring not to compete on the sale of particular products that fall within the overall conspiracy and that another defendant was accepted into the DOJ's Corporate Leniency Program in exchange for agreeing to cooperate in the DOJ's ongoing investigation. All of the *Tyson, et al.* Complaints and the *NBTY, et al.* Complaint allege that the named defendants: (a) agreed to exchange and did exchange current and future price information about vitamins; (b) agreed to coordinate and did coordinate price levels and price movements of vitamins; (c) agreed on prices and price levels of vitamins; (d) agreed to fix, maintain and/or increase, and did fix, maintain and/or increase, prices and price levels of vitamins; (e) agreed to allocate and did allocate vitamin customers and sales volumes; (f) agreed to allocate and did allocate market share in each market; (g) agreed to control or reduce, and did control or reduce, output; and (h) agreed to stabilize and/or increase the price of vitamins sold outside the United States in order to stabilize and/or increase the price of vitamins sold in the United States. These allegations clearly provide defendants with fair notice of plaintiffs' claims. *See In re Nine West,* 80 F.Supp .2d at 191 (holding that plaintiffs adequately alleged illegal conspiracy by identifying parties to the conspiracy, giving "some detail about how this conspiracy operated," and alleging that the conspiracy forced them to pay higher prices).

***12** Pleading of the evidence is not required and is on the whole undesirable at this stage in the litigation. *Nagler,* 248 F.2d at 326 ("It is a matter for the discovery process, not for allegations of detail in the complaint. The complaint should not be burdened with possibly hundreds of specific instances; and if it were, it would be comparatively meaningless at trial where the parties could adduce further pertinent evidence if discovered. They can hardly know all their evidence, down to the last detail, long in advance of trial.").

The cases upon which defendants rely involve blatantly deficient complaints with absolutely no factual allegations whatsoever. *See Continental Orthopedic Appliances, Inc. v. Health Insurance Plan,* 956 F.Supp. 367, 373 (E.D.N.Y.1997) (dismissing complaint where entire complaint was based on nothing more than the fact that one defendant terminated its contracts with the plaintiff and signed an exclusive contract with another defendant); *Canady v.. Providence Hospital,* 903 F.Supp. at 125 (D.D.C.1995) (plaintiff failed to allege that more than one entity had engaged in anti-competitive behavior, thus failing to plead the concerted action requirement of Section 1); *International Adiotext Network, Inc. v. American Telephone & Telegraph Co.,* 893 F.Supp. 2107 (S.D .N.Y.1994) (plaintiff failed to allege any concerted action); *In re Nasdaq,* 894 F.Supp. at 703 (dismissing the complaint with leave to amend because plaintiffs had not identified the specific stocks that were allegedly the subject matter of the conspiracy); *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383 (10 th Cir.1980) (dismissing complaint that "used statutory language to describe the alleged antitrust violations without including any factual allegations whatsoever.").

In contrast to these cases, plaintiffs' allegations identify all plaintiffs and defendants, describe the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

terms of the illegal agreement and the actions taken to maintain this agreement, and allege antitrust injury to plaintiffs. [FN14]

FN14. Pursuant to Rule 12(e), UCB, Inc. seeks a more definite statement of the allegations against it in the event the Court denies its motion to dismiss. The Court finds that plaintiffs' allegations provide UCB, Inc. with fair notice of the claims against it and adequately allege antitrust injury. Nothing more is required at this stage in the process. *See Hospital Bldg Co.*, 425 U.S. at 745. Therefore, UCB's alternative motion for a more definite statement is denied.

*2. Sufficiency of State Antitrust Allegations in NBTY, et al., Publix* and *Meijer*

Plaintiffs in the *NBTY, et al.* action originally filed their cases in three different federal jurisdictions and included statutory antitrust claims under Michigan, California, and New York law in addition to their federal claims. In addition, in the *Tyson, et al.* action, plaintiff Publix Supermarkets, Inc. included a Michigan statutory antitrust claim, and plaintiff Meijer, Inc. plead a Florida statutory antitrust claim. The moving defendants argue that the state antitrust statutes are patterned after the Sherman Act and thus if the Court dismisses plaintiffs' Sherman Act claims, then it should also dismiss the state antitrust claims. Plaintiffs contend that California's Cartwright Act is interpreted more broadly than the Sherman Act. Defendants also argue that plaintiffs' state law claims are not sufficiently specific, and a few defendants argue that the New York and Florida claims do not cover all of plaintiffs' vitamin purchases.

*a. Michigan's Antitrust Reform Act*

***13** *NBTY, et al.* plaintiff Perrigo and *Tyson, et al.* plaintiff Meijer both allege antitrust claims under the Michigan Antitrust Reform Act (MARA), Mich. Comp. Laws § 445.772 et seq. The Act permits any person injured directly or indirectly in his business or property by a contract or combination in restraint of trade to bring an action for damages and injunctive relief. *Id.* at § 445.772(2) & 445.778(8)(2).

Defendants contend that plaintiffs' state antitrust allegations fail to state a claim under MARA for the same reasons that, they argue, this complaint fails to state a claim under the Sherman Act. *Sportwear Design, Inc. v. Canstar Sports USA, Inc.*, 70 F.3d 116 n. 2 (6 th Cir.1995) ("There can be no liability under the Clayton Act if the Sherman Act has not been violated and Michigan law explicitly tracks federal antitrust law"); *DXS Inc. v. Siemens Med. Sys. Inc.*, 991 F.Supp. 859, 865 (E.D.Mich.1997) ("Court examining claims under [MARA] apply the same legal analysis as courts examining claims under the Sherman Act"). For the reasons discussed above in the analysis of the adequacy plaintiffs' pleadings under the Sherman Act, this Court finds that plaintiffs' allegations are sufficiently detailed and provide fair notice of the claims against defendants to survive dismissal. *See American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 619 (6 th Cir.1999) ("Because Michigan antitrust law follows federal precedents, our reasoning regarding the federal antitrust claims applies equally to the [Michigan] antitrust claims") (citing M.C.L.A. 445, 784(2)).

*b. California's Cartwright Act*

In Count III of the *NBTY, et al.* complaint, plaintiffs Leiner, NAI, Nutraceutical, Makers of Kal, and Weider allege an antitrust claim under California's Cartwright Act, Cal. Bus. & Prof. § 16726 et seq. The Cartwright Act permits any person who dealt directly or indirectly with a defendant or co-conspirator, and was injured in his business or property by reason of an unlawful trust of which a defendant or a co-conspirator was a member, to sue for treble damages and injunctive relief. Cal. Bus. & Prof.Code §§ 16750(a), 16720 & 16726.

Section 16756 of the Cartwright Act sets forth the minimum pleading requirements for a claim under this Act:

> In any ... complaint for an offense named in this chapter, it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member, or acted with, or in pursuance of it, or aided or assisted in carrying out its purposes without giving its name or description, or how, when and where it was created.

Plaintiffs' Complaint easily satisfies these pleading requirements. Paragraph 109 in Count III defines the unlawful "trust"; paragraph 110 alleges the purposes of the trust; paragraphs 109, 110, and 112 allege that defendants are members of the trust, and paragraphs 111 and 112 allege that defendants acted with or pursuant to the trust. [FN15] In fact, plaintiffs' allegations extend beyond the requirements of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Section 16756 and allege when the trust began, its minimum duration, the identity of specific products subject to this conspiracy, the existence of meetings or discussions among defendants or their co-conspirators in furtherance of the conspiracy, and the effect of the conspiracy. *See NBTY, et al.* Complaint ¶ ¶¶¶¶ 82, 91, 95, 98, 100. Allegations such as these have been deemed sufficient to establish a claim under the Cartwright Act. *See Cellular Plus, Inc. v. Superior Court,* 14 Cal.App.4th 1224, 1238 (Cal.Ct.App.1993) (upholding the following allegations: that defendants conspired or agreed to fix prices at which cellular radio service is sold in interstate commerce at wholesale in the San Diego County market, that such agreement is an unlawful trust under sections 16720 and 16726, that in furtherance of the conspiracy defendants had meetings or discussions between themselves for the purpose of insuring that the price that was charged for cellular service at wholesale was the same, and that in furtherance of the conspiracy defendants used their best efforts to insure that the prices charged at wholesale in the San Diego County market were the same to the customers of each carrier).

FN15. Antitrust injury and damages are also alleged in paragraphs 98 and 99, which are specifically incorporated into Count III in paragraph 105.

***14** Defendants argue that the Cartwright Act imposes a higher standard of pleading than the Sherman Act. While this appears to be correct, [FN16] the Court finds that plaintiffs have met both standards is this case. In *Cellular Plus,* the court stated that a plaintiff need only allege "certain facts in addition to the elements of the alleged unlawful acts so that defendant can understand the nature of the alleged wrong and discovery is not merely a blind 'fishing expedition' for some unknown wrongful acts." 14 Cal.App.4th at 1236. Plaintiffs have surely satisfied their burden in this case. The cases cited by defendants are inapposite because they either arise at a much later procedural stage when the parties are required to support their allegations with evidence [FN17] or, unlike plaintiffs in this case, the claimants failed to allege a specific element of the Cartwright Act claim. [FN18]

FN16. In *Cellular Plus,* the court noted that the California Supreme Court in *Chicago Title Ins. Co. v. Great Western Financial Corp.,* 69 Cal.2d 305, 315-328 (1968) required "more factually specific pleadings for Cartwright Act claims...." 14 Cal.App.4th at 1236.

FN17. *See Galardo v. AMP, Inc.,* 1982 WL 1791 (N.D.Cal.1982) (directed verdict).

FN18. *See G.H.I.I. v. MTS, Inc.,* 147 Cal.App.3d 256 (Cal.Ct.App.1983) (dismissing claim for horizontal restraint because complaint did not include allegation of horizontal conspiracy and dismissing claim for vertical restraint because complaint did not include allegation of coercion or combination); *Truta v. Avis Rent-A-Car System, Inc.,* 193 Cal.App.3d 802, 822-23 (Cal.Ct.App.1987) (dismissing claim because complaint was "devoid of any facts supporting conspiracy claim").

*c. New York's Donnelly Act*

In Count IV, plaintiffs NBTY, Twin Laboratories and Cambr f/k/a Solgar allege an antitrust claim arising under Section 340 of New York's antitrust statute, the Donnelly Act, N.Y. Gen. Bus. Law § 340 et seq. The Donnelly Act permits any person who has been injured directly or indirectly by reason of a contract, agreement or combination in restraint of trade to sue for damages and injunctive relief.

A party asserting a violation of the Donnelly Act must: (1) identify the relevant product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question, and (4) show a conspiracy or reciprocal relationship between two or more entities. *Great Atlantic & Pacific Tea Co. v. Town of East Hampton,* 997 F.Supp. 340, 352 (E.D.N.Y.1998). These elements are specifically alleged in Count IV of the *NBTY, et al.* complaint. Paragraph 115 alleges that vitamins (a term defined in the pleading) constitute the relevant product market; paragraphs 91 through 94 and 98 (which are incorporated into Count IV) and paragraph 117 allege the nature and effect of the conspiracy; paragraphs 94 and 98 (which are incorporated into Count IV) and paragraphs 116 and 117 allege how the economic impact of the conspiracy restrains trade in the market in question; and paragraphs 91 through 93 (which are incorporated into Count IV) allege a conspiracy between two or more entities.

One defendant, Degussa-Huls Corp., also argues that plaintiffs lack standing to assert an indirect purchase

claim under the Donnelly Act for vitamin purchases that occurred before December 23, 1998, the date when the statute was amended to allow indirect purchaser actions. Plaintiffs offer three responses: (1) the question of which of plaintiffs' indirect purchases are covered by the Donnelly Act is fact-dependent and not properly decided on a motion to dismiss; (2) plaintiffs' allegations span the period both before and after December 23, 1998, and defendant does not challenge plaintiffs' right to recover under the Act for indirect purchases that occurred after that date; and (3) Section 340(6) of the Donnelly Act which provides a damage remedy for indirect purchases should be construed retroactively to cover plaintiffs' indirect vitamin purchases predating December 23, 1998, because remedial statutes are to be interpreted retroactively under New York law.

***15** Under New York law, "[g]enerally, an amendment will have prospective application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall receive a contrary interpretation." New York Statutes Law § 52 (McKinney 1971); *see also Burns v. Volkswagen of America, Inc.*, 460 N.Y.S.2d 410, 412 (N.Y.Sup.Ct.1982) ("statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears."). In Section 2, the amendment provides that "[t]his act shall take effect immediately." McKinney's Session Laws, 1998 Regular Session, Ch. 653, A. 4775 (Dec. 23, 1998). "[A] provision in an amendatory statute that "this act shall take effect immediately" has been held to exclude the idea that it should be retroactive. New York Statutes Law § 52, Comment (McKinney 1971); *see also In re Spencer's Estate*, 145 N.Y.S.2d 397, 400 (Sur.Ct.1995) ( "[W]here a statute by its terms directs that it is to take effect immediately ... the idea that it is to have any retroactive operation or effect is excluded.").

Therefore, the NBTY plaintiffs' claims for damages for indirect purchases prior to December 23, 1998 should be dismissed.

*d. Florida's Deceptive Trade Practices Act*

Defendants DuCoa L.P. and DCV, Inc. argue that *Tyson, et al.* plaintiff Publix, as an indirect purchaser, lacks standing to maintain a claim under Florida's Deceptive Trade Practices Act ("DTPA"), Fla. Stat. § 501.201. First, defendants argue that plaintiffs lacks standing under the DTPA for the same reason that it allegedly lacks standing under the federal antitrust laws, i.e. "it has suffered no injury." Second, defendants argue Publix should be denied standing under the DTPA because it is an indirect purchaser. Finally, these defendants contend that Publix is not a "consumer" and thus lacks standing under the former DTPA to sue for damages arising prior to June 30, 1993.

Although indirect purchasers do not have standing to sue under federal antitrust laws, [FN19] they do have standing to make claims for damages under the DTPA. *Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100, 104 (holding that federal standing rules do not preclude Florida consumers who are indirect purchasers from having standing to pursue claims under the Florida DTPA). The Florida DTPA expresses a primary policy "[t]o protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," § 501.202(2), Florida Statutes (1993), and as a rule of construction, provides that the act "shall be construed liberally to promote [such] policies...." § 501.202, Fla.Stat. (1993). Florida courts have interpreted this statute to allow claims by both direct and indirect purchasers. *Mack*, 673 So.2d at 105 ("A fair reading of section 501.211 reveals no intention by the legislature to limit suits for price-fixing to direct purchasers only.") Therefore, defendants' argument that Publix lacks standing to sue under the DTPA because it is an indirect purchaser fails.

FN19. *See Illinois Brick Company, et al. v. Illinois, et al.*, 431 U.S. 720 (1977) (limiting federal antitrust standing to direct purchasers).

***16** Next, the Court must consider defendants' argument that Publix cannot recover damages for transactions that occurred prior to 1993. Prior to 1993, the DTPA defined "consumer transaction" as "a sale, lease, assignment, award by chance, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family or household...." Fl. Stat. § 501.203(1) (1987). Courts have held that the former DTPA applies only to consumer transactions. *See United Pacific Insurance Co. v. Berryhill*, 620 So.2d 1077 (Fla.App. 5 Dist.1993) (no cause of action under DTPA because sales at the wholesale level were not consumer transactions). Therefore, defendants contend that plaintiffs' claims for damages

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

arising prior to June 30, 1993, the effective date of the new act, should be dismissed. By contrast, Publix argues that the continuing tort doctrine applies and since its cause of action did not accrue until after June 30, 1993, its claim is governed by the current DTPA.

The continuing tort doctrine is recognized by Florida state law. *See Halkey-Robert Corp. v. Mackal,* 641 So.2d 445 (Fla. Ct.App.2d Dist.1994) ( "The continuing tort doctrine is recognized under our state law," *citing Seaboard Air Line v. Holt,* 92 So.2d 169 (Fla.1956)). Under this continuing tort doctrine, a cause of action does not accrue until "... the final act in a series of events or course of conduct [accrues]." *Fletcher v. Florida,* 858 F.Supp. 169 (M.D.Fla.1994) . Publix argues that because defendants' conduct went unabated until the conspiracy was uncovered in March 1999, Publix's cause of action did not accrue until that time. Therefore, under plaintiffs' theory, its claims would fall under the amended version of the DTPA. However, none of the cases cited by Publix in support of application of the continuing tort doctrine involve antitrust claims. It is generally understood that "when a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of defendants." *Florida Municipal Power Agency v. Florida Power & Light Co.,* 81 F.Supp.2d 1313, 1321 (M.D.Fla.1999) (applying accrual rule to both Florida and federal antitrust claims); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338 (1971) ("In the context of a continuing conspiracy to violate the antitrust laws, ... each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act."); *In re Nine West,* 80 F.Supp.2d at 191 (in price fixing case, antitrust claim accrues each time sale is made to plaintiff at inflated price). The "commission of a new overt act does not permit the plaintiff to recover for the injury caused by the old overt acts outside the limitations period." *Klehr,* 521 U.S. at 189 (reviewing antitrust case law in determining appropriate accrual rule for RICO cases); *see also* 35 Fla.Jur.2d, Limitations and Latches § 62 (1996) (Under the doctrine of continuing or repeated tortious acts, "the fact that successive claims would arise out of the several unlawful acts does not mean that the period of limitation as to earlier acts done and injuries caused, is thereby extended; rather, each of these causes of action accrues on the doing of the wrongful act to which it relates."). Therefore, Publix may not claim damages for injuries incurred prior to 1993.

B. Motions to Sever

***17** Claims against different parties can be severed for trial or other proceedings, under Fed.R.Civ.P. 20(b), 21, and 42(b), if the Court determines in its discretion that the interests of justice would be served by doing so. *See State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.,* 856 F.Supp. 1229, 1240 (S.D.Ohio 1994) ("permissive joinder rests with the sound discretion of the trial court").

The defendants claim that there are really three distinct conspiracies here: (1) bulk vitamins, (2) choline chloride, and (3) niacin. By contrast, plaintiffs claim that this is really one worldwide conspiracy in which the defendants not only set the prices charged for vitamins but also regulated which members could sell what products to which customers and in what amounts. Plaintiffs argue that the fact that the moving defendants entered into negotiated pleas limited to particular vitamins does not show that their violations consisted of separate conspiracies distinct from the overall conspiracy. Moreover, plaintiffs contend that the class settlements also cannot prove the existence of separate conspiracies and should be interpreted as no more than a tactical move to achieve a rapid settlement of their claims.

The Court finds that it would be improper at this time to prejudge the scope of the conspiracy that plaintiffs allege. It is well-established that "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components" and the trier of fact must "look at the whole picture and not merely at the individual figures in it." *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 699 (1962). Here, defendants are charged with engaging in a single conspiracy, which affected a variety of vitamins. Severance is generally disallowed in cases alleging single conspiracies or even in cases where the allegations are "a series of overlapping and interwoven conspiracies." *See Ohio v. Louis Trauth Dairy, Inc.,* 856 F.Supp. 1229, 1240 (S.D.Ohio 1994); *Little v. BellSouth Telecomm., Inc.,* 1995 WL 468256, at *1 (E.D.La. Aug. 7, 1995). Courts also consistently deny motions to sever where plaintiffs allege that defendants have engaged in a common scheme or pattern of behavior. *See, e.g., Brereton v. Communications Satellite Corp.,* 116 F.R.D. 162, 164 (D.D.C.1987). The cases cited by defendants are inapposite. *See Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.,* 497 F.2d 1151, 1154

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(2d Cir.1974) (complaint contained no allegation of conspiracy and "[n]o connection at all between the practices engaged in by each of the 164 defendants [was] alleged."); *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674 (6 th Cir.1988) (affirming district court's exercise of discretion in finding, after extensive pretrial proceedings, that one loan transaction should be severed because it was wholly unrelated to the remainder of the case and raised different issues); *Intercon Research Associates, Ltd. v. Dresser Industries, Inc.,* 696 F.2d 53 (7 th Cir.1982) (affirming district court's determination that breach of contract claims against different parties were insufficiently related to permit joinder).

***18** Defendants claim that the guilty pleas support the proposition that there are three distinct conspiracies in this case. Defendants also claim that the class plaintiffs' decision to plead three separate complaints for multiple vitamins, choline chloride, and Vitamin B3 or niacin, and the Court's decision to conditionally certify two separate settlement classes for direct purchasers of choline chloride and multiple vitamins, supports defendants' position that there are three separate conspiracies. However, the Court agrees with plaintiffs that the criminal guilty pleas do not establish boundaries for this civil litigation and that the class settlements involve strategic decisions and may not be as expansive as their potential claims.

Fed.R.Civ.P. 20(a) permits joinder of defendants:

> if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A ... defendant need not be interested in ... defending against all the relief demanded.

Joinder rules are interpreted to encourage "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). The "terms 'transaction or occurrences' should be interpreted broadly to permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *State of Ohio,* 856 F.Supp. at 1239.

As discussed above, plaintiffs have alleged a single global conspiracy involving all named defendants, they have identified the vitamins that were part of the conspiracy, what the conspirators agreed to do, and how they accomplished their goals. The complaints expressly request judgment against all defendants, jointly and severally. Moreover, plaintiffs' allegations allege a common series of transactions and occurrences and raise common questions of law and fact applicable to all defendants. Therefore, accepting plaintiffs' allegations as true, as the Court must when evaluating motions to dismiss, defendants' motions to sever must be denied. These motions are premature. No depositions have been taken and document discovery is still in an early stage. Under these circumstances, severance is not warranted. *See SEC v. National Student Marketing Corp.,* 360 F.Supp. 284, 296 (D.D.C.1973) (denying severance at the pleading stage where the moving defendants "allegedly acted 'singly and in concert' with other defendants," even while recognizing that it might be proper to sever their aspect of the case at "a more advanced stage" when "discovery is completed and all relevant facts have been disclosed and considered."); [FN20] *see also State of Ohio,* 856 F.Supp. at 1239-40 (denying severance because court determined that proceeding on a consolidated basis through trial was the most efficient course). Therefore, defendants' motions to sever will be denied.

FN20. Significantly, the court considered it important that the Judicial Panel on Multidistrict Litigation had found "that the interests of justice could best be served by conducting consolidated and coordinated discovery in this district." *Id.* at 295.

## V. CONCLUSION

***19** For the foregoing reasons, the pending motions to dismiss for failure to plead fraudulent concealment with sufficient particularity are denied. The motions to dismiss for failure to state a claim are denied, with two limited exceptions. First, Degussa-Huls Corp.'s Motion will be granted with respect to the *NBTY, et al.* plaintiffs' claims under the Donnelly Act for indirect purchases that occurred prior to December 23, 1998; the Motion will be denied on all other grounds. Second, DuCoa L.P. and DCV, Inc.'s Motion will be granted solely with respect to *Tyson, et al.* plaintiff Publix's claims for damages incurred through purchases made prior to June 30, 1993; that Motion will similarly be denied on all other grounds. The alternative motions to sever certain claims are all denied. An order will accompany this opinion.

2000 WL 1475705 (D.D.C.), 2000-1 Trade Cases P 72,914

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works