**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd., MCC Menssing Chemiehandel & Consultants GmbH; and Newco Trading Co., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Ajinomoto Co., Inc.; Ajinomoto USA, Inc.; Orsan S.A.; Cheil Jedang Corp.; C.J. America, Inc.; Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries, Ltd.; Kyowa Hakko Kogyo Co., Ltd.; Vedan Enterprises Group f/k/a Tung Hai Fermentation Industrial Corp.; Archer Daniels Midland Co.; Ve Wong Corp.; Wei Chuan Foods Corp.; Yamasa Corp.; and Asahi Kasei Corp.

Defendants.

MDL 00-1328

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY PROCEEDINGS PENDING THE D.C. CIRCUIT'S DECISION IN *EMPAGRAN S.A. v. F. HOFFMAN-LAROCHE, LTD.***

## I. INTRODUCTION

Plaintiffs, by and through their undersigned attorneys, respectfully request a temporary stay of the present action pending the resolution of similar factual and legal issues in, *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, currently before the United States Court of Appeals for the D.C. Circuit. The directly analogous issue now before that court is whether the alleged anti-competitive activity of manufacturers and retailers had effects in the United States that were necessary to achieve foreign purchasers' injuries abroad, thereby satisfying the domestic-injury exception to the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"). 15 U.S.C. § 6a; *Empagran S.A., v. F. Hoffman-LaRoche, Ltd.*, 388 F.3d 337, 344-5 (D.C. Cir. 2004).

While Defendants have not yet responded to Plaintiffs' Consolidated and Amended Class Action Complaint, filed on November 15, 2004, the D.C. Circuit's ruling in Empagran, expected in late spring/early summer, should be directly pertinent and instructive to the Court and parties in this action by clarifying the showing necessary for the FTAIA's domestic-injury exception to apply. Therefore, the Court should stay this matter until the D.C. Circuit finally rules on an issue that its jurisdiction has been dealing with extensively for almost four years.

## II. THE *EMPAGRAN* LITIGATION

On November 14, 2000, the plaintiffs in *Empagran* ("*Empagran* Plaintiffs") filed a class action complaint in the United States District Court for the District of Columbia on behalf of foreign purchasers of bulk vitamins under §1 of the Sherman Act, (15 U.S.C. §1), and §§4 and 16 of the Clayton Act, (15 U.S.C. §§15 and 26). The *Empagran* Plaintiffs alleged that foreign and domestic vitamin manufacturers and distributors had engaged in a global price-fixing and market allocation conspiracy that resulted in supracompetitive prices for vitamins sold to customers in the United States and foreign countries. Vitamins Complaint ("Vit. Cmpl.") ¶ ¶ 89-95. The Defendants moved to dismiss the foreign purchasers' suit on subject matter jurisdiction grounds, arguing that the federal antitrust laws provided no remedy for injuries arising from the effects of anticompetitive conduct on purely foreign commerce.

The District Court granted Defendants' motion and dismissed the *Empagran* Plaintiffs' claims. The court found that the FTAIA's exclusionary rule applied to the case, but found none of the FTAIA's exceptions applicable. *See Empagran S.A. v. F. Hoffman-LaRoche Ltd.*, No. Civ. 001686TFH, 2001 WL 761360, at *4 (D.D.C. June 7, 2001). The D.C. Circuit reversed. It too applied the FTAIA exclusionary rule, but found that the domestic-injury exception indeed applied. *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338 (D.C. Cir. 2003). The D.C.

Circuit held that the FTAIA did not require that Plaintiffs' claim arise from the effect of the defendants' conduct on U.S. commerce, and concluded that plaintiffs had a right to sue. The Court found that "[t]he same conduct injure[d] both foreign plaintiffs and domestic plaintiffs," which was clearly the conduct that Congress aimed to reach with the antitrust laws. *Id.* at 354.

On December 15, 2003, the United States Supreme Court granted Defendants' petition for writ of certiorari. *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 540 U.S. 1088 (2003). On June 14, 2004, the Supreme Court held that "where the price-fixing significantly and adversely affects both customers outside and within the United States, but the adverse foreign effect is independent of any adverse domestic effect, the FTAIA exception does not apply, and thus, neither does the Sherman Act, to a claim based on the foreign effect." *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 124 S.Ct. 2359, 2366 (2004). However, the Court stated that this decision was based on the assumption that the anticompetitive conduct's domestic effects did not help to bring about the foreign plaintiffs' foreign injury. *Id.* at 2372. Thus, the Court remanded the case to the Court of Appeals to consider whether the Plaintiffs had properly preserved their alternative argument that the foreign injury was not in fact independent of the domestic effects; and, if so, to consider and decide this related claim. [1] *Id.*

Following this remand, the D.C. Circuit requested briefing on the following questions: (1) whether Plaintiffs' alternative claim argued to the Supreme Court — that the alleged anticompetitive conduct's domestic effects provide the necessary link in creating the foreign injury — was pled and preserved; and, if so, (2) whether the Court of Appeals or the District

[1] The *Empagran* Plaintiffs argued, in the alternative, that the domestic effects of the Defendants' anticompetitive conduct were linked to the foreign harm. "Because vitamins are fungible and readily transportable, without an adverse foreign effect (i.e., higher prices in the United States), the sellers could not have maintained their international price-fixing arrangement and [plaintiffs] would not have suffered their foreign condition." *Empagran S.A.*, 124 S.Ct. at 2372. Thus, according to the *Empagran* Plaintiffs, this "but for" condition was sufficient to bring the price-fixing conduct within the scope of the FTAIA's exception. *Id.*

Court should determine whether the nature of the link alleged is legally sufficient to trigger the FTAIA's domestic-injury exception. *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, Order No. 01-7115 (D.C. Cir. June 21, 2004).

In its November 2, 2004 *per curiam* order, the D.C. Circuit ruled that the alternative claim was both pled and preserved. The Court further held that it, not the District Court, should rule on the alleged jurisdictional link between the domestic effects and foreign injury. *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 388 F.3d 337 (D.C. Cir. 2004). The Court of Appeals ordered full merits briefing on the question of whether "the nature of the alleged link between foreign injury and domestic effects is legally sufficient to trigger application of the FTAIA's domestic-injury exception" and set oral argument for April 20, 2005.[2] *See* Briefing Schedule, attached hereto as Exhibit 1 to the Affidavit of Richard A. Lockridge.

According to the D.C. Circuit, the question of whether the *Empagran* Plaintiffs' alternative claim provides a sufficient jurisdictional nexus may be decided on a purely legal basis: "If the legal argument for the jurisdictional nexus is sufficient to survive a motion to dismiss, the parties will each have an opportunity to develop their case before the trial court. If the legal argument is without merit, then judicial economy supports a ruling by this court in the first instance." *Empagran*, 388 F.3d at 345.

## III. SIMILARITIES BETWEEN THE INSTANT LITIGATION AND THE *EMPAGRAN* LITIGATION

The facts at issue in *Empagran* are directly parallel to those at issue in this action. In both cases, plaintiffs allege that foreign and domestic manufacturers and distributors engaged in a price-fixing conspiracy that resulted in artificially high prices for products (MSG and Vitamins respectively) sold to customers in the U.S. and foreign countries. Vit. Cmpl. ¶¶ 89-95;

[2] The potential strength of Plaintiffs' arguments both in *Empagran* and here are supported by a $10,000,000 settlement reached between the *Empagran* Plaintiffs and the Merck Defendants in 2003.

Complaint ("Cmpl.") ¶ 45. The complaints in both cases specifically allege that defendants entered into agreements where they (1) set the prices each would charge for products in both the domestic and foreign markets, and (2) allocated geographic markets between themselves. Vit. Cmpl. ¶¶ 89-95; Cmpl. ¶¶ 39-44.

Similarly, the legal theory underlying the *Empagran* Plaintiffs' claims are virtually identical to Plaintiffs' claims in this action. First, both cases are brought under §1 of the Sherman Act and §§4 and 16 of the Clayton Act, alleging price-fixing and market allocation. Second, plaintiffs in both actions are *foreign purchasers*. These foreign Plaintiffs allege that the defendants' anticompetitive conduct adversely affected customers both inside and outside the U.S. and that such conduct's domestic effects were linked to the foreign harm. Specifically, without the defendants' conspiracies' adverse U.S. effects — artificially high U.S. product prices (of MSG, Nucleotides and Vitamins) — defendants and their co-conspirators could not have maintained their international price-fixing arrangements, the cartels would have collapsed, and plaintiffs (foreign purchasers of MSG, Nucleotides and Vitamins) would not have suffered their foreign injuries. Cmpl. ¶¶ 71-72; *see also Empagran*, 388 F.3d at 346 (finding that plaintiffs pled and preserved this alternative claim). Thus, the precise issue that is presently before the D.C. Circuit — whether the nature of the alleged link between foreign injury and domestic effects is legally sufficient to trigger application of the FTAIA's domestic-injury exception — is also before this Court. *See id.*

## IV. ARGUMENT

### A. <u>The Proceedings in this Case Should Be Stayed Pending the D.C. Circuit's Decision.</u>

The Supreme Court has explicitly recognized that federal district courts have the inherent authority to stay matters on their docket. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)

("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir. 1990); *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 808 (8th Cir. 1986); *Home Owners Mgmt., Inc. v. Protcom Int'l, LLC*, 2004 WL 2697269, slip op. (D. Minn. Nov. 22, 2004); *Kramer v. N.C.S. Pearson, Inc.*, No. 03-1166, 2003 WL 21640494, at *1 (D. Minn. Jan. 9, 2003) (staying action pending resolution of related action in different jurisdiction); *Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, Civ. Nos. 4-87-560, 4-87-949, 1988 WL 65583 at *5 (D. Minn. June 24, 1988) (staying federal court action pending state court action).

Moreover, parties and issues need not be completely identical for the court to stay proceedings in one suit pending the outcome of proceedings in another. *See Landis*, 299 U.S. at 254; *see also, e.g, Coyne v. Delany Co.*, 90 F. Supp. 505, 507 (S.D. Iowa 1950) (staying Iowa case pending NY case where most parties were different).

This rule applies whether the "separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952); *Landis v. North Am. Co.*, 299 U.S. at 153 (1936); *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995-1000 (8th Cir. 1972)).

**B. <u>A Stay is in the Parties' Best Interest, Does Not Prejudice Defendants, and is in the Interest of the Court.</u>**

In determining whether to exercise its discretion to impose a stay, a district court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *id.* at 259

("Benefit and hardship will be set off, the one against the other, and upon an ascertainment of the balance discretionary judgment will be exercised . . . ").

Though a showing of "hardship or inequity" is usually necessary before a stay will be granted, "there will be instances where efficient and sensible administration of the court's business will be benefited without such a showing of hardship." *Fisher Controls Co. v. Control Components, Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977) (citing *Landis*, 299 U.S. at 255-56).

In deciding whether to grant a stay, courts consider several factors, including: 1) the plaintiffs' private interest in proceeding expeditiously with the civil litigation balanced against the prejudice to the plaintiffs if delayed; 2) the private interests of, and any burden on the defendants; 3) the interests of the courts; 4) the interests of persons not parties to the civil litigation; and 5) the public interest. *See KK Motors, Inc. v. Brunswick Corp.*, No. Civ. 98-2307, 1999 WL 246808, at * 1 (D. Minn. Feb. 23, 1999). The most relevant of these factors all favor Plaintiffs' request for a stay.

**1. <u>A Stay is in the Parties' Interests and Will Not Cause Prejudice.</u>**

Plaintiffs, foreign purchasers of MSG and Nucleotides for delivery outside the United States, allege that Defendants' price-fixing and market-allocation conspiracy significantly and adversely affected customers both inside and outside the U.S. and further allege that the conspiracy's adverse foreign effects were dependent on its adverse domestic effects. The issue currently before the D.C. Circuit in *Empagran* is directly related to Plaintiffs' allegations — specifically whether the nature of the alleged link between the foreign injury and domestic effects is legally sufficient to trigger the application of the FTAIA's domestic-injury exception. The *Empagran* litigation has focused on this issue at the district, appellate, and Supreme Court levels.

Defendants will suffer no hardship if this action is stayed until the D.C. Circuit's decision in *Empagran*. The upcoming D.C. Circuit decision will provide guidance to the parties, determining whether this court has jurisdiction to hear Plaintiffs' claims. In just a few months, the D.C. Circuit will set forth what Plaintiffs must show regarding the nexus between their foreign injury and the domestic effects of Defendants' conspiracy's in order to satisfy the FTAIA's domestic-injury exception. The *Empagran* decision will clarify, if not resolve, the claims alleged in this case. Therefore, it is both uneconomical and inefficient for the parties to devote substantial resources in time and other litigation expenses prior to the D.C. Circuit's decision.

Furthermore, this stay will not cause undue delay. The D.C. Circuit has already docketed a briefing schedule on this issue, and is expected to render a decision in the next few months. *See* Exhibit 1. Such a short stay does not prejudice the Defendants and clearly comports with the Supreme Court's requirement in *Landis* because it is "so framed in its inception that its force will be spent within reasonable limits." *Landis*, 299 U.S. at 257.

**2. <u>A Stay is In The Court's Interest.</u>**

A temporary stay is clearly in the Court's interest. A court, in considering the competing interests affected by a stay should consider "the orderly course of justice measured in terms of the simplifying . . . of issues, proof, and questions of law which could be expected to result from a stay." *Fisher Controls*, 443 F.Supp. at 582 (citing *CMAX Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

As described above, after four years of *Empagran* precedent in the D.C. jurisdiction, including an instructive Supreme Court ruling, the D.C. Circuit will finally resolve the subject matter jurisdiction issue in *Empagran* in just a matter of months. This vital and potentially

determinative issue is also before this Court right now. Thus, the D.C. Circuit's decision will soon provide this Court with invaluable guidance and clarification on the application of the FTAIA's domestic-injury exception. Moreover, it would be most efficient to preserve precious and limited judicial resources in this case while awaiting that decision. *See Kemp v. Tyson Seafood Group Inc.*, 19 F. Supp. 2d 961, 965 (D. Minn. 1998) ("As a Federal District Court, we have the inherent power to stay the proceedings of an action, so as to control our docket, *to conserve judicial resources*, and to provide for the just determination of cases which pend before us.") (emphasis added); *SunBeam Corp. v. Faberge, Inc.*, 312 F. Supp. 998, 999 (D. Minn. 1970) (staying an action "*in the interest of economy and time and money*," where similar patent infringement action in another district would soon be tried) (emphasis added); *EFCO Corp v. Aluma Sys.*, 983 F. Supp 816, 824 (S.D. Iowa 1997) ("In determining whether to dismiss or stay an action in favor of parallel litigation in . . . other federal courts, a federal court should consider "wise judicial administration . . . *conservation of judicial resources*, and comprehensive disposition of litigation.") (emphasis added) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

### 3. A Stay is in the Public Interest.

A stay is also in the public interest. It ensures that the parties do not waste valuable court time — and the public's tax money — over an issue which has already been extensively litigated in another court and will be resolved in just a few short months. A stay may also lead to more consistent results across the two jurisdictions (Minnesota and the District of Columbia).

## V. CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request a stay of the present action pending the D.C. Circuit's ruling in *Empagran*.

Dated: December 22, 2004

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

s/Richard A. Lockridge
Richard A. Lockridge (#64117)
Heidi M. Drewes-Silton (#025759X)
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981

HEINS MILLS & OLSON, P.L.C.

s/Samuel D. Heins
Samuel D. Heins (#43576)
Susan E. MacMenamin (#0304396)
3550 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 338-4605
Fax: (612) 338-4692

**PLAINTIFFS' CO-LEAD COUNSEL**

Michael D. Hausfeld
Paul T. Gallagher
Brian A. Ratner
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

Joseph Goldberg
FREEDMAN BOYD DANIELS HOLLANDER GOLDBERG & CLINE, P.A.
20 First Plaza, Suite 700
Albuquerque, NM 87102
Tel: (505) 842-9960
Fax: (505) 842-0761

Howard J. Sedran
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Gerald J. Rodos
Jeffrey B. Gittleman
BARRACK RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

Martin D. Chitwood
Craig G. Harley
CHITWOOD & HARLEY
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

Donald L. Perelman
Roberta D. Liebenberg
FINE KAPLAN & BLACK
1845 Walnut Street, 23rd Floor
Philadelphia, PA 19103
Tel: (215) 567-6565
Fax: (215) 568-5872

Mark A. Griffin
Lynn L. Sarko
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384

Jared B. Stamell
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006-1404
Tel: (212) 566-4047
Fax: (212) 566-4061

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Ste. 1700
San Francisco, CA 94111
Tel: (415) 217-6810
Fax: (415) 217-6813

Ira N. Richards
TRUJILLO RODRIGUEZ
& RICHARDS, LLC
226 W. Rittenhouse Square
The Penthouse
Philadelphia, PA 19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Robert N. Kaplan
Richard J. Kilsheimer
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

Joseph M. Patane
LAW OFFICES OF JOSEPH M. PATANE
2280 Union Street
San Francisco, CA 94123
Tel: (415) 563-7200
Fax: (415) 346-0679

Marc H. Edelson
EDELSON & ASSOCIATES LLC
45 West Court Street
Doylestown, PA 18901
Tel: (215) 230-8043
Fax: (215) 230-8735

Karl L. Cambronne
CHESTNUT & CAMBRONNE, P.A.
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
Tel: (612) 339-7300
Fax: (612) 339-2940

Linda P. Nussbaum
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
150 East 52nd Street
30th Floor
New York, NY 10022-6017
Tel: (212) 838-7797
Fax: (212) 838-7745

Steven A. Kanner
MUCH SHELIST FREED DENENBERG
AMENT & RUBENSTEIN, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
Tel: (312) 521-2000
Fax: (312) 521-2100

Andrew B. Sacks
SACKS, WESTON, SMOLINSKY,
ALBERT, & LUBER
510 Walnut Street
Suite 400
Philadelphia, PA 19106
Tel: (215) 925-8200
Fax: (215) 925-0508

Steven J. Greenfogel
MEREDITH COHEN GREENFOGEL
& SKIRNICK, P.C.
Architects Building, 22nd Floor
117 South 17th Street
Philadelphia, PA 19103
Tel: (215) 564-5182
Fax: (215) 569-0958

**COUNSEL FOR PLAINTIFFS**