UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION — Civil 00-MD-1328 (PAM)

This Document Relates to:

---

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all other similarly situated,

Plaintiffs,

Civil 03-2997 (PAM)

v.

DECLARATION OF JU MYUNG HWANG

Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.,: Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group,

Defendants.

---

## DECLARATION OF JU MYUNG HWANG

1. My name is Ju Myung Hwang. I am competent in all respects to make this Declaration and have personal knowledge of each of the statements and facts set forth herein or they are known to me through my duties and responsibilities as a partner with Hwang Mok Park in Seoul, Korea, providing legal representation to Defendants CJ Corp., f/k/a Cheil Jedang Corporation, and CJ America, Inc. (collectively referred to herein as "Cheil") and my experience of over forty years in the practice of law.

2. I am an attorney licensed to practice in Korea. My areas of practice include litigation, arbitration, and antitrust law. I was admitted to the Korea Bar in 1961, and received a Bachelor of Arts degree in Law from Seoul National University in 1962. I also attended the National Law Center, George Washington University, completing my studies there in 1974. I began my legal career as Judge Advocate in the Republic of Korea Air Force, serving in that role from approximately 1962-1965. After leaving my position as Judge Advocate in the Republic of Korea Air Force, I served approximately four years as Judge for the Busan District Court. I then served another four years as Judge for the Seoul Civil District Court. In 1973, I served as a Judge for the Seoul Criminal District Court. Beginning in 1975, after completing my studies at the National Law Center, George Washington University, I served as a Judge on the Seoul Court of Appeals and as Research Judge of the Korean Supreme Court. Following my service on the bench, I became the General Counsel of Korea Oil Corporation and then served two years as Executive Director and General Counsel of Daewoo Group. In 1980, I became a partner in the firm of Kim & Hwang, and currently I am the senior partner in the law firm of Hwang Mok Park P.C., located in Seoul, South Korea.

3. I am a member of the Korea and Seoul Bar Associations, and often provide services as an Arbitrator for the Korean Commercial Arbitration Board. I also serve as the Chief Mediator of the Seoul District Court. I am currently on the Board of Directors of the international legal organization Lex Mundi, an organization of independent law firms providing for the exchange of professional information about the local and global practice and development of law.

4. I represent CJ Corp. in a variety of ways, including providing legal counsel related to diverse issues and litigation. Part of my representation has included providing advice

and counsel to CJ Corp. and CJ Corp.'s legal counsel in various litigation arising from an alleged cartel in the food flavor enhancer industry. This litigation has included, among other matters, direct purchaser class action cases that were consolidated before the Honorable Paul Magnuson in the District of Minnesota in *In re Monosodium Glutamate Antitrust Litigation,* MDL Docket No. 00-1328 ("the domestic purchaser action") and in two putative class action cases brought on behalf of foreign direct purchasers, *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.,* Civil 03-2997 (PAM), U.S. District Court, District of Minnesota (the "*Inquivosa* action" or "foreign purchaser action"), and *Newco Trading Co., a Corporation, on behalf of itself and all others similarly situated v. Ajinomoto Company, Inc., et al.,* Civil Action No. 03-CV-8317, U.S. District Court, Southern District of New York (the "New York action"), that have been consolidated into MDL Docket No. 00-1328. It has also included indirect purchaser cases brought in various state jurisdictions throughout the United States.

5. In June 2003, I, along with several CJ Corp. employees attended a court-ordered mediation as scheduled as part of the domestic purchaser action. Special Master John Borg was appointed by the Court and presided over that mediation. During this mediation, I participated in multiple discussions with both Special Master Borg and with Plaintiffs' counsel, including the discussions in which Cheil reached separate settlements with the plaintiffs' counsel in both the domestic purchaser action and the foreign purchaser action. I, along with several CJ Corp. employees attended the mediation and gave express consent on behalf of CJ Corp. to those settlements. Furthermore, based on my personal representation of Cheil and my involvement in discussions with Cheil employees prior to and during the mediation, I am aware that Cheil viewed reaching an appropriate settlement of the foreign purchaser action as being critical to its ultimate decision to agree to the terms of the separate settlement in the domestic purchaser action.

If the parties had not reached a settlement of the foreign purchaser action at the mediation, Cheil would not have agreed to the settlement terms of the domestic purchaser action at that time.

6. The terms of the foreign purchaser action settlement agreement reached on June 19, 2003 were agreed to in face-to-face conversations between counsel for Cheil and the plaintiffs. The basic terms of the foreign purchaser settlement agreed to by both parties were as follows: Upon occurrence of two contingencies, Cheil would, in exchange for a worldwide release of claims based on direct purchases of MSG and nucleotides, pay $1 million to Plaintiffs and provide cooperation to Plaintiffs as part of Plaintiffs' attempts to pursue claims against other defendants. Stated generally, the contingencies that triggered the parties' obligations were (1) that Plaintiffs' complaint survive a Rule 12(b)(6) motion to dismiss and (2) that the Court certify a class as sought in Plaintiffs' complaint. At the June 2003 mediation session, both parties expressly informed the other that they accepted the terms of that agreement. Furthermore, both I and Cheil firmly believed then, and continue to believe now, that a settlement agreement reached at a court-ordered mediation presided over by a court-ordered Special Master serving as the mediator is a final agreement.

7. It was important for Cheil to ensure that both parties recognized that that the foreign purchaser action had been settled before the domestic action settlement agreement was presented to the Court for possible preliminary approval.

8. I declare under penalty of perjury that the foregoing is true and correct.

J. M. Hwang

Ju Myung Hwang