UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION

Civil 00-MD-1328 (PAM)

This Document Relates to:

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all other similarly situated,

Plaintiffs,

v.

Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.,: Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group,

Defendants.

Civil 03-2997 (PAM)

DECLARATION OF BARRY F. McNEIL

DECLARATION OF BARRY F. McNEIL

1. My name is Barry F. McNeil. I am competent in all respects to make this Declaration and have personal knowledge of each of the statements and facts set forth herein or they are known to me through my duties and responsibilities as a partner with Haynes and Boone, L.L.P. providing legal representation to Defendants CJ Corp., f/k/a Cheil Jedang Corporation, and CJ America, Inc. (collectively referred to herein as "Cheil").

2. I am an attorney licensed to practice in the State of Texas, having received my license in 1969. I was admitted in 1976 to practice before the Supreme Court of the United States and I am admitted to practice in the Western District, Eastern District, Southern District and Northern District of Texas. I am further admitted to practice before the United States Court of Appeals for the Eighth Circuit and for the Fifth Circuit. I am a Fellow in the American College of Trial Lawyers and Past Chair of the Litigation Section of the American Bar Association. I am Past Chair of the Antitrust Section of the State Bar of Texas. From 1970-1979, I was a Federal Prosecutor with the Antitrust Division of the United States Department of Justice. Since 1979 I have represented companies and officers in complex commercial litigation throughout Texas and the United States.

3. Since approximately September 1999, I, along with other attorneys at Haynes and Boone, L.L.P., have represented Cheil in various litigation arising in the food flavor enhancer industry. This representation has included, among other things, representing Cheil in direct purchaser class action cases that were consolidated before the Honorable Paul Magnuson in the District of Minnesota in *In re Monosodium Glutamate Antitrust Litigation,* MDL Docket No. 00-1328 ("the domestic purchaser action") and in two putative class action cases brought on behalf of foreign direct purchasers, *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.,* Civil 03-2997 (PAM), U.S. District Court, District of Minnesota (the "*Inquivosa* action" or "foreign purchaser action"), and *Newco Trading Co., a Corporation, on behalf of itself and all others similarly situated v. Ajinomoto Company, Inc., et al.,* Civil Action No. 03-CV-8317, U.S. District Court, Southern District of New York (the "New York action"), that have been consolidated into MDL Docket No. 00-1328. I have also represented Cheil in indirect purchaser cases brought in various jurisdictions.

4. In June 2003, at a mediation scheduled as part of the domestic purchaser action, Cheil reached separate settlements with the plaintiffs' counsel in both the domestic purchaser action and the foreign purchaser action. Special Master John Borg was appointed by the Court and presided over that mediation.

5. Because the Cheil defendants wanted a settlement to bring as much closure to the food flavor enhancer litigation as possible, it was important for Cheil to settle the domestic and foreign direct claims at the same time. Consequently, during the domestic purchaser mediation, the parties also discussed a settlement of the foreign purchaser action. Ultimately, the parties reached separate agreements on both actions.

6. The terms of the foreign purchaser action settlement agreement reached on June 19, 2003 were agreed to in face-to-face conversations between counsel for Cheil and the plaintiffs. The basic terms of the foreign purchaser settlement agreed to by both parties were as follows: Upon occurrence of two contingencies, Cheil would, in exchange for a worldwide release of claims based on direct purchases of MSG and nucleotides, pay $1 million to Plaintiffs and provide cooperation to Plaintiffs as part of Plaintiffs' attempts to pursue claims against other defendants. Stated generally, the contingencies that triggered the parties' obligations were (1) that Plaintiffs' complaint survive a Rule 12(b)(6) motion to dismiss and (2) that the Court certify a class as sought in Plaintiffs' complaint. At the June 2003 mediation session, both parties expressly informed the other that they accepted the terms of that agreement.

7. On July 2, 2003, I sent a letter to Sam Heins and Richard Lockridge, Plaintiffs' Co-Lead Counsel, that included a document that set our settlement agreement out on paper. Because of Plaintiffs' counsel's request that the agreement be kept for the time being in an informal format, the initial documentation was provided in the form of a letter. A true and

correct copy of that correspondence is attached hereto as Exhibit 1. No attorney representing plaintiffs has ever indicated to me that the July 2 letter I forwarded misstated the agreement.

8. Because it was important for Cheil to ensure that both parties recognized that the foreign purchaser action had been settled before the domestic action settlement agreement was presented to the Court for possible preliminary approval, one of my partners, Ron Breaux, contacted Plaintiffs' counsel to inquire about the status of the July 2 documentation. He left a message on that issue, and in response to that call, Sam Heins telephoned me.

9. At the outset of that conversation, I reminded Mr. Heins that, from Cheil's viewpoint, the domestic and foreign purchaser lawsuits were inextricably intertwined. Mr. Heins responded that he understood that was Cheil's position and confirmed that the letter documentation forwarded on July 2 accurately recounted the agreement reached in Minnesota. Relying on this express confirmation, I authorized Mr. Heins to proceed with presenting the domestic purchaser settlement for preliminary approval.

10. Following that conversation, attorneys for both parties had multiple communications related to the preparation of the documents recounting the settlement.

11. Shortly after March 1, 2004, David Reece, a Haynes and Boone attorney, provided me with a written letter signed by both Plaintiffs' Co-Lead Counsel, Sam Heins and Joe Bruckner. I signed that letter agreement on March 12, 2004. A true and correct copy of that document is attached to this Declaration as Exhibit 2.

12. I declare under penalty of perjury that the foregoing is true and correct.

B— McNeil

Barry F. McNeil