# Exhibit 1
# to
# Declaration of
# Barry F. McNeil

HAYNES AND BOONE, LLP

July 2, 2003

Samuel D. Heins
Heins Mills & Olson, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

h | b

Richard A. Lockridge
Lockridge Grindal Nauen P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, Minnesota 55401

Re: *Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all others similarly situated v. Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.; Miwon Corp., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group*; MDL 00-1328 (PAM/JGL)

Gentlemen:

As we have discussed, we have endeavored to flesh out the basic terms of the agreement we reached on June 19 in Minneapolis regarding the above-referenced matter. Given your request that the agreement be kept for now in an informal format, we have drafted the agreement in the form of a letter agreement signed by attorneys for the parties.

We would appreciate it if you would please review this document and provide us with any comments at your earliest convenience. We would like to finalize and execute this document as soon as possible.

Sincerely,

Barry F. McNeil
[214] 651-5580
mcneilb@haynesboone.com

D-1145961_2.DOC

Attorneys
901 Main Street Suite 3100 Dallas, Texas 75202-3789
Telephone [214] 651.5000 Fax [214] 651.5940 http://www.haynesboone.com
AUSTIN DALLAS FORT WORTH HOUSTON RICHARDSON SAN ANTONIO WASHINGTON, D.C. MEXICO CITY

HAYNES AND BOONE, LLP

*CONFIDENTIAL SETTLEMENT*

July 2, 2003

Via Facsimile

Samuel D. Heins
Heins Mills & Olson, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

h | b

Richard A. Lockridge
Lockridge Grindal Nauen P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, Minnesota 55401

Re: *Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all others similarly situated v. Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.; Miwon Corp., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group*; MDL 00-1328 (PAM/JGL)

Gentlemen:

This letter will set forth the terms of the settlement agreement we have reached in the above-referenced matter ("the Agreement"). The following statements generally describe the intent of the parties in resolving this dispute:

- On May 1, 2003, Plaintiffs[1] filed a suit ("the lawsuit," attached hereto as Exhibit A) purporting to represent a class of all persons (excluding federal, state and local governmental entities and political subdivisions, and Defendants, their respective parents, subsidiaries and affiliates) who directly purchased MSG or Nucleotides

---

[1] In this Agreement, the term "Plaintiffs" means Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), and the present and former officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns of each of those entities.

during the period beginning at least as early as 1984 through 1999, outside the United States from any of the Defendants or their affiliates or their Co-Conspirators.[2]

- Plaintiffs and the Cheil defendants[3] (Plaintiffs and the Cheil defendants are referred to collectively in the Agreement as "the parties") agree to settle the lawsuit on the terms expressed below.

- The intention of the parties in settling the lawsuit is to release the Cheil defendants from any and all claims by any or all entities that purchased MSG or nucleotides outside the United States, whether that entity was a member of a class, a member of any group of claimants, or otherwise ("foreign purchasers").

h | b

**A. The Agreement**

On June 19, 2003, Plaintiffs and the Cheil defendants agreed that, in consideration for $1,000,000.00 (to be paid at some later time as set forth below) and certain supplemental cooperation (as set forth below), Plaintiffs agree to release the Cheil defendants on behalf of a class of foreign purchasers (as defined below), any group of foreign purchasers, or any individual foreign purchaser who directly purchased MSG and/or nucleotides outside the United States.

The parties further agree that the Agreement settles the lawsuit identified in Exhibit A or any other action filed by Plaintiffs' counsel on behalf of any person that purchased MSG and/or Nucleotides outside the United States.

The parties further agree that if any other action is filed seeking recovery on behalf of a class consisting of entities that purchased MSG and/or nucleotides outside the United States, the parties will immediately file a motion in the District of Minnesota for preliminary approval of this Agreement.

---

[2] In this Agreement, the terms "Defendants" and Co-Conspirators" encompass the parties those terms encompass in the Class Action Complaint, attached hereto as Exhibit A.

[3] In this Agreement, the term "the Cheil defendants" means Cheil Jedang Corporation, n/k/a CJ Corp., and CJ America, Inc., and the present and former officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns of each of those entities.

The parties further agree that nothing in the Agreement precludes the Cheil defendants or their counsel from fully participating in this or similar litigation and otherwise protecting the interests of the Cheil defendants.

**B. Prerequisites**

The parties to this Agreement agree that the Cheil defendants' are obligated to provide the consideration detailed in Section C below only if:

h | *b*

(1) the lawsuit survives all pretrial motion practice;

(2) a class is certified that includes all persons (excluding federal, state and local governmental entities and political subdivisions, and Defendants, their respective parents, subsidiaries and affiliates) who directly purchased MSG or Nucleotides during the period beginning at least as early as 1984 through 1999, outside the United States from any of the Defendants or their affiliates or their Co-Conspirators ("the Class"); and

(3) the parties obtain a final non-appealable order for final judgment approving the terms of this settlement agreement.

Failure of any of the prerequisites noted above provides the Cheil defendants and only the Cheil defendants the right, but not the obligation, to declare the settlement agreement null and void.

**C. The Consideration**

When the prerequisites identified in the preceding section have been met, the Cheil defendants agree to pay consideration to Plaintiffs in the form of:

(1) $1,000,000.00 and

(2) Certain supplemental cooperation (detailed below) if Plaintiffs' counsel represents a good faith effort has been made to procure any and all necessary information and cooperation from Miwon Company Ltd., Daesang America, Inc., f/k/a Miwon America, Inc., Daesang Corporation, Daesang Japan, Inc., Miwon Trading and Shipping Co., Ltd, and all of their respective past, present and future officers, directors, employees, agents, stockholders, attorneys, representatives, parents, subsidiaries, affiliates, partners and insurers, including without limitation, all other persons, partnerships, heirs, executors,

administrators, and assigns of each of the foregoing (collectively referred to as "Daesang").

If Plaintiffs' counsel represent that supplemental cooperation by the Cheil defendants is necessary despite a good faith effort to procure any and all necessary information and cooperation from Daesang, the Cheil defendants have agreed to cooperate with Plaintiffs in connection with their prosecution of the lawsuit as follows:



(1) the Cheil defendants agree to make available for interviews with Plaintiffs' counsel individuals who are, at the time such cooperation is requested, current employees of the Cheil defendants. These interviews will take place in South Korea at a time and place convenient to those individuals and Plaintiffs;

(2) the Cheil defendants agree to use their best efforts to make available for interviews individuals who are, at the time such cooperation is requested, former employees of the Cheil defendants. These interviews will occur in South Korea a time and place convenient to those individuals and Plaintiffs; and

(3) the Cheil defendants agree to produce individuals with knowledge of the alleged conspiracies involving MSG and nucleotides at any trial on the merits of the lawsuit who are, at the time of such trial, employed by the Cheil defendants.

**D. The Release**

In exchange for the consideration identified in Part C, *supra*, in addition to the effect of any final judgment entered in accordance with the Agreement or subsequent related document, upon final judicial approval of the terms of the Agreement, each and all the members of the Class release and forever discharge the Cheil defendants from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, derivative or direct, suspected or unsuspected, accrued or unaccrued, asserted or unasserted in law or equity (including, without limitation, claims which have been asserted or could have been asserted in the lawsuit or any litigation against the Cheil defendants or any one of them arising out of the matters alleged in the complaint in the lawsuit) that any member of the Class (including any of their past, present or future officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns) now has, ever had, could

have had or may have had as of the date of this Agreement (whether or not they object to the Agreement or any subsequent related document and whether or not they make a claim upon or participate in any settlement fund created as a result of this Agreement, whether directly, representatively, derivatively or in any other capacity) based on direct or indirect purchases of MSG or Nucleotides (relating in any way to supplying, manufacturing, pricing, distribution, or causing to be distributed any MSG or Nucleotides) arising under or relating to any and all international, United States federal, state, local, or foreign antitrust, unfair competition, unfair practices, trade practices, consumer protection, fraud protection, price discrimination, unitary pricing, RICO, or similar laws, including without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1, et seq.

h|b

**E. Conclusion**

Please indicate your agreement with these terms by executing in the space below.

Sincerely,

Barry F. McNeil
[214] 651-5580
mcneilb@haynesboone.com

IN WITNESS WHEREOF, the parties hereto, through their duly authorized representatives, have agreed to this Agreement on the date first written above.

PLAINTIFFS' CO-LEAD COUNSEL,
on behalf of Plaintiffs, individually and on behalf of
the Class, and on behalf of Class Counsel

h | b

By:________________________________

Richard A. Lockridge
W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN
P.L.L.P. on behalf of Plaintiffs, individually and on behalf of the Class, and on behalf of Class Counsel

100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401

By:________________________________

Samuel D. Heins
HEINS MILLS & OLSON, PLC
on behalf of Plaintiffs, individually and on behalf of the Class, and on behalf of Class Counsel

700 Northstar East
608 Second Avenue South
Minneapolis, Minnesota 55402

CHEIL JEDANG CORPORATION, n/k/a CJ Corp. and
CJ AMERICA, INC.

By:_______________________________

Barry F. McNeil
Ronald W. Breaux
David B. Reece
HAYNES AND BOONE LLP
on behalf of Cheil Jedang Corporation, n/k/a CJ Corp. and CJ America, Inc., Settling Defendant

901 Main Street, Suite 3100
Dallas, Texas 75202

h | b

```
******************************
***   MULTI TX/RX REPORT   ***
******************************

TX/RX NO              2563
PGS.                    9
TX/RX INCOMPLETE      -----
TRANSACTION OK        (1)   530#27577#2#16123384692#
                      (2)   530#27577#2#16123390981#
ERROR INFORMATION     -----
```

haynes|boone
Are you changing?
www.haynesboone.com

# HAYNES AND BOONE, LLP
## Fax Transmittal

**DATE:** July 2, 2003 Total Pages Including Cover: 9

**TO THE FOLLOWING RECIPIENTS:**

| Recipient Name | Fax Number | Company | Telephone |
|---|---|---|---|
| Samuel D. Heins | (612) 338-4692 | Heins Mills & Olson, P.L.C. | (612) 338-4605 |
| Richard A. Lockridge | (612) 339-0981 | Lockridge Grindal Nauen P.L.L.P. | (612) 339-6900 |

**Client/Matter #:** 27577.2

**FROM:** Barry F. McNeil

**I.D. #:** 8087

**Direct Phone #:** 214-651-5580

**Direct Fax #:**

**E-Mail:** Barry.McNeil@haynesboone.com

**Haynes and Boone, LLP**
901 Main Street, Suite 3100
Dallas, Texas 75202-3789

**Main Phone #:** (214) 651-5000

**Main Fax #:** (214) 651-5940

Should you have any problems with this transmittal, please call: 214-651-5430

**MESSAGE:**

haynes|boone
Are you *changing?*
*www.haynesboone.com*

# HAYNES AND BOONE, LLP
## Fax Transmittal

**DATE:** July 2, 2003 Total Pages Including Cover: 9

**TO THE FOLLOWING RECIPIENTS:**

| Recipient Name | Fax Number | Company | Telephone |
|---|---|---|---|
| Samuel D. Heins | (612) 338-4692 | Heins Mills & Olson, P.L.C. | (612) 338-4605 |
| Richard A. Lockridge | (612) 339-0981 | Lockridge Grindal Nauen P.L.L.P. | (612) 339-6900 |

**Client/Matter #:** 27577.2

**FROM:** Barry F. McNeil

**I.D. #:** 8087

**Direct Phone #:** 214-651-5580

**Direct Fax #:**

**E-Mail:** Barry.McNeil@haynesboone.com

**Haynes and Boone, LLP**
901 Main Street, Suite 3100
Dallas, Texas 75202-3789

**Main Phone #:** (214) 651-5000

**Main Fax #:** (214) 651-5940

Should you have any problems with this transmittal, please call: 214-651-5430

**MESSAGE:**

Confidentiality Note: The information contained in this facsimile message is privileged and confidential and is intended only for the use of the addressee. The term "privileged and confidential" includes, without limitation, attorney-client privileged communications, attorney work product, trade secrets, and any other proprietary information. Nothing in this facsimile is intended by the attorney or the client to constitute a *waiver of the* confidentiality of this message. If the reader of this message is not the intended recipient, or employee/agent of the intended recipient, you are hereby notified that any duplication, or distribution of this communication is unauthorized. If you have received this message in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you.

Exhibit 2
to
Declaration of
Barry F. McNeil

LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
ATTORNEYS AT LAW

SUITE 2200
100 WASHINGTON AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55401-2179
TELEPHONE (612) 339-6900
FACSIMILE (612) 339-0981

SUITE 301
660 PENNSYLVANIA AVENUE, S.E.
WASHINGTON, D.C. 20003-4335
TELEPHONE (202) 544-9840
FACSIMILE (202) 544-9850

WWW.LOCKLAW.COM

ROBERT J. SCHMIT
RICHARD A. LOCKRIDGE
CHARLES N. NAUEN*
H. THEODORE GRINDAL
HUGH V. PLUNKETT III
W. JOSEPH BRUCKNER
PATRICIA A. BLOODGOOD*
CHRISTOPHER K. SANDBERG
J. MICHAEL SCHWARTZ
HARRY E. GALLAHER
WILLIAM A. GENGLER
ERIC C. TOSTRUD
ROBERT K. SHELQUIST
HENRI G. MINETTE
GREGG M. FISHBEIN
SUSAN E. ELLINGSTAD
KAREN HANSON RIEBEL
JAMES M. GENIA
*ALSO ADMITTED IN WISCONSIN

OF COUNSEL
DANIEL A. FARBER**
ELIZABETH A. SNELSON
KATHLEEN F. YOUNG
MILDA K. HEDBLOM
**ADMITTED IN WASHINGTON, D.C. ONLY

CHRISTIAN M. SANDE
HEIDI M. DREWES-SILTON
GREGORY J. MYERS
KATHERYN A. ANDRESEN
MARTIN A. CARLSON
YVONNE M. FLAHERTY
RACHEL C. DELICH
DARLA JO BOGGS
MATTHEW R. SALZWEDEL
SUNNY H. KIM***
DAVID J. ZOLL
MARY E. BRIEDE
***ADMITTED IN MASSACHUSETTS AND NEW YORK ONLY

GOVERNMENT RELATIONS†
DENNIS M. MCGRANN††
KATHLEEN K. MICHELETTI†††
ALLYSON J. HARTLE
REBECCA K. KLETT
RACHEL R. ZAGRABELNY
MARA B. HUMPHREY
NORA C. STEWART
ANDREW M. TANTILLO
JENNIFER A. SWEENEY
† NON-ATTORNEY LOBBYISTS
†† DIRECTOR OF FEDERAL PUBLIC AFFAIRS
††† MANAGER OF STATE GOVERNMENT RELATIONS

March 1, 2004

Barry McNeil
Ronald Breaux
David Reece
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, TX 75202-3789

Re: Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all others similarly situated, v. Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.; Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group, MDL 1328, Civil No. 03-2997 (PAM) (D. Minn.)

Dear Counsel:

As we have discussed, this letter ("Letter Agreement") will constitute our agreement in principle to settle the claims by our clients and the class to be certified in the above-referenced case ("this litigation"), if any, against your client, CJ Corp. f/k/a Cheil Jedang Corporation, and CJ America, Inc., and the affiliates of each (the "Cheil defendants").

Subject to the additional paragraphs below of this Letter Agreement, the parties agree that upon the completion of the contingencies described in this Letter Agreement, the parties will execute the settlement agreement attached to this Letter Agreement ("the attached Settlement Agreement").

The parties will execute the attached Settlement Agreement within 30 days of the later of the following contingencies:

RECEIVED
MAR 0 2 2004
HAYNES & BOONE L.L.P.

• The filing of an order by the District Court or applicable appellate court, whichever is later, upholding plaintiffs' claims as stating a viable cause of action under Fed. R. Civ. P. 12, and/or an order finding that the District Court properly has subject matter jurisdiction over the claims raised in Plaintiffs' complaint under the Sherman Antitrust Act, 15 U.S.C. § 1 and the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, and that one or more of the named Plaintiffs have standing to bring such claims.

• The Court certifies a class substantially and materially in the form as defined in Paragraph No. 1 of the proposed attached Settlement Agreement. CJ Corp. agrees not to oppose or resist, directly or indirectly, Plaintiffs' motion to certify the class.

Failure of any of the contingencies noted above provides the Cheil defendants, and only the Cheil defendants, the right, but not the obligation, to declare this Letter Agreement and the attached Settlement Agreement null and void.

Nothing in this Letter Agreement and the attached Settlement Agreement precludes the Cheil defendants or their counsel from participating in or otherwise fully defending or protecting Cheil's interests in this or any similar litigation, with the exception that the Cheil defendants agree not to oppose class certification in this matter.

The parties further agree that the Cheil defendants, in their sole discretion, have the right at any time to request that the parties execute and file the attached Settlement Agreement. If such a request is made, Plaintiffs agree to immediately execute the attached Settlement Agreement and, pursuant to Paragraph 4 of the attached Settlement Agreement, file a motion seeking preliminary approval of the Settlement Agreement. Both parties agree that once the Settlment Agreement is filed, all contingencies contained in this letter are removed and the Settlement Agreement is in full force and effect, including but not limited to Paragraphs 7 and 15.

If you agree with the terms as outlined in this letter, please indicate by executing in the space below.

Sincerely,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

W. Joseph Bruckner

HEINS MILLS & OLSON, P.L.C.

Samuel D. Heins

COUNSEL FOR PLAINTIFFS

Dated: March 12, 2004

Barry F. McNeil
Ronald W. Breaux
David Reece
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, TX 75202-3789

COUNSEL FOR CJ CORP., f/k/a CHEIL JEDANG CORPORATION AND
CJ AMERICA INC.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION — Civil 00-MD-1328 (PAM)

This Document Relates to:

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all other similarly situated, — Civil 03-2997 (PAM)

Plaintiffs,

v. — SETTLEMENT AGREEMENT

Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.,: Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group,

Defendants.

SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into as of the ____ day of February, 2004, by and among the Settling Defendant and the Class (as defined herein) in the above-captioned action, ("International MSG Action");

WHEREAS, Plaintiffs have alleged violations of law including, but not limited to, the existence of conspiracies to raise, fix, and maintain the prices of, and to allocate customers among themselves for MSG and to raise, fix and maintain the prices of and to fix bids, falsify

bids, allocate customers and allocate markets of nucleotides (including IMP, GMP or I+G, a combination of IMP and GMP) in a worldwide conspiracy;

WHEREAS, the Settling Defendant would assert a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and the Settling Defendant agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of the truth of any of Plaintiffs' claims or allegations in the International MSG Action;

WHEREAS, arm's-length settlement negotiations have taken place between Plaintiffs' Co-Lead Counsel and the Settling Defendant, and this Settlement Agreement, including its exhibits, which embodies all of the terms and conditions of the Settlement between Settling Defendant and the Class, has been reached, subject to the Preliminary and Final Approval of the Court, as provided herein;

WHEREAS, Plaintiffs' Co-Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including the claims asserted in the International MSG Action, the legal and factual defenses thereto and the applicable law, that it would be in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Class and, further, that Plaintiffs' Co-Lead Counsel consider the Settlement, set forth herein, to be fair, reasonable and adequate and in the best interests of Plaintiffs and Class Members; and

WHEREAS, Settling Defendant has concluded, despite its belief that it has good defenses to the claims asserted, that it will enter into this Settlement Agreement solely to avoid the further expense, inconvenience and burden of this litigation and any other present or future

litigation arising out of the facts that gave rise to this litigation, and the distraction and diversion of its personnel and resources, and thereby to put to rest this controversy with valued business customers, and to avoid the risks inherent in uncertain complex litigation;

NOW, THEREFORE, it is agreed by and among the undersigned, on behalf of the Settling Defendant and the Class, that the International MSG Action be settled, compromised and dismissed on the merits and with prejudice as to the Settling Defendant and all other Released Parties, and, except as hereafter provided, without costs against the Class or the Settling Defendant, subject to the approval of the Court, on the following terms and conditions:

1. Class Definition. All references in this Settlement Agreement to the Class or a Class Member refer to the Class as defined in Plaintiffs' Class Action Complaint dated April 20, 2003 as "All persons (excluding federal, state and local governmental entities and political subdivisions and Defendants, their respective parents, subsidiaries and affiliates) who directly purchased MSG or Nucleotides during the period beginning at least as early as 1984 through 1999, outside the United States from any of the Defendants or their affiliates or their Co-Conspirators." Excluded from the class are persons and/or entities whose claims have been or are later released as part of any settlement agreement, order, judgment, release, or any other document entered into or issued as part of certain pending litigation related to MSG and nucleotides in Canada, currently styled as *Bona Foods Ltd., La Cie McCormick Canada Co. and Christopher McLean v. Ajinomoto U.S.A., Inc., Ajinomoto Company, Inc., Cheiljedang Corp, Cheiljedang America Inc., Miwon Company Ltd., Daesang America, Inc., f/k/a/ Miwon America, Inc., Takeda Chemical Industries Ltd., Takeda Vitamin & Food, Inc., Takeda Canada Vitamin & Food Inc., Archer Daniels Midland Co., Kyowa Hakko Kogyo Co., Ltd., and Tung Hai Fermentation Industrial Corp.* (Toronto Court File No. 37708); *Abel Lam and Klas Consulting*

*& Investment Ltd. v. Ajinomoto U.S.A. Inc., Ajinomoto Company, Inc., Cheiljedang Corp., Miwon Company Ltd., Daesang Japan Inc., Daesang America, Inc., formerly known as Miwon America, Inc., Takeda Chemical Industries Ltd., Takeda Vitamin & Food, Inc., Takeda Canada Vitamin & Food Inc., Archer Daniels Midland Co., Kyowa Hakko Kogyo Co., Ltd., and Tung Hai Fermentation Industrial Corp.* (Court File No. SO 15589 Vancouver Registry); and *Colette Brochu c./ Ajinomoto U.S.A. Inc., Ajinomoto Company Inc., Cheiljedang Corp., Miwon Company Ltd, Daesang America Inc., f/k/a/ Miwon America, Inc., Takeda Chemical Industries Ltd., Takeda Vitamin & Food USA, Inc., Takeda Canada Vitamin & Food Inc., Archer Daniels Midland Co., Kyowa Hakko Kogyo, Ltd., and Tung Hai Fermentation Industrial Corp.* (Quebec City Court File No. 200-06-000019-011).

2. Definitions. The following terms shall have the following meanings for purposes of this Settlement Agreement:

*"Antitrust Laws"* for purposes of this Settlement Agreement, means any and all international, federal, state, local, or foreign antitrust, unfair competition, unfair practices, trade practices, consumer protection, fraud protection, price discrimination, unitary pricing, RICO, or similar laws, including without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 et seq.

*"Class Counsel"* means both (i) those attorneys or law firms retained as counsel for any named Plaintiff in the International MSG Action; and (ii) those attorneys or law firms that receive attorneys' fees from the Settlement Fund.

*"Class Member"* means any person falling within the definition of the Class defined in paragraph 1 hereof that has not timely and validly excluded itself from the Class in accordance with the exclusion procedure and deadline previously established by the Court.

*"Court"* means the United States District Court for the District of Minnesota.

*"Defendant"* means any person or entity named as a defendant in the International MSG Action.

*"Escrow Account"* means the escrow account established pursuant to the Escrow Agreement.

*"Escrow Agent"* means the escrow agent under the Escrow Agreement.

*"Escrow Agreement"* means the escrow agreement substantially in the form attached as Exhibit A.

*"Escrow Funds"* means those funds in the Escrow Account.

*"Final Approval"* means the first date upon which each of the following three conditions shall have been satisfied:

a. The Settlement has been approved in all respects by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

b. Entry has been made, as provided in paragraph 6 hereof, of the final judgment of dismissal substantially in the form of Exhibit B hereto; and

c. Either (i) the time to appeal, or to seek permission to appeal, the Court's approval of the Settlement as described in (a) hereof and entry of final judgment as described in (b) hereof has expired with no appeal having been taken or permission to appeal having been sought; or (ii) such approval and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to the possibility of further appeal or review.

*"Funding Date"* means on or before ______________.

*"MSG"* means Monosodium Glutamate.

*"Net Settlement Fund"* means the amount in the Settlement Fund for distribution to authorized claimants, after reductions for payment of taxes and attorneys' fees, and disbursements for such costs and expenses as may be approved by the Court.

*"Nucleotides"* means and includes Disodium Inosinate ("DSI" or "IMP"), Disodium Guanylate ("DSG" or "GMP"), or the combination of IMP and GMP ("I & G").

*"Plaintiff"* means any person or entity named as a Plaintiff in the International MSG Action.

*"Released Claims"* shall have the meaning set forth in paragraph 14 hereof.

*"Released Parties"* means the Settling Defendant; the present and former direct and indirect parents, subsidiaries, divisions, affiliates or associates (as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934) of the Settling Defendant; the present and former stockholders, officers, directors, employees, agents and legal representatives of any of the foregoing entities (with respect to any conduct of any of those entities); and the predecessors, heirs, executors, administrators, successors and assigns of any of the foregoing persons or entities.

*"Releasing Party"* means any member of the Class (on its own behalf and on behalf of its present and former officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns).

*"Settlement"* means the settlement of the Released Claims set forth herein.

*"Settlement Fund"* means the payment made by the Settling Defendant pursuant to paragraph 7 hereof, including any interest accrued on such payment after payment by the Settling Defendant.

*"Settling Defendant"* means CJ Corp., formerly known as Cheil Jedang Corp. and CJ America, Inc. ("Cheil").

*"United States"* means the United States and its territories and possessions.

3. Best Efforts to Effectuate this Settlement. Plaintiffs' Co-Lead Counsel agree to recommend approval of this Settlement to the Court and to the Class Members. Plaintiffs' Co-Lead Counsel and counsel for the Settling Defendant agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement.

4. Motion for Preliminary Approval. As soon as is possible and in no event later than 10 days after execution of this Settlement Agreement, Plaintiffs' Co-Lead Counsel shall submit to the Court a motion for preliminary approval of the Settlement and for a stay of all proceedings in the International MSG Action against the Settling Defendant and all other Released Parties until the Court renders a decision regarding the Final Approval of the Settlement and, if it finally approves the Settlement, enters the final judgment. The motion shall include (a) the proposed form of order and final judgment substantially in the form attached as Exhibit B; (b) the proposed form of mail notice of the Settlement to Class Members substantially in the form attached as Exhibit C; (c) the proposed form of order preliminarily approving this Settlement Agreement substantially in the form attached as Exhibit D; and (d) the proposed form

of summary notice of the Settlement to Class Members substantially in the form attached as Exhibit E. The parties hereto shall request that a decision be made promptly on the papers or that a hearing on Plaintiffs' motion for preliminary approval of the Settlement be held at the earliest date available to the Court.

5. Notice to Class. In the event that the Court preliminarily approves the Settlement, Plaintiffs' Co-Lead Counsel shall, pursuant to the Court's order under Fed. R. Civ. P. 23(e), provide members of the Class with notice of the preliminary approval of the Settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed Settlement (the "Settlement Hearing"). Plaintiffs shall take all necessary and appropriate steps to ensure that such notice is provided in accordance with the order of the Court. Plaintiffs' Co-Lead Counsel shall be responsible for arranging for the dissemination of Notice in accordance with the Court's preliminary approval order, may withdraw monies from the Escrow Funds for that purpose, and shall inform counsel for the Settling Defendant of all such withdrawals. In no event shall the Settling Defendant be responsible for giving notice of the Settlement to Class Members, including but not limited to the expense and cost of such notice (except insofar as provided in paragraphs 7(a) and 18 hereof).

6. Proposed Order and Final Judgment. At the Final Approval Hearing the parties to the Settlement shall jointly submit to the Court and request entry of an order and final judgment, substantially in the form attached hereto as Exhibit B:

a. fully and finally approving the Settlement contemplated by this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement for the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

b. directing that the International MSG Action be dismissed with prejudice as to the Settling Defendant and all other Released Parties that are Defendants therein and, except as provided for herein, without costs;



D-1207590.1 DOC

c. discharging and releasing the Released Parties from all Released Claims;

d. reserving continuing and exclusive jurisdiction over the Settlement including its administration; and

e. determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the International MSG Action as to the Settling Defendant and any other Released Parties who are Defendants shall be final and appealable.

7. Consideration. Subject to the provisions hereof, and in full, complete and final settlement of the International MSG Action as provided herein, the Settling Defendant agrees to pay $1,000,000, and to cooperate with the Class and Class Counsel as described in paragraph 15 hereto. Specifically, the Settling Defendant shall have the following payment obligations:

(a) In the event that the Court preliminarily approves the Settlement pursuant to paragraph 4 hereof, on or before ____________, the Settling Defendant shall pay $1,000,000 into the Escrow Account, $100,000 of which amount shall be available immediately thereafter for reimbursement of costs, fees and expenses associated with providing notice to the Class pursuant to the Court's preliminary approval order.

8. Escrow Account. The Escrow Account shall be established and administered under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9. Qualified Settlement Fund. The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of the Settling Defendant, a "relation back election" as described in Treas. Reg. §1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Escrow Agent shall take all actions as may be necessary or appropriate to this end. The Escrow Agent shall pay taxes or

estimated taxes on any income earned on the funds in the Escrow Account and all related costs and expenses from the Escrow Account, in accordance with the Escrow Agreement, after approval by the Court. In the event federal or state income tax liability is finally assessed against and paid by the Settling Defendant as a result of any income earned on the funds in the Escrow Account, the Settling Defendant shall be entitled to reimbursement of such payment from any funds remaining in the Escrow Account, in accordance with the Escrow Agreement, after approval by the Court and whether or not Final Approval has occurred. The Settling Defendant will use its best efforts to resist any such assessment or payment.

10. <u>All Claims Satisfied by Settlement Fund</u>. Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Class pursuant to paragraph 14 hereof. Except as provided by order of the Court pursuant to this Settlement Agreement, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

11. <u>All Expenses and Attorneys' Fees Paid from Settlement Fund</u>. The Settling Defendant shall not be liable for any of the attorneys' fees, costs or expenses of the litigation of the International MSG Action or of this Settlement, including but not limited to those (a) of any of Plaintiffs' counsel, experts, consultants, agents and representatives; (b) incurred in giving notice; or (c) incurred in administering the Settlement or distributing the Settlement Fund. After Final Approval, all such attorneys' fees, costs or expenses as are approved by the Court may be paid out of the Settlement Fund.

12. <u>Distribution of Settlement Fund Conditioned Upon Final Approval</u>. Except as provided herein, or in the Escrow Agreement, no distribution to any Class Member or disbursement of any kind may be made from the Settlement Fund until after Final Approval.

After Final Approval, disbursements may be made from the Settlement Fund to pay, on an interim basis, any reasonable costs and expenses as provided in paragraph 11. Such interim disbursements may be made after Final Approval and prior to the time when the balance of the Settlement Fund less all taxes and attorneys' fees, and disbursements for such costs and expenses as may be approved by the Court (the "Net Settlement Fund") is distributed to the members of the Class, pursuant to the plan of a distribution approved by the Court. After Final Approval, the Net Settlement Fund may be distributed to authorized claimants as ordered by the Court in accordance with the Plan of Distribution. In no event shall the Settling Defendant have any liability or responsibility with respect to the distribution and administration of the Settlement Fund including, but not limited to, the costs and expenses of such distribution and administration.

13. Plan of Distribution. After Final Approval of this Settlement, at a time deemed appropriate by Plaintiffs' Co-Lead Counsel, Plaintiffs' Co-Lead Counsel will submit to the Court for its approval a proposed Plan of Distribution of the Net Settlement Fund, together with any other net settlement funds and net recoveries then existing and obtained from other defendants.

14. Releases. In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that this Settlement Agreement is approved by the Court after the Settlement Hearing: Upon Final Approval of this Settlement, the Class Members release and forever discharge each and all of the Released Parties from all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, derivative or direct, suspected

or unsuspected, accrued or unaccrued, asserted or unasserted in law or equity (including, without limitation, claims which have been asserted or could have been asserted in the International MSG Action or any litigation against the Released Parties or any one of them arising out of the matters alleged in the complaints in the International MSG Action) that any Class Member (including any of their past, present or future officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns) now has, ever had, could have had or may have had as of the date of this Settlement Agreement (whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) based on direct or indirect purchases of MSG or Nucleotides (relating in any way to supplying, manufacturing, pricing, distribution, or causing to be distributed any MSG or Nucleotides) arising under or relating to any and all international, United States federal, state, local antitrust, unfair competition, unfair practices, trade practices, cunsumer protection, fraud protection, price discrimination, unitary pricing, RICO, or similar laws, in the United States or other applicable jurisdictions outside of the United States, including without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1, et seq. (hereinafter the "Released Claims").

15. Cooperation. In the event that the court preliminarily approves the Settlement pursuant to paragraph 4 hereof, and upon Class Co-Lead Counsel's representation that a good faith effort has been made to procure necessary information and cooperation from other sources, Settling Defendant agrees to cooperate with Plaintiffs and Class Co-Lead Counsel in their ongoing prosecution of this litigation against other defendants. This cooperation obligation shall be limited to the following:

(a) Settling Defendant agrees to cooperate with the Class by providing Class Co-Lead Counsel with information known to Settling Defendant about the alleged conspiracy involved in this lawsuit. Such cooperation shall comprise:

(i) producing to the Class Co-Lead Counsel materially relevant documents, without any obligation to translate said documents into English or to provide any existing English translations thereof, which Settling Defendant may have which are directly related to the existence of the alleged conspiracy involving MSG and/or Nucleotides;

(ii) best efforts to authenticate relevant documents produced by Settling Defendant; and

(iii) producing witnesses as set forth in subparagraph (d) below.

In providing this cooperation, Settling Defendant shall provide truthful information. The Plaintiff Class Representatives and Class Co-Lead Counsel agree not to assert that Settling Defendant waived the attorney-client privilege, the work-product doctrine, or any other privilege or protection with respect to any information or documents disclosed to Class Co-Lead Counsel pursuant to this paragraph.

(b) All information and documents provided by Settling Defendant to Class Co-Lead Counsel pursuant to or related to this Settlement Agreement shall be subject to any Stipulation for Protective Order (including any and all amendments and modifications) entered in this Action.

(c) Settling Defendant agrees to provide the Class Co-Lead Counsel with information, documents, witnesses and cooperation on the same terms and conditions that Settling Defendant may produce or otherwise provide to any other plaintiff in this Action or any

related federal or state proceeding, whether pursuant to a cooperation agreement with such other plaintiff or otherwise. In the event that Settling Defendant agrees to cooperate with such other plaintiff, and if otherwise applicable, the Class Members and Class Co-Lead Counsel agree to coordinate with Settling Defendant and said plaintiff(s) in an effort to avoid duplication of cooperative acts by Settling Defendant to the fullest extent possible.

(d) Subject to the following conditions, and only under the circumstances set forth in this paragraph, Settling Defendant will make available to Class Co-Lead Counsel for interviews, depositions and trial testimony current employees of Settling Defendant, and will make best efforts to make available any former employees with knowledge of the allegations in this lawsuit. Said persons will be made available upon reasonable request, provided he is in good health and is currently employed by Settling Defendant at the time of his scheduled appearance. The interviews, depositions and trial testimony shall occur only if the Class Co-Lead Counsel reasonably deems it necessary. The interviews shall take place in South Korea, or such other location as agreed upon by Settling Defendant and Class Co-Lead Counsel and at a time that is agreed upon by settling Defendant and class co-lead counsel. The taking of any depositions shall be conducted under the Federal Rules of Civil Procedure.

(e) Upon execution of this Settlement Agreement, the Plaintiff Class Representatives hereby agree to withdraw in writing all current document requests, interrogatories or deposition notices served on Settling Defendant, to withdraw the complaint purportedly served on Settling Defendant, not to serve any discovery on any of the Releases in the future, not to seek to compel the pre-trial or trial testimony of any current or former employee of any Releasee except as set forth above in subparagraph (d) of this paragraph; however, if other plaintiffs in any related federal or state proceeding depose a Witness, then the Class Members may question that Witness

as if the Class Members are parties to the case, and Settling Defendant shall produce to the Class Members any documents and information that it produces to any other plaintiff in discovery in any related federal or state proceeding.

16. Reservation of Claims. Pursuant to this Settlement Agreement, each Class Member settles and releases only the Released Parties that the Class has released pursuant to paragraph 14 hereof, and the parties do not intend this Settlement Agreement, any part hereof or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any rights any Class Member has or may have against any other party or entity whatsoever other than the Released Parties released by such Class Member pursuant to paragraph 14 hereof. More particularly, the fact or terms of this Settlement with the Settling Defendant and the releases contained herein shall not be construed to release or limit in any manner whatsoever the joint or several liability or damage responsibility of any Defendant or alleged co-conspirator other than the Released Parties for the alleged conspiracies, sales or other acts alleged in the International MSG Action, including, but not limited to, any alleged damage or responsibility for any of the acts of the Released Parties. In addition, neither this Settlement Agreement nor the releases set forth in paragraph 14 above shall have any legal effect or other effect on any claims the Settling Defendant may have against any Class Member for or arising out of accounts receivable, contract obligations or claims and defenses in existing litigation or in bankruptcy proceedings; nor shall this Settlement Agreement or the releases set forth in paragraph 14 above release or have any legal or other effect on ordinary commercial or product liability claims arising from the purchase or sale of the Settling Defendant's products that do not involve any claims alleged under the Antitrust Laws.

17. Waiver of Rights. Upon Final Approval, each Class Member will be deemed

to have waived and released with respect to the Released Claims that such Class Member has released pursuant to paragraph 14 hereof any and all provisions, rights and benefits conferred either (a) by §1542 of the California Civil Code, which reads:

> "Section 1542. General release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;"

or (b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to §1542 of the California Civil Code. Each Class Member may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the subject matter of the Released Claims that such Class Member has released pursuant to paragraph 14 hereof; but each Class Member, upon Final Approval, shall be deemed to have waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims that such Class Member has released pursuant to paragraph 14 hereof, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

18. Effect of Disapproval. If the Court refuses to approve this Settlement Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not grant Final Approval or enter the final judgment provided for in paragraph 6 hereof, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed in its entirety, then this Settlement Agreement shall be canceled and terminated and shall become null and void, and the Escrow Funds (including any and all income or interest earned thereon, less the costs already incurred and approved by the Court up to $100,000 in giving notice to the Class Members and any taxes and tax-related

expenses paid or incurred on income or interest earned on the Funds) shall be returned to the Settling Defendant. The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

19. Consent to Jurisdiction. The Settling Defendant and each Class Member hereby irrevocably submit to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement and its exhibits and schedules. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of paragraphs 11, 14 or 17 hereof are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action or proceeding arising out of or relating to this Settlement Agreement and its exhibits. In the event that the provisions of paragraphs 11, 14 and/or 17 hereof are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action or proceeding arising out of or relating to this Settlement Agreement and its exhibits. In the event that the provisions of paragraphs 11, 14 and/or 17 hereof are asserted by the Released Party as a defense in whole or in part to any claim or cause of action or is otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Released Party shall be entitled to a stay of that suit, action or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action or proceeding, to the fullest extent that they may effectively do so under applicable law, the Class Members and the Settling Defendant irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any

way an improper venue or an inconvenient forum. Nothing herein shall be construed as a submission to jurisdiction for any purpose other than enforcement of the Settlement Agreement.

20. Resolution of Disputes; Retention of Jurisdiction. Any disputes between or among the Settling Defendant and any Class Member concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

21. Binding Effect. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall be binding upon all Class Members.

22. Authorization to Enter Settlement Agreement. The undersigned representative of the Settling Defendant covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of such Settling Defendant. Plaintiffs' Co-Lead Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of Plaintiffs and Plaintiffs' counsel and to enter into, and to execute, this Settlement Agreement on behalf of the Class, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

23. Notices. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; (c) U.S. First Class Mail together with simultaneous facsimile transmission; or (d) Federal Express or similar overnight courier and, in the case of either (a), (b) (c) or (d) shall be addressed, if directed to Plaintiffs' Co-Lead Counsel or counsel

for the Settling Defendant, at their addresses set forth on the signature pages hereof, or such other address as Plaintiffs' Co-Lead Counsel or counsel for the Settling Defendant may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

24. No Admission. Whether or not this Settlement Agreement becomes final or is terminated pursuant to paragraph 18 hereof, the parties expressly agree that this Settlement Agreement and its contents, including its exhibits, and any and all statements, negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation by any of the Released Parties of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations against any of the Released Parties contained in the complaints in the International MSG Action or any other pleading, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way against any of the Released Parties, whether in the International MSG Action or in any other action or proceeding.

25. Intended Beneficiaries. No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Class Member, a Released Party or Class Counsel. Absent court order, no Class Member or Class Counsel may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.

26. No Conflict Intended. Any inconsistency between this Settlement Agreement and the exhibits attached hereto shall be resolved in favor of this Settlement Agreement. Any inconsistency between this Settlement Agreement and the Escrow Agreement shall be resolved in favor of the Escrow Agreement. The headings used in this Settlement Agreement are intended

for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

27. No Party Is the Drafter. None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

28. Choice of Law. All terms of this Settlement Agreement and the exhibits attached hereto shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

29. Amendment; Waiver. This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

30. Execution in Counterparts. This Settlement Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement on the date first written above.

PLAINTIFFS' CO-LEAD COUNSEL, on behalf of Plaintiffs, individually and on behalf of the Class, and on behalf of Class Counsel

By:______________________________
Samuel D. Heins
Renae D. Steiner
HEINS MILLS & OLSON, PLC
3550 IDS Center
80 South Eighth St.
Minneapolis, MN 55402
(612) 338-4605

By:______________________________
Richard A. Lockridge
W. Joseph Bruckner
Heidi M. Drewes-Silton
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S.
Suite 2200
Minneapolis, MN 55401
(612) 339-6900

CJ CORP., formerly known as Cheil Jedang Corp. and CJ America, Inc.

By:______________________________
Barry F. McNeil
Ronald W. Breaux
HAYNES AND BOONE, L.L.P.
901 Main Street, Suite 3100
Dallas, Texas 75202-3789