UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION — Civil 00-MD-1328 (PAM)

This Document Relates to:

---

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all other similarly situated, — Civil 03-2997 (PAM)

Plaintiffs,

v.

Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.,: Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group,

Defendants.

DECLARATION OF RONALD W. BREAUX

---

DECLARATION OF RONALD W. BREAUX

1. My name is Ronald W. Breaux. I am competent in all respects to make this Declaration and have personal knowledge of each of the statements and facts set forth herein or they are known to me through my duties and responsibilities as a partner with Haynes and Boone, L.L.P. providing legal representation to Defendants CJ Corp., f/k/a Cheil Jedang Corporation, and CJ America, Inc. (collectively referred to herein as "Cheil").

2. I am an attorney licensed to practice in the State of Texas, having received my license in 1989. I have been a member in good standing of the State Bar of Texas at all times. I have litigated many complex business disputes throughout Texas and the United States.

3. Since approximately September 1999, I, along with other attorneys at Haynes and Boone, L.L.P., have represented Cheil in various litigation arising from an alleged cartel in the food flavor enhancer industry. This representation has included, among other things, representing Cheil in direct purchaser class action cases that were consolidated before the Honorable Paul Magnuson in the District of Minnesota in *In re Monosodium Glutamate Antitrust Litigation,* MDL Docket No. 00-1328 ("the domestic purchaser action") and in two putative class action cases brought on behalf of foreign direct purchasers, *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.*, Civil 03-2997 (PAM), U.S. District Court, District of Minnesota (the "*Inquivosa* action" or "foreign purchaser action"), and *Newco Trading Co., a Corporation, on behalf of itself and all others similarly situated v. Ajinomoto Company, Inc., et al.*, Civil Action No. 03-CV-8317, U.S. District Court, Southern District of New York (the "New York action"), that have been consolidated into MDL Docket No. 00-1328. I have also represented Cheil in indirect purchaser cases brought in various jurisdictions.

4. In June 2003, at a mediation scheduled as part of the domestic purchaser action, Cheil reached separate settlements with the plaintiffs' counsel in both the domestic purchaser action and the foreign purchaser action.

5. The terms of the foreign purchaser action settlement agreement reached on June 19, 2003 were agreed to in face-to-face conversations between counsel for Cheil and the plaintiffs' counsel. The basic terms of the foreign purchaser settlement agreement were as follows: Upon occurrence of two contingencies, Cheil would, in exchange for a worldwide

release of claims based on direct purchases of MSG and nucleotides, pay $1 million to Plaintiffs and provide cooperation to Plaintiffs as part of Plaintiffs' attempts to pursue claims against other defendants. Stated generally, the contingencies that triggered the parties' obligations were (1) that Plaintiffs' complaint survive a Rule 12(b)(6) motion to dismiss and (2) that the Court certify a class as sought in Plaintiffs' complaint. At the June 2003 mediation session, both parties expressly informed the other that they accepted the terms of that agreement.

6. On July 2, 2003, Barry McNeil, one of my partners at Haynes and Boone and lead counsel for Cheil in the U.S. food flavor enhancer litigation, wrote the *Inquivosa* plaintiffs' counsel, Sam Heins and Richard Lockridge, a letter setting out the terms of the foreign purchaser action settlement. Because of plaintiffs' counsel's request that the documentation of the agreement be kept for the time being in an informal format, that initial documentation was provided in the form of a letter. I have spoken with various lawyers representing the foreign purchasers on multiple occasions regarding the foreign purchaser action settlement agreement, and no one has ever indicated to me that the July 2 letter misstated the agreement.

7. Because it was important for Cheil to ensure that both parties recognized that the foreign purchaser action had been settled before the domestic action settlement agreement was presented to the Court for possible preliminary approval, I contacted Plaintiffs' counsel to inquire about the status of the July 2 documentation. I left a message on that issue, and in response to my call, Sam Heins telephoned Mr. McNeil.

8. After the July 15, 2003 telephone conversation between Mr. Heins and Mr. McNeil, I and David Reece, another Haynes and Boone attorney, continued to communicate with various lawyers representing the plaintiffs related to documenting the agreement. This involved multiple conversations about the formatting of the settlement and efforts to wordsmith several

components, but not a single conversation (or even comment) disputing whether an agreement had in fact been reached.

9. When the Court scheduled a November 5, 2003 status conference in the food flavor enhancer litigation pending before it (including the *Inquivosa* action), I informed Plaintiff's co-lead counsel that I planned to inform the Court during the status conference that Cheil and Plaintiffs in the *Inquivosa* action had reached a settlement agreement.

10. At the courthouse before the hearing, Mr. Heins discussed that issue with me.

11. Mr. Heins agreed that it was appropriate to inform the Court that a settlement had been reached, but advised me that, because of a recently-filed competing foreign purchaser action in the Southern District of New York, I should not say much about the timetable under which the parties would submit the agreement to the Court for approval.

12. Mr. Heins also explained the basis for that recommendation: he was concerned that the attorney representing the plaintiffs in the competing class action might attempt to challenge the then pending request of Plaintiffs' counsel to be co-lead counsel in the *Inquivosa* action. Mr. Heins suggested that we should wait until after the Court entered an order appointing lead counsel before filing papers related to our settlement.

13. During the November 5, 2003 hearing, which involved significant discussion related to how the *Inquivosa* action should proceed, I honored Mr. Heins' request not to discuss the timing under which the settlement papers would be presented to the Court and only informed the Court that the Cheil defendants had reached a settlement agreement in principle in the *Inquivosa* action.

14. At least four lawyers representing Plaintiffs entered appearances at the hearing. None objected to that statement, nor indicated in any way that any material terms remained to be

negotiated. In fact, none sought to limit that statement in any way. A true and correct copy of the transcript of that November 5, 2003 hearing is attached to this Declaration as Exhibit 1.

15. After the hearing, I and Mr. Reece met with several of Plaintiffs' counsel, including Sam Heins and Dick Lockridge, and discussed, among other things, the putative class action on behalf of foreign direct purchasers of MSG and nucleotides that had recently been filed in the Southern District of New York.

16. I declare under penalty of perjury that the foregoing is true and correct.

Ronald W. Breaux