# Exhibit 1
# to
# Declaration of
# Ronald W. Breaux

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION

Case No.: 00-MD-1328 PAM/JGL

TRANSCRIPT

OF

STATUS CONFERENCE

---

The above-entitled matter came on for hearing before Judge Paul A. Magnuson, on November 5th, 2003, at the United States District Courthouse, 316 N. Robert Street, St. Paul, Minnesota 55101, commencing at approximately 9:40 a.m.

CALIFORNIA CSR NO.: 8674

ILLINOIS CSR NO.: 084-004202

IOWA CSR

RMR NO.: 065111

APPEARANCES

LOCKRIDGE, GRINDAL, NAUN, P.L.L.P., 100 Washington Ave., South, Suite 2200, Minneapolis, Minnesota 55401, by RICHARD A. LOCKRIDGE, W. JOSEPH BRUCKNER, and HEIDI M. DREWES-SILTON, Attorneys at Law.

HEINS, MILLS & OLSON, P.L.C., 80 South Eighth Street, Suite 3550, Minneapolis, Minnesota 55402, by SAMUEL D. HEINS, and SUE MACMENAMIN, Attorneys at Law.

DORSEY & WHITNEY, L.L.P., 50 Sixth Street South, Suite 1500, Minneapolis, Minnesota 55402-1498, by MICHAEL ANTHONY LINDSAY, Attorney at Law.

HENSON & EFRON, P.A., 220 Sixth Street South, Suite 1800, Minneapolis, Minnesota 55402-4503, by JOSEPH T. DIXON, JR.

BRIGGS AND MORGAN, 2200 W 1st National Bank Building, 332 Minnesota Street, St. Paul, Minnesota 55101, by ALAN HALL MACLIN, and W. Patrick Judge, Attorneys at Law.

HAYNES & BOONE, 3100 Nations Bank Plaza, 901 Main Street, Dallas, Texas 75202, by RONALD W. BREAUX, and DAVID B. REECE, Attorneys at Law.

THE CLERK: The United States District Court for the District of Minnesota is now in session. The Honorable Paul A. Magnuson presiding. Please be seated.

THE COURT: Good morning. Welcome, everybody.

What are we doing?

MR. HEINS: Your Honor --

THE COURT: Mr. Heins.

MR. HEINS: -- thank you very much for hearing us today. And I think we -- it's really ministerial details, for the most part.

THE COURT: I hope so, I guess.

MR. HEINS: We wanted to get the court's --

THE COURT: I know what you want to tell me and that's: "Hurry up and get me some money," but -- that will be coming.

MR. HEINS: Thank you, your Honor.

Your Honor had asked us to submit a form of organizational order with regard to the new allegations, the international allegations. We had submitted such an order -- and, obviously, there's a jurisdictional question from the defendants' standpoint -- and we had asked if the defendants' counsel objected to the order, and the response, I think I accurately represent, was that because it included a document preservation series of paragraphs at the end, which had not been in prior organizational orders, defense counsel wished



to be heard on that point. Therefore, the court did not

enter the order which your Honor had requested.

I have with me today both the original order we submitted with the document preservation language and another order which simply deletes it. Our thought is that one way or the other, just to be responsive to the court's request, that an organizational order is appropriate.

And that brings me to another aspect of the developing case, if you will. As lead counsel, we were retained by foreign entities to pursue their claims here in April. We advised all of the lawyers in the case, in late April, of that fact, and that if they wished to continue to work with us before your Honor in connection with this MDL that they were welcome to join in that representation. Many of them did and they appear in the Complaint; some do not. In the middle of October, a few of them filed a case in the Southern District of New York on behalf of Newco Trading Company, a foreign entity, which was assigned to Judge Stein of the Southern District. I have copies of the Complaint; if the court would like those for the file, I'd be happy to hand them up. As I say, the lawyers in the Newco case are counsel in this case before your Honor. They were invited in to proceed with us in this case. As I understand it, it's the defendants' intentions to file a notice of tag-along, which would presumably bring the Newco case via the MDL before your



Honor. That has not happened yet.

THE COURT: Okay. I knew there was a case out

there in the Southern District. I didn't know much about it.

MR. HEINS: With the court's permission, I'll simply hand up a copy of the Complaint that was filed out there.

THE COURT: Okay.

MR. HEINS: We also, just for the court's information -- if I may hand up the communication to the plaintiffs' lawyers with respect to joining us in the prosecution of the case here. So I believe that one agenda item, therefore, before your Honor is the question of the leadership order. As I say, we have inserted a document preservation section to it, which the defendants are going to be heard on. Our notion was that we're going back a fairly long way now with the class period. We thought that it would simply be easier for counsel to instruct foreign entities and their obligations with respect to exfoliation, and the like, to have a court order that set it all out. As Mr. Lindsay has pointed out, we didn't do it the first time through and it's the same set of defendants. It's probably not a point of profound significance, but -- in any event, I won't belabor it. As I say, we do have those two orders; whichever the court may want, we're happy to provide them.

THE COURT: Okay.



MR. HEINS: And, then, I have one more ministerial chunk. If the court wants to hear Mr. Lindsay first --

THE COURT: No. Go ahead.

MR. HEINS: Okay. On a different subject matter, we wanted to report on the claims processing here. I know that's of concern to the court. We're trying to do a very careful job. There's a significant amount of money and not that many claimants. The total purchases claimed by class members at this point is 315 million dollars and change in the two products. There were 70 claims respecting purchases of MSG. Thirty-six of those are finalized, if you will. We have examined the documentation submitted with our claims administrator. We've compared it to the documentation we obtained in discovery from the defendants with regard to purchases and we find it all to be without question or exception. We're a little more than halfway through on the MSG side. Thirty-one of the 51 claims on nucleotides has been examined and have been passed upon to like effect. There are 34 MSG claims where there remain some issue where there is a claim for more than what is reflected in the defendants' records; or, there's some question about the quality of the documentation or something that we think should reasonably be questioned. Twenty nucleotides claims remain to be finalized. We believe that we're working



through this in a pretty deliberate way. The time for submitting claims has now expired. All of the claims have been reviewed by our claims administrator. Letters asking for back-up documents, where we think there's a problem, have

been sent. The deadline we've put in that letter for additional documentation is November 14th.

There's a small group of other claimants with unique issues, such things as illegible documentation, and the like. Those claimants will receive letters shortly explaining what our perceived problems are. We're obviously trying to view with all of these things in a deliberate, careful, evenhanded way. And if there becomes a dispute, obviously, ultimately that will come to your Honor. We're trying to to get all of these things solved so that it doesn't consume the court's time or resources.

We believe that within the next six weeks, or so, we should have brought the process to a reasonable conclusion. Obviously, appeals to your Honor or elsewhere could delay that. But we think that that will occur. And, at that point, we would be prepared to do the distribution, I think appropriately, on the 31st day after whatever fee award your Honor may grant in this case. In other words, the appeals period would have run on that and, at that point, we can distribute, which I think is fairly prompt, getting the money out the door to the claimants. The bottom line remains



that even after a fee award, the net settlement fund will be approximately 85 million, perhaps more, depending on your Honor's determination of the fee. And assuming that all claims currently in hand were approved -- which is probably not going to happen, but who knows -- the recovery would be a

hundred and ninety-two percent of the plaintiffs' experts estimation of single damages. So there's a lot of claimants out there who are going to do very well in this case, and they're eager to get some money.

We noted in the file that we had not submitted a proposed fee award order. We have just sort of a standard draft of that, which I'm happy to hand up, if your Honor wants it; if not, we won't.

Thank you, your Honor.

THE COURT: Of course, that's why I haven't entered the order on the subject of fees. You know, actually, let me just report to the other counsel that, as you know, first of all, it's for the same order that I had heard from him. I was out of the town when I received the letter and, quite honestly, I haven't had time to read the letter. The bottom line is everything's fine. I want to see what he says up above that. And as soon as I get done doing that, obviously I'll enter the order. I just haven't done that. It's a two-minute mechanical thing.

MR. HEINS: Thank you very much, your Honor.



THE COURT: Okay. Mr. Lindsay.

MR. LINDSAY: Thank you, your Honor. I'm in the awkward position of appearing before the court without actually having a client who has been served. In the Inquivosa --

THE COURT: Sometimes that's good news.

MR. LINDSAY: In the Inquivosa matter, the court had expressed an interest in making sure the case got organized, I think particularly with reference to the plaintiff counsel side, because, presumably, you know, there's a small enough group of defendants that they'll each be able to retain counsel and get themselves organized.

With respect to the order that plaintiff has submitted this morning without the document preservation section, reviewing that as an officer of the court, I don't see a reason why the defendants would object to it. So that portion of the order, it seems to me, is unobjectionable. And the only issue --

THE COURT: Counsel, how about including that document preservation thing? You know, I fully realize we haven't had it before, and everybody says, "Oh, this is fine." Obviously it's better than any -- what service schedule -- I mean, the whole thing went better than I'd ever expected that it could. But isn't there a factor that's involved here, that we're dealing with various foreign



entities, and foreign entities may well have internal documentation regulations that they've set up for themselves? And, so, at the end of three years, things hit the shredder if there's no lawsuit. And, as you say, you don't have a client. So isn't there the potentiality out there that -- wouldn't it better to just enter an order that says: "Don't mess with the documents"? Because when we come along with

Inquivosa, we can just lift it over and sit down and save everybody a lot of time?

MR. LINDSAY: No, your Honor. And for a few reasons. First of all, as a practical matter, you know, what the plaintiffs now are saying they are concerned about are the documents that are much older than anything that has already been subject to discovery. You'll recall that in the domestic cases that --

THE COURT: I mean, I realize they we're talking about a longer term.

MR. LINDSAY: So, you know, my view is that the practical reality is that if documents still exist from the 1980s there isn't any serious threat that they are no longer going to exist. They either still exist, for whatever reason, or they don't. But an order requiring them is not going to bring them back into existence. But the additional legal point is that the whole reason that this case is not proceeding forward right now is that counsel, I think agreed,



that there is a substantial question as to whether this court has subject-matter jurisdiction under the Sherman Act. We obviously don't agree as to what the outcome of that issue should be.

THE COURT: Sure.

MR. LINDSAY: But there is a question as to whether this court has subject-matter jurisdiction. There's no question that this court does not yet have personal

jurisdiction over the defendants, because no one, at least as far as I'm aware, has been served with the process. So, in other words, the court is being asked to issue an order where it has doubtful personal and subject-matter jurisdiction over documents that may or may not still exist anyway. And if they do exist there probably is no practical benefit to having an order, you know, because there's no showing that there would be a reason why documents that have still existed these last ten years will suddenly go out of existence. There is no showing that there has been a problem in the document production that took place during the years that the parties were litigating already, but there could very well be a real cost in complying with an order. And it just seems that it is an imprudent exercise of the judicial power, particularly since the rest of the order is not objectionable.

THE COURT: But everything you've said,



Mr. Lindsay, you just flipped it; wouldn't that be true too? If the documents don't exist, I can enter orders telling people to save them until the cows come home. It's all moot. They don't exist. If I don't have subject-matter jurisdiction over this -- and I agree that you're going to argue that. That's going to be another day when you get a real live client, and everything. But, you know, if I don't have subject-matter jurisdiction, it's all moot. It doesn't make any difference. If I don't have personal jurisdiction,

I don't have the power. So it's all moot. Now, I'm going to decide this someplace along the line, but in the meantime -- and I agree that, you know, there are time limits when I'm going to try this -- the problem that you really get into in this document preservation business is that somebody has got to -- not somebody -- there's a whole list of folk that you either now or will or have or something, you know, represented -- have all got a big room full of stuff. And those people who've got a big room full of stuff would love to take that stuff and stick it back in their files, where it belongs. Because if there's anything in this world that they hate it's lousy lawyers that come in and interfere with the operation of their business. And every time they want to get back to some old pricing document, they can't find it because the lousy lawyers have it. You've heard that more times than I have. My point is wouldn't it be better for me to be the



impositioner of the lousy lawyer, so that you can sit there and say, "You know, Jay, you just can't put them back in the files because that Swede up there said you couldn't," than it would be to have you go back and say, "Okay. Dump it back into your regular files but, by the way, I know about this lawsuit out here. In a couple of weeks we're probably going to be asking you to come back and reestablish it all." But I don't know.

MR. LINDSAY: No, your Honor, it's not.

THE COURT: Okay.

MR. LINDSAY: And the reason is that you and we as lawyers ask our non-U.S. clients to respect the United States judicial system. We have submitted to the court that there are very real reasons why this court currently does not have personal jurisdiction and may never have subject-matter jurisdiction. And for a court in those circumstances to issue an order that, I think we all agree, probably has no significant beneficial effect but does have real costs of compliance, it seems to me is not a way of advising non-U.S. parties to respect the U.S. judicial system.

THE COURT: Okay.

MR. LINDSAY: Thank you, your Honor.

THE COURT: Okay. Thank you.

MR. BREAUX: Good morning, judge. Ron Breaux on behalf of the Cheil defendants. I came today, judge, just



to report on two matters, the first is that on behalf of the Cheil defendants with respect to the Inquivosa lawsuit, we have reached an agreement in principle with the plaintiffs; and secondly, and importantly, with respect to this Newco case that's been filed in New York, we believe it should properly be before your Honor here, and we will be filing a tag-along notice with the MDL panel very shortly.

THE COURT: Okay. Well, your first piece of news is very long. Your second piece of news is going to have a life that's quite -- but I would think the chances are pretty good it's going to end up here in tag along, but we'll

just have to wait and see. Okay. Anybody else got any anything to report?

One thing I've got, this Inquivosa case -- I don't know where the heck this came from -- I think one of you just gave it to me -- and I have not done the usual manner, I've just proceeded to totally ignore it, and that's the thing that says the defendants are given a hundred and eighty days because the Supreme Court is going to make some smart decision.

MR. HEINS: We've got a --

THE COURT: I'm sure it will be a smart decision, but I....

MR. HEINS: On September 11th, the D.C., Circuit denied petition for rehearing on Bond and Empagran,



which is a vitamins case. And the word on the street is that a petition for cert., will be filed. The parties have until December 11th to file a petition for cert.

THE COURT: Is that Donald Rolle's case?

MR. HEINS: Yes, your Honor.

THE COURT: Okay.

MR. BRUCKNER: And the defendants in that case, your Honor, the appellant, from the D.C., Circuit decision have told us and others that they will file a petition for certiorari; whether the Supreme Court takes it, of course, is up to them. But, as Mr. Heins said, they have until early December to do so.

THE COURT: Tell me, just because I've completely forgotten, why this vitamins case is going to control MSG?

MR. BRUCKNER: Well, your Honor, I think, essentially, it centers on the same issue; and that is, is there a claim in these circumstances under the Sherman Act and the Foreign Trade Improvements Act. And I think there's a good chance that's going to shed some light on this and some related cases. It may not, but we think there's a good chance that it will.

MR. HEINS: There's a split in the circuits at this point. I think there's two or three for it and two or three again it. And the Solicitor General, we are told, is



going to wade in, assuming the Supreme Court takes it, on the side again it. So it seems to hang in the balance. And there it is.

MR. BRUCKNER: And rather than us go forward and litigate and carry on for a few months and then be told by the Supreme Court to do something else, I don't know that it would make sense to do that.

MR. LINDSAY: And that's the issue that I was discussing with respect to subject-matter jurisdition, your Honor.

THE COURT: Oh. Okay. That's how much I know about this. Okay. Very good. I think with this, I'm going to do three things that don't make any sense to the rest of

you and it does me; and that is, simply, I want to deal with the clients' attorneys fee issue that's before me now. I'll get that done very shortly. That will then lead me to the issue with respect to the reorganization of Porter. I'm going to think about that a little bit. I've got to talk to my lawyer. I've got an idea in the back of my head that I might be able to split the baby in half here and satisfy both of you; but I never know until I talk to my lawyer. And, then, finally, on this stay issue, where it's sufficiently stated -- we're not doing anything anyway right now -- why don't we just kind of sit around on that thing for a month, or so, and see if the Supremes do, in fact, take cert., and



specifically how they take cert. And if they take it, it will be decided by the end of June and we could deal accordingly. The case is not going to get all that deeply involved. And, then, finally, it won't be, I wouldn't think, too long before we'd know whether or not the tag-along stuff will come or not. Okay. Good. Thanks for coming up.

MR. HEINS: Thank you, your Honor.

MR. LINDSAY: Thank you, your Honor.

(The hearing concluded at approximately 10:00 a.m., on November 5th, 2003).

STATE OF MINNESOTA)

)ss.

COUNTY OF HENNEPIN)

I, Ronald J. Moen, CSR, RMR, and a Notary Public in and for the County of Hennepin, in the State of Minnesota, do hereby certify:

That the said transcript of proceedings was taken before me as a CSR, RMR, and a Notary Public at the said time and place and was taken down in shorthand writing by me;

That said transcript proceedings was thereafter under my direction transcribed into computer-assisted transcription, and that the forgoing transcript constitutes a full, true and correct report of the proceedings which then and there took place;

That I am a disinterested third person to the said action;

That the cost of the original has been charged to the party who ordered the transcript of proceedings, and that all parties who ordered copies have been charged at the same rate

for such copies.

That I reported pages 1 through 18.

IN WITNESS THEREOF, I have hereto subscribed my hand and affixed my official seal this 12th day of November, 2003.

------------------------------

Ronald J. Moen,
CSR, RMR