UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION

Civil 00-MD-1328 (PAM)

This Document Relates to:

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; and Menssing Chemiehandel & Consultants GmbH (MCC), on behalf of all other similarly situated,

Plaintiffs,

v.

Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; C.J. America, Inc.,: Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group,

Defendants.

Civil 03-2997 (PAM)

DECLARATION OF DAVID B. REECE

## DECLARATION OF DAVID B. REECE

1. My name is David B. Reece. I am competent in all respects to make this Declaration and have personal knowledge of each of the statements and facts set forth herein or they are known to me through my duties and responsibilities as an associate with Haynes and Boone, L.L.P. providing legal representation to Defendants CJ Corp., f/k/a Cheil Jedang Corporation, and CJ America, Inc. (collectively referred to herein as "Cheil").

2. I am an attorney licensed to practice in the State of Texas, having received my license in 1997. I have been a member in good standing of the State Bar of Texas at all times. I have been involved in the litigation of many complex business disputes throughout Texas and the United States.

3. Since approximately September 1999, I, along with other attorneys at Haynes and Boone, L.L.P., have represented Cheil in various litigation arising from an alleged cartel in the food flavor enhancer industry. This representation has included, among other things, representing Cheil in direct purchaser class action cases that were consolidated before the Honorable Paul Magnuson in the District of Minnesota in *In re Monosodium Glutamate Antitrust Litigation,* MDL Docket No. 00-1328 ("the domestic purchaser action") and in two putative class action cases brought on behalf of foreign direct purchasers, *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.,* Civil 03-2997 (PAM), U.S. District Court, District of Minnesota (the "*Inquivosa* action" or "foreign purchaser action"), and *Newco Trading Co., a Corporation, on behalf of itself and all others similarly situated v. Ajinomoto Company, Inc., et al.,* Civil Action No. 03-CV-8317, U.S. District Court, Southern District of New York (the "New York action"), that have been consolidated into MDL Docket No. 00-1328. I have also represented Cheil in indirect purchaser cases brought in various jurisdictions.

4. In June 2003, at a mediation scheduled as part of the domestic purchaser action, Cheil reached separate settlements with the plaintiffs' counsel in both the domestic purchaser action and the foreign purchaser action.

5. The terms of the foreign purchaser action settlement agreement reached on June 19, 2003 were agreed to in face-to-face conversations between counsel for Cheil and the plaintiffs' counsel. The basic terms of the foreign purchaser settlement agreement were as follows: Upon

occurrence of two contingencies, Cheil would, in exchange for a worldwide release of claims based on direct purchases of MSG and nucleotides, pay $1 million to Plaintiffs and provide cooperation to Plaintiffs as part of Plaintiffs' attempts to pursue claims against other defendants. Stated generally, the contingencies that triggered the parties' obligations were (1) that Plaintiffs' complaint survive a Rule 12(b)(6) motion to dismiss and (2) that the Court certify a class as sought in Plaintiffs' complaint. At the June 2003 mediation session, both parties expressly informed the other that they accepted the terms of that agreement.

6. Shortly after July 15, 2003, I was informed by Barry McNeil, a partner at Haynes and Boone, LLP, about a conversation he had on July 15, 2003 with Sam Heins, and that Mr. Heins had confirmed that Plaintiffs were in agreement on the terms of the settlement agreement in the foreign purchaser action.

7. Following that conversation between Mr. McNeil and Mr. Heins, counsel for the parties continued the process of documenting the agreement. This involved multiple conversations among counsel for both parties about the formatting of the settlement and efforts to wordsmith several components, but not a single conversation (or even comment) disputing whether an agreement had in fact been reached.

8. At a November 5, 2003 status conference in the food flavor enhancer litigation pending in the District of Minnesota, Mr. Breaux, one of the attorneys representing Cheil, informed the Court that the Cheil defendants had reached a settlement agreement in principle in the *Inquivosa* action.

9. I was present at that hearing, and at least four lawyers representing Plaintiffs entered appearances at the hearing. Nobody at that hearing objected to Mr. Breaux's announcement, nor

indicated in any way that any material terms remained to be negotiated. In fact, none sought to limit that statement in any way.

10. After the hearing, I and Mr. Breaux met with several of Plaintiffs' counsel, including Sam Heins and Dick Lockridge, and discussed, among other things, the putative class action behalf of foreign direct purchasers of MSG and nucleotides that had been recently filed in the Southern District of New York.

11. During November and December 2003, the parties finalized the documentation of the agreement. On December 12, 2003, I forwarded revised documentation to the office of Joe Bruckner, one of Plaintiff's attorneys.

12. In January 2004, I spoke with Joe Bruckner, one of Plaintiff's Co-Lead Counsel, by telephone to inquire as to the status of the papers. Mr. Bruckner told me agreed the papers were appropriate and that he was waiting to hear back from Sam Heins' office.

13. On January 22, 2004, I spoke with Mr. Bruckner again by telephone. Mr. Bruckner confirmed that Plaintiffs' counsel agreed with the papers I had forwarded on December 12, 2003. During that conversation, we briefly discussed the appropriateness of removing what had been paragraph 31 of the settlement agreement that was to be attached to the "Letter Agreement." I informed Mr. Bruckner that I would forward finalized "clean copies" of the documents to Mr. Bruckner and wait to receive the executed copies from Plaintiffs' counsel. There was no discussion or question during this conversation concerning whether the parties agreed to the terms of the settlement agreement.

14. I sent clean copies of the documentation to Mr. Bruckner's office on February 20, 2004.

15. On February 23, 2004, Mr. Bruckner sent a copy of the letter agreement executed by both of Plaintiffs' counsel, but that copy had several formatting problems.

16. I informed Mr. Bruckner's office of those formatting errors, and Mr. Bruckner sent a corrected copy of the written agreement executed by both of Plaintiffs' counsel on March 1, 2004. That document was received by Haynes and Boone, LLP on March 2, 2004. I provided the executed copy of the settlement agreement to Mr. McNeil, and he completed the execution of the letter agreement on behalf of Cheil on March 12, 2004.

17. Attached as Exhibit 1 hereto is a true and correct copy of the Class Action Complaint, *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.,* MDL No. 00-1328 (PAM/JGL), United States District Court, District of Minnesota.

18. Attached as Exhibit 2 hereto is a true and correct copy of the Order of Direction to the Clerk of Court for Reassignment of Related Case.

19. Attached as Exhibit 3 hereto is a true and correct copy of Pretrial Order No. 2.

20. Attached as Exhibit 4 hereto is a true and correct copy of Defendant CJ America's Notice of Related Action.

21. Attached as Exhibit 5 hereto is a true and correct copy of Plaintiff Newco Trading Company's Notice of Opposition to Conditional Transfer Order (CTO-6) and Proof of Service.

22. Attached as Exhibit 6 hereto is a true and correct copy of the Motion of Plaintiff Newco Trading Company for Transfer of Cases to and Consolidation in the Southern District of New York and Proof of Service.

23. Attached as Exhibit 7 hereto is a true and correct copy of the Response of Defendants CJ America, Inc. and Daesang America, Inc. to Motion of Plaintiff Newco Trading

Company for Transfer of Cases to and Consolidation in the Southern District of New York and Proof of Service.

24. Attached as Exhibit 8 hereto is a true and correct copy of the Brief in Support of Response of Defendants CJ America, Inc. and Daesang America, Inc. to Motion of Plaintiff Newco Trading Company for Transfer of Cases to and Consolidation in the Southern District of New York.

25. Attached as Exhibit 9 hereto is a true and correct copy of the Response of the Inquivosa Plaintiffs to Motion of Plaintiff Newco Trading Company for Transfer of Cases to and Consolidation in the Southern District of New York and Affidavit of Service.

26. Attached as Exhibit 10 hereto is a true and correct copy of the Memorandum in Opposition to Motion of Plaintiff Newco Trading Company for Transfer of Cases to and Consolidation in the Southern District of New York.

27. Attached as Exhibit 11 hereto is a true and correct copy of the Response of the Inquivosa Plaintiffs to Motion of Plaintiff Newco Trading Company to Vacate Conditional Transfer Order (CTO-6).

28. Attached as Exhibit 12 hereto is a true and correct copy of the Response of Defendants CJ America, Inc. and Daesang America, Inc. to Plaintiff's Motion to Vacate Conditional Transfer Order and Proof of Service.

29. Attached as Exhibit 13 hereto is a true and correct copy of the Brief of Defendants CJ America, Inc. and Daesang America, Inc. in Response to Plaintiff's Motion to Vacate Conditional Transfer Order and Proof of Service.

30. I declare under penalty of perjury that the foregoing is true and correct.

David B. Reece