# Exhibit 4
# to
# Declaration of
# David B. Reece

RECEIVED
CLERK'S OFFICE

2003 NOV 10 A 11: 38

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN RE MONOSODIUM GLUTAMATE ANTITRUST LITIGATION**

MDL DOCKET NO. 00-1328

**DEFENDANTS CJ AMERICA'S NOTICE OF RELATED ACTION**

Pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendant CJ America, Inc., hereby notifies the Clerk of the Panel of the existence of the following related action, in which they have been named as defendants:

1. *Newco Trading Co., a Corporation, on behalf of itself and all others similarly situated v. Ajinomoto Company, Inc.; Orsan S.A.; Cheil Jedang Corporation; CJ America, Inc.; Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries Ltd.; Kyowa Hakko Kogyo; Kyowa Hakko USA, Inc.; and Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group* – Civil Action No. 03-CV-8217, pending in the United States District Court for the Southern District of New York.

2. This related action was originally filed in the United States District Court for the Southern District of New York on or about October 16, 2003.

3. This related action shares common questions of fact with actions that were previously transferred by the Panel under 28 U.S.C. § 1407 to the United States District Court for the District of Minnesota, which is the designated transferee district court for MDL Docket No. 00-1328, on March 2, 2000. Since that time, seven additional actions have been transferred to the District of Minnesota, including most recently on June 16, 2003, *Conopco, Inc. v. Daesang Japan, Inc., et al.*, Civil Action No. 02-CV-9832.

4. This action involves common questions of fact with the previously transferred actions in that it alleges claims arising under Section 1 of the Sherman Act, 15 U.S.C. § 1, for damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a), and for permanent injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, arising out of an alleged conspiracy on the part of the defendants to fix the prices and to control the distribution and/or sales of commodity flavor enhancers known as Nucleotides and MSG.

5. A true and correct copy of the Antitrust Class Action Complaint filed in this related action is attached hereto as Exhibit A.

6. Because this related action involves questions of fact which are common to the actions previously transferred by the Panel under 28 U.S.C. § 1407 to the United States District Court for the District of Minnesota, treatment of this action as a potential "tag-along" action is appropriate.

7. Defendant CJ America, Inc. respectfully requests that the Panel issues an order transferring this "tag-along" action to the United States District Court for the District of Minnesota.

Respectfully submitted,

David Reece (AW)

Barry F. McNeil
Texas State Bar No. 13829500
Ronald W. Breaux
Texas State Bar No. 02937200
David B. Reece
Texas State Bar No. 24002810
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, TX 75202-3789
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT CJ AMERICA, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November 2003, I have caused true and correct copies of the foregoing Notice of Related Action to be served by First-Class Mail upon:

J. Michael McMahon, Clerk of Court
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Linda P. Nussbaum
Susan R. Schwaiger
Cohen, Millstein, Hausfeld & Toll, P.L.L.C.
150 East 52nd St., 30th Floor
New York, NY 10022

Michael D. Hausfeld
Paul T. Gallagher
Richard A. Koffman
Cohen, Millstein, Hausfeld & Toll, P.L.L.C.
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005

Steven A. Kanner
Douglas A. Millen
Much Shelist Freed Deneberg & Ament, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615

Andrew B. Sacks
John K. Weston
Sacks, Weston, Smolinksy, Alberts & Luber
510 Walnut Street, Suite 400
Philadelphia, PA 19106

Joseph T. Dixon
Henson & Efron
Suite 1800
220 South 6th Street
Minneapolis, MN 55402-4503

Skip Durocher
Dorsey & Whitney
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402-1498

Samuel D. Heins
Heins, Mills & Olson, PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Susan Lacava
Susan Lacava, S.C.
Suite 320
23 N. Pinckney
Madison, WI 53703

Michael A. Lindsay
Dorsey & Whitney
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402-1498

Richard A. Lockridge
Lockridge Grindal Nauen, PLLP
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2179

David V. Meany
DeWitt, Ross & Stevens
Suite 600
Two East Mifflin Street
Madison, WI 53703-2865

David Park
Foley & Lardner
150 East Gilman Street
Madison, WI 53703

Richard B. Pacella
Law Offices of Richard B. Pacella
Three New York Plaza
New York, NY 10004

Lawrence Byrne
White & Case
1155 Avenue of the Americas
New York, NY 10036-2787

Michael R. Lazerwitz
Cleary Gottlieb Steen & Hamilton
2000 Pennsylvania Avenue, NW
Washington, DC 20006-1801

Douglas A. Millen
Much Shelist Freed Denenberg,
Ament & Rubenstein, PC
Suite 2100
200 North LaSalle Street
Chicago, IL 60601-1095

R. Alexander Saveri
Saveri & Saveri
Suite 1020
One Embarcadero Center
San Francisco, CA 94111-3600

John E. Schmidtlein
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
Suite 500
510 Walnut Street
Philadelphia, PA 19106-3697

Steven O. Sidener
Gold Bennett Cera & Sidener LLP
Suite 2300
595 Market Street
San Francisco, CA 94105

Bruce L. Simon
Crotchett, Pitre, Simon & McCarthy
Suite 200
840 Malcolm Road
Burlingame, CA 94010

Jared B. Stemell
Stamell & Schager, LLP
35th Floor
One Liberty Plaza
New York, NY 10006

Kyowa Hakko Kogyo Co.
Kyowa Hakko Kogyo Co., Ltd.
1-6-1 Otemachi
Chiyoda-Ku, Tokyo Japan

Miwon Company, Ltd.
96-48 Sinsul-Dong
Dongdaemun-ku Seoul 130-110,
South Korea

Tung Hai Fermentation
63 Hsin An Road
Shaln Chen, Taichung Hsien, Taiwan

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEWCO TRADING CO., a Corporation, on behalf of itself and All others similarly situated,<br>Plaintiff,<br>v.<br>AJINOMOTO COMPANY, INC.; ORSAN S.A.; CHEIL JEDANG CORPORATION; C.J. AMERICA, INC.; MIWON CO., LTD; DAESANG AMERICA, INC.; TAKEDA CHEMICAL INDUSTRIES LTD.; KYOWA HAKKO KOGYO; KYOWA HAKKO USA, INC.;AND TUNG HAI FERMENTATION INDUSTRIAL CORP., n/k/a : VEDAN ENTERPRISES GROUP,<br>Defendants. | 03 CV 8213<br>Civil Action No.<br>ANTITRUST CLASS ACTION COMPLAINT<br>JUDGE STEIN<br>JURY TRIAL DEMANDED |

FILED U.S. DISTRICT COURT 2003 OCT 16 PM 4:40 S.D. OF N.Y.

Plaintiff, by its attorneys, brings this civil action for injunctive relief and damages on behalf of itself and all others similarly situated against the above-named Defendants and demanding trial by jury, complains and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, to obtain injunctive relief, and to recover the costs of this suit, including reasonable attorneys' fees, for Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1337, and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26 and the New York long-arm statute. This Circuit specifically has recognized the ability of purchasers located outside the United States to bring claims under the Sherman Act for anticompetitive activities that cause injury to foreign

persons when those same or related activities have harmed United States commerce, as alleged herein.

3. Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391.

4. This Court has in personam jurisdiction over each of the Defendants because each was engaged in an illegal market allocation scheme and price-fixing conspiracy that had the actual and intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States. Each of the Defendants has committed at least one act in furtherance of the conspiracy within the United States, and/or has caused an anticompetitive effect in the United States by committing an act elsewhere.

5. As used in this Complaint:

a. "Class Period" is the period beginning at least as early as 1984 through at least 1999;

b. "MSG" means Monosodium Glutamate; and

c. "Nucleotides" means Disodium Inosinate ("DSI" or "IMP"), Disodium Guanylate ("DSG" or "GMP"), and I+G (a combination of Disodium Inosinate and Disodium Guanylate).

**PLAINTIFF**

6. Plaintiff Newco Trading Company is a Korean corporation with an office and place of business located at Kukdong A, 81-1, Dobong-Dong, Dobong-Ku, Seoul, Korea. Plaintiff purchased monosodium glutamate ("MSG") and/or nucleotides directly from one or more of the Defendants during the Class Period.

**DEFENDANTS**

7. Defendant Ajinomoto Company, Inc. ("Ajinomoto Co.") is a Japanese corporation with its principal place of business located at 15-1, Kyobashi 1-Chome, Chuo-ku, Tokyo 104-8315, Japan. Ajinomoto Co. is the world's largest producer of MSG. Ajinomoto Co. manufactured, sold or distributed MSG and nucleotides throughout the world, including in the United States, directly or through its subsidiaries or affiliates, during the time period relevant to this action. Ajinomoto Co., directly and through affiliates that it controls, and through actions in this country and internationally, has set prices and allocated markets worldwide for MSG and nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

8. Defendant Orsan S.A. ("Orsan") is a French corporation with its principal place of business located at 48 r Nesle, 80190 Mesnil Saint Nicaise, France. Orsan is owned in whole or in part by Defendant Ajinomoto Co. Orsan manufactured, sold or distributed MSG and nucleotides in Europe and in other parts of the world during the time period relevant to this action. Orsan has set prices and allocated markets for MSG and nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

9. Defendant Cheil Jedang Corp. ("Cheil Jedang") is a Korean corporation with its principal place of business at 500, 5ga, Namdaemoon-ro Chung-gu, Seoul, South Korea. Cheil Jedang is named herein as successor-in-interest to Cheil Foods and Chemicals, Inc. ("Cheil"), and is liable for Cheil's actions as alleged in this Complaint. Cheil Jedang and/or Cheil

manufactured, sold or distributed MSG and Nucleotides throughout the world, including in the United States, during the time period relevant to this action. Cheil Jedang, directly and through affiliates that it controls, and through actions in this country and internationally, has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

10. Defendant C.J. America, Inc. ("CJ America") is a New Jersey corporation with its principal place of business at 105 Challenger Road, 4th Floor, Ridgefield Park, New Jersey 07660-0511. CJ America, which is a wholly-owned subsidiary of Defendant Cheil Jedang, sold or distributed MSG and Nucleotides in various parts of the world, including in the United States, during the time period relevant to this action. CJ America has set prices and allocated markets worldwide for MSG and nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

11. Defendant Miwon Company Ltd. ("Miwon Co.") is a Korean corporation with its principal place of business at 96-48 Shinsul Dong, Tongdaemun-gu, Seoul, South Korea 130-110. Miwon Co. manufactured, sold or distributed MSG and nucleotides throughout the world, including in the United States, directly or through its subsidiaries or affiliates, during the time period relevant to this action. Miwon Co., directly and through affiliates that it controls, and through actions in this country and internationally, has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were

designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

12. Defendant Daesang America, Inc., f/k/a Miwon America, Inc. ("Daesang") is a New Jersey corporation with its principal place of business at One University Plaza, (#407, Hackensack, New Jersey 07601. Daesang manufactured, sold or distributed MSG and Nucleotides in various parts of the world, including in the United States during the time period relevant to this action. Daesang has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

13. Defendant Takeda Chemical Industries Ltd. ("Takeda Chemical") is a Japanese corporation with its principal place of business at 1-1 Doshomachi 4-chome, Chuo-ku, Osaka 3540-8645, Japan. Takeda Chemical manufactured, sold or distributed MSG and Nucleotides throughout the world, including in the United States, directly or through its subsidiaries or affiliates, during the time period relevant to this action. Takeda Chemical, directly and through affiliates that it controls, and through actions in this country and internationally, has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

14. Defendant Kyowa Hakko Kogyo Co., Ltd. ("Kyowa") is a Japanese company with its principal place of business at 1-6-1 Ohtemachi, Chiyoda-ku, Tokyo 100-8185, Japan. Kyowa manufactured, sold or distributed MSG and Nucleotides in various parts of the world, including

in the United States, during the time period relevant to this action. Kyowa, directly and through affiliates that it controls, and through actions in this country and internationally, has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

15. Defendant Kyowa Hakko USA, Inc., is a New York corporation with its principal place of business at 767 Third Avenue, 19th Floor, New York, NY 10017. Kyowa Hakko USA manufactured, sold or distributed MSG and Nucleotides in various parts of the world, including in the United States, during the time period relevant to this action. Kyowa Hakko USA has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

16. Defendant Tung Hai Fermentation Industrial Corp., n/k/a Vedan Enterprises Group ("Tung Hai") is a Taiwan corporation with its principal place of business at 65 Hsin An Road, Shalu, Taichung Hsien, Taiwan. Tung Hai manufactured, sold or distributed MSG and Nucleotides in various parts of the world, including in the United States, during the time period relevant to this action. Tung Hai has set prices and allocated markets worldwide for MSG and Nucleotides pursuant to illegal agreements, and those practices were designed to have, and in fact did have, a direct, substantial and reasonably foreseeable adverse impact on commerce within the United States.

## CO-CONSPIRATORS

17. Various other corporations, organizations, firms and individuals not made Defendants in this Complaint and presently unknown to Plaintiff, participated as co-conspirators in the violations alleged herein, and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and a class consisting of all persons who purchased MSG, DSI or DSG outside the United States directly from a Defendant, a corporation owned or controlled by a Defendant, or a corporation or other person acting in combination with a Defendant, at any time during the Class Period. The Class excludes Defendants, Defendants' officers and executives, Defendants' subsidiaries and affiliates, the officers and executives of Defendants' subsidiaries and affiliates, and any federal, state or local governmental purchaser.

19. Plaintiff does not presently know the exact size of the Class. Such information is in the control of Defendants. Based upon the nature of the trade and commerce involved, Plaintiff believes the total number of Class members is sufficiently numerous, and class members are sufficiently geographically dispersed, as to make joinder of all Class members impracticable.

20. The claims of the Plaintiff are typical of the claims of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no conflict with any other Class member and has retained competent counsel experienced in class action and antitrust litigation.

21. Common questions of law and fact exist, including, but not limited to:

a. whether Defendants conspired to fix, raise, stabilize or maintain the prices of MSG, DSI and DSG;

b. whether Defendants' conduct caused injury to the business or property of Plaintiff and the other members of the Class, and if so, the appropriate measure of damages;

c. the time period of the conspiracy; and

d. whether Defendants actively concealed the violation alleged herein.

These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

22. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. The class action provides an efficient method whereby enforcement of the rights of Plaintiff, Class members, and Defendants can be fairly managed. Plaintiff knows of no unusual problems of management and notice.

**TRADE AND COMMERCE**

23. The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate and foreign commerce.

24. MSG is the sodium salt of glutamate and consists of water, sodium and glutamate. Glutamate is an amino acid found in all foods containing protein, such as cheese, milk, mushrooms, meat, fish and many vegetables. DSI and DSG also are amino acids found in all foods containing protein.

25. MSG is sold as a fine white crystal substance, similar in appearance to salt or sugar. It does not have a distinct taste of its own, but is used to add flavor to food. When MSG

is added to foods, it enhances flavor similarly to the glutamate that occurs naturally in food. Like MSG, DSG adds flavor to foods and often is used in conjunction with MSG. DSI is a close chemical relative of DSG and is used in the same way as DSG. DSI and DSG are together added to MSG to extend and multiply the flavoring effect of MSG, and when so used are known as "I+G."

26. The market for MSG, DSI, and DSG is global in scope. During the Class Period, Defendants sold and shipped substantial quantities of MSG, DSI and DSG in a continuous and uninterrupted flow of interstate and foreign commerce to customers located in the United States and abroad. Worldwide sales of MSG (excluding China) total approximately 625,000 to 700,000 metric tons per year. The sales of DSI and DSG are less, but still substantial.

27. The United States and foreign markets for MSG, DSI, and DSG are integrated. Defendants and their co-conspirators conspired to maintain artificially high prices throughout the world, in part to ensure that purchasers could not purchase MSG and nucleotides abroad in order to avoid paying artificially high prices in the United States. Defendants sought to keep prices in balance worldwide in order to avoid arbitrage. Defendants' anticompetitive conduct outside the United States had a direct, substantial, and reasonably foreseeable impact upon commerce in the United States and resulted in injury to Plaintiff and others outside the United States.

28. During the Class Period, Plaintiff and other members of the Class purchased MSG, DSI, and DSG directly from Defendants and their co-conspirators, and paid prices that were fixed, raised, stabilized, or maintained at artificially high levels by Defendants' conspiratorial conduct.

29. Among other unreasonable restraints on interstate and foreign trade and commerce, Defendants' conspiracy artificially raised prices of MSG and nucleotides, and deprived Plaintiff and other members of the Class of the benefits of free and open competition.

**VIOLATION ALLEGED**

30. Beginning at least as early as 1984, the exact date being unknown to Plaintiff, and continuing thereafter through at least 1999, Defendants and their co-conspirators engaged in a contract, combination and conspiracy in unreasonable restraint of the foreign and interstate trade and commerce described above, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

31. The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action between and among Defendants and their co-conspirators, the substantial terms of which were:

a. To fix, raise, stabilize and maintain the prices of MSG, DSI and DSG;

b. To facilitate, effectuate and implement the contract, combination and conspiracy; and

c. To conceal their unlawful agreement and conduct.

32. For the purposes of formulating and effectuating the aforesaid contract, combination and conspiracy, the Defendants and their co-conspirators did those things which they conspired to do, including:

a. Defendants and co-conspirators met on a periodic basis to discuss fixing the prices of MSG, DSI and DSG; and

b. Since at least 1990, Defendants set the prices of MSG, DSI and DSG pursuant to the understandings reached at their periodic meetings.

## EFFECTS

33. The contract, combination and conspiracy alleged herein had the following effects, among others:

a. Prices charged by Defendants to the Plaintiff and other Class members for MSG, DSI and DSG were fixed, raised, stabilized, and maintained at artificially high and noncompetitive levels;

b. Purchasers of MSG, DSI and DSG were deprived of the benefits of free and open competition; and

c. Competition between and among the Defendants and their co-conspirators in the sale of MSG, DSI and DSG was unreasonably restrained in the United States and throughout the world.

34. As a result, Plaintiff and the members of the Class have been injured in their business and property, in that they paid more for MSG, DSI and DSG than they would have paid absent Defendants' unlawful contract, combination and conspiracy.

## FRAUDULENT CONCEALMENT

35. Throughout the Class Period, Defendants and their Co-Conspirators effectively, affirmatively and fraudulently concealed their unlawful combination and conspiracy from Plaintiffs.

36. Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that by its nature was inherently self-concealing.

37. Defendants' wrongful conduct as alleged in this Complaint was carried out in part through means and methods which were designed and intended to avoid detection, and which in

fact successfully precluded detection. Although Plaintiffs exercised due diligence throughout the Class Period, they could not have discovered Defendants' unlawful scheme and conspiracy at any earlier date, because of Defendants' effective, affirmative and fraudulent concealment of their activities.

38. The Defendants and their Co-Conspirators actively, intentionally and fraudulently concealed the existence of the combination and conspiracy from Plaintiffs by one or more of the following affirmative acts, including acts in furtherance of the conspiracy:

a. covert meetings in which the prices, sales, volumes of sales and markets for MSG and nucleotides were discussed and agreed;

b. allocating secretly among themselves customers and contracts for the sale of MSG and nucleotides;

c. intentionally submitting inflated bids to customers to make other bids appear legitimate;

d. intentionally bidding purportedly on a competitive basis when in fact such bidding was the result of the collusion;

e. instructing members of the conspiracy not to divulge the existence of the conspiracy to others not in the conspiracy; and

f. participating in meetings and conversations to monitor and enforce adherence to the agreed-on prices and market shares.

Another method by which Defendants fraudulently concealed their wrongful conduct from Plaintiffs and other members of the Class was by issuing or causing to be issued a series of statements to the public and to Plaintiffs and other members of the Class, which falsely attributed

price increases for MSG and nucleotides to factors other than Defendants' illegal scheme and wrongful conduct.

39. Additionally, Defendants and their Co-Conspirators effectively, affirmatively and fraudulently concealed their unlawful combination and conspiracy from Plaintiffs by providing false bids to customers in order to conceal their customer allocation scheme and other wrongful conduct.

40. Although Plaintiffs exercised all due diligence during the Class Period, Plaintiffs and the members of the Class had no knowledge of Defendants' antitrust violations until late 1999, at the earliest.

41. Although Plaintiffs exercised all due diligence during the Class Period, Plaintiffs and the members of the Class could not possibly have discovered Defendants' unlawful scheme and conspiracy before late 1999 because of the successful deceptive practices and techniques of secrecy employed by Defendants and their Co-Conspirators to avoid detection of, and to affirmatively and fraudulently conceal, their wrongful conduct. Because Defendants' affirmative and fraudulent concealment as alleged herein was effective, there were no circumstances before late 1999 which should have led Plaintiffs to suspect the existence of Defendants' illegal price-fixing scheme.

42. Plaintiffs have exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having a reasonable suspicion of the existence of Defendants' conspiracy alleged herein, and by seeking discovery as to the matters asserted herein, to the extent permitted by law. Plaintiffs did not discover their cause of action earlier than late 1999, because Defendants' fraudulent concealment of their conspiracy was effective.

43. By virtue of the fraudulent concealment of their wrongful conduct by Defendants and their Co-Conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims and rights of action that Plaintiffs and the other Class members have as a result of the unlawful combination and conspiracy alleged in this Complaint.

**COUNT I**

**ANTITRUST VIOLATION**

44. Plaintiff incorporates the allegations described above as if fully set forth herein.

45. During the Class Period, Defendants and their co-conspirators sold and shipped substantial quantities of MSG and nucleotides in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants and their co-conspirators received payment for MSG and nucleotides across state and national boundaries. The conduct of Defendants and their co-conspirators has had a direct, substantial and foreseeable adverse effect upon U.S. and foreign commerce.

46. The anticompetitive conduct of Defendants and their co-conspirators violated both the Sherman and Clayton Acts.

47. The anticompetitive conduct of Defendants and their co-conspirators has caused antitrust injury to Plaintiff and other members of the Class.

48. The anticompetitive conduct of Defendants and their co-conspirators has had a direct, substantial and reasonably foreseeable adverse effect on commerce within the United States, in that purchasers of MSG and nucleotides in the United States paid higher prices during the Class Period than they would have paid absent the conspiracy, and accordingly, have suffered injury to their business or property as a result of Defendants' unlawful conduct.

49. Plaintiff and other members of the Class have been injured in their business or property as a result of Defendants' unlawful conduct in that, during the Class Period, they paid prices for MSG and nucleotides that were fixed, raised, stabilized, or maintained at artificially high levels as a result of Defendants' conspiracy.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following:

A. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B. That the Court adjudge and decree that the Defendants and each of them engaged in an unlawful contract, combination and conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act;

C. That the Court adjudge and decree that each of the Defendants, and their subsidiaries, successors, transferees, assigns, and respective officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf, be permanent enjoined and restrained from directly or indirectly continuing, maintaining or renewing the contract, combination and conspiracy alleged herein, and from engaging in any other contract, combination and conspiracy, agreement, understanding or concert of action having a similar purpose or effect;

D. That Plaintiff and the other members of the Class recover from Defendants threefold the damages each sustained;

E. That Plaintiff and the other members of the Class recover the costs of the suit, including reasonable attorneys' fees and experts' fees; and

F. That the Court grant such other, further or different relief as it may deem just.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by a jury of all issues triable as of right by a jury.

Dated: October 16, 2003

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

Linda P. Nussbaum (LN-9336)
Susan R. Schwaiger (SS-8653)
150 East 52nd Street, 30th Floor
New York, NY 10022
Tel: (212) 838-7797
Fax: (212) 838-7745

Michael D. Hausfeld
Paul T. Gallagher
Richard A. Koffman
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Steven A. Kanner
Douglas A. Millen
MUCH SHELIST FREED DENENBERG & AMENT, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
Tel: (312) 521-2000
Fax: (312) 521-2100

Andrew B. Sacks
John K. Weston
SACKS, WESTON, SMOLINSKY, ALBERTB & LUBER
510 Walnut Street, Suite 400
Philadelphia, PA 19106
Tel: (215) 925-8200
Fax: (215) 925-0508

Steven J. Greenfogel
MEREDITH COHEN GREENFOGEL & SKIRNICK, P.C.
117 South 17th Street
22nd Floor - Architects Building
Philadelphia, PA 19103
Tel: (215) 564-5182
Fax: (215) 569-0958

Anthony J. Bolognese
BOLOGNESE & ASSOCIATES, LLC
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

*Attorneys for Plaintiff*