# Exhibit 8
# to
# Declaration of
# David B. Reece

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN RE MONOSODIUM GLUTAMATE ANTITRUST LITIGATION** — MDL DOCKET NO. 00-1328

This document relates to:

| | |
|---|---|
| *Inquivosa S.A., et al. v. Ajinomoto Company, et al., and* | C.A. No. 03-2997 (D. Minn.) |
| *Newco Trading Company v. Ajinomoto Company, Inc., et al.* | C.A. No. 03-CV-8217 (S.D.N.Y.) |

**BRIEF IN SUPPORT OF RESPONSE OF DEFENDANTS CJ AMERICA, INC. AND DAESANG AMERICA, INC. TO MOTION OF PLAINTIFF NEWCO TRADING COMPANY FOR TRANSFER OF CASES TO AND CONSOLIDATION IN THE SOUTHERN DISTRICT OF NEW YORK**

Barry F. McNeil
Texas State Bar No. 13829500
Ronald W. Breaux
Texas State Bar No. 02937200
David B. Reece
Texas State Bar No. 24002810
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, TX 75202-3789
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT CJ AMERICA, INC.**

Richard B. Pacella, Esq.
Law Offices of Richard B. Pacella
Three New York Plaza
New York, NY 10004
Telephone: (212) 509-4600
Telecopier: (212) 509-0406

Alan H. Maclin
W. Patrick Judge
BRIGGS AND MORGAN, P.A.
2200 First National Bank Building
Saint Paul, Minnesota 55101
Telephone: (651) 223-6600
Telecopier: (651) 223-6450

**ATTORNEYS FOR DEFENDANT DAESANG AMERICA, INC.**

Defendants CJ America, Inc. ("CJ America") and Daesang America, Inc. ("Daesang America") submit this brief in opposition to Plaintiff Newco Trading Company's motion for transfer of cases to and consolidation in the Southern District of New York ("Motion to Transfer").[1]

## I. INTRODUCTION

Plaintiff's central argument, that *Inquivosa* and *Newco*, "along with any and all tag-along actions, should be consolidated for pretrial purposes and transferred to a single judicial district,"[2] ignores the reality that *Newco* and *Inquivosa* are themselves "tag-along" actions to nine other actions arising from the same alleged international cartel in the food flavor enhancer industry, each of which has already been transferred to and consolidated in MDL No. 1328 in the District of Minnesota for pretrial proceedings. In fact, after Plaintiff filed its Motion to Transfer, the Panel issued its Conditional Transfer Order that, when it becomes effective, will transfer *Newco* to the District of Minnesota. Likewise, *Inquivosa*, which is virtually identical to and was filed more than five months before *Newco*, has already been consolidated into MDL No. 1328.[3] In short, Plaintiff's attempt to portray these two cases as wholly independent from every other food

---

[1] CJ America and Daesang America agree with Plaintiffs that *Newco* and *Inquivosa* share common questions of fact and thus should be consolidated. However, the proper venue or that consolidation is the District of Minnesota, not the Southern District of New York. Indeed, after receiving notice of the *Newco* "tag-along" action, the MDL Panel has already issued a Conditional Transfer Order that, once it becomes effective, will do just that, by transferring *Newco* to the District of Minnesota for pretrial activities along with *Inquivosa* and multiple other food flavor enhancer cases. On February 13, 2004, Plaintiffs filed a brief in support of their motion to vacate the conditional transfer order. For the same reasons articulated in this brief, CJ America believes that the Conditional Transfer Order was properly issued, and will further address that issue in a separate response if necessary.

[2] *See* Pls' Brief at 5.

[3] After Plaintiff filed its Motion to Transfer, the Panel clarified that pleadings related to the Motion to Transfer are pleadings in *In re Monosodium Glutamate Antitrust Litigation*, MDL No. 1328 because *Inquivosa* has already been consolidated with MDL No. 1328 by the transferee judge pursuant to the Local Rules of the District of Minnesota and because the Panel had issued its CTO in *Newco*. *See* Correspondence from Brent Landau dated January 27, 2004, confirming conversation with Cathy Maida, on behalf of the Judicial Panel on Multidistrict Litigation, attached as **Exhibit 1**.

flavor enhancer case (and in particular its argument that *Inquivosa* is not part of MDL No. 1328) has no basis in fact and should be rejected.

Plaintiff's Motion to Transfer also fails under the plain standards of Section 1407. The Panel has already concluded that the District of Minnesota is the proper forum to consider all actions arising from the alleged food flavor enhancer price-fixing conspiracy, and Plaintiff has offered no reason to change this conclusion. Nor could it. The transferee judge – the Honorable Paul A. Magnuson in the District of Minnesota – is already familiar with the factual allegations raised in these cases, has dealt with a variety of pertinent legal and procedural issues, and is currently managing multiple food flavor enhancer cases that will overlap with these cases. Thus, transfer of these cases to the Southern District of New York creates many disadvantages, yet results in few, if any, benefits. Rather than discarding this experience, in order to more effectively utilize judicial resources, to avoid burdensome and duplicative discovery and the incurring of unnecessary expenses, and to prevent inconsistent pretrial rulings, the Panel should deny Plaintiff's Motion to Transfer.

## II.
## STATEMENT OF FACTS

To date, nine civil cases involving alleged antitrust violations by manufacturers of monosodium glutamate ("MSG") and nucleotides, including *Inquivosa*, are proceeding in the District of Minnesota before the Honorable Paul Magnuson.[4] These cases are in various procedural stages, and a brief summary of these related cases, along with the *Newco* action, is set forth below.

[4] A tenth case, *Four B Corp., et al. v. Archer-Daniels Midland Co., Inc., et al.*, was dismissed by Judge Magnuson, as discussed below.

### A. Consolidated U.S. Direct Purchaser Class Action

On March 2, 2000 the Panel transferred six civil antitrust cases involving the food flavor enhancers industry to the District of Minnesota for consolidated proceedings styled *In Re Monosodium Glutamate Antitrust Litigation* (MDL Docket No. 1328) ("Consolidated U.S. Direct Purchasers Class Action"). The complaints alleged a conspiracy among Japanese, Korean and other manufacturers to fix prices and/or cartelize markets for the sale of MSG and nucleotides in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1. Plaintiffs in the Consolidated U.S. Direct Purchasers Class Action alleged a conspiracy beginning "at least as early as January 1, 1990, and continuing thereafter to at least November 1, 1999."[5] The defendants named in the cases included Japanese manufacturer Ajinomoto Co., Inc. and its subsidiary Ajinomoto USA, Inc. ("Ajinomoto Defendants"); manufacturer Archer Daniels Midland Co. ("ADM"); Korean manufacturer Cheil Jedang Corporation and its U.S. subsidiary CJ America, Inc. ("Cheil Defendants"); Miwon Company Ltd., and Daesang America, Inc., a subsidiary of Korean manufacturer Daesang Corporation ("Daesang Defendants"); Japanese manufacturer Kyowa Hakko Kogyo Co., Ltd. ("Kyowa"); Japanese manufacturer Takeda Chemical Industries, Ltd. and its subsidiary Takeda Vitamin & Food USA, Inc. ("Takeda Defendants") and Taiwanese manufacturer Tung Hai Industrial Fermentation Corp. ("Tung Hai").

For nearly four years, Judge Paul A. Magnuson has supervised all pretrial proceedings in the Consolidated U.S. Direct Purchasers Class Action, with assistance from Special Master John Borg, a former Minnesota state court judge. In June of 2001, Judge Magnuson issued an order certifying a class in the Consolidated U.S. Direct Purchasers Class Action consisting of direct

[5] *See* Consolidated and Amended Class Action Complaint, *In Re Monosodium Glutamate Antitrust Litigation* (MDL Docket No. 1328) (June 1, 2000) ¶48 (**Exhibit 2**).

purchasers of MSG and nucleotides in the U.S.[6] In December 2001, Conopco, Inc., a subsidiary of Unilever United States, Inc., along with numerous, apparently, Unilever-related entities, opted out of the class.[7]

Through their involvement with the consolidated cases, Judge Magnuson and Special Master Borg have ruled on numerous complex matters, including service of process issues, motions involving the length of the discovery period and other discovery disputes, depositions of witnesses in foreign countries, the use of audio and videotapes from previous allegedly related cases, the default of defendant Tung Hai, a *Daubert* motion concerning econometric analysis of Plaintiffs' claimed damages, and multiple summary judgment motions by the Cheil Defendants involving statute of limitations defenses, fraudulent concealment, and the duration of the alleged conspiracy, class settlements between Plaintiffs and the Ajinomoto Defendants, the Daesang Defendants, Kyowa, and the Takeda Defendants, and a mediation between the Cheil Defendants and Plaintiffs that ultimately resulted in a class settlement between Plaintiffs and the Cheil defendants.[8] Additionally, a hearing in which Plaintiffs must prove damages in support of a default judgment obtained against Tung Hai is expected to be conducted at some point by Judge

---

[6] Memorandum and Order, *In Re Monosodium Glutamate Antitrust Litigation* (MDL Docket No. 1328) (June 8, 2001) (**Exhibit 3**).

[7] *See* Correspondence of William J. Blechman, Esq. to Settlement Administrator dated December 20, 2001, regarding *In Re Monosodium Glutamate Antitrust Litigation*, MDL Docket No. 00-1328 ("Blechman Letter") (**Exhibit 4**).

[8] *See, e.g.*, Order dated May 3, 2001 (regarding service of process on Cheil Defendants); Order dated September 11, 2001 (regarding motion to compel discovery); Order dated September 12, 2001 (compelling production of audio and videotapes); Order dated October 3, 2001 (regarding audio and videotapes from other litigation); Order dated October 18, 2001 (regarding motions to amend complaint and expand discovery period); Order dated November 1, 2001 (regarding default judgment against defendant Tung Hai); Order dated November 15, 2001 (regarding depositions and Fifth Amendment issues); Order dated November 28, 2001 (regarding discovery period); Order dated March 14, 2002 (regarding videotaped depositions of non-party witnesses Michael Andreas and Terrance Wilson) and Order dated March 15, 2002 (regarding modification of scheduling order); Order dated February 26, 2003 *In Re Monosodium Glutamate Antitrust Litigation* (MDL Docket No. 1328) (**Exhibits 5-15**).

Magnuson. Finally, Judge Magnuson is continuing to address issues related to the administration of the various class settlements.

### B. The *Conopco* Litigation

In December, 2002, Conopco, Inc. filed in the Southern District of New York an action alleging a conspiracy to fix the prices of MSG and nucleotides in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1.[9] Plaintiff filed an Amended Complaint and Demand for Jury Trial ("Amended Complaint") on January 31, 2003.[10] Conopco, Inc. apparently is a wholly-owned subsidiary of Unilever United States, Inc.[11] Conopco, Inc. purported to bring the action on behalf of some 42 other entities,[12] most of which are located outside the United States and all of which are presumably related to the Unilever, Corn Products Corporation ("CPC") and Lipton corporate family. These 42 entities include all of the Unilever entities which opted out of the class, as did Conopco, Inc., certified by Judge Magnuson in the Consolidated U.S. Direct Purchases Class Action.[13] The named defendants in the *Conopco* litigation were Cheil Jedang Corporation, CJ America, Inc., Daesang America, Inc., Daesang Corporation and Daesang Japan, Inc.[14] However, the Amended Complaint alleged that the conspiracy was carried out by these defendants and "other people and entities," including the Ajinomoto Defendants, the Takeda

---

[9] *See* Complaint and Demand for Jury Trial, *Conopco, Inc. v. Daesang Japan, Inc., et al.*, Case No. 02 CV 9832 (S.D.N.Y.) (dated December 13, 2002) **(Exhibit 16)**.

[10] Amended Complaint and Demand for Jury Trial, *Conopco, Inc. v. Daesang Japan, Inc., et al.*, Case No. 02 CV 9832 (S.D.N.Y.) (dated January 29, 2003, filed January 31, 2003) **(Exhibit 17)**.

[11] *See* Conopco, Inc.'s Disclosure Statement and Unilever Website Materials **(Exhibits 18 and 19)**.

[12] Amended Complaint at ¶6 **(Exhibit 17)**.

[13] *See* Blechman Letter **(Exhibit 4)**.

[14] Amended Complaint ¶¶9-16 **(Exhibit 17)**.

Defendants, Kyowa, Tung Hai and possibly ADM, and expressly reserves the right to amend by adding additional defendants.[15]

The Amended Complaint alleges that the conspiracy to fix prices and allocate sales in the markets for MSG and nucleotides, both inside and outside the United States, resulted in overcharges "since at least about 1985, if not longer."[16] The conspiracy allegedly continued in effect "until a time uncertain, but at least into 1999."[17]

Upon notification of this tag-along action, the Panel issued a CTO conditionally transferring *Conopco* to the District of Minnesota, and Conopco , Inc. filed a motion to vacate the Conditional Transfer Order, arguing in part that transfer was improper because *Conopco* involved claims based on foreign purchasers.[18] On June 16, 2003, the Panel rejected Conopco, Inc.'s motion, and transferred *Conopco* to the District of Minnesota to be consolidated for pretrial proceedings in MDL No. 1328.[19]

The Cheil Defendants have reached a settlement in the *Conopco* action, and the case remains pending against the remaining defendants. The Daesang Defendants filed a motion to dismiss the *Conopco* action on the grounds that Conopco, Inc.'s fraudulent concealment allegations were insufficient as a matter of law, that the named plaintiff failed to allege it was a direct purchaser, that the named plaintiff was not the real party in interest and that efforts by the

---

[15] Amended Complaint at ¶20 (**Exhibit 17**).

[16] *Id.* at ¶1.

[17] *Id.* at ¶36.

[18] *See* Pl.'s Mot. to Vacate Conditional Transfer Order, *In Re Monosodium Glutamate Antitrust Litig.* (MDL Docket No. 1328) (April 15, 2003) (**Exhibit 20**).

[19] *See* Transfer Order, *In Re Monosodium Glutamate Antitrust Litig.* (MDL Docket No. 1328) (filed with J.P.M.L. Clerk's Office June 16, 2003) (**Exhibit 21**).

plaintiff to use a ratification of claims process was defective.[20] On December 24, 2003, Judge Magnuson issued an order denying the motions to dismiss, but requiring Conopco to join the so-called ratifying entities as Plaintiffs.[21] On or about February 5, 2004, Conopco, Inc. served an Amended Complaint adding additional named plaintiffs. This litigation will continue in the District of Minnesota regardless of the outcome of Plaintiff's Motion to transfer.

### C. Indirect Purchaser Litigation

#### (1) *Four B* and *Lief*

In October, 2002, an antitrust case styled *Four B Corp., et al. v. Archer Daniels Midland Co., Inc., et al. ("Four B")* was filed in Kansas state court, alleging "defendants and their co-conspirators entered into and engaged in a combination [or] conspiracy in restrain[t] of the trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1 and K.S.A. [Kansas Statutes Annotated] § 50-101, 112, 801, et seq."[22] The *Four B* Plaintiffs, who claimed to be indirect purchasers of MSG and nucleotides, allege that a conspiracy to fix prices and allocate customers for those products existed "from at least before 1994 and continuing thereafter up to and including the calendar year 1999."[23] Defendants in the case include ADM,

---

[20] *See* Notice of Mot. to Dismiss & Mem. of Law in Support, *In Re Monosodium Glutamate Antitrust Litigation*, MDL Docket No. 1328 (PAM/JGL), *Conopco, Inc. v. Daesang Japan, Inc., et al*, Case No. 02CV9832 (S.D.N.Y.) (June 9, 2003) (**Exhibit 22**).

[21] *See* Mem. and Order dated Dec. 23, 2003, *In Re Monosodium Glutamate Antitrust Litig.* (MDL Docket No. 1328) (**Exhibit 23**).

[22] *See* Petition, *Four B Corp. et al. v. Archer Daniels Midland Co., Inc., et al.*, Case No. 02C4271 (District Court, Wyandotte County, Kansas) (**Exhibit 24**) at ¶31.

[23] *Id.* at ¶5 and ¶¶31-34.

the Ajinomoto Defendants, Cheil,[24] Miwon Co., Ltd. (alleged to be the parent of Daesang America), the Takeda Defendants and Tung Hai.

*Four B* was removed to the United States District Court for the District of Kansas by ADM, Ajinomoto USA and Cheil.[25] In response to a Notice of Related Action filed by ADM on January 27, 2003, the Panel issued a conditional order transferring *Four B* to the District of Minnesota for pretrial proceedings to be conducted by Judge Magnuson.[26] On February 12, 2003, the stay on the Conditional Transfer Order lapsed. On November 3, 2003, Judge Magnuson issued an order dismissing the *Four B* matter with prejudice on statute of limitations grounds.[27]

In November 2002, another action alleging similar antitrust violations by manufacturers of MSG and nucleotides was filed in Wisconsin state court: *Madelon J. Lief, et al. v. Archer Daniels Midland Co., et al. ("Lief")*. Plaintiffs brought the action on behalf of a putative class of indirect purchasers located in 20 states. Plaintiffs in *Lief* allege a long-running international conspiracy to fix prices, allocate market share and commit other unlawful practices to inflate the prices of MSG, nucleotides and products constituted thereof.[28] Plaintiff also alleged the

[24] The Petition names as defendant "Cheil Foods and Chemicals, Inc." apparently a reference to Cheil Jedang Corporation. (**Exhibit 24** at ¶11).

[25] *See* Notice of Removal, *Four B Corp., et al. v. Archer Daniels Midland Co., Inc., et al.* Civil Action No. 03-2001-GTV (D. Kansas, Jan. 2, 2003) (**Exhibit 25**).

[26] *See* Conditional Transfer Order (CTO-3) *In Re Monosodium Glutamate Antitrust Litigation* (Docket No. 1328) (filed with J.P.M.L. Clerk's Office Jan. 27, 2003) (**Exhibit 26**).

[27] *See* Mem. and Order dated Nov. 3, 2003, *In re Monosodium Glutamate Antitrust Litig.*, MDL Docket No. 1328 (**Exhibit 27**).

[28] *See* Class Action Complaint, *Madelon J. Lief, et al. v. Archer Daniels Midland Co., et al.*, Court File No. 02-CV3697 (Dane County, Wisc. Circuit Court) (November 25, 2002) (**Exhibit 28**) ¶1.

"conspiracy has existed at least during the period from 1989 to at least the end of 1999."[29] The defendants named in *Lief* include ADM, the Ajinomoto Defendants, the Cheil Defendants, Miwon Co., Ltd., Daesang America, Inc., the Takeda Defendants, Tung Hai and Kyowa.

Defendants ADM and Ajinomoto USA removed *Lief* to the United States District Court for the Western District of Wisconsin.[30] In response to a Notice of Related Action filed by ADM and Ajinomoto USA on March 20, 2003,[31] the Panel issued a Conditional Transfer Order sending *Lief* to the District of Minnesota for pretrial proceedings to be supervised by Judge Magnuson.[32] The stay on the Conditional Transfer Order lapsed on May 5, 2003. Judge Magnuson has conducted two status conferences in *Lief*, most recently on January 28, 2004, and has discussed how *Lief* can be coordinated with other indirect purchaser litigation filed in state courts and with the other food flavor enhancer cases currently pending in the District of Minnesota.

**(2) State Court Indirect Purchaser Litigation**

To date, at least 13 indirect purchaser cases beyond those discussed above have been filed in state courts across the country and are at the beginning of pretrial activity.[33] These cases

---

[29] **Exhibit 28** at ¶2.

[30] *See* Notice of Removal *Madelon J. Lief, et al. v. Archer Daniels Midland Co., et al.*, Case No. 02CV3697 (filed in Dane County, Wisconsin, Mar. 12, 2003) (**Exhibit 29**).

[31] Notice of Related Action *In Re Monosodium Glutamate Antitrust Litig.*, MDL Docket No. 1328 (March 20, 2003) (**Exhibit 30**).

[32] *See* Conditional Transfer Order (CTO-5), *In Re Monosodium Glutamate Antitrust Litigation* (MDL Docket No. 1328) (filed with JPML Clerk's Office April 18, 2003) (**Exhibit 31**).

[33] *See Colleen Auer v. Archer-Daniels Midland, Co., et al.*, Case No. CV2003-017157, Superior Court of Arizona, County of Maricopa; *Berger v. Archer-Daniels Midland, et al.*, 7th Judicial Circuit, State of South Dakota, County of Pennington; *National Coney Island, Inc. and Mary Peterson v. Archer-Daniels Midland, Co., et al.*, Case No. 03-329445, Circuit Court for the County of Wayne, State of Michigan; *Dodson v. Archer-Daniels Midland Co., Inc., et al.*, Case No. 03-C-168G, Circuit Court of Hancock County, West Virginia; *O'Kane v. Archer-Daniels Midland Co., Inc., et al.*, Case No. 0315633, Seventeenth Judicial Circuit Court in Broward County, Florida; *Madelon J. Lief and GFS of Madison, Inc. v. Ajinomoto Co., Inc., et al.*, Case No. 03CV2585, Circuit Court of Dane County, Wisconsin; *Hierta v. Ajinomoto U.S.A., Inc., et al.*, Case No. 03-1532-CA, Circuit Court, Twentieth Judicial Circuit, Collier County, Florida; *Higgins v. Archer-Daniels Midland Co., Inc., et al.*, CV 2003-06168, Second Judicial District

all seek relief on behalf of indirect purchasers. Some seek certification of state-wide classes, while others seek certification of classes of persons from multiple states. All of these cases, except one, are under the control of a single firm on the Plaintiffs' side.[34] In his role as the judge in the *Lief* matter, Judge Magnuson has expressed his willingness to help, to the extent possible and appropriate, coordinate this morass of litigation in the hopes of maximizing judicial efficiency.[35]

### D. The Foreign Purchaser Class Actions

#### (1) *Inquivosa*

On May 1, 2003, a putative class action styled *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.*[36] ("Foreign Direct Purchases Class Action") was filed in the District of Minnesota on behalf of "all persons … who directly purchased MSG or nucleotides during the period beginning at least as early as 1984 through 1999, outside the United States from any of the Defendants"[37] and designated as a related case to MDL Docket No. 1328 to be referred to Judge Magnuson. The complaint alleges that defendants Ajinomoto Company, Inc., Orsan S.A. (a French manufacturer of MSG and nucleotides), the Cheil Defendants, Miwon Company, Ltd., Daesang America, Inc., Takeda Chemical Industries Ltd., Kyowa and Tung Hai participated, in

---

Court of Bernalillo County, New Mexico; *Mannings Café, et al. v. Archer-Daniels Midland, et al.*, Fourth Judicial District, State of Minnesota, County of Hennepin; *Daniel Smith v. ADM, et al.*, 03-CV-06474, Circuit Court of Johnson County, State of Kansas; *Thai Holding of Charlotte, Inc. and Chiengthong Kongkham v. Archer-Daniels Midland Co., et al.*, 03-CVS-15096, General Court of Justice, Superior Court Division, State of North Carolina, County of Mecklenburg; *Williams v. Archer-Daniels Midland Co., Inc., et al.*, Case No. 03C2544, Circuit Court of Davidson County, Tennessee; and *Wondrack v. Archer-Daniels Midland Co., Inc., et al.*, Civil Action No. 0007542-03, Superior Court of the District of Columbia.

[34] *See* Tr. of Jan. 28, 2004 Hr'g before Judge Magnuson, D. Minn., at 4:20-6:17 & 9:21-11:2 (**Exhibit 32**).

[35] *Id.* at 14:22-15:15.

[36] *See* Class Action Complaint, *Inquivosa S.A., et al. v. Ajinomoto Company, Inc., et al.*, (D. Minn., Docket No. MDL 1328 (dated April 30, 2003) (**Exhibit 33**).

[37] *Id.* at ¶36.

violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1, in a conspiracy to fix prices for MSG and nucleotides sold outside the United States.[38] Plaintiffs' counsel have asked whether the various defendants will accept service of process.[39]

On May 14, 2003, pursuant to the local procedures of the District of Minnesota, *Inquivosa* was consolidated with MDL No. 1328.[40] To date, recognizing the judicial inefficiencies that could result in moving forward in this litigation when *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338 (D.C. Cir. 2003, *rehearing and rehearing en banc denied* (September 11, 2003), *cert. granted*, 72 U.S.L.W. 3356 (U.S. Dec. 15, 1993) (No. 03-724), a case which will likely shed some light on the viability of the claims in both *Inquivosa* and *Newco,* is pending before the U.S. Supreme Court, Judge Magnuson has postponed engaging in significant pretrial activity until a decision is issued in *Empagran.*[41] In the meantime, Judge Magnuson has taken an initial pretrial order under advisement and has discussed with counsel how to effectively integrate the *Inquivosa* litigation into the existing food flavor enhancer litigation.[42] Plaintiffs have inquired into whether counsel for various defendants will accept service of process and the status of service is unknown to CJ America.

---

[38] **Exhibit 33** at ¶49.

[39] The Cheil Defendants have reached a settlement agreement in principle with plaintiffs' counsel in *Inquivosa*.

[40] *See* Order of Direction to the Clerk of Court for Reassignment of Related Case, dated May 14, 2003, *In Re Monosodium Glutamate Antitrust Litig.* (MDL Docket No. 1328) (**Exhibit 34**).

[41] *See* Tr. of Nov. 5, 2003 Hr'g before Judge Magnuson, D. Minn., at 16:11 – 17: 3 (**Exhibit 35** at 12:2 – 12:24).

[42] *See* Letter from W. Joseph Bruckner dated Oct. 6, 2003, enclosing Unopposed Motion to Stay Proceedings in *Inquivosa* (**Exhibit 36**); Tr. of Nov. 5, 2003 Hr'g before Judge Magnuson, D. Minn., at 4:17 – 5:2 and 17:21 – 18:3 (**Exhibit 35**); Tr. of Dec. 15, 2003 Hr'g before Judge Magnuson, D. Minn. at 50:24 – 51:20 (**Exhibit 37**).

**(2) *Newco***

On October 16, 2003, Plaintiff filed the *Newco* litigation in the Southern District of New York. As Plaintiff acknowledges, *Newco* is virtually identical to *Inquivosa*. To date, no pretrial activity has occurred, and the Court has adjourned, at the request of both Plaintiff and counsel for some of the Defendants, an initial status conference pending developments by the Panel and in *Empagran*.[43] To date, it appears that the domestic named defendants have been served and the status of efforts to serve the other defendants is unknown.[44] On January 21, 2004, the Panel issued a Conditional Transfer Order conditionally transferring *Newco* to the District of Minnesota.[45]

## III.
## ARGUMENT

Plaintiff argues, first, that the actions at issue here should be consolidated in one forum, and, second, that they should be transferred to the Southern District of New York. CJ America and Daesang America agree that *Newco* involves common questions of fact with the other food flavor enhancer cases and that consolidation will further the convenience of parties and witnesses and will promote the just and efficient conduct of these actions. However, transfer of these actions to New York would eliminate – not enhance – those benefits. Rather than transferring *Inquivosa* out of MDL No. 1328 to the Southern District of New York, *Newco*, like every other

---

[43] *See* Order dated Dec. 18, 2003 and correspondence from Ronald Breaux dated Jan. 22, 2004 (attached as **Exhibits 38 and 39**).

[44] Counsel for Kyowa Hakko USA agreed to accept service under FRCP 4(d) on Kyowa Hakko USA's behalf on January 22, 2004; purported service on CJ America was received by the New York Secretary of State on January 29, 2004; and Daesang America was served on or about February 3, 2004.

[45] Conditional Transfer Order (CTO-6) *In Re Monosodium Glutamate Antitrust Litigation* (MDL Docket No. 1328) (filed with J.P.M.L. Clerk's Office Jan. 21, 2004) (**Exhibit 40**).

federal food flavor enhancer case before it, should be transferred to the District of Minnesota. Thus, Plaintiff's Motion to Transfer these cases should be denied.

### A. *Inquivosa* is before Judge Magnuson because it is related to food flavor enhancer cases previously transferred by the Panel to the District of Minnesota and Judge Magnuson.

Initially, it is necessary to briefly address Plaintiff's attempt to transfer *Inquivosa*, a case already consolidated with MDL No. 1328.[46] Plaintiff relies heavily on its plea that the Panel give no weight to the fact that *Inquivosa* – a case filed more than five months before *Newco* – is pending in the District of Minnesota because it, Plaintiff argues, was not transferred by the Panel or identified by the Panel as a "tag-along" action.[47]

This argument is simply wrong, as the Panel itself has subsequently indicated. A tag-along notice was not issued in *Inquivosa* for the simple reason that J.P.M.L. Rule 7.5(a) provides that "[p]otential 'tag-along actions' filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of such actions." J.P.M.L. Rule 7.5(a) Because the *Inquivosa* "tag-along" action was originally filed in the transferee district and then consolidated by the District of Minnesota into MDL No. 1328, no tag-along notice was necessary or proper.

---

46 Although Plaintiffs have not filed a motion to remand *Inquivosa* (nor would they be required to under J.P.M.L. Rule 7.6(d)), it is worth noting that, absent unusual circumstances, "[t]he Panel is reluctant to order remand absent a suggestion of remand from the transferee district court." Accordingly, if remand is sought by motion of a party, the motion must be accompanied by an affidavit reciting, among other things, whether the movant has requested a suggestion of remand from the transferee district court, and if not, why. *See* J.P.M.L. Rule 7.6(d). Judge Magnuson has given no indication that he believes *Inquivosa* should not be part of MDL No. 1328, and, in fact, he signed the Order that consolidated it into MDL No. 1328. *See* **Exhibit 34**.

47 *See* Pls. Memorandum at 9.

Plaintiff has offered no reason to justify transferring *Inquivosa* from MDL proceedings into which it has already been consolidated and which are being managed by a District Court Judge who is intimately familiar with this litigation to a District Court Judge who has no familiarity with these cases.

**B. Plaintiff wholly ignores the Panel's Transfer of *Conopco*, another case alleging claims on behalf of Foreign Purchasers.**

In addition, Plaintiff has wholly ignored the Panel's most recent action in these cases: the transfer of the *Conopco* action, a case that primarily involves foreign purchases, and therefore involves claims similar to *Newco*.[48] The Panel, in rejecting Conopco's objection to the CTO in that case, expressly noted that "the familiarity of the transferee judge with this docket and the associated settlement of some claims furthers the expeditious resolution of the litigation taken as whole."[49] In short, as the Panel has already recognized, the fact that *Inquivosa* and *Newco* involve claims on behalf of foreign purchasers does not mean that they should not be consolidated into MDL No. 1328. This conclusion is even more true now that it was in June 2003, given that *Conopco* and *Inquivosa* (both of which are largely or wholly based on foreign purchases) have already been consolidated into MDL No. 1328. Indeed, regardless of how the Panel resolves Plaintiff's motion, the *Conopco* litigation, which is primarily based on foreign purchases, will be conducted in the District of Minnesota.

**C. As the Panel Has Repeatedly Recognized, the Convenience of the Parties and Witnesses Favors the District of Minnesota.**

The convenience of the parties and witnesses is yet another factor demonstrating that *Inquivosa* should remain in the District of Minnesota and that *Newco* should be transferred there.

---

[48] *See* Exhibit 21.

[49] *Id.*

Indeed, Plaintiff's argument that the Southern District of New York is more convenient for the parties and witnesses than the District of Minnesota fails to address the fact that the Panel has already expressly held on multiple occasions that the District of Minnesota is a convenient forum for these cases.

First, in rejecting the *Conopco* Plaintiff's almost identical argument that the Southern District of New York would be more convenient than the District of Minnesota, the Panel re-affirmed the propriety of consolidation in the District of Minnesota of all "actions involving allegations that the defendants restrained trade by allocating the market for and raising the price of monosodium glutamate and other nucleotides."[50] Plaintiff has offered absolutely no reason why that conclusion should change here; nor could it. *See, e.g., In re "Agent Orange" Products Liability Litig.*, 1999 U.S. Dist. LEXIS 4286, at *2 (J.P.M.L. Feb. 3, 1999) (rejecting party's motion to vacate conditional transfer order after Panel had previously transferred five similar actions and transferee judge had become "thoroughly familiar" with such actions).

Second, upon the initial consolidation of the federal direct purchaser litigation, the Panel stated that since this is litigation "in which no particular district emerges as the center of gravity," centralization in "the District of Minnesota will serve the convenience of the parties and witnesses." *In re Monosodium Glutamate Antitrust Litigation*, 2000 U.S. Dist. LEXIS 2451 (J.P.M.L. Mar. 2, 2000).

Both of those conclusions are particularly true here, given that the same defendants and defense witnesses whose convenience they purport to want to advance have been involved in pre-trial litigation in this case in Minnesota for over three years and will continue to be involved in discovery and other pretrial activities in the food flavor enhancer litigation in the District of

[50] *See* Exhibits 21 and 20 at ¶ 9.

Minnesota in the *Lief* and (for at least the Daesang defendants) the *Conopco* litigation, regardless of whether *Newco* and *Inquivosa* are transferred to the Southern District of New York.

Given this background, Plaintiff's arguments regarding the location of various parties, the relative case loads of the Southern District of New York and the District of Minnesota, and the flight schedules to and from Minnesota and New York are unpersuasive. First, whatever the outcome of such a balancing test might have been had *Inquivosa* and *Newco* been filed on a clean slate, that analysis is irrelevant here, where the Panel has repeatedly transferred food flavor enhancer cases to the District of Minnesota and Judge Magnuson has dealt with such litigation for the last three years.[51] Likewise, it is notable that the Plaintiffs in *Newco* are all located overseas and thus are not located in or near the Southern District of New York, a fact that is equally true for virtually all the witnesses in this litigation.[52]

Moreover, whatever benefit might be provided by the existence of direct flights from Taiwan, Seoul and Caracas to New York, it is easily offset by the fact that each of the four defendants already has local counsel in Minnesota who are familiar with the litigation, and each has had – and will continue to have in *Lief* – frequent occasion, either directly or through national counsel, to travel to Minnesota for a variety of hearings or other matters related to the food flavor enhancer litigation. The benefits of the existing relationships and experience in Minnesota easily outweigh whatever minimal inconvenience may be caused by the necessity of a single connecting flight for some of the parties should travel to Minnesota be needed.

---

[51] For example, in all of the cases cited by Plaintiff to support the argument that New York is more convenient than Minnesota, the question involved the proper venue for an initial MDL consolidation, and not (as is the case here) whether or not a case that has already been consolidated into an existing MDL proceeding should be transferred to a new District Court or whether a new tag-along action should be transferred to the existing MDL proceeding.

[52] It should be noted that it is irrelevant that several of the named domestic defendants have offices on the East Coast. Those defendants are domestic subsidiaries of foreign corporations, and experience in the past food flavor enhancer litigation suggests that most of the witnesses in this case will be located overseas.

Finally, Plaintiff's argument necessarily implies that Judge Magnuson is unable to expeditiously manage this litigation because his docket is too busy (based at least in part on statistics that are themselves skewed because they encompass this very MDL proceeding), an implication that has no basis in fact. Indeed, Plaintiff's claims are belied by Judge Magnuson's effective management of this complex, international litigation over the past three years and his recent willingness to play an administrative role in the related indirect purchaser litigation currently pending in states around the country.[53]

**D. Justice and Efficiency Favor the District of Minnesota.**

The determination of the proper transferee district is shaped by the desire to "prevent duplicative discovery, eliminate any possibility of conflicting pretrial rulings and conserve time and effort for the parties, the witnesses and the judiciary. *See In re General Motors Corp. Engine Interchange Litig.*, 441 F. Supp. 933, 935 (J.P.M.L. 1977); *In re Bristol Bay, Alaska Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). In this case, transferring *Inquivosa* and *Newco* to the Southern District of New York, far from helping to prevent those dangers, in fact, creates the probability that such dangers will occur. As the Panel itself recently put it: "the familiarity of [Judge Magnuson] with this docket and the associated settlement of some claims furthers the expeditious resolution of the litigation taken as a whole."[54]

First, the District of Minnesota is well-acquainted with the factual allegations and many of the legal issues that will necessarily arise in these cases. As noted earlier, over the past three years Judge Magnuson, working with Special Master John Borg, has addressed multiple issues,

---

[53] *See* **Exhibit 32** at 14:22 – 15:15.

[54] *See* **Exhibit 21**.

including questions related to class certification, service of process, the extent of proper discovery, the conducting of foreign discovery, use of discovery from related cases, the proper application of the statute of limitations, the allegations of fraudulent concealment, and expert witness issues. He has also presided over the settlement negotiations in the Consolidated U.S. Direct Purchaser Class Action. Transferring *Inquivosa* and *Newco* to the Southern District of New York would needlessly deprive all parties of the experience and knowledge that Judge Magnuson can bring to these cases. *See, e.g., In Re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs,* 405 F. Supp. 1302, 1304 (J.P.M.L. 1976) (denying motion to vacate conditional transfer order, noting that the transferee judge was "singularly familiar" with the parties, their counsel, the witnesses, and relevant documents and had accumulated substantial expertise regarding the subject matter of the litigation); *In Re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979) (noting the importance of district judge's familiarity with facts of case in determining proper forum).

It would also create a risk of inconsistent pretrial rulings and burden the judiciary by requiring a new District Court Judge to become familiar with the parties and factual background of these cases and to grapple with many of the issues with which Judge Magnuson is already familiar. *See In Re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971) (experience of district judge provided benefits requiring transfer); *In Re Asbestos Products Liability Litig.*, 771 F. Supp. 415, 423 (J.P.M.L. 1991) (familiarity of district court judge with longstanding litigation supported transfer to that district).

In sum, Judge Magnuson is currently managing the *Conopco*, the *Lief*, and the *Inquivosa* cases, all of which are bound together – as is *Newco* – by central allegations that the defendants engaged in a price-fixing conspiracy in the food flavor enhancer industry, allegations Judge

Magnuson has become familiar with over three years of litigation. It simply cannot be seriously disputed that issues that will arise in *Conopco* and *Lief* will impact and be relevant to *Inquivosa* and *Newco*.[55] Thus, it simply makes no sense to transfer *Inquivosa* and *Newco* to an entirely new District Court when Judge Magnuson has already dealt with these issues and will be continuing to address them in *Conopco* and *Lief*.

## IV.
## CONCLUSION

For all of the reasons set forth above, defendants CJ America, Inc. and Daesang America, Inc. respectfully request that the Panel deny Plaintiff's Motion to Transfer.

Respectfully submitted,

Barry F. McNeil
Texas State Bar No. 13829500
Ronald W. Breaux
Texas State Bar No. 02937200
David B. Reece
Texas State Bar No. 24002810
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, TX 75202-3789
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT CJ AMERICA, INC.**

55 *See, e.g.*, **Exhibit 32** at 11:17 – 12:5, where Plaintiff's counsel in *Lief* noted to the Court that Plaintiff in *Lief* intends to coordinate discovery that will overlap between *Inquivosa* and *Lief*.

W Patrick Judge / DBR w/permission

**LAW OFFICES OF RICHARD B. PACELLA**
Richard B. Pacella, Esq.
Three New York Plaza
New York, NY 10004
Tel.: (212) 509-4600
Fax: (212) 509-0406

Alan H. Maclin
W. Patrick Judge
**BRIGGS AND MORGAN, P.A.**
2200 First National Bank Building
Saint Paul, Minnesota 55101
Tel.: (651) 223-6600
Fax: (651) 223-6450

**ATTORNEYS FOR DEFENDANT DAESANG AMERICA, INC.**