# Exhibit 13
# to
# Declaration of
# David B. Reece

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MONOSODIUM GLUTAMATE ANTITRUST LITIGATION<br><br>*Newco Trading Co. v. Ajinomoto Company, Inc., et al.,*<br>Case No. 03-CV 8217 (S. D. N. Y.) | MDL Docket No. 00-1328 |

**BRIEF OF DEFENDANTS CJ AMERICA, INC. AND DAESANG AMERICA, INC. IN RESPONSE TO PLAINTIFF'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER**

Defendant CJ America, Inc. ("CJ America") and Daesang America, Inc. ("Daesang America") file this Brief in Support of their Opposition to Plaintiff Newco Trading Co.'s Motion to Vacate Conditional Transfer Order in *Newco Trading Co. v. Ajinomoto Co., Inc.*, C.A. No. 1:03-8217 (S. D. N. Y.) ("Motion to Vacate"). For the reasons set forth below, and for the reasons set out in the previously-filed response of Defendants CJ America, Inc. and Daesang America, Inc. to Motion of Plaintiff Newco Trading Company for Transfer of Cases to and Consolidation in the Southern District of New York, the Brief in support of that Response, and the Exhibits to the Brief in support of that Response which CJ America and Daesang America incorporate herein by reference, CJ America and Daesang America respectfully request that the

Panel deny Plaintiff's Motion to Vacate and enter an order transferring *Newco Trading Co. v. Ajinomoto Co., Inc.*, C.A. No. 1:03-8217 (S. D. N. Y.) to the District of Minnesota for pretrial proceedings.

## I.
## INTRODUCTION

*Newco*, like every other federal case arising from the alleged conspiracy in the food flavor enhancer industry, should be transferred for pretrial proceedings to the Honorable Paul A. Magnuson in the District of Minnesota. First, *Newco* is virtually identical to another case filed on behalf of a purported class of foreign direct purchasers, *Inquivosa, S.A., et al. v. Ajinomoto Co., Inc.*, C.A. No. 03-2977 (D. Minn.). *Inquivosa* was filed nearly five months before *Newco*, and has been consolidated by the District of Minnesota into MDL No. 1328. There is no reason to not consolidate *Newco* with *Inquivosa* into MDL No. 1328. This is particularly true given the Panel's recent decision to transfer the *Conopco* action, a case brought on behalf of both domestic and foreign direct purchasers, to MDL No. 1328.[1]

Moreover, the Panel has already concluded that the District of Minnesota is the proper forum to consider all actions arising from the alleged food flavor enhancer price-fixing conspiracy, and Plaintiff has offered no reason to change this conclusion. Nor could it. The transferee judge is already familiar with the factual allegations raised in these cases, has dealt with a variety of pertinent legal and procedural issues that will inevitably recur, and is currently managing multiple food flavor enhancer cases that will overlap with these cases. Transferring *Newco* to the District of Minnesota will more effectively utilize judicial resources, will avoid

[1] *Conopco, Inc. v. Daesang Japan, Inc., et al.*, C.A. No. 1:02-9832 (S. D. N. Y.) was originally filed in the Southern District of New York and has since been transferred by the Panel to the District of Minnesota.

burdensome and duplicative discovery and the incurring of unnecessary expenses, and will prevent inconsistent pretrial rulings.

## II. FACTUAL BACKGROUND

To date, MDL No. 1328 has encompassed several different types of lawsuits, all of which arise from allegations that various manufacturers engaged in a conspiracy to fix the prices of MSG and nucleotides around the world. Nine such civil actions are currently proceeding in the District of Minnesota before the Honorable Paul Magnuson.[2] Some involve claims asserted by a class of U.S. direct purchasers (the "consolidated U.S. direct purchaser class action"); one *(Lief)*[3] is based on claims asserted on behalf of a purported multi-state class of indirect purchasers; another (*Conopco*) is based on claims asserted by both foreign and domestic direct purchasers and primarily involves foreign purchases; and, *Inquivosa*, a case that Plaintiff admits is virtually identical to *Newco*, relates to claims asserted on behalf of a purported class of foreign direct purchasers.[4]

---

2 A tenth case, *Four B Corp., et al. v. Archer Daniels Midland Co., Inc., et al.*, was dismissed by Judge Magnuson on statute of limitations grounds.

3 *Madelon J. Lief, et al. v. Archer Daniels Midland Co., Inc., et al.*, Court File No. 02-CV-3697 (originally filed in the Circuit Court of Dane County, Wisconsin).

4 The factual background underlying this matter has been discussed at length by the parties in their submissions related to Plaintiff's motion to transfer *Inquivosa* to the Southern District of New York and consolidate it with *Newco*. The Response of Defendants CJ America, Inc. and Daesang America, Inc. to Motion of Plaintiff Newco Trading Company for Transfer of Cases to and Consolidation in the Southern District of New York's Response to Plaintiff Newco Trading Company and the Brief in support of that Response are specifically incorporated herein. Therefore, for the sake of brevity, that complete procedural history will not be recounted here.

## III.
## ARGUMENT

### A. MDL No. 1328 Has <u>Not</u> Concluded.

Plaintiff rests heavily on its argument that transfer is not proper because, it argues, MDL No. 1328 is procedurally advanced. This argument must fail, first, because the Panel has already rejected it, and second, because it rests on a flawed factual basis.

The plaintiff in *Conopco*, a case also involving claims raised by foreign purchasers, raised virtually this same argument when it attempted to vacate the Conditional Transfer Order in that case. In dismissing that argument, the Panel stated that it:

> rejects any suggestion by plaintiff that the status of the proceedings in this docket limits either our authority or the transferee judge's authority under Section 1407 in this matter. *See In re 'Agent Orange' Products Liability Litigation*, 1999 U.S. Dist. LEXIS 4286 (J.P.M.L. Feb. 3, 1999). Indeed, the familiarity of the transferee judge with this docket and the associated settlement of some claims furthers the expeditious resolution of the litigation taken as a whole. Moreover, we note that the proceedings in the transferee district remain ongoing.[5]

*See, also, In re Pennsylvania Life Co. Sec. Litig.*, 436 F. Supp. 406, 407-8 (J.P.M.L. 1977) (transferring opt-out case and rejecting argument that advanced stage of earlier-transferred actions precluded transfer). That conclusion is at least as true in this case as it was in *Conopco*.

Second, Plaintiff's argument ignores the reality that MDL No. 1328 includes more than the initially consolidated U.S. direct purchaser actions. At this time, in addition to those cases, three different food flavor enhancer actions are active in the District of Minnesota. Two of them, *Conopco* and *Lief*, were transferred there by the MDL Panel, and the third case, *Inquivosa*, was

---

[5] *See* Transfer Order, *In Re Monosodium Glutamate Antitrust Litig.* (MDL Docket No. 1328) (filed with J.P.M.L. Clerk's Office June 16, 2003) (attached as **Exhibit** 1).

filed in the transferee district and then transferred by the District of Minnesota to Judge Magnuson for consolidation into MDL No. 1328.

*Conopco* is brought on behalf of both domestic and foreign purchasers, and CJ America and Daesang America believe that case primarily, if not overwhelmingly, involves foreign purchases. The Cheil defendants have reached a settlement in *Conopco,* but the case remains pending against the remaining defendants, and the litigation is proceeding. Judge Magnuson denied the Daesang defendants' motion to dismiss on December 24, 2003, and plaintiff has filed an Amended Complaint adding additional named plaintiffs. More recently, the Daesang defendants filed another motion to dismiss, which is pending.

*Lief* is an action on behalf of a putative multi-state class of indirect purchasers of food flavor enhancers. Judge Magnuson has already conducted two status conferences regarding *Lief,* most recently on January 28, 2004, and has contemplated how it can best be coordinated with both the other indirect purchaser cases pending in various state courts and with its brethren in MDL No. 1328. Both of these cases will continue to be litigated in front of Judge Magnuson regardless of whether Plaintiff succeeds on the current motions. Moreover, this litigation is at the beginning stages of pretrial proceedings, and Judge Magnuson has given no indication that he thinks a remand would be appropriate.

Finally, just like *Newco*, *Inquivosa* is based on claims related to foreign purchases. Plaintiff repeatedly seeks to avoid the fact that *Inquivosa*, a case that is identical to *Newco* and was filed nearly five months earlier, is already pending before the transferee judge by noting that the Panel did not actually transfer *Inquivosa* to that District. *See* Pls. Mem. at 7-8. That argument has no merit. *Inquivosa* was not transferred to the transferee district by the Panel because it was filed there in the first place. There was thus no need for the Panel to act. *See*

J.P.M.L. Rule 7.5(a). Indeed, *Inquivosa*'s transfer was effected by both the original judge and Judge Magnuson. As Judge Magnuson and the District of Minnesota properly recognized, *Inquivosa* is clearly related to the other food flavor enhancer cases and has accordingly been transferred to Judge Magnuson. In short, Plaintiff's argument that *Inquivosa's* pendency in the transferee court is irrelevant to whether a subsequently filed identical case should also be transferred there is unpersuasive, particularly since the transferee judge himself has indicated that he thinks *Inquivosa* is a related case.

In sum, it is safe to say that this situation stands in stark contrast to *In re Molinaro/Catanzaro Patent Litig.*, 402 F. Supp. 1404, 1407 (J.P.M.L. 1975), a case cited by Plaintiff, where it was clear to all parties and the Panel that the transferee judge believed the remand of all remaining actions would very soon be appropriate. To the contrary, it is apparent that, far from the picture Plaintiff hopes to paint, MDL No. 1328 remains in full effect, and Plaintiff has offered no reason why *Newco* should not be consolidated into these pretrial proceedings.

**B. Judicial Efficiency and the Convenience of the Parties Demands Transfer.**

The decision to transfer is shaped in part by the desire to "prevent duplicative discovery, eliminate any possibility of conflicting pretrial rulings and conserve time and effort for the parties, the witnesses and the judiciary. *See In re General Motors Corp. Engine Interchange Litig.*, 441 F. Supp. 933, 935 (J.P.M.L. 1977); *In re Bristol Bay, Alaska Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). In this case, transferring *Newco* to the District of Minnesota accomplishes each of those goals. As the Panel itself recently put it: "the

familiarity of [Judge Magnuson] with this docket and the associated settlement of some claims furthers the expeditious resolution of the litigation taken as a whole."[6]

*Newco* arises from the same alleged facts as the food flavor enhancer actions currently consolidated within MDL No. 1328, involves many (if not most) of the same witnesses, will require production of many of the same documents, and will involve many of the same legal issues. In fact, Plaintiff's unsuccessful attempt to argue that transfer is in appropriate because *Newco* does not involve exactly the same parties only highlights the similarities between *Newco* and the cases already consolidated into MDL No. 1328. For example, Plaintiff seeks to rely on the fact that Ajinomoto U.S.A. and Takeda U.S.A., Inc. are not parties in *Newco.* However, the foreign parent corporations of these entities are defendants in *Newco* and the remainder of MDL No. 1328. Thus, the current absence of those domestic entities bears no weight on whether *Newco* should be transferred.

In addition, the District of Minnesota is well-acquainted with the factual allegations and many of the legal issues that will necessarily arise in these cases. Over the past four years, the District of Minnesota has addressed multiple issues, including questions related to class certification, service of process, the extent of proper discovery, the conducting of foreign discovery, use of discovery from related cases, the proper application of the statute of limitations, the allegations of fraudulent concealment, and expert witness issues.[7] He has also presided over the settlement negotiations in the consolidated U.S. direct purchaser class action.

---

6 *See* **Exhibit 1.**

7 *See* Brief in Support of Defs.' Resp. to Mot. of Pl. for Transfer of Cases to and Consolidation in the S. D. N. Y. at 17-19. Plaintiff's attempt to argue that this experience is irrelevant because *Newco* is brought by foreign purchasers ignores reality. It is self-evident that many of those issues will also arise in *Newco*, and even if there are differences in their application, Judge Magnuson's experience with those issues will assist him in effectively addressing similar issues in *Newco.*

Transferring *Inquivosa* and *Newco* to the Southern District of New York would needlessly deprive all parties of this wealth of experience and knowledge, creating the anomaly of having *Conopco,* primarily a foreign purchases case, remain in Minnesota while *Inquivosa* and *Newco* proceed in New York. *See, e.g., In Re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs,* 405 F. Supp. 1302, 1304 (J.P.M.L. 1976) (denying motion to vacate conditional transfer order, noting that the transferee judge was "singularly familiar" with the parties, their counsel, the witnesses, and relevant documents and had accumulated substantial expertise regarding the subject matter of the litigation); *In Re Capital Underwriters, Inc. Sec. Litig.,* 464 F. Supp. 955, 960 (J.P.M.L. 1979) (noting the importance of district judge's familiarity with facts of case in determining proper forum). It would also create a risk of inconsistent pretrial rulings and burden the judiciary by requiring a new District Judge to both become familiar with the parties and factual background of these cases and to grapple with many of the issues that Judge Magnuson has already considered. *See In Re Int'l House of Pancakes Franchise Litig.,* 331 F. Supp. 556, 557 (J.P.M.L. 1971) (experience of district judge provided benefits requiring transfer); *In Re Asbestos Products Liability Litig.,* 771 F. Supp. 415, 423 (J.P.M.L. 1991) (familiarity of district court judge with longstanding litigation supported transfer to that district).

In sum, the several cases that Judge Magnuson is currently managing in MDL No. 1328 are all, like *Newco*, bound together by central allegations that the defendants engaged in a price-fixing conspiracy in the food flavor enhancer industry. These are the same allegations that Judge Magnuson has become familiar with over the past three years of litigation. It is simply impossible to seriously dispute that issues that will arise in cases like *Conopco*, *Lief*, and

*Inquivosa* will impact and be relevant to *Newco*.[8] All of these reasons demonstrate that transfer of *Newco* to the District of Minnesota is both necessary and proper.

## IV. CONCLUSION

For the reasons described above, CJ America and Deasang America respectfully request that the MDL Panel deny Plaintiff's Motion to Vacate the Conditional Transfer Order in *Newco Trading Co. v. Ajinomoto Company, Inc.*, Case No. 03 CV 8217 (S. D. N. Y.) and enter an order transferring that action to the District of Minnesota for pretrial proceedings.

Dated: March 2, 2004

Respectfully submitted,

HAYNES AND BOONE, LLP

By ______________________
Barry F. McNeil
Texas Bar No. 13829500
Ronald W. Breaux
Texas Bar No. 02937200
David B. Reece
Texas Bar No. 24002810
901 Main Street, Suite 3100
Dallas, Texas 75202-3789
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT CJ AMERICA, INC.**

8 *See, e.g.*, Tr. of Jan. 28, 2004 Hr'g before Judge Magnuson, D. Minn., attached hereto as **Exhibit 2**, at 11:17 – 12:5, where Plaintiffs' counsel in *Lief* noted to the Court that Plaintiff in *Lief* intends to coordinate discovery that will overlap between *Inquivosa* and *Lief*.

/s/ Patrick Judge /RBP with permission

**LAW OFFICES OF RICHARD B. PACELLA**
Richard B. Pacella, Esq.
Three New York Plaza
New York, NY 10004
Tel.: (212) 509-4600
Fax: (212) 509-0406

Alan H. Maclin
W. Patrick Judge
**BRIGGS AND MORGAN, P.A.**
2200 First National Bank Building
Saint Paul, Minnesota 55101
Tel.: (651) 223-6600
Fax: (651) 223-6450

**ATTORNEYS FOR DEFENDANT DAESANG AMERICA, INC.**

D-1214316_5.DOC

# Exhibit 1

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 16 2003

FILED
CLERK'S OFFICE

*DOCKET NO. 1328*

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE MONOSODIUM GLUTAMATE ANTITRUST LITIGATION*

***Conopco, Inc. v. Daesang Japan, Inc., et al.*, S.D. New York, C.A. No. 1:02-9832**

***BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, BRUCE M. SELYA, JULIA SMITH GIBBONS, D. LOWELL JENSEN, J. FREDERICK MOTZ AND ROBERT L. MILLER, JR., JUDGES OF THE PANEL***

## *TRANSFER ORDER*

Before the Panel is a motion brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiff in this Southern District of New York action to vacate the Panel's order conditionally transferring the action to the District of Minnesota for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket. Defendants Cheil Jedang Corporation; CJ America, Inc.; Daesang Corporation; Daesang Japan, Inc.; and Daesang America, Inc., oppose the motion to vacate and favor inclusion of the action in MDL-1328.

On the basis of the papers filed and hearing session held, the Panel finds that this action involves common questions of fact with the actions in this litigation previously transferred to the District of Minnesota, and that transfer of the action to the District of Minnesota for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel further finds that transfer of the action is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the District of Minnesota was a proper Section 1407 forum for actions involving allegations that the defendants restrained trade by allocating the market for and raising the price of monosodium glutamate and other nucleotides. *See In re Monosodium Glutamate Antitrust Litigation*, 2000 U.S. Dist. LEXIS 2451 (J.P.M.L. Mar. 2, 2000).

The Panel rejects any suggestion by plaintiff that the status of proceedings in this docket limits either our authority or the transferee judge's authority under Section 1407 in this matter. *See In re "Agent Orange" Products Liability Litigation*, 1999 U.S. Dist. LEXIS 4286 (J.P.M.L. Feb. 3, 1999). Indeed, the familiarity of the transferee judge with this docket and the associated settlement of some claims furthers the expeditious resolution of the litigation taken as a whole. Moreover, we note that the proceedings in the transferee district remain ongoing.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, *Conopco, Inc. v. Daesang Japan, Inc., et al.*, S.D. New York, C.A. No. 1:02-9832, is transferred to the District of Minnesota and, with the consent of that court, assigned to the Honorable Paul A. Magnuson for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# Exhibit 2

Msg.txt

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---------------------------------------------------

Madelon J. Lief, et al, Civil No. 03-3162 (PAM)

Plaintiffs,

vs.

Archer Daniels Midland Company, Ajinomoto Co., Inc., et al

Defendants.

---------------------------------------------------

CIVIL MOTIONS HEARING

The above entitled matter came duly on for hearing before The Honorable Paul A. Magnuson, United States District Court Senior Judge, on January 28, 2004, at the Warren Burger Federal Building, 316 North Robert Street, St. Paul, Minnesota 55101.

Maria Weinbeck
Official Court Reporter
United States District Court
316 North Robert Street, Suite 646
St. Paul, MN 55101
(651) 848-1224

* * * * *

2

APPEARANCES:

FOR THE PLAINTIFFS:

DANIEL E. GUSTAFSON, Esq.
Gustafson Gluek PLLC
725 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
(612) 333-8844

FOR THE PLAINTIFFS IN MASSACHUSETTS AND FLORIDA

DOUG BROOKS, Esq.
Gilman & Pastor, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
(781) 231-7850

FOR THE DEFENDANTS AJINOMOTO:

MICHAEL LINDSAY, Esq.
Dorsey & Whitney
Suite 1500
50 South Sixth STreet
Minneapolis, MN 55402
(612) 340-2600

3

WHEREUPON, the following proceedings were duly had and entered of record, to wit:

THE COURT: Well, good morning, everybody.

I'm a little bit surprised to see

the room full of lawyers to be honest. For some reason, there were two things that would probably draw the attention to that. One is that I was getting enough calls from Minnesota snow birds that were doing everything and anything they could do to get out of town. And I thought that was fine.

And then I probably got a call or two from folks that really obviously didn't care to come to Minnesota in late January. And I didn't blame them. And the truth of the matter is I guess I really thought that we're dealing more specifically on the Lief case this morning, but all of a sudden I find everybody here, so we'll do whatever we need to do.

Really what it comes down to though, I think if we lead off from the Lief case and then figure out where we want to go from there, that will be fine.

4

Mr. Lindsay, do you want to talk for a while?

MR. LINDSAY: Thank you, Your Honor. Michael Lindsay for Ajinomoto.

Your Honor, the defendants had suggested that it would be appropriate for the Court to call this status conference. You had asked a couple of times what's going on now that the direct purchaser cases have settled.

And there remains, first of all, the Inquivosa case, the foreign purchaser case, which is not strictly speaking on the agenda for today, and you dealt with that at the last appearance.

But in the Lief case, Your Honor is seeing sort of the tip of the iceberg. You have the first case that was filed originally in state court in Wisconsin, removed then to federal court sent by the MDL panel here.

After the case was sent here, for a variety of reasons that I won't get into, a number of additional actions were filed in state courts around the country. I believe the total is 16, some of those were filed before the Lief case, but most were filed

5

after.

And it occurred to us that since this court already has some familiarity with the underlying litigation, there is a case here in this court that it would be appropriate for this court to summon counsel together to figure out where we want to go from here.

I would add that of the 16 cases, I believe two the defendants have either all or most of the defendants have already settled. And of the remaining cases, I believe all but one are being handled by one law firm with

local counsel in a number of jurisdictions, and I'm pleased to see now that our brother of the bar, Mr. Gustafson, is involved in the Lief case before Your Honor.

So what we thought it would be appropriate to do would be to invite the plaintiff's counsel to step forward to give a sense of where they want to take this litigation. It is, after all, their case. And yet, although these cases have been filed, the Lief case has been filed since I believe early last year and has been in this court

6

since the summer. Nothing has happened.

I think, you know, we've shown that we would like to move forward to a conclusion in these cases one way or the other. And yet, they're not moving. So we thought it would be appropriate to come up with a plan.

THE COURT: Counsel, I lost you a little bit when you started talking about the number of defendants that have settled.

MR. LINDSAY: Well, no one has settled the Lief case.

THE COURT: Oh, there is no settlement in the Lief case.

MR. LINDSAY: In the Lief case, no settlements.

THE COURT: Okay.

MR. LINDSAY: But out of the 16

state cases, and only the federal Lief case is before you. Out of those 16, I believe that either all or most defendants have settled in two of them. California and Massachusetts, I believe, are largely completed. But that leaves another 14 --

THE COURT: There are now 14 that are in the same status as in the Lief case?



MR. LINDSAY: Correct.

THE COURT: Okay.

MR. LINDSAY: And just to add a little bit more confusion, the state case in Wisconsin is also called the Lief case, so I'll try to keep referring to the federal Lief case for clarity sake.

THE COURT: Well, Counsel, there is a factor with respect to the federal Lief case, too, that apparently, I don't know, maybe there was a refiling or something like that in the state court, but this case from Wisconsin, as I understand it, had a motion for remand.

MR. LINDSAY: Yes, Your Honor.

THE COURT: And that was pending before Judge Crabbe, and then when the MDL order came through, it was in turn transferred here.

Apparently, it's still out there someplace, but I don't have any papers

supporting of it one way or the other. I don't have anything at all. Is that motion to be rendered moot? Or what is the status of it? I guess Plaintiffs are in a far better



position to respond to that.

MR. LINDSAY: Well, I checked both the Minnesota and Wisconsin dockets yesterday, and you're correct that there's nothing that appears on the Minnesota docket sheet with respect to the motion to remand. It does appear on the Wisconsin docket sheet, so once the case was removed from state court into the Wisconsin federal court, a remand motion was filed. It has been briefed, and it was sitting there at the time that the case was transferred by the MDL panel to this Court, but it's plaintiff's motion, so I guess it's up to plaintiffs to decide in the first instance what they would like to do with it.

I would add that the Lief case, the federal Lief case that is before you does purport to cover, I believe, if not all, nearly all of the states that now have their own separate actions. So there is some, obviously, large degree of overlap between the case that is before you and these multiple state actions.

THE COURT: Okay. Very good. Thank you.

Counsel, maybe somebody could respond to this business of where we are with the federal Lief case and this motion to remand. Anybody know? Do you have any idea, Mr. Gustafson?

MR. GUSTAFSON: I don't know, Your Honor. I was just retained this weekend. I don't know the status of it, but I don't believe it's being pursued at this time. I will find out and let you know.

THE COURT: Okay. Could someone then address this overall subject of what we've got out here in the stew pot. We do have the Lief case. We do have MDL in existence to deal with the federal issues. State issues can be dealt with by cooperative venture in pretrial processes, but that's about it. State cases.

From the point of our standpoint, anybody have any comments with respect to that to make any statements or anything else?

MR. GUSTAFSON: Let me try to update you, Judge, as well as I can. As you know, I'm sort of an old timer and a new timer in this case. New to this case just this week, but I have spoken with Tim Battin of Boies and



Straus who is the firm that is principally litigating these cases around the country.

And it's their desire to coordinate all of the cases to the extent possible with the defendants and avoid any sort of overlapping discovery or unnecessary discovery because of the various actions.

They have entered an agreement with the defendants regarding motions to dismiss and time to answer, things like that. I don't know that it's been submitted to Your Honor yet. I don't believe it has, but it takes the sort of briefing on motions to dismiss out to about the end of May of this year giving people plenty of time to answer. And it's applicable to all of the state court cases in which Boies and Straus is involved and several in which they have come to terms with other members of the plaintiff's bar who are familiar. I can't represent to you that all of the cases have agreed to coordinate.

There is one case in Florida that I'm aware of that we have had some initial conversations in hopes that we can agree that we will not duplicate discovery or document

11

productions or anything like that. And it's our intent that we would do that. I understand the federal case, there has been a suggestion or a motion for a stay pending the outcome of the Supreme Court case in Epigram, if I'm pronouncing that correctly. We don't

see that our schedule would interfere with that, and we wouldn't be opposed to awaiting this. You know, we assume the Supreme Court will rule this term on that case.

THE COURT: Well, it sort of sounds like the briefing schedule that you've laid out until the end of May will give full opportunity for the Supreme Court to make a comment because they're going to speak by the end of June.

MR. GUSTAFSON: Yes, that's our belief as well that they'll conclude it this term, and that was part of the motive behind the scheduling of the motions to the extent we can get dismissal motions out of the way in these various jurisdictions and find out what's left standing, then we can proceed in an orderly fashion on discovery. And the objective is not, you know, if the Inquivosa

12

plaintiffs or defendants want to take a deposition that's relevant to all cases, we would coordinate with the defendants and try to do that deposition one time for all of the cases.

As I said, we haven't quite tied the knot on the plaintiff's side yet, but we hope to. And as I said earlier, we've had some initial conversations, and we think that we're going to be able to tell Your Honor shortly

that we're all on board and that we'll voluntarily cooperate because as you recognized it's hard for you to impose these orders on those cases outside your jurisdiction.

THE COURT: Well, that's right, it is. First of all, do you have any feel at all because I realize that sometimes there is reticence to cooperative agreements. Sometimes it's just mechanical time to get it done, you know. That just happens in the business that we're in. I don't know which it is in Florida, but I'm wondering if you have any feel for how much longer it's going to be before you think you might have a handle on

13

that Florida situation.

MR. GUSTAFSON: I'm optimistic, Judge, that it won't be long, but it is not simply a matter of mechanics. There is some disagreement over who should do what and so on. I think that --

THE COURT: That happens in the business, too.

MR. GUSTAFSON: It does. I think in the end that when we get enough time to converse that everyone will see it's in everyone's benefit to coordinate regardless of how we end up in the end, but so I'm hopeful that in not too long we're going to be able to

report to you that we have an agreement with the defendants and all of the plaintiffs to coordinate discovery. It just doesn't make any sense to do it any other way.

THE COURT: I think that's right.

And I'll return to defense counsel with this question as well so that they can comment on it. The one thing that seems to me that might make some sense to help this matter along in the cooperative vane of the discovery processes would be for me to write a letter to



the state court judges wherever they may be. And volunteer that A, I've got the MDL side of this thing; and B, to the extent that I can be helpful to them in serving as a referee, if you will, in the discovery processes, I would be happy to assist them in filling that out. Sometimes that's helpful.

And we're working with state courts, too, because one of the problems you run into as you all know that with cases in the various states, you face some very different issues with respect to speed of dockets that may or may not be a problem, but if we can get state court judges along on the same program, I think it would be helpful.

MR. GUSTAFSON: I think that could be very helpful, Your Honor, and perhaps another thing that would be helpful, and I

don't know that we've had discussions with the defendants on that, but if Your Honor is willing as you suggest, you know, our agreement that you would be the focal point for discovery disputes because you're familiar with the case would probably help with the state court judges as well, so I think that's



something we should talk about. And I don't know if Special Master Borg is still available or not, but obviously he has a great familiarity with the case as well.

But in any event, I think that from the plaintiff's perspective, we hope to be able to report back to you shortly that we are all going to coordinate, and there is not going to be any need for fights over this multiple discovery, things like that.

THE COURT: One of the things that we need to get to with respect to all of this, too, Counsel, is whether we're including or excluding Florida to the degree that we can probably have you caucus at the conclusion of today and then pick it up and go from there, and that is a scheduling order that can make some sense of what we're going to get done by when. That, frankly, is one of the things we're going to deal with the state court judges around the country, we really need to advise them of what our thinking is with

respect to all that.
And so I think that we need to, as I say, probably at the conclusion of today if we



could even -- if people can caucus and if we can get it roughed out, that would be great.
And the other thing, if I'm going to start sending letters to state court judges, I may put an open paragraph or two on it, and I may put a closing paragraph or two on it that's all my own, but the middle part I'm going to ask for a little help in the drafting and wording because you know the respective circumstances that go on there. They will be comparable letters to everybody.
MR. GUSTAFSON: I think that's a good suggestion, Judge, and I don't know that we've had any scheduling sort of talks yet, and I don't know if -- Tim Battin was going to be here today, but the weather was a problem in Washington, and some made it and some didn't, but he was one who didn't. But I think we could work out a scheduling order and submit it to Your Honor for your consideration.
THE COURT: Somehow I feel good about the fact that the weather is a problem in Washington.
MR. GUSTAFSON: We probably wouldn't

consider it a problem here four or five inches of snow, you know.

Thank you, Judge.

THE COURT: Okay, thank you.

Counsel, you're coming forward.

MR. BROOKS: Yes, Your Honor, I should have introduced myself to Mr. Gustafson before. I'm Doug Brooks, I'm from Dunham and Pastor. We're counsel for the plaintiffs for the Massachusetts and Florida actions.

THE COURT: Okay.

MR. BROOKS: I think I share Mr. Gustafson's view about the coordination. The point man on our firm is Ken Gilman. He's in Florida. I travelled from Massachusetts, so I share the weather -- the character-building weather.

THE COURT: You guys had quite a bit of character this winter.

MR. BROOKS: Yes, we've done better than you so far, but I know there have been discussions between Mr. Gilman and I think Mr. Battin. I don't know with Mr. Gustafson, but in any event, we would certainly hope that the plaintiffs can come to an accommodation, and



we'll try and coordinate and avoid a wasted effort, Your Honor.

By the way, and I guess he did report the Massachusetts case is pending settlement, final approval is in April. But I think the Florida case --

THE COURT: Is that an across the board settlement or partial settlement?

MR. BROOKS: That is, I think we've settled with five of the defendants. We have not settled with ADM, and I think there is maybe one defendant that we haven't, but it's 99 percent of the case is done in that. Thank you, Your Honor.

THE COURT: Okay. Very good. Maybe Mr. Brooks, we'll let you and Mr. Gustafson have a little chat as we conclude today, and then between the two of you if we can get off into some of these scheduling matters and then make some arrangements for getting names, titles of other cases pending around the country along with the judges to whom it's assigned if it's in a court that has a judicial assignment structure. I think that could be helpful. So thank you.

19

MR. BROOKS: Certainly, Your Honor.

THE COURT: Okay. Anymore from the defense table?

MR. LINDSAY: Your Honor, I think that probably does it. The stage is now set for first the plaintiffs to finish their

discussions, and then for the plaintiffs and defendants to talk together and probably schedule a time to reconvene in front of Your Honor in three to five weeks, somewhere in that time frame.

THE COURT: I think we can do that. I really want to raise the question with you. Is there any reason that we don't have to put all the subparts in there, but is there any reason that a broad outline for time of filing, Rule 12-type motions or whatever the dismissal-type motions would be, a broad outline for a period of time of discovery in the case, a broad outline for a period of time for filing any dispositive motions. And a broad outline again or general statement as to time frames for trial readiness could not be laid out in these cases?

MR. LINDSAY: Well, since you've

20

included the word "broad" in there, I think that that's --

THE COURT: Yeah, and I think we should.

MR. LINDSAY: And already we've done some of that. We had a variety of different response dates in the various states and the plaintiffs graciously agreed to extend that out to various common dates.

THE COURT: What Mr. Gustafson is

Msg.txt

saying, apparently, you know, you're setting those original motions to the end of May. And you know, I'm not against quite candidly adding a month or two if you want to. But I am thinking that, number one, we've got a lot of people in the room, and usually these things don't take all that long to kind of -- I'll point to Mr. Gustafson and his cochairs to do this thing, and just lay that out. That can get us into the communications with the state court. If we don't have that, there isn't much to say to a state judge.

And I've said, you know, a federal judge in Minnesota writing to a state court judge in Arizona and saying to him, "I'll take

21

over all your discovery, and I'll tell you how to run your life," I know what they are going to say. They're going to turn right around and tell me when I get some authority, why I'll respect you.

But if the tone of the letter is the other side of it, and the tone of the letter is that we have these cases all over the country, these are the courts, these are the cases, these are the judges, and to assist in the coordination of counsel and the discovery process or the motion process, we're thinking that this would happen, and if you would be willing to accept this schedule and that kind

of phrase, it just changes the whole picture of the whole world.

And in the meantime, you guys know the litigation that's coming. I don't. And why don't you go ahead and try to do that if we can over the next hour or so. And if we get it done, great, if we don't, why that's fine. I'll be in the back room, and if you need me, give a yell. I may come back in even if you don't need me.

But to everybody that came in today,



thank you very much.

MR. LINDSAY: Thank you, Your Honor.

MR. GUSTAFSON: Thank you, Judge.

(End of proceedings.)

UNITED STATES DISTRICT COURT)
)ss.
DISTRICT OF MINNESOTA )

REPORTER'S CERTIFICATE

I, MARIA WEINBECK, Official Court Reporter in and for the United States District Court, District of Minnesota, do hereby certify that the foregoing transcript is a true and correct transcript of the proceedings had in the above matter as herein set out.

Dated:____________________ ____________________________

Maria Weinbeck
Court Reporter