**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **IN RE MONOSODIUM GLUTAMATE ANTITRUST LITIGATION** | ) | **MDL Docket No. 00-1328 PAM/JGL** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| **Inquivosa, S.A., et al. v. Ajinomoto Co., Inc., et al., C.A. No. 03-2001-GTV** | ) | **Civil Action No. 03-2997** |

**DEFENDANT ARCHER DANIELS MIDLAND COMPANY'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs' Amended and Consolidated Class Action Complaint ("Amended Complaint") against defendant Archer Daniels Midland Company ("ADM") should be dismissed with prejudice because the claims asserted against ADM were time-barred *more than a year* before Plaintiffs attempted to add ADM as a defendant in this action. As explained below, Plaintiffs' effort to add ADM as a defendant cannot relate back to the filing date of Plaintiffs' original Complaint because the prerequisites for relation back where a new party is added to an amended Complaint under Rule 15(c)(3) of the Federal Rules of Civil Procedure are not met here. In particular, Plaintiffs cannot demonstrate that (1) ADM's omission from the original Complaint was a "mistake" within the meaning of Rule 15(c)(3), or (2) ADM knew or should have known that the original action would have been brought against ADM absent a mistake. Under these circumstances, ADM's motion to dismiss must be granted.

## BACKGROUND

The two foreign purchaser class actions that Plaintiffs now seek to consolidate in the Amended Complaint (referred to herein as the "*Inquivosa* action") are the latest in a series of cases first commenced over five years ago, each alleging anticompetitive conduct involving the marketing and sale of MSG and nucleotides. The undisputed facts surrounding the litigation of those prior lawsuits – especially the protracted MDL litigation in this Court – establish that Plaintiffs' belated attempt to add ADM as a defendant in this action is time-barred.

### A. Prior MSG-Related Litigation Against ADM In This Forum.

Five and a half years ago, in September 1999, the Antitrust Division of the United States Department of Justice (the "Justice Department") announced in a press release that Takeda Chemical Industries Ltd. (one of the defendants named in this action) was cooperating in a criminal antitrust investigation of the food flavor enhancers industry. Am. Cplt. ¶ 29. Soon thereafter in the Fall of 1999, numerous nationwide class actions were brought against ADM and other defendants under federal antitrust law by United States direct purchasers of food flavor enhancers, alleging that defendants had conspired to fix prices and to allocate market shares in the sale of MSG and nucleotides. These lawsuits are virtually identical to the two foreign purchaser actions that Plaintiffs now seek to consolidate in the *Inquivosa* action – the only difference being the residence of the putative class members.

On March 2, 2000, the MDL Panel consolidated and transferred those lawsuits to this Court for pretrial proceedings pursuant to 28 U.S.C. § 1407. Am. Cplt. ¶ 44. On May 11, 2000, this Court designated as Plaintiffs' Co-Lead Counsel in the MDL litigation the very

same two law firms that have signed the Amended Complaint as "Co-Lead Counsel" here.

Plaintiffs and ADM subsequently engaged in fact discovery in 2000 and 2001. Plaintiffs' counsel deposed six current or former ADM employees, and ADM produced over thirty thousand pages of documents relating to its manufacture, marketing and sale of MSG, and answered interrogatories. In July 2002, ADM settled the U.S. direct purchaser class action by agreeing to pay $1.25 million – a sum that is *less than one percent* (1%) of the $123.4 million in total settlements paid by the foreign-based defendants to resolve the same claims in the MDL proceedings.

ADM's relatively small settlement was not surprising given the paucity of evidence against ADM, as well as its limited entry and quick exit from the MSG industry. Unlike the other foreign defendants named in these suits, ADM manufactured MSG for commercial sale at a single plant in Southport, North Carolina (it had no foreign manufacturing operations), and only sold MSG for a few years in the mid-1990s. ADM never manufactured or sold nucleotides. It was never charged by the Justice Department, the European Commission or any other regulator with antitrust violations relating to its sale of MSG. In sum, ADM could never have been a participant in the far-flung multi-product conspiracy alleged in various of the MDL complaints and the two foreign purchaser class actions. *See* Am. Cplt. ¶ 39 (alleging an "over-arching worldwide conspiracy" to fix the price of MSG and nucleotides worldwide from January 1, 1984 through at least November 1, 1999).

On November 7, 2002, this Court approved the ADM settlement (to which there were no objections) and dismissed ADM from the U.S. direct purchaser class proceedings. That order of dismissal largely marked the end of ADM's involvement in these

MDL proceedings, but for two state indirect purchaser lawsuits that were subsequently filed. One of these state lawsuits, filed on behalf of indirect purchasers in Kansas, *Four B Corp. v. Archer Daniels Midland Company*, *et al.*, Civil Action No. 03-2001-GTV (D. Kan.) was dismissed by this Court as time-barred. *See id.*, slip op. (D. Minn. Nov. 3, 2003) (copy attached as Exhibit A to the Affidavit of Richard A. Duncan, filed herewith).

**B. The Commencement of The Foreign Purchaser Actions.**

Plaintiffs Inquivosa S.A., Petbowe Chemtrade Corp., Plus Sun Co., Ltd. and Menssing Chemiehandel & Consultants GmbH commenced an action in this Court on or about April 30, 2003, naming various of the foreign manufacturer defendants who (1) had manufacturing facilities abroad, and (2) had settled the U.S. direct purchaser class action litigation for substantial sums. These plaintiffs did not name ADM as a defendant. Plaintiff Newco Trading Co. brought a similar foreign purchaser class action on October 16, 2003 in the United States District Court for the Southern District of New York. Newco Trading Co. also did not name ADM as a defendant. In April 2004, the MDL Panel transferred the *Newco Trading* case to this Court for consolidation and coordinated pretrial proceedings. On November 15, 2004 – *nearly 5 years after ADM had been first sued in the original MDL proceedings*– Plaintiffs filed an Amended and Consolidated Class Action Complaint combining the two foreign purchaser class actions and purporting to add ADM as a new defendant in these proceedings. This Amended Complaint concedes that the Justice Department's September 1999 press release placed Plaintiffs on notice of their potential claims here. Am. Cplt. ¶ 64.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Federal antitrust law prescribes a four-year limitations period for price-fixing claims such as those advanced by Plaintiffs here. *See* 15 U.S.C. §15b. The statute of limitations begins to run when plaintiffs receive information that should "excite their attention" regarding their potential claims. See, *e.g.*, *Four B. Corp.*, slip op. at 4 (Ex. A); *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1024 (D. Minn. 1997) (Magnuson, J.) (dismissing price-fixing complaint on statute of limitations grounds), *aff'd*, 195 F.3d 430 (8th Cir. 1999), *cert. denied*, 529 U.S. 1038 (2000). Here, the allegations in Plaintiffs' Amended Complaint reveal that they received such information no later than when the Justice Department issued the Takeda press release in September 1999:

> Although Plaintiffs exercised all due diligence during the Class Period, *Plaintiffs and the members of the Class had no knowledge of Defendants' antitrust violations until September 9, 1999*, when the Justice Department publicly announced that Defendant Takeda Chemical was cooperating in an antitrust investigation in the food flavors enhancers industry, and Plaintiffs, through their counsel, conducted their own investigation.

Am. Compl. ¶ 64 (emphasis added). Such public announcements of the existence of governmental investigations trigger the running of the statute of limitations, especially where (as here) the investigation concerns the precise product type at issue in the challenged Complaint. *See, e.g., In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1024 ("Plaintiffs here assert that they did not become aware of any facts to excite their attention until May 1996. However, . . . the Justice Department announced investigations of Defendants in July 1995."); *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1523 (D.D.C. 1984) ("[I]t is plain that

once a governmental investigation commenced '[those] proceedings should have aroused [plaintiffs'] suspicions, and [their] failure to investigate further . . . was not the exercise of due diligence required in order to employ the fraudulent concealment doctrine to avoid that bar of the statute of limitations'.").

Indeed, this Court has already held that the Justice Department's press release triggered the running of the statute of limitations for the very antitrust claims asserted in the Amended Complaint. In *Four B. Corp. v. Archer Daniels Midland Company, et al.*, C.A. No. 03-2001-GTV (D. Minn. Nov. 3, 2003), plaintiff commenced an action under Kansas antitrust law against ADM and various of the other defendants, alleging a conspiracy to fix the price of MSG and other food flavor enhancers. *Id.*, slip op. at 1-2 (Ex. A to Duncan Aff.). Applying the relevant Kansas statute of limitations, this Court held that the Complaint was time-barred because plaintiff was put on notice of its claims by the Justice Department's press release concerning "the specific product type at issue." *Id.*, slip op. at 5.

The *Four B Corp.* decision is on all fours with this case. The plaintiff in *Four B Corp.* filed its action on October 9, 2002, only a few weeks after the September 9, 2002, cutoff date for claims under Kansas' three-year statute of limitations – and the Court held plaintiff's claims were time-barred. Plaintiffs here waited more than fourteen months after the federal statute of limitations expired (September 9, 2003), to assert claims against ADM. Under *Four B Corp.*, the allegations in Plaintiffs' Amended Complaint render their claims similarly untimely.[1]

---

[1] Even if Plaintiffs' Amended Complaint had not conceded the untimeliness of their claims, the court filings in 1999 regarding the same conspiracy alleged here alerted Plaintiffs

(footnote continued)

In short, Plaintiffs failed to bring this action against ADM within the four-year limitations period prescribed for claims under the federal antitrust laws. Plaintiffs' claims against ADM therefore are plainly time-barred, unless Plaintiffs relate back their Amended Complaint to the May 2003 filing of the original *Inquivosa* Complaint. For the reasons that follow, Plaintiffs cannot satisfy the prerequisites for relation back under Rule 15(c)(3) of the Federal Rules of Civil Procedure, and Plaintiffs' claims against ADM therefore must be dismissed.

## II. PLAINTIFFS' AMENDED COMPLAINT CANNOT RELATE BACK TO THE DATE OF THE FIRST *INQUIVOSA* COMPLAINT.

Rule 15(c) of the Federal Rules of Civil Procedure, "Amended and Supplemental Pleadings – Relation Back of Amendments," governs the relation back of amended pleadings. It provides in pertinent part:

An amendment of a pleading relates back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(footnote continued) ...

to their potential claims. The filing of such lawsuits by private parties places other potential plaintiffs on notice of their potential claims and triggers the running of the statute of limitations. See, e.g., Korwek v. Hunt, 646 F. Supp. 953, 958 (S.D.N.Y. 1986) (filing of private lawsuits alleging same conspiracy against many of the same defendants placed other potential plaintiffs on notice), aff'd, 827 F.2d 874 (2d Cir. 1987); Rockstroh v. A.H. Robins Co., 602 F. Supp. 1259, 1268 (D. Md. 1985) (declining to toll statute of limitations because, in part, plaintiffs should have known of multidistrict litigation already proceeding for several years in MDL transferee court).

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) *the amendment changes the* party *or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and*, within the period provided by Rule 4(m) for service of the summons and complaint, *the party to be brought in by amendment* (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and *(B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party*.

Fed. R. Civ. P. 15(c) (emphasis added). Rule 15(c)(3) applies here because Plaintiffs' Amended Complaint seeks to add ADM as a defendant for the first time in the foreign purchaser class actions. Relation back under Rule 15(c)(3) is available to Plaintiffs only if they show that (1) the claims asserted against ADM in the Amended Complaint arise "out of the conduct, transaction, or occurrence" set forth in the original Complaint; (2) ADM was served with the summons and Amended Complaint (or otherwise received notice) within the period provided by Rule 4(m); and (3) ADM "knew or should have known that, but for a mistake concerning the identity of the proper party," ADM would have been named in the initial Complaint. Fed. R. Civ. P. 15(c)(3). Even assuming *arguendo* that Plaintiffs have satisfied the first two prerequisites, they have plainly failed the third: they have not shown (and cannot show) that ADM knew or reasonably should have known that it should have been named in the initial Complaint "but for a mistake concerning the identity of the proper party" to be so named. *Id.*

First, Plaintiffs' failure to name ADM in this action before the expiration of the statute of limitations in September 2003 cannot be considered a "mistake" under Rule 15(c)(3)(B) because Plaintiffs knew of ADM's alleged involvement in the alleged MSG

conspiracy when they filed their original Complaints in May 2003 and October 2003. Plaintiffs' counsel were co-lead counsel in the U.S. direct purchaser MDL proceedings in this Court, were involved in the extensive discovery proceedings therein, and executed, on behalf of the U.S. class, a settlement with ADM in July 2002. Yet, in the two foreign purchaser class action Complaints filed by the same firms that litigated the U.S. class cases, ADM was not named as a defendant.

In short, Plaintiffs knew of ADM's identity and the fact that other plaintiffs had made similar allegations against ADM, and (through their counsel) were well aware of the evidence (or lack thereof) developed in the prior MDL proceedings.[2] These indisputable facts bar relation back in this case because "[e]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset." *Powers v. Graff*, 148 F.3d 1223, 1227 (11th Cir. 1998) (affirming denial of motion to amend pleading to add new defendants after expiration of statute of limitations).

The Eighth Circuit's affirmance of this Court's decision in *Shea v. Esensten*, 208 F.3d 712 (8th Cir. 2000), confirms that there is no "mistake" within the meaning of Rule 15(c)(3) where the plaintiff knows the identity of a later-named defendant. In *Shea*, plaintiff in a wrongful death action (Shea) sought to add a new defendant (Fairview) after the running of the statute of limitations. This Court granted summary judgment to Fairview on statute of

---

[2] "It is well-settled that the knowledge of Plaintiffs' underlying attorneys is imputed to Plaintiffs as a matter of law." *Matsuura v. E.I. DuPont de Nemours & Co.*, 330 F. Supp. 2d 1101, 1107 n.11 (D. Haw. 2004) (imputing to plaintiffs their counsel's knowledge of allegations asserted against defendants in other related proceedings). *See also, e.g.*, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) (client is

(footnote continued)

limitations grounds, finding that plaintiff's failure to name Fairview in the original Complaint was not a "mistake" for purposes of Rule 15(c)(3). The Eighth Circuit affirmed this Court's decision:

> There was no mistake here. Mrs. Shea did not bring the suit against the wrong parties. She knew before the expiration of the statute of limitations that Fairview owned the Clinic. She knew the identity of Fairview but chose not to bring Fairview into the suit at that time. We find no abuse of discretion in the district court's conclusion that there is no relation back to the date of the original pleading in this situation.

*Shea*, 208 F.3d at 720.

Other courts have similarly declined to permit relation back where plaintiffs knew the identity of putative defendants during the limitations period, but waited until after the expiration of the limitations period to seek to add them by amendment. In *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994), for example, a plaintiff bringing claims under 42 U.S.C. §§ 1983 and 1985 sought to amend her complaint years after the expiration of the statute of limitations to add as defendants certain former supervisors known to her when she filed her original complaint. Although the trial court allowed the amendment, the Second Circuit reversed and remanded, with instructions to dismiss those claims against the newly-named defendants on statute of limitations grounds. The Second Circuit reasoned that dismissal was warranted because the plaintiff "[p]lainly . . . knew the identities of the DFY employees who she contended had harassed and discriminated against her," and thus

---

(footnote continued) ...

"considered to have notice of all facts, notice of which can be charged upon the attorney") (internal quotation omitted).

plaintiff's failure to name those employees "in the original complaint, in light of her obvious knowledge . . . must be considered a matter of choice, not mistake." *Id.* at 705 (ellipses added).

"Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party." *Kilkenny v. ARCO Marine, Inc.*, 800 F.2d 853, 857 (9th Cir. 1986). That fact pattern is not present in this case. Plaintiffs here knew of ADM's alleged involvement in the conspiracy alleged here and could have named ADM in the original Complaints. That they did not can only be considered a conscious choice. Such strategic decisions are not "mistakes" for purposes of Rule 15(c)(3), and cannot support Plaintiffs' effort to pursue time-barred claims against ADM. *See, e.g.*, *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) (affirming dismissal of third-party defendant in CERCLA action because "[t]here was no mistake of identity, but rather a conscious choice of whom to sue").[3]

Second, given Plaintiffs' counsels' lead role in the litigation of the prior MDL proceedings, as well as the nature of the foreign purchaser claims, ADM had every reason to believe that its absence from the original Complaints reflected Plaintiffs' counsels' reasoned judgment regarding the merits of these claims against ADM. Numerous important facts

[3] *See also, e.g.*, *Potts v. Allis-Chalmers Corp.*, 118 F.R.D. 597, 609 (N.D. Ind. 1987) (barring plaintiff from adding additional defendant after expiration of limitations period because, in part, plaintiff "was fully aware from the litigation's outset that" the new defendant was a proper party, and that the defendant was named in a related proceeding); *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992) (denying plaintiff's motion to add new defendant after running of limitations period where "plaintiff's counsel admitted at oral argument that the plaintiff could have joined in the original complaint the HBO officers she now seeks to add by amendment.").

distinguish ADM from the foreign defendants named in the two foreign purchaser class actions that explain why ADM was not named in the original Complaints.

ADM was, without question, a minor player in the MSG market, never manufactured nucleotides, had not pled guilty to fixing the price of MSG or nucleotides, and never manufactured MSG abroad. These facts, coupled with ADM's relatively small settlement in the prior MDL proceedings, could only have led ADM to believe that its absence from not one, *but two different foreign purchaser class actions,* was not a mistake. Accordingly, ADM could have not known, nor should it have known, that but for a "mistake," it would have been named as a defendant in the original Complaints.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Amended and Consolidated Class Action Complaint against ADM should be dismissed with prejudice.

Dated: February 17, 2005

s/ Richard A. Duncan
Richard A. Duncan, MN # 192983
Craig S. Coleman, MN # 325491
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
(612) 766-7000

and

John E. Schmidtlein
John L. Cuddihy
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Counsel for Defendant Archer Daniels Midland Company

M1:1185399.01