# EXHIBIT 6

# General Docket

## US Court of Appeals for the Second Circuit

Second Circuit Court of Appeals

Court of Appeals Docket #:04-4802-op

Nsuit:
In Re: The Dow Chemical Company v.

Appeal from: DISTRICT OF CONNECTICUT (NEW HAVEN)

Case type information:
Original Proceeding
Mandamus

None

Lower court information:
District: 02-cv-1107

Trial Judge Alfred V. Covello
MagJudge:
Date Filed:

Date order/judgement:
Date NOA filed:

Fee status:Paid
Panel Assignment:

Panel: JMcL JRG PWH 40 Foley Sq. Rm 170
Date of decision 2/17/05

Prior cases: NONE

Current cases: NONE

Docket as of March 09, 2005 6:25 pm

☐

Official Caption 1/

--------------------------------------

Docket No. [s] : 04-4802 -op

In Re: The Dow Chemical Company et al,

*********************************************

The Dow Chemical Company,

Defendant-Petitioner,

Union Carbide Corporation, Union Carbide Asia Pacific,
Inc,

Defendant-Petitioner.

---------------------------------------

Authorized Abbreviated Caption 2/

Docket as of March 09, 2005 6:25 pm

□

Docket as of March 09, 2005 6:25 pm

□

The Dow Chemical Company
Petitioner

| | |
|---|---|
| Megavisa Solutions (S) PTE Ltd<br>Plaintiff-Respondent | Michael S. Elkin Esq.<br>[ LD ret ]<br>Thelen Reid & Priest<br>875 3rd Ave.<br>New York , NY , 10022<br>212-603-2000 |
| MM Global Svc Inc<br>Plaintiff-Respondent | Michael S. Elkin Esq.(See above)<br>[ LD ret ] |
| MM Global Svc PTE Ltd<br>Plaintiff-Respondent | Michael S. Elkin Esq.(See above)<br>[ LD ret ] |
| The Dow Chemical Company<br>Petitioner | Philip Allen Lacovara Esq.<br>[ LD ret ]<br>Mayer Brown Rowe & Maw LLP<br>1675 Broadway<br>New York , NY , 10019<br>212-506-2585 |
| Union Carbide Asia Pacific, Inc | Philip Allen Lacovara Esq.(See ab |

Docket as of March 09, 2005 6:25 pm

□

| | |
|---|---|
| Defendant-Petitioner | [ LD ret ] |
| Union Carbide Corporation<br>Defendant-Petitioner | Philip Allen Lacovara Esq.(See ab<br>[ LD ret ] |

Docket as of March 09, 2005 6:25 pm

□

9/10/04 Case Docketed: Petition for Writ of Mandamus on behalf of PETITIONER The Dow Chemical Company, The Dow Chemical Company, Union

Carbide Asia Pacific, Inc, Union Carbide Corporation, filed, with proof of service.

9/10/04 Copy of receipt re: payment of docketing fee filed on behalf of PETITIONER The Dow Chemical Company, The Dow Chemical Company, Union Carbide Asia Pacific, Inc, Union Carbide Corporation, RECEIPT # 174249

9/10/04 The Dow Chemical Company; PETITIONER The Dow Chemical Company, Union Carbide Asia Pacific, Inc, Union Carbide Corporation, appendix filed, w/pfs.

9/13/04 motion to file brief as amicus curiae filed by movant Chamber of Commerce of the United States, with proof of service.

9/13/04 Amicus brief filed by The Chamber of Commerce of the united States received.

9/13/04 Letter received by Phillip Allen Lacovara Re: Supplemental Submission

9/17/04 Order FILED REFERRING motion file brief as amicus curiae to Panel, by The Chamber of Commerce of the United States, endorsed on motion dated 9/13/2004

9/17/04 Notice to counsel Re: Order referring Motion for Leave to Intervene by The Chambers of Commerce.

Docket as of March 09, 2005 6:25 pm

☐

9/21/04 MM Global Services Inc.,MM Global Ltd and Megavisa Solutions (s) Pte., Ltd in opposition to motion file brief as amicus curiae, file brief as amicus curiae filed with proof of service.

1/13/05 DEBTOR- The Dow Chemical Company; PETITIONER The Dow Chemical Company, Union Carbide Asia Pacific, Inc, Union Carbide Corporation, 28(J) letter FILED.

1/25/05 Notice to counsel in re: writ of mandamus on the substantive motions calendar for Tuesday, 2/8/05.

2/17/05 Order denying petition for writ of mandamus. Petitioners, though counsel, petition for a writ of mandamus directing the district court to dimiss the plaintiffs' anitrust claim for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). Upon due consideration, it is ORDERED that because the petitioners have failed to demonstrate an "extreme need for reversal, " the petition for writ of mandamus is denied. See In re

Steinhardt partners, L.P. 9 F. 3d 230, 233-34 (2d Cir 1993); F Hoffman-LA Roche Ltd. V. Empagran S.A. - U.S.- 124 S Ct 2359 (2004) . The Chambers of Commerce of the United States's Motion for leave to file as an amicus curiae in support of petitioners is also denied. See Fed R. APP. P. 21(b) (Present: PWH, JMc

2/17/05 Notice to counsel in re: Order denying writ of mandamus

2/17/05 Order FILED DENYING motion file brief as amicus curiae by Respondent MM Global Svc Inc, Respondent MM Global Svc PTE Ltd, Respondent Megavisa Solutions (S) PTE Ltd, endorsed on motion dated 9/13/2004 Order denying petition for writ of mandamus. Petitioners, though counsel, petition for a



□

writ of mandamus directing the district court to dimiss the plaintiffs` anitrust claim for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). Upon due consideration, it is ORDERED that because the petitioners have failed to demonstrate an "extreme need for reversal, " the petition for writ of mandamus is denied. See In re Steinhardt partners, L.P. 9 F. 3d 230, 233-34 (2d Cir 1993); F Hoffman-LA Roche Ltd. V. Empagran S.A. - U.S.- 124 S Ct 2359 (2004) . The Chambers of Commerce of the United States`s Motion for leave to file as an amicus curiae in support of petitioners is also denied. See Fed R. APP. P. 21(b) (Present: PWH, JMcl, JRG, CJJ) (For the Court , L.C.)

2/18/05 Certified copy of order dated 2/17/05, disposing of the appeal issued to district court.

3/2/05 Acco received in records room from team.

3/8/05 Mandate receipt returned from the district court.

# EXHIBIT 7

Westlaw.



**Litigation of International Disputes in U.S. Courts**
Ved P. **Nanda**, David K. **Pansius**
**Database updated August 2004**

**Chapter 5. Extraterritorial Jurisdiction**
**II. Antitrust Laws**

Table of Contents Research References Index

§ 5:13. SHERMAN ACT, SECTION 7

The effects test suffers from a simplicity that ignores foreign law. The balancing test suffers from a complexity that may create jurisdiction in inappropriate circumstances, or deny jurisdiction where U.S. interests are clear and substantial. Congress enacted the final element in the antitrust jurisdictional trinity in 1982. As with the effects test and the balancing tests, perhaps as many questions were created as were resolved. One of those questions is to what extent, if any, Congress modified the traditional applications of the effects and balancing tests.

Congress enacted The Foreign Trade Antitrust Improvements Act of 1982 (FTAIA) adding Section 7 to the Sherman Act. The FTAIA sought to define what conduct associated with foreign trade is and is not subject to antitrust jurisdiction. Unfortunately, the FTAIA has been described as "inelegantly phrased." [FN1] Particularly as regards actions against foreign defendants the FTAIA did not substantially modify many case law principles developed before the enactment of the FTAIA. [FN2] Due to its exclusionary reference to import trade, [FN3] the FTAIA will have the most potential impact on U.S. persons doing business abroad, particularly U.S. exporters. [FN4]

The courts have recognized that Section 7 of the Sherman Act has wide potential application. Although technically it modifies only the provisions of the Sherman Act, most courts also apply its extraterritorial principles to claims based exclusively on the Clayton Act. [FN5] In theory, Section 7 of the Sherman Act is an essential prerequisite to determine jurisdiction under the antitrust law with respect to conduct that impacts on foreign trade. Indeed, some court decisions took the position that Section 7 of the Sherman Act created new law that rendered obsolete most of the old decisions regarding extraterritorial application of the antitrust law. [FN6] In fact most of the old pre-FTAIA cases remain relevant. [FN7] Furthermore, if the FTAIA is taken at face value, its effect standard applies only to "trade or commerce (other than import trade or import commerce) with foreign nations." [FN8] Indeed several significant recent decisions place less significance on the language of the FTAIA. [FN9]

Section 7 accomplishes two things: it minimizes the antitrust exposure of U.S. exporters, and it minimizes, if not eliminates, the use of balancing tests as a basis for determining whether it is appropriate to apply U.S. antitrust laws to the facts at issue. Section 7 accomplishes two things: it minimizes the antitrust exposure of U.S. exporters, and it minimizes, if not eliminates, the use of balancing tests as a basis for determining whether it is appropriate to apply U.S. antitrust laws to the facts at issue. [FN10] Foreign persons cannot bring an antitrust claim against U.S. persons on account of the U.S. export activity or entirely foreign activity of the U.S. person, unless the restraint has direct, substantial and foreseeable effect on the domestic U.S. market. [FN11] "Where the conduct is solely export oriented, only domestic exporters (injured in the United States) have a remedy under the Sherman Act." [FN12] In some instances, however, domestic exporters do have potential causes of action if unfairly excluded or otherwise precluded from entering into the export market. [FN13]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Foreign plaintiffs face tougher obstacles. Some courts require that foreign plaintiffs sell product in the United States. Other courts require that foreign plaintiffs must trace their injury to the injury caused in the U.S. market, not just to the activity that caused the injury in the U.S. market. The FTAIA intended to limit the exposure of U.S. exporters. What is not entirely clear is the extent to which the FTAIA intended to limit the ability of foreign claimants to seek redress in the United States for various international restraints that do have effect in the United States, but where the foreign plaintiff's relationship to the U.S. effect may be indirect.

A North Carolina district court rejected a foreign distributor's argument that cancellation of its contracts with other U.S. exporters constituted sufficient U.S. injury. It was not sufficient to show U.S. effect; plaintiff, who sold no product in the United States, was not within the class protected by the antitrust laws as regards U.S. export activities. [FN14] Foreign travel agencies complaining of collusion to reduce their commissions could not meet the requirements of the FTAIA where they failed to allege any impact on U.S. markets. [FN15] One court has stated that the FTAIA requires an actual injury to plaintiff in the United States, and dismissed antitrust claims of a foreign supplier to a U.S. manufacturer on the grounds that their alleged injury did not occur within the United States. [FN16]

Until recently, the impact of the FTAIA on foreign plaintiffs has not been extensively litigated. This changed with two important Circuit Court decisions that took contrasting approaches. The issue was whether a foreign plaintiff may bring suit, following the FTAIA, where the defendant's alleged acts, if proved, would result in an anticompetitive effect within the United States, but the foreign plaintiff's injury resulted from the anticompetitive behavior, not the anticompetitive injury within the United States.

Until recently the impact of the FTAIA upon foreign plaintiffs has not been extensively litigated. This changed with three important Circuit Court decisions that took contrasting approaches. The issue was whether a foreign plaintiff may bring suit, following the FTAIA, where the defendant's alleged acts, if proved, would result in an anticompetitive effect within the United States, but the foreign plaintiff's injury resulted from the anticompetitive behavior, not the anticompetitive injury within the United States.

The Fifth Circuit and the Second Circuit took two distinctly different approaches. The Fifth Circuit required that the plaintiff's injury must derive from the anticompetitive effect within the United States. The Second Circuit took the position that anticompetitive effect in the United States was required only to establish an antitrust violation. Once the violation was established the plaintiff could sue notwithstanding that the foreign plaintiff's claim was not linked to the injurious effect in the United States. The District of Columbia Circuit reached the same general result as the Second Circuit; but, in doing so, sought to define the relationship between the foreign plaintiff's injury and the anticompetitive effect in the United States. If the conduct that created the requisite injury in the United States also injured the foreign plaintiff, then the foreign plaintiff may bring a U.S. antitrust suit based upon that same conduct, notwithstanding that its injury cannot be traced as resulting from the U.S. injury. The District of Columbia Circuit essentially determined that global restraints that satisfy the effect requirement in the United States provide the basis for suit for both U.S. and foreign plaintiffs.

In *Den Norske Stats Oljeselskap AS v. Heeremac VOF*, [FN17] [hereinafter *Statoil*] plaintiff alleged a conspiracy to fix the price of heavy lift barge services required for off shore oil drilling. Plaintiff suffered its injury with respect to oil drilling operations in the North Sea. Plaintiff alleged that this conspiracy caused an increase in price of oil products in the United States and the court agreed that if proven the conspiracy would have the requisite effect in the United States. [FN18] The *Statoil* panel, however determined that the foreign plaintiff could not bring suit. Its injury occurred in the North Sea. Its claim did not arise from the injury in the United States, the increase in the price of oil products. The *Statoil* panel interpreted 15 U.S.C.A. § 6a as requiring that the effect on U.S. commerce "give rise to" the plaintiff's alleged antitrust injury. [FN19] Although plaintiff alleged that the conspiracy caused it to raise prices on crude oil sold to the United States the panel noted: "Statoil does not, however, allege any injury to itself derived from its export of oil to the United States." [FN20] As a consequence the panel made the implicit determination that persons who must sell at higher prices have no injury in the places where they sell (in this instance the United States) but the buyers (U.S. purchasers) do. Classical economics

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

dictates that sellers always suffer in places where they sell if they must pay more for their product, unless the seller itself has a monopoly.

More to the point, the *Statoil* panel relied upon a section of the FTAIA that was designed to focus on export trade, and sought to apply it to all antitrust injuries, at least in those instances where plaintiffs were foreign. Based upon this reading unless the foreign constraints adversely impacted upon the import market, as distinguished from the world market in general, the foreign plaintiff must prove that it injury arose from the higher costs paid by consumers in the United States. [FN21] Arguably this interpretation contradicts legislative history that would indicate that Congress' enactment of the FTAIA was intended to provide protection to U.S. exporters, and otherwise did not alter historical standards regarding the U.S. effect required for a foreign plaintiff to bring suit in the United States for an anticompetitive injury. [FN22] One recent district court decision followed the Statoil approach. [FN23]

In *Kruman v. Christie's Int'l PLC*, [FN24] the Second Circuit examined the legislative history of the FTAIA and concluded that the FTAIA did not impose new jurisdictional standards upon foreign plaintiffs when U.S. export trade was not at issue. This panel applied the standards voiced by the Second Circuit in *National Bank of Canada*: the antitrust laws apply if the conduct at issue (1) reduces the competitiveness of a domestic market; or (2) makes possible anticompetitive conduct directed at domestic commerce. [FN25]

Plaintiff's alleged a worldwide price fixing scheme between the two dominant international auction houses, Christie's and Sotheby's. According to the allegations, the scheme was dependent upon coincident restraints in the United States and abroad. If the constraints were not applied worldwide then, at least as regards major items, a seller could choose to sell in the market that was not restricted and avoid the higher prices charged in the constrained market. [FN26] U.S. plaintiffs settled their cases leaving only the foreign plaintiffs. The *Christie*'s panel found that the alleged conspiracy had the requisite anti-competitive effect on a U.S. market. [FN26.50]

Having found this effect, the foreign plaintiffs had jurisdiction to sue. In reaching this conclusion the court noted that the Sherman Act defined what acts violated the antitrust laws, and the Clayton Act defined who could sue for such violations. Since the FTAIA amended only the Sherman Act, the *Christie*'s panel declined to read the FTAIA as imposing new limitations on a foreign plaintiff's ability to sue, at least where U.S. export trade was not involved. [FN27] The Second Circuit also determined that the "plain reading" of the FTAIA did not require a different result. [FN28]

In *Empagran v. F. Hoffman-Laroche*, [FN29] the District of Columbia Circuit expressed a rule that is similar to but apparently intended to be more limited than, the Second Circuit's conclusion. The Second Circuit for the most part found that the FTAIA did not change applicable law once the requisite effect in the United States was found, and relied upon prior Second Circuit case law. The District of Columbia Circuit, however, took the position that the FTAIA intended to do more than merely define what constituted a violation of the Sherman Act. The District of Columbia Circuit relied upon its view of the language of the statute and its legislative history to determine that a foreign plaintiff can sue for injury if the conduct that caused its injury was the same conduct that also caused injury in the United States. [FN29.50]

*Empagran* involved an alleged global scheme to restrain trade in vitamin products. For purposes of the appeal the defendants did not contest that the alleged cartel had the requisite effect on U.S. commerce. The defendants contested whether foreign plaintiffs had the right to sue for injuries that did not result from the adverse effect; an argument with which the District Court had concurred. The majority of the appellate panel disagreed. *Empagran* expressed the following rule: "We hold that where the anticompetitive conduct has the requisite harm on United States commerce, FTAIA permits suits by foreign plaintiffs who are injured solely by that conduct's effect on foreign commerce. The anticompetitive conduct itself must violate the Sherman Act and the conduct's harmful effect on United States commerce must give rise to 'a claim' by someone, even if not the foreign plaintiff who is before the court." [FN30]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As regards which panel has the better approach this text will defer to commentators more expert in the antitrust laws. The *Statoil* panel feared that a contrary decision would open up a flood of litigation from foreign plaintiffs. [FN31] The *Christie*'s panel noted that it was only applying the law as it existed prior to the FTAIA, further noting that the FTAIA imposed a direct, substantial and reasonably foreseeable effect requirement. [FN32] Following the logic of the *Christie*'s panel any "floodgate" of litigation would result only from the globalization of the world economy. It does not arise from any change in the substantive law. Presumably Congress only intended to protect U.S. exporters. If Congress intended to restrict foreign antitrust jurisdiction based upon the globalization of the world economy then, arguably, a more definitive statement to that effect would be required. [FN33]

Since the legislative history indicates, if anything, that Congress did not intend to change the existing rules of antitrust jurisdiction except as regards export trade, one can cogently argue that applying the "gives rise to the claim" requirement when export trade is not at issue represents a judicial overlay in response to the courts' reluctance to thrust itself into worldwide economic issues when plaintiffs are foreign.

The District of Columbia Circuit was sensitive to the issues of the global economy. The District of Columbia Circuit relied heavily on an approving reference in the legislative history to the Supreme Court decision in *Pfizer*. [FN34] In that case the Supreme Court cited the beneficial deterrent effect of permitting foreign plaintiffs to employ the U.S. antitrust laws. The District of Columbia Circuit consequently concluded that Congressional approval of *Pfizer* exhibited an intent to permit foreign plaintiffs to sue for global conspiracies that have the requisite effect in the United States. "The U.S. consumer would only gain, and would not lose, by enlisting enforcement by those harmed by the foreign effects of a global conspiracy." [FN35] Judge Henderson, dissenting argued that the reference to *Pfizer* was insufficient to overcome what she viewed as plain references that required the foreign plaintiff to trace its claim to the U.S. injury. [FN36]

It is possible to distinguish the three results based upon their facts. Although *Statoil* involved a global conspiracy the plaintiff's injury was not necessarily dependent upon the worldwide nature of the conspiracy. The plaintiff was constrained to drill oil where it was located, in the North Sea. The plaintiff, arguably, would have suffered identical injury if the constraints were limited to barge service in the North Sea. In the case of *Christie*'s, however, the foreign constraint arguably would not have been effective without a comparable constraint in the United States. Unlike the plaintiff in *Statoil*, the plaintiffs in *Christie*'s could in theory choose where to sell their goods absent the global constraint. [FN37] Similarly, in a global cartel arrangement such as was at issue in *Empagran*, arguably the success of the global restraint would depend at least in part on the ability to restrain the U.S. market. Future decisions may choose to examine whether this is a "distinction without a difference". Nonetheless, there is a qualitative difference in the interdependence of the foreign and U.S. injured parties in *Christie*'s and *Empagran* which may be viewed as lacking in the case of *Statoil*.

A Connecticut district court decision illustrates the importance of a foreign plaintiff demonstrating interdependence. An aggrieved former distributor argued that defendant sought to coerce it into maintaining resale pricing levels in India that would not undermine pricing decisions in the United States. The court found jurisdiction under the FTAIA. The alleged price fixing scheme was a per se offence and at least created a predisposition to find jurisdiction. Furthermore there was documentary evidence to show that defendants sought to set prices in India based upon the anticipated consequences in the U.S. market. [FN37.30]

The Seventh Circuit addressed an alleged scheme to manipulate copper prices on the London market. Plaintiffs were mostly foreign. The Seventh Circuit noted the positions of the Fifth, Second, and District of Columbia Circuits, hinting that it favored the broader approach of the latter two circuits. [FN37.50] The court declined to establish a Seventh Circuit rule, however, noting that plaintiffs activities in U.S. markets as a consequence of the alleged illegal scheme were sufficient to satisfy even the Fifth Circuit's stringent requirements. [FN37.70] Sniado v. Bank Austria AG, 174 F. Supp. 2d 159 (S.D. N.Y. 2001), decision vacated, 352 F.3d 73 (2d Cir. 2003), cert. granted, judgment vacated, 124 S. Ct. 2870 (U.S. 2004) and aff'd, 2004 WL 1753473 (2d Cir. 2004).

Even U.S. plaintiffs may "suffer" from *Statoil*'s limitation of jurisdiction. One New York district court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

examined a U.S. plaintiff's participation in the European currency market and concluded that the plaintiffs failed to allege a claim based upon U.S. effect. The court stated: "the key jurisdictional issue . . . is whether a plaintiff participated in the affected American market." [FN38] Arguably this legal standard no longer holds given the Second Circuit's decision in *Christi's*. The Second Circuit vacated and remanded, directing the district court to apply the liberal view of Kruman v. Christie's. [FN38.50] The result, however, likely will stand in that the actual effect in the United States was probably not substantial. [FN39] In contrast, a conspiracy to manipulate the import of goods into the United States may provide the basis for an antitrust claim where the plaintiff is a U.S. entity that suffered injury in the United States from the restrictive practice. [FN40]

Most courts still require a showing of substantial effect, however, even as regards U.S. plaintiffs. This standard does not arise from the FTAIA but from a historical line of cases, culminating in a reference in *Hartford Fire Insurance* that the Sherman Act applies "to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." [FN41]

Arguably this comment precludes the use of a balancing test to create jurisdiction when the effect in the U.S. is less than substantial. [FN42] The "meant to and did produce substantial effect" comment, was made, however, in the context of stating that there was no question that subject matter jurisdiction existed. The Court did not have to evaluate whether lesser standards might be applicable since the most stringent jurisdictional standard was satisfied. [FN43]

The meant to and did produce substantial effect comment, has, nonetheless, been interpreted as setting forth a definitive standard of effect. As a consequence this comment has spurred a debate regarding whether the comment sets a rule only for wholly foreign conduct or for conduct that is partially foreign. The Fourth Circuit suggested examining whether "the participants, acts, targets, and effects" are primarily foreign or primarily domestic. [FN44] It would seem that whenever Congress or the courts seek to draw an absolute standard for applying antitrust jurisdiction, some form of a "balancing" approach emerges to influence its application.

At least as regards non-import commerce, Section 7 precludes the use of a balancing test to create jurisdiction when a direct, substantial and reasonably foreseeable effect on U.S. markets, U.S. import trade, or U.S. exporters is lacking. [FN45] As already noted, many courts interpret direct effect to require the plaintiff to be an active participant in U.S. markets. "Only persons or corporations injured while trading in U.S. foreign or domestic commerce have the standing necessary to bring [antitrust] claims." [FN46]

Section 7 does seem to establish a presumption that restraints on import trade are presumed to have the requisite effect on domestic markets, at least where the restraint is direct. [FN47] The Ninth Circuit has cautioned, however, that per se rules are inappropriate in foreign antitrust cases. The plaintiff must show actual injury to competition in a relevant market. [FN48] The Ninth Circuit's willingness to abandon typical per se analysis in a foreign environment is not without its critics. [FN49]

Imports are subject to a less stringent requirement. "The Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." [FN50] When conduct restrains trade in imports, the requisite intent is generally presumed, therefore limiting inquiry to whether the conduct has substantial effect in the United States. [FN51] Conduct that does not involve import transactions but which has an effect on imports should be judged by the "direct, substantial and reasonably foreseeable standard" of Section 7. [FN52] In examining whether conduct falls within the tests applicable to imports the court generally examines the conduct of the defendant, not the conduct of the plaintiff. [FN53]

Due to Congressional desire to minimize exposure of exporters, Congress drew a distinction between import trade and other foreign commerce. If, however, the direct, substantial and reasonably foreseeable standard reflects prior law regarding the effects test, then why would it be necessary to draw a distinction between import trade and other foreign commerce. Once a distinction is drawn, then, presumably different rules apply. The different rules

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that might come to mind would be presumptions of effect that arise when import trade is at issue, or balancing tests that require less showing of effect when import trade is at issue.

Otherwise, Section 7 does not answer the question of what is "direct, substantial, and reasonably foreseeable effect." [FN54] What may appear as an "objective standard," [FN55] can be employed differently by different courts.

Notwithstanding that effects based analysis predominates extraterritorial jurisdiction examinations, in other areas, particularly in the securities law area, U.S. conduct plays an important role. Does the FTAIA remove U.S. conduct from consideration in instances that does not involve the import trade? One court has commented that the test is one of effect, not conduct. Actions in the United States do not in themselves create jurisdiction absent the requisite effect. [FN56]

Neither does Section 7 address the question of what considerations of comity should be addressed if the requisite effect is present, but conflicting foreign law is present. [FN57] Department of Justice Guidelines have noted that the Department will evaluate comity concerns before initiating action under the antitrust laws; but once the Department has determined that the national interest outweighs comity concerns, then the Department expects the courts to abide by that determination. [FN58] Cases decided prior to the enactment of Section 7 remain relevant. [FN59]

There remains an issue regarding what the FTAIA is. Is it a limitation on subject matter jurisdiction, or is it an element of the claim? The distinction can have great practical significance. As an example, if the FTAIA is jurisdictional a dismissal under Rule 12(b)(1) puts the burden on plaintiff and the appeals court generally defers to the district court's findings; if it is an element of the claim then the burden is on defendant as part of a summary judgment motion, thereby permitting the appeals court de novo review. The issue has largely been ignored. The FTAIA has been labeled jurisdictional; yet in practice most Circuit Courts have not been unwilling to assert their review powers. The Seventh Circuit woke up the sleeping dog with its detailed assessment of the jurisdictional versus element of the claim distinction in United Phosphorus. [FN60] The court declined to find that the District Court's denial of jurisdiction was clearly erroneous. Judge Wood's spirited dissent probably has the better of the argument. Since the FTAIA is but an overlay upon past requirements for success in an antitrust action with respect to foreign commerce, the inclination is to treat the FTAIA as setting forth additional elements of the claim.

What comes to mind is the old television commercial: "it's two mints in one." As a practical matter there are strong reasons for treating the FTAIA as jurisdictional, if only so that this threshold issue is addressed as soon as practical. On the other hand, since the jurisdictional assessment is very fact dependent, the plaintiff should be given an adequate opportunity to prove the jurisdictional elements, with an appropriate level of appellate review in the event of a dismissal. In *United Phosphorus* it was evident that plaintiff would not be able to show sufficient U.S. effect to satisfy the FTAIA. Perhaps the dog could have been permitted to rest a little more.

[FN1]. U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1, 4 (1st Cir. 1997).

[FN2]. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993); U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1, 4 (1st Cir. 1997).

[FN3]. Some courts cautiously seem to confess that they are not sure exactly what the import trade exclusion means. It appears that the FTAIA effects standard applies to all activity except the actual conduct of import trade (as distinguished from conduct that arguably has an effect on the conduct of import trade). Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293 (3d Cir. 2002). It appears that an alleged agreement by foreign producers to fix prices on goods imported into the U.S. is not within the statutory standard of the FTAIA. Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd, 299 F.3d 281 (4th Cir. 2002).

[FN4]. "The Foreign Trade Antitrust Improvements Act encourages United States exports by facilitating the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

formation of export trading companies and by exempting certain export transactions from the antitrust laws." Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293 (3d Cir. 2002).

[FN5]. McElderry v. Cathay Pacific Airways, Ltd., 678 F. Supp. 1071 (S.D. N.Y. 1988); The "The In Porters, S.A. v. Hanes Printables, Inc., 663 F. Supp. 494 (M.D. N.C. 1987); United Phosphorus, Ltd. v. Angus Chemical Co., 1994 WL 577246 (N.D. Ill. 1994).

[FN6]. Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102, 1105-1106 (S.D. N.Y. 1984), noted the lack of court analysis of § 7, and failed to rely on prior court decisions in making its jurisdictional analysis. Liamuiga Tours, Div. of Caribbean Tourism Consultants, Ltd. v. Travel Impressions, Ltd., 617 F. Supp. 920 (E.D. N.Y. 1985), decided that a long discussion of prior case law was not necessary because it construed § 7 as adopting the restrictive test of jurisdiction set forth in National Bank of Canada v. Interbank Card Ass'n, 666 F.2d 6 (2d Cir. 1981).

[FN7]. This text maintains that the direct, substantial, and foreseeable test does not significantly deviate from prior case law relying predominantly upon an effects standard for jurisdiction. In most instances where effect has not been proven to be substantial, it has been presumed to be substantial based on the character of the antitrust offense. See, e.g., U.S. v. Aluminum Co. of America, 148 F.2d 416, 443-444 (C.C.A. 2d Cir. 1945); U.S. v. National Lead Co., 63 F. Supp. 513 (S.D. N.Y. 1945), decree aff'd by, 332 U.S. 319, 67 S. Ct. 1634, 91 L. Ed. 2077 (1947).

Congress had complained of divergent language employed by the courts. However, Congress admitted that "[a]n ABA Antitrust Section analysis has concluded that, despite the variations in wording, 'there is, with rare exception, no significant inconsistency between judicial precedents and the Justice Department's view of the effects test.' Antitrust Section Report at 10 (emphasis in original)." H.R. Rep. No. 97-686 reprinted in 1982 U.S. Code Cong. & Admin. News at 2490-91. Congress explained that it set forth its standard, in part, to avoid confusion in the future. H.R. Rep. No. 97-686 reprinted in 1982 U.S. Code Cong. & Admin. News at 2491.

The Supreme Court has stated: "Also unclear is whether the Act's 'direct, substantial and reasonably foreseeable effect' standard amends existing law or merely codifies it." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 113 S. Ct. 2891, 2909, 125 L. Ed. 2d 612 (1993).

[FN8]. 15 U.S.C.A. § 6a (flush language).

[FN9]. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993); U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1, 4 (1st Cir. 1997).

[FN10]. "The amendment was intended to eliminate the perception among business people that United States antitrust law is a barrier to efficiency-enhancing joint export activities." Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102, 1105 (S.D. N.Y. 1984). The The In Porters, S.A. v. Hanes Printables, Inc., 663 F. Supp. 494, 498 (M.D. N.C. 1987). "The FTAIA was intended to exempt from the Sherman Act export transactions that did not injure the United States economy." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 113 S. Ct. 2891, 2909, 125 L. Ed. 2d 612 (1993). See Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62 (3d Cir. 2000).

[FN11]. The precise effect of the FTAIA is yet to be determined. See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 797, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993) (It is "unclear . . . whether the [FTAIA's] 'direct, substantial, and reasonably foreseeable effect' standard amends . . . or merely codifies . . . [case law holding that the Sherman Act] applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States"). It does seem clear, however, that we should use the standard set forth in the FTAIA to analyze whether conduct related to international trade has had an effect of the nature and magnitude necessary to provide us with subject matter jurisdiction. Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080, 41 Fed. R. Serv. 3d 49 (D.C. Cir. 1998).

[FN12]. Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102, 1106 (S.D. N.Y. 1984). Nondomestic persons would lack a remedy even if they were injured by the same activity. H.R. Rep. No. 97-686 reprinted in 1982 U.S.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Code Cong. & Admin. News at 2496.

The example cited of such an exception to the antitrust laws is an export cooperative. If the U.S. export cooperative failed to include another U.S. exporter, that exporter would have grounds for an antitrust suit. An excluded foreign exporter, however, would not. Restatement (Third) of the Foreign Relations Law of the United States, § 415, note 8. McGlinchy v. Shell Chemical Co., 845 F.2d 802, 25 Fed. R. Evid. Serv. 813 (9th Cir. 1988).

[FN13]. U.S. v. Time Warner, Inc., 1997-1 Trade Cas. (CCH) ¶71702, 1997 WL 118413 (D.D.C. 1997). In addition, just because the export trade may be immune, a company may still be potentially liable for its anticompetitive activities outside of the United States that did not constitute injury to plaintiff's export business. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338 (D.C. Cir. 2003). Actions designed to thwart a competitor's effort to establish a presence in overseas markets (at least as distinguished from 'exporting' to those markets) potentially satisfies the standards of the FTAIA. Information Resources, Inc. v. Dun & Bradstreet Corp., 260 F. Supp. 2d 659, 669-70 (S.D. N.Y. 2003) (retail tracking service provider may sue domestic competitor for alleged economic harms stemming from overseas antitrust conduct). See generally U.S. v. Anderson, 326 F.3d 1319, 1330 (11th Cir. 2003), cert. denied, 124 S. Ct. 178, 157 L. Ed. 2d 46 (U.S. 2003)(conspiracy to rig bidding on USAID contracts in Egypt did not invoke the FTAIA, and in any event necessary effect on U.S. commerce existed).

[FN14]. The In Porters, S.A. v. Hanes Printables, Inc., 663 F. Supp. 494 (M.D. N.C. 1987). See United Phosphorus, Ltd. v. Angus Chemical Co., 131 F. Supp. 2d 1003 (N.D. Ill. 2001) (required effect in U.S. was lacking when sales into the United States were speculative). United Phosphorus, Ltd. v. Angus Chemical Co., 131 F. Supp. 2d 1003 (N.D. Ill. 2001), judgment aff'd, 322 F.3d 942 (7th Cir. 2003), cert. denied, 124 S. Ct. 533, 157 L. Ed. 2d 408 (U.S. 2003).

[FN15]. Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293 (3d Cir. 2002).

[FN16]. S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc., 1997 WL 86413 (D. Del. 1997).

[FN17]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002).

[FN18]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002).

[FN19]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424-27 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002).

[FN20]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 422 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002).

[FN21]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 426 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002).

[FN22]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002) (Higginbotham dissenting).

[FN23]. Ferromin Intern. Trade v. UCAR Intern., Inc., 153 F. Supp. 2d 700 (E.D. Pa. 2001) (foreign plaintiffs failed to show that global price fixing of market for graphite electrodes resulted in required effect in the United States from which they suffered their claimed injuries).

[FN24]. Kruman v. Christie's Intern. PLC, 284 F.3d 384 (2d Cir. 2002).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN25]. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 389-90 (2d Cir. 2002).

[FN26]. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 401 (2d Cir. 2002).

[FN26.50]. A per se violation does not in itself create requisite effect in the United States; but certainly such a violation makes it easier for the court to find such an effect. See MM Global Services, Inc. v. Dow Chemical Co., 2004-1 Trade Cas. (CCH) P 74335, 2004 WL 556577 (D. Conn. 2004) (motion for reconsideration of denied motion to dismiss alleging anti-trust violation of chemical sales price maintenance conspiracy in India. See Sniado v. Bank Austria AG, 352 F.3d 73, 78 (2d Cir. 2003), cert. granted, judgment vacated, 124 S. Ct. 2870 (U.S. 2004), on remand to, 2004 WL 1753473 (2d Cir. 2004) (alleged currency exchange fee fixing conspiracy) noting that in a price fixing allegation the entire conduct both in and outside the United States is examined to determine if the requisite effect in the United States is present.

[FN27]. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 396-98 (2d Cir. 2002).

[FN28]. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 399-400 (2d Cir. 2002). The Second Circuit reiterated its Kruman holding by declining to dismiss a claim based upon price fixing of currency exchange fees in Europe. Sniado v. Bank Austria AG, 352 F.3d 73, 78 (2d Cir. 2003), cert. granted, judgment vacated, 124 S. Ct. 2870 (U.S. 2004), on remand to, 2004 WL 1753473 (2d Cir. 2004).

[FN29]. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338 (D.C. Cir. 2003).

[FN29.50]. The District of Columbia Circuit described the federal antitrust dichotomy as follows: the restrictive view requires the foreign plaintiff's injury to result from the adverse effect in the United States; the broad view only requires the foreign plaintiff to show injury arising from wrongful conduct, that wrongful conduct also causing the injury in the United States. The District of Columbia Circuit sought to express language which, in its view, was more restrictive than the Second Circuit's. The court looked for foreign plaintiffs injured "solely" by the foreign effects of the wrongful conduct that gave rise to the U.S. effect. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338, 341 (D.C. Cir. 2003), cert. granted, 124 S. Ct. 966, 157 L. Ed. 2d 793 (U.S. 2003) and judgment vacated and remanded, 124 S. Ct. 2359 (U.S. 2004). The District of Columbia focused on the global nature of the cartel at issue. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338, 356 (D.C. Cir. 2003), cert. granted, 124 S. Ct. 966, 157 L. Ed. 2d 793 (U.S. 2003) and judgment vacated and remanded, 124 S. Ct. 2359 (U.S. 2004). Clearly the court desired to provide a forum for foreign plaintiffs suffering from global cartels; but the court also did not want to leave jurisdiction open to all foreign plaintiffs who can claim damage somehow attributable to actions impacting the U.S. antitrust laws. One approach might add a qualifying condition to the broad view: the foreign plaintiff can bring suit when its claim arose from the same conduct as caused injury in the United States, and the injury in the United States was dependent in part on the conduct causing injury to the foreign plaintiff. In a worldwide cartel scheme, the injury in the United States would be difficult to implement absent comparable restraints on foreign markets. This is the global cartel that the District of Columbia Circuit describes as worthy of foreign plaintiffs. In the Christie's case, the overseas restraint was necessary in order to implement the domestic restraint. Statoil, on the other hand, presented a situation where the specific conduct that caused the foreign plaintiff's injury arguably was only an indirect element of an alleged U.S. restraint.

The point of distinction would be this: It would not be enough for a foreign plaintiff to say: defendants violated U.S. antitrust law having sufficient effect in the U.S.; I suffered injury from defendant's violations of the antitrust law; therefore I have a jurisdiction in the United States. The foreign plaintiff would have to show that the U.S. effect was dependent in part upon the particular restraint that gave rise to the foreign injury. The purpose of the distinction is to separate instances where a restraint happens to cause injury to both foreign and U.S. persons from a restraint where injury to U.S. persons could not be readily implemented absent injuring the foreign persons as well. In other words, if the U.S. and foreign effect are interdependent, then the foreign plaintiffs should have jurisdiction; however, if this interdependence is lacking jurisdiction may only arise if the foreign plaintiff can trace its injury to the adverse U.S. effect. The overriding objective is to permit foreign plaintiffs with claims that serve U.S. policy interests, and ignore claims that do not implicate U.S. policy interests.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN30]. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338 (D.C. Cir. 2003), WL pp. 2; and see p 11.

[FN31]. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 427-28 (5th Cir. 2001), cert. denied, 534 U.S. 1127, 122 S. Ct. 1059, 151 L. Ed. 2d 967 (2002).

[FN32]. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 401-02 (2d Cir. 2002).

[FN33]. The Second Circuit focused on the language that the FTAIA only required that the U.S. injury give rise to "a" claim rather than "the" claim and found its interpretation of the FTAIA to be consistent with existing Second Circuit law. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 400-01 (2d Cir. 2002).

[FN34]. Pfizer, Inc. v. Government of India, 434 U.S. 308, 98 S. Ct. 584, 54 L. Ed. 2d 563 (1978).

[FN35]. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338 (D.C. Cir. 2003), WL p. 19.

[FN36]. Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338 (D.C. Cir. 2003), WL p. 22.

[FN37]. The Second Circuit commented that the facts were unique in that the alleged scheme fixed prices in both foreign and domestic markets. Kruman v. Christie's Intern. PLC, 284 F.3d 384, 402 (2d Cir. 2002).

[FN37.30]. See MM Global Services, Inc. v. Dow Chemical Co., 2004-1 Trade Cas. (CCH) P 74335, 2004 WL 556577 (D. Conn. 2004) (stating that a per se offense does not necessarily create jurisdiction for the foreign plaintiff, but so finding in this instance).

[FN37.50]. Metallgesellschaft AG v. Sumitomo Corp. of America, 325 F.3d 836, 840, Comm. Fut. L. Rep. (CCH) P 29448 (7th Cir. 2003) (noting that the more liberal approach might better suit those instances where the plaintiff is the United States Government).

[FN37.70]. Metallgesellschaft AG v. Sumitomo Corp. of America, 325 F.3d 836, 840-841, Comm. Fut. L. Rep. (CCH) P 29448 (7th Cir. 2003).

[FN38]. Sniado v. Bank Austria AG, 174 F. Supp. 2d 159, 169 (S.D. N.Y. 2001).

[FN38.50]. Sniado v. Bank Austria AG, 352 F.3d 73 (2d Cir. 2003), cert. granted, judgment vacated, 124 S. Ct. 2870 (U.S. 2004)

[FN39]. Sniado v. Bank Austria AG, 174 F. Supp. 2d 159, 166 (S.D. N.Y. 2001). See In re Copper Antitrust Litigation, 117 F. Supp. 2d 875 (W.D. Wis. 2000), aff'd as modified, 306 F.3d 469 (7th Cir. 2002), reh'g and reh'g en banc denied, (Jan. 30, 2003) and judgment rev'd, 2003-1 Trade Cas. (CCH) P 73990, 2003 WL 1665352 (7th Cir. 2003) (jurisdiction was lacking with respect to foreign plaintiff's claims for injuries resulting from alleged manipulation of commodities market in England). But compare General Elec. Co. v. Latin American Imports, S.A., 187 F. Supp. 2d 749 (W.D. Ky. 2001) (foreign counterclaimants allegation that restraint shut down the entire market and injured U.S. exporters was sufficient to survive motion to dismiss).

[FN40]. Crompton Corp. v. Clariant Corp., 221 F. Supp. 2d 683 (M.D. La. 2002) citing Galavan Supplements, Ltd. v. Archer Daniels Midland Co., 1997 WL 732498 (N.D. Cal. 1997). But see Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd, 299 F.3d 281 (4th Cir. 2002).

[FN41]. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993).

[FN42]. One might argue that since the Court readily found sufficient effect that this statement was merely dicta, at least as regards circumstances where such substantial effect might arguably be lacking. Nonetheless, the vast

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

majority of cases have required substantial effect; and, in practice, almost all of the balancing test cases have ultimately declined jurisdiction where substantial effect is lacking. Perhaps more focus should be placed on the word "substantial." If the majority of cases required substantial effect anyway there would, in theory, be no need for an act such as the FTAIA that draws a distinction between import trade and other foreign commerce. Why draw this distinction unless Congress intended a difference. In addition to direct and reasonably foreseeable, Congress arguably required that the substantial effect be comparatively clear-cut. That might leave the door open to argue that as regards import trade less evidence is required in order to show the requisite effect.

[FN43]. As an example the Court stated that it need not evaluate whether the conduct at issue fell within the requirements of the FTAIA since the effect in the United States "plainly meets" the FTAIA effect requirements. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993).

[FN44]. Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd, 299 F.3d 281, 294 (4th Cir. 2002). See cases discussed therein for the debate regarding the definition of foreign conduct.

[FN45]. See Liamuiga Tours, Div. of Caribbean Tourism Consultants, Ltd. v. Travel Impressions, Ltd., 617 F. Supp. 920, 923 (E.D. N.Y. 1985), which construed the Timberlane balancing test as potentially permitting jurisdiction where an actual substantial effect on U.S. domestic commerce was lacking. This "unwarranted extension" of jurisdiction was rejected by Section 7 of the Sherman Act. One court describes the new test as: "[W]ith the exception of claims brought by domestic importers, the Sherman Act will not apply to conduct affecting foreign markets, consumers or producers unless there is a direct, substantial, and reasonably foreseeable effect on the domestic market . . . or on opportunities to export from the United States." Coors Brewing Co. v. Miller Brewing Co., 889 F. Supp. 1394, 1398 (D. Colo. 1995).

[FN46]. Transnor (Bermuda) Ltd. v. BP North America Petroleum, 738 F. Supp. 1472, 1476 (S.D. N.Y. 1990). "Congress did not contemplate recovery under the antitrust laws by an individual who traded, and was injured entirely outside of U.S. commerce." 738 F. Supp. at 1476 (quoting de Atucha v. Commodity Exchange, Inc., 608 F. Supp. 510, 518 (S.D. N.Y. 1985)). See United Phosphorus, Ltd. v. Angus Chemical Co., 131 F. Supp. 2d 1003 (N.D. Ill. 2001) (required effect in U.S. was lacking when sales into the United States were speculative); Turicentro, S.A. v. American Airlines, Inc., 152 F. Supp. 2d 829 (E.D. Pa. 2001), judgment aff'd, 303 F.3d 293 (3d Cir. 2002) (injuries to travel agents outside of the United States did not involve an effect in U.S. markets). See, also, Information Resources, Inc. v. Dun & Bradstreet Corp., 127 F. Supp. 2d 411, 414 (S.D. N.Y. 2000), appeal dismissed, 294 F.3d 447, 52 Fed. R. Serv. 3d 905 (2d Cir. 2002) (injuries to foreign affiliates occurred in foreign markets and derivative injury to parent corporation lacked sufficient U.S. effect); Lantec, Inc. v. Novell, Inc., 146 F. Supp. 2d 1140 (D. Utah 2001), decision aff'd, 306 F.3d 1003 (10th Cir. 2002) (jurisdiction for claim against foreign entities doing business in foreign markets could not be based on allegations that income flowed between corporations).

[FN47]. The language of the amendment is directed specifically to non-import trade. However, since the amendment did not intend to appreciably change the law, one must still demonstrate that a restriction on import trade has the requisite effect. However, one may debate what the requisite effect is. The Reporter's Note 8 to the Restatement of the Foreign Relations Law (Tent. Draft No. 6) § 4 15 states that Congress did not intend to implement a "direct, substantial and foreseeable" test with respect to domestic commerce or imports. Perhaps "some" effect may still be sufficient.

It would be wise to assume that the "direct, substantial and foreseeable" test applies to all commerce. For example, a restraint which indirectly affects import trade may not be sufficient to establish jurisdiction. See Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc., 629 F. Supp. 864 (S.D. N.Y. 1986), which interprets Section 7 of the Sherman Act as requiring that a restraint occurring entirely outside of the United States have a direct, substantial, and reasonably foreseeable effect on import trade.

Perhaps the court will be more willing to imply effect based on the character of the offense when the import trade, rather than the export trade, is involved. See, also, U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1, 4 (1st Cir. 1997) (potential jurisdiction existed based on alleged foreign activity designed to fix prices of fax paper in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the North America).

[FN48]. Metro Industries, Inc. v. Sammi Corp., 82 F.3d 839, 847 (9th Cir. 1996).

[FN49]. See discussion in U.S. v. Nippon Paper Industries Co., Ltd., 62 F. Supp. 2d 173 (D. Mass. 1999).

[FN50]. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 113 S. Ct. 2891, 2909, 125 L. Ed. 2d 612 (1993); Filetech S.A. v. France Telecom S.A., 157 F.3d 922 (2d Cir. 1998). "[C]ivil antitrust actions predicated on wholly foreign conduct which has an intended and substantial effect in the United States" comes within Sherman Act jurisdiction. U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1, 4 (1st Cir. 1997).

[FN51]. Antitrust Enforcement Guidelines for International Operations--1995, Department of Justice, April 5, 1995, § 3.11 [hereinafter Department of Justice Guidelines]. A mere intent may be sufficient, Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 85 (S.D. N.Y. 1995) ("the Court must determine whether the challenged conduct has, or is intended to have, any anticompetitive effect upon United States commerce"). Compare U.S. v. Nippon Paper Industries Co., Ltd., 62 F. Supp. 2d 173 (D. Mass. 1999), wherein as an alternative grounds for acquittal on charges of alleged price fixing the court found that the Japanese share of the market had declined so much that substantial effect on U.S. commerce could no longer be shown.

[FN52]. Department of Justice Guidelines, § 3.12, citing as an example "foreign vertical restrictions or intellectual property licensing arrangements [that] have an anticompetitive effect on U.S. commerce." The Third Circuit ruled that the plaintiff does not need to be an actual importer of goods in order to invoke Section 7. Plaintiff sought to organize trade shows and other efforts to assist oriental carpet retailers in buying directly from the foreign manufacturers rather than through wholesalers. Plaintiff alleged that the wholesalers combined to sabotage these efforts. Plaintiff's allegations presented a claim affecting imports into the United States. Subject matter jurisdiction existed at least for the present. Plaintiff would, eventually, have to prove that the alleged conduct was cognizable under the antitrust laws in general but the Third Circuit seemed to expect a substantial likelihood that this would result based on Plaintiff's preliminary allegations. Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62 (3d Cir. 2000).

[FN53]. Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 71 (3d Cir. 2000).

[FN54]. The prior case decisions have been referred to as a confusing array of standards. Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102, 1105 (S.D. N.Y. 1984) (citing H.R. Rep. No. 97-686, reprinted in 1982 U.S. Code Cong. & Ad. News at 2487). Perhaps there has been too much emphasis on the language employed by the court, and not on the factual circumstances of the result. With the possible exception of the narrow interpretation of jurisdiction employed in the Second Circuit, National Bank of Canada v. Interbank Card Ass'n, 666 F.2d 6 (2d Cir. 1981), the results of the various cases are not that inconsistent.

[FN55]. "The objective nature of this test is evident from the use of 'reasonably' and 'foreseeable.' The test is whether the effect would have been evident to a reasonable person making practical business judgments, not whether actual knowledge or intent can be shown." Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102, 1106 (S.D. N.Y. 1984) (citing H.R. Rep. No. 97-686, reprinted in U.S. Code Cong. & Ad. News at 2494).

[FN56]. United Phosphorus, Ltd. v. Angus Chemical Co., 1994 WL 577246 (N.D. Ill. 1994) citing Liamuiga Tours, Div. of Caribbean Tourism Consultants, Ltd. v. Travel Impressions, Ltd., 617 F. Supp. 920, 924 (E.D. N.Y. 1985); Eurim-Pharm GmbH v. Pfizer Inc., 593 F. Supp. 1102 (S.D. N.Y. 1984).

[FN57]. For example, despite the passage of Section 7 to the Sherman Act, Restatement (Third) Foreign Relations Law § 415 cmt. (a) states that the exercise of jurisdiction must still be reasonable. Congress noted that § 7 was not intended to alter the application of principles of comity to jurisdictional analysis under the antitrust law. H.R. Rep. No. 97-686, reprinted in 1982 U.S. Code Cong. & Admin. News at 2498. Cf. Rivendell Forest Products, Ltd. v.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Canadian Forest Products, Ltd., 810 F. Supp. 1116 (D. Colo. 1993) (jurisdiction over alleged artificially inflated import prices was declined based on comity grounds). As an aside, perhaps recognizing the strong mutual bond, U.S. courts appear most likely to consider comity concerns when the other nation is Canada.

"When it enacted the Foreign Trade Antitrust Improvements Act of 1982 (FTAIA), . . ., Congress expressed no view on the question whether a court with Sherman Act jurisdiction should ever decline to exercise such jurisdiction on grounds of international comity." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 798, 113 S. Ct. 2891, 2910, 125 L. Ed. 2d 612 (1993). The majority of courts would continue to apply comity analysis, particularly when a direct conflict with foreign law exists or is expected. Compare Metro Industries, Inc. v. Sammi Corp., 82 F.3d 839 (9th Cir. 1996) with U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1 (1st Cir. 1997). See Judge Haight's opinion in Filetech S.A.R.L. v. France Telecom, 978 F. Supp. 464 (S.D. N.Y. 1997), judgment vacated, 157 F.3d 922 (2d Cir. 1998), for a scholarly analysis of when and how comity principles should be applied in international antitrust cases. Judge Haight's opinion was vacated on other grounds at 157 F.3d 922 (2d Cir. 1998), wherein the court cautioned that comity concerns are applied only after a determination of subject matter jurisdiction has been made, and that comity issues require a factual analysis of the true extent of the conflict of law that is being asserted. See, also, Trugman-Nash, Inc. v. New Zealand Dairy Bd., Milk Products Holdings (North America) Inc., 954 F. Supp. 733 (S.D. N.Y. 1997).

[FN58]. Section 3.2, citing U.S. v. Baker Hughes Inc., 731 F. Supp. 3, 6 (D.D.C. 1990), judgment aff'd, 908 F.2d 981 (D.C. Cir. 1990). See U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1, 8 (1st Cir. 1997) (comity analysis given minimal attention when criminal antitrust suit brought by the United States).

[FN59]. Pillar Corp. v. Enercon Industries Corp., 694 F. Supp. 1353 (E.D. Wis. 1988).

[FN60]. United Phosphorus, Ltd. v. Angus Chemical Co., 322 F.3d 942 (7th Cir. 2003), cert. denied, 124 S. Ct. 533, 157 L. Ed. 2d 408 (U.S. 2003) (chemical manufacturers based in India and American firm that was joint venturer of manufacturers sued American chemical company, its officers, and its subsidiaries for alleged overseas antitrust violations).

Copyright West, a Thomson business

LOID § **5:13**
END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.