UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Monosodium Glutamate Antitrust Litigation

Civil File No. 00-MDL-1328 (PAM)

**MEMORANDUM AND ORDER**

This document relates to:
Inquivosa, S.A., et al. v. Ajinomoto Co., Inc., et al., Civ. No. 03-2997

---

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Standing. For the reasons that follow, the Court denies the Motion.

**BACKGROUND**

Plaintiffs are foreign corporations who purchased monosodium glutamate ("MSG") and/or nucleotides directly from one or more Defendants in transactions that occurred outside of the United States.[1] Plaintiffs allege that Defendants and an undetermined number of unnamed co-conspirators participated in a global price-fixing and market allocation scheme to increase the world-wide price of MSG and nucleotides. Plaintiffs also claim that Defendants' conduct in forming and implementing the global conspiracy exerted direct and substantial effects on United States trade and commerce by inflating the prices paid by purchasers in the United States. (Am. Compl. ¶¶ 13-28.) In addition, Plaintiffs allege that

[1] Plaintiffs are attempting to sue on behalf of themselves and all foreign purchasers of MSG or nucleotides from any of the named Defendants or Defendants' co-conspirators from January 1, 1984, through November 1, 1999. (Am. Compl. ¶ 45.)

price movements in one geographic sub-market were inextricably linked to all other markets so that the prices charged by Defendants and their co-conspirators in other countries were highly correlated with United States prices. (Id. ¶¶ 39-42.)

According to Plaintiffs, Defendants fixed United States prices and controlled United States markets not merely to capture cartel profits in the United States, but also to allow the cartel to be effective anywhere in the world. Because MSG and nucleotides are fungible commodities, Defendants and their co-conspirators allegedly "knew that their conspiracy would not succeed unless they coordinated their prices and market shares in markets across the world." (Id. ¶ 43.) Thus, Defendants allegedly included the United States in the cartel precisely to extract cartel profits from purchasers around the world without risk of arbitrage. (Id.)

Plaintiffs' alleged injury is that they purchased overpriced MSG and nucleotides abroad because Defendants' unlawful conspiracy prevented them from buying competitively priced MSG and nucleotides from the United States. (Id. ¶¶ 54-56.)

Defendants Ajinomoto Co. Inc., Ajinomoto U.S.A., Inc., Takeda Pharmaceutical Company Limited (f/k/a Takeda Chemical Industries, Ltd.), Kyowa Hakko Kogyo Co., Ltd. now seek dismissal of the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]

---

[2] Defendants CJ Corp. (f/k/a Cheil Jedang Corporation) and CJ America, Inc. joined and adopted this Motion. Defendant Archer Daniels Midland Company also joined this Motion, and filed a Motion of its own based on the statute of limitations. On March 17, 2005, Plaintiffs voluntarily dismissed with prejudice all claims asserted against Archer Daniels Midland. Eight other Defendants failed to appear for this Motion. It is unclear whether

## DISCUSSION

### A. Standard of Review

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). When a defendant challenges the complaint on its face, the Court reviews the pleadings and affords the plaintiff the same protections that it would receive on a Rule 12(b)(6) motion to dismiss. See Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). The Court takes the factual allegations as true and will only dismiss the complaint if the plaintiff fails to allege an essential element for subject matter jurisdiction. See Titus, 4 F.3d at 593.

When determining whether to grant a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must construe the pleadings in the light most favorable to the non-moving party, and view the facts alleged in the complaint as true. See Fed. R. Civ. P. 12(b)(6); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). The Court also must draw all reasonable inferences in the non-moving party's favor. United States v. Stoltz, 327 F/3d 671, 674 (8th Cir. 2003). The Court may dismiss a claim only if relief cannot be afforded under any set of facts that could be proved consistent with the allegations. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996).

---

service has been effected or refused by these Defendants.

**B. Subject Matter Jurisdiction**

Defendants contend that the Court lacks subject matter jurisdiction over this action because the Sherman Act does not apply to Plaintiffs' antitrust claim. Plaintiffs counter that the Court has subject matter jurisdiction because the effect of Defendants' conspiracy on United States commerce "gave direct rise to Plaintiffs' antitrust claims and injuries." (Am. Compl. ¶ 4.)

Congress enacted the Foreign Trade Antitrust Improvements Act ("FTAIA") in 1982 to clarify the application of United States antitrust laws to international business transactions. See 15 U.S.C. § 6a. Specifically, the FTAIA provides that the Sherman Act applies to foreign conduct only if: (1) the conduct has a "direct, substantial, and reasonably foreseeable effect" on United States commerce, and (2) "such effect gives rise to a claim" under the Sherman Act. Id. at § 6a(1)-(2); see also H.R. Rep 97-686, 1982 WL 25066, at *8 (the purpose of the FTAIA is to "establish that restraints on export trade only violate the Sherman Act if they have a direct and substantial effect on commerce within the United States or a domestic firm competing for foreign trade"); id. at *11 (the FTAIA is not intended "to confer jurisdiction on injured foreign persons when that injury arose from conduct with no anti-competitive effects in the domestic marketplace").

The United States Supreme Court recently addressed the scope of the FTAIA in F. Hoffman-La Roche Ltd. v. Empagran, S.A., 124 S. Ct. 2359 (2004). In Empagran, the price-fixing conduct significantly and adversely affected customers both within and outside the United States. However, the adverse foreign effect was independent of any adverse domestic

effect. The Supreme Court held that the Sherman Act did not apply when a plaintiff cannot show a causal link between the domestic effect and their alleged injury. Id. at 2366-71. Rather, to invoke the protections of the Sherman Act, a plaintiff must show that the defendant's conduct affected United States commerce and that the domestic effect gave rise to the plaintiff's injury. Id. at 2371-72.

1. Foreign Injury Dependent on Domestic Effect

The Empagran Court expressly declined to address the issue presented in this case: whether subject matter jurisdiction exists when a plaintiff's foreign injury is allegedly linked to the domestic effects of the allegedly anti-competitive conduct. Id. at 2372. Instead, it remanded the issue to the District of Columbia Circuit Court of Appeals.

Notably, however, the Supreme Court referred to Industria Siciliana Asfalti, Bitumi S.p.A. v. Exxon Research & Eng'r Co., 1977 WL 1353 (S.D.N.Y. Jan. 18, 1997), and distinguished that case from the scope of its holding. In Industria Siciliana, the district court found that it had subject matter jurisdiction to decide a Sherman Act claim based on a foreign injury suffered by a foreign company. When discussing the case in Empagran, the Supreme Court expressly noted that the foreign injury in Industria Siciliana was "inextricably bound up with . . . domestic restraints of trade, and that the plaintiff was injured . . . by reason of an alleged restraint of our domestic trade." 124 S. Ct. at 2370 (internal citations and quotations omitted). Reference to Industria Siciliana indicates that subject matter jurisdiction exists when a plaintiff shows that its foreign injury arose from the domestic effect of the defendant's conduct.

Since Empagran, few courts have squarely addressed the issue of whether subject matter jurisdiction exists when the foreign injury is dependent on the domestic effect of anti-competitive conduct. See, e.g., MM Global Servs. v. Dow Chem. Co., 329 F. Supp. 2d 337 (D. Conn. 2004). In MM Global, the defendants allegedly compelled the plaintiffs to engage in a price maintenance conspiracy with respect to the resale of Union Carbide products in India, and refused to accept orders if the prospective resale prices to end-users in India were below certain levels. Id. at 340. By doing so, the defendants allegedly sought to ensure that prices charged by the plaintiffs to end-users in India would not erode the prices to the end-users in the United States. Id. As a result of this price fixing, the plaintiffs alleged that competition in the sale and resale of Union Carbide products was improperly diminished and restrained. Id. The amended complaint further alleged:

> As a direct and proximate result of the defendants' fixing of minimum resale prices and other terms of sale, competition in the sale and resale of products in and from the United States was improperly diminished and restrained, and as the result of such effect on competition, the plaintiffs were injured by being precluded from effectively and fully competing and maximizing their sales of products.

Id. at 342 (emphasis in original).

The district court found that the plaintiffs sufficiently alleged that the defendants' conduct had an effect on competition in and from the United States and that the foreign plaintiffs were injured as a result of that effect. It therefore denied the motion to dismiss. Id.

2. Causation

Defendants argue that Plaintiffs' claim must fail because Plaintiffs do not and cannot allege that the United States prices were the direct cause of the alleged foreign price-fixing. In Empagran, the Supreme Court recognized that a claim based on foreign injury that depends on the domestic effect of the defendant's anti-competitive conduct involves but-for causation. 124 S. Ct. at 2372. Defendants contend that but-for causation cannot meet the requirements of the FTAIA. They argue that the "gives rise to" language in § 6a(2) requires that Plaintiffs show that they were injured directly and immediately by the effect on United States commerce.

Defendants rely on Associated General Contractors of California, Inc. v. California State Counsel of Carpenters, 459 U.S. 519 (1983) and Den Norske Stats Oljeselskap AS v. HeereMac VOF, 241 F.3d 420 (5th Cir. 2001) to argue that direct causation is required. In Associated General Contractors, the Supreme Court found that the complaint contained only "somewhat vaguely defined links" between the plaintiffs' injury and the alleged restraint in the construction market, and consequently held that the alleged harm resulting from a violation of the antitrust laws was too attenuated and speculative to set forth a claim. 459 U.S. at 540-46.

In Den Norske, a Norwegian oil corporation conducting business exclusively in the North Sea brought an antitrust conspiracy claim against providers of heavy-lift barge services, alleging that the defendants' conduct inflated the plaintiff's operating costs in the North Sea and also inflated oil prices in the United States market. Notably, the plaintiff did not allege that the higher prices in the United States market gave rise to its claim. Rather,

it alleged that the conspiracy compelled it to charge higher prices for the crude oil it exported to the United States. Thus, it was the plaintiff's injury in the North Sea that was a "necessary prerequisite" to the injury suffered in the United States domestic market. Id. at 422-25. Because the plaintiff failed to show that the effect on United States commerce gave rise to the plaintiff's claim, the Fifth Circuit dismissed the action for lack of subject matter jurisdiction. Id. at 427. The court emphasized that the existence of a single, global conspiracy did not relieve the plaintiff's burden of satisfying the FTAIA. Instead, the plaintiff must allege that its injury arose from the conspiracy's proscribed effects on United States commerce. Id. at 427 n. 24.

The allegations in the Amended Complaint distinguish this case from both Associated General Contractors and Den Norske. Plaintiffs allege that Defendants' anti-competitive conduct adversely affected United States commerce and that their injury was inextricably intertwined with the injury Defendants inflicted on the United States market. Specifically, Plaintiffs allege that prices in the United States were directly and substantially linked with the prices Plaintiffs paid and that Defendants' unlawful conduct deliberately prevented Plaintiffs from purchasing MSG and nucleotides from the United States. (Am. Compl. ¶¶ 41, 43.) In addition, Plaintiffs allege that the adverse domestic effect of Defendants' anti-competitive conduct was "necessary to achieve Plaintiffs' injuries abroad." (Id. ¶ 56.) They reason that Defendants could not have maintained their international price fixing cartel — and therefore Plaintiffs would not have suffered their foreign injuries — without the adverse effect on United States commerce. In addition, Plaintiffs contend that if the cartel had not

affected the United States market, Plaintiffs would have obtained MSG and/or nucleotides from the United States market at competitive prices. (Id.)

These allegations aver a far more direct causal relationship between the domestic effect and Plaintiffs' injury than Associated General Contractors, Den Norske, and other cases where the plaintiffs allegedly suffered foreign injury independent of domestic harm. Cf. Eurim-Pharm v. Pfizer Inc., 593 F. Supp. 1102, 1106-07 (S.D.N.Y. 1984) (motion to dismiss for lack of subject matter jurisdiction granted when plaintiff failed to allege that defendants' alleged foreign price-fixing and market allocation scheme resulted in an anti-competitive effect on United States commerce or any facts demonstrating a causal connection between the defendants' conduct in Europe and the price increase in United States), with MM Global Servs., 329 F. Supp. at 342 (subject matter jurisdiction exists when foreign plaintiffs injured abroad assert a causal connection between their injuries and the United States effects of defendants' conduct). Accordingly, the Court finds that Plaintiffs have alleged a sufficient link between the domestic effect caused by Defendants' anti-competitive conduct and Plaintiffs' injury.

3. Policy Considerations

Defendants also argue that the Court should dismiss this action for comity considerations. The FTAIA does not preclude the application of comity as a basis upon which to assert jurisdiction over foreign conduct, even where that conduct might otherwise be determined to have a direct, substantial and reasonably foreseeable anti-competitive effect on United States commerce. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 798 (1993);

see also H.R. Rep. 97-686, 1982 WL 25066, at *13 ("If a court determines that the requirements for subject matter jurisdiction are met, this bill would have no effect on the court's ability to employ notions of comity . . . or otherwise to take account of the international character of the transaction.").

Indeed, the Supreme Court greatly considered the issue of comity in Empagran:

> This Court ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations . . . This rule of statutory construction cautions courts to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws. It thereby helps the potentially conflicting laws of different nations work together in harmony — a harmony particularly needed in today's highly interdependent commercial world.
>
> No one denies that America's antitrust laws, when applied to foreign conduct, can interfere with a foreign nation's ability independently to regulate its own commercial affairs. But our courts have long held that application of our antitrust laws to foreign anticompetitive conduct is nonetheless reasonable, and hence consistent with principles of prescriptive comity, insofar as they reflect a legislative effort to redress domestic injury that foreign anticompetitive conduct has caused.

124 S. Ct. at 2366. Ultimately, the Supreme Court found it unreasonable to apply United States antitrust laws to foreign conduct insofar as that conduct causes independent foreign harm and that foreign harm alone gives rise to the plaintiff's claim. Id. at 2367.

Defendants piggyback on the reasoning in Empagran and argue that finding subject matter jurisdiction in this case would unjustifiably interfere with foreign sovereigns' antitrust enforcement systems. Specifically, Defendants note that the application of American private treble-damages remedies to anti-competitive conduct taking place abroad has generated significant controversy. See id. at 2368 (courts should not allow private foreign entities to

come to the United States and "bypass their own less generous remedial schemes, thereby upsetting a balance of competing considerations that their own domestic antitrust laws embody").

However, the policy concerns reflected in Empagran are not present in this case, where Plaintiffs allege that the foreign harm they suffered was inextricably related to the anti-competitive conduct's effect on domestic commerce. Indeed, the Empagran court limited its invocation of comity to cases where "foreign conduct . . . causes independent foreign harm and that foreign harm alone gives rise to the plaintiff's claim." Id. at 2367 (emphasis added); see also Hartford Fire Ins. Co., 509 U.S. at 796 ("It is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States"). Furthermore, legislative history indicates that Congress intended to apply the Sherman Act to international cartel activity that impacted United States commerce:

> Any major activities on an international cartel would likely have the requisite impact on United States commerce to trigger United States subject matter jurisdiction. For example, if a domestic export cartel were so strong as to have a "spillover" effect on commerce within this country — by creating a world-wide shortage or artificially inflated world-wide price that had the effect of raising domestic prices — the cartel's conduct would fall within the reach of our antitrust laws. Such an impact would, at least over time, meet the test of a direct, substantial and reasonably foreseeable effect on domestic commerce.

H.R. Rep. 97-686, 1982 WL 25066, at *13.

In addition to the comity considerations, the Court notes that Plaintiffs allege that Defendants were keenly aware that they had to include the United States in their cartel to

extract cartel profits throughout the world. American antitrust law is based on the principle that deterrence will be effective only if conspirators' anticipated sanctions exceed their potential profits. As the Supreme Court explained in Pfizer, Inc. v. Government of India, 434 U.S. 308 (1978):

> To deny a foreign plaintiff injured by an antitrust violation the right to sue would defeat these purposes. It would permit a price fixer or a monopolist to escape full liability for his illegal actions and would deny compensation to certain of his victims, merely because he happens to deal with foreign customers.
>
> Moreover, an exclusion of all foreign plaintiffs would lessen the deterrent effect of treble damages. The conspiracy alleged by the respondents in this case operated domestically as well as internationally. If foreign plaintiffs were not permitted to seek a remedy for their antitrust injuries, persons doing business in both this country and abroad might be tempted to enter into anti-competitive conspiracies affecting American consumers in the expectation that the illegal profits they could safely extort abroad would offset any liability to plaintiffs at home. If, on the other hand, potential antitrust violators must take into account the full costs of their conduct, American consumers are benefitted by the maximum deterrent effect of treble damages upon all potential violators.

Id. at 315.

As it relates to an international cartel, United States antitrust sanctions are ineffective at deterring anti-competitive conduct in the United States if they merely approximate the cartel's profits in the United States. To ensure that international cartels are truly deterred and deprived of the fruits of their illegality, United States antitrust laws must also apply to foreign injury. Thus, when the anti-competitive conduct of an international cartel adversely affects United States commerce, which in turn causes foreign injury, the foreign plaintiff may seek recourse under the United States antitrust laws. See H.R. 97-686, 1982 WL 25066, at

*13 ("Any major activities of an international cartel would likely have the requisite impact on United States commerce to trigger United States subject matter jurisdiction").

## C. Standing

Defendants also maintain that Plaintiffs lack antitrust standing and therefore fail to state a claim upon which relief may be granted. Specifically, Defendants contend that Plaintiffs' harm is too remote and is not the type of injury covered by United States antitrust law. Defendants also submit that Plaintiffs are not the proper party to bring this action.

To establish standing, Plaintiffs "must prove more than injury casually linked to an illegal presence in the market. Plaintiffs must prove an antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); see also Assoc. Gen. Contractors, 459 U.S. at 538-45 (setting forth factors to determine whether a plaintiff lacks antitrust standing). In addition, Plaintiffs must establish that there was proximate causation between their harm and the alleged illegal market restraint. Int'l Travel Arrangers v. Northwest Airlines, Inc., 723 F. Supp. 141, 149 (Magnuson, J.). Thus, if Plaintiffs' injuries are too remote and damages are too speculative, Plaintiffs will fail to satisfy the standing requirement. Int'l Travel Arrangers, 723 F. Supp. at 149-50; see also de Atucha v. Commodity Exch., Inc., 608 F. Supp. 510, 518 (S.D.N.Y. 1985) (plaintiff lacked standing because the alleged relationship between the plaintiff's injury and United States effects was too attenuated to allow the antitrust claim; any recovery for a foreign injury would not accurately reflect congressional intent).

Plaintiffs allege that they were direct purchasers of overpriced MSG and/or nucleotides who were forced to pay inflated prices abroad because Defendants' conspiracy prevented them from buying competitively priced MSG and/or nucleotides from the United States. Plaintiffs also allege that the injury was direct and was specifically intended by Defendants. Accordingly, Plaintiffs have sufficiently alleged that their injury arose from the United States effects of Defendants' anti-competitive actions. Moreover, although the Court believes that damages will be difficult and complex in this case, they are not too speculative as to deny standing. Finally, Plaintiffs are proper enforcers of the antitrust laws since domestic direct purchasers cannot bring a claim to disgorge Defendants' overseas profits and domestic indirect purchasers would lack standing. See Ill. Brick Co. v. State of Ill., 431 U.S. 720, 737-38 (1977). Considering all of these factors, the Court finds that Plaintiffs have standing to bring their claims.

**CONCLUSION**

Plaintiffs have craftily plead the Amended Complaint to allege a claim based upon the alternative theory recognized by the United States Supreme Court in F. Hoffman-La Roche Ltd. v. Empagran, S.A., 124 S. Ct. 2359 (2004). They have sufficiently alleged that Defendants' anti-competitive conduct had a "direct, substantial, and reasonably foreseeable effect" on United States commerce, and that Plaintiffs' harm is directly related to the adverse domestic effect. In addition, Plaintiffs have sufficiently set forth allegations to establish antitrust standing. Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss (Clerk's Doc. No. 532) is **DENIED**; and

2. The parties shall conduct discovery exclusively relating to the alleged nexus between the domestic effects of Defendants' anti-competitive and Plaintiffs' alleged harm.

Dated: May 2, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge