UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: MONOSODIUM GLUTAMATE ANTITRUST LITIGATION

Civil 00-MD-1328 (PAM)

This Document Relates to:

---

Inquivosa S.A.; Petbowe Chemtrade Corp.; Plus Sun Co., Ltd.; MCC Menssing Chemiehandel & Consultants GmbH; and Newco Trading Co., on behalf of all others similarly situated,

Civil 03-2997 (PAM)

Plaintiffs,

v.

Ajinomoto Co., Inc.; Ajinomoto USA, Inc.; Orsan S.A.; Cheil Jedang Corp.; C.J. America, Inc.; Miwon Co., Ltd.; Daesang America, Inc.; Takeda Chemical Industries, Ltd.; Kyowa Hakko Kogyo Co., Ltd.; Vedan Enterprises Group, f/k/a/ Tung Hai Fermentation Industrial Corp.; Archer Daniels Midland Co.; Ve Wong Corp.; Wei Chuan Foods Corp.; Yamasa Corp.; and Asahi Kasei Corp.,

Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S DECISION ON THE MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

---

Defendants Ajinomoto Co. Inc., Ajinomoto U.S.A., Inc., Takeda Pharmaceutical Company Limited f/k/a Takeda Chemical Industries, Ltd., Kyowa Hakko Kogyo Co., Ltd., CJ Corp. f/k/a Cheil Jedang Corporation, and CJ America, Inc. (collectively "Defendants") respectfully submit that the Consolidated and Amended Class Action Complaint dated November 15, 2004 (the "Amended Complaint"), should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Defendants originally filed their motion to dismiss on February 17, 2005. The Court denied Defendants' motion (the "May 2 Decision"), but at oral argument noted that that the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") was about to hear oral argument on identical subject-matter jurisdiction issues and that "there will be teaching that will come from the D.C. Circuit" on those issues.

The D.C. Circuit has now ruled, holding that the federal courts lack subject-matter jurisdiction over Sherman Act claims of the kind that Plaintiffs seek to advance here. See Empagran S.A. v. F. Hoffmann-LaRoche, Ltd., No. 01-7115, 2005 WL 1512951 (D.C. Cir. June 28, 2005) ("Empagran II"). In particular, the D.C. Circuit held that it lacked subject-matter jurisdiction where the claimed basis for jurisdiction is that the purported domestic effects of the alleged conspiracy are merely a "but for" cause of the plaintiffs' foreign harm – the same relationship between domestic effects and foreign harm that arises from Plaintiffs' theory of jurisdiction here. On July 14, 2005, this Court granted Defendants' request to reconsider its May 2 Decision and set a briefing schedule.

## ARGUMENT

### I. THE D.C. CIRCUIT REJECTED THE SAME CAUSATION ARGUMENT AS PLAINTIFFS URGE HERE AS AN INSUFFICIENT, "BUT FOR" NEXUS THAT DOES NOT CREATE SUBJECT-MATTER JURISDICTION

The FTAIA, a jurisdiction stripping statute, allows jurisdiction only in narrow circumstances where (1) Defendants' conduct had "a direct, substantial, and reasonably foreseeable effect" on domestic commerce and (2) "such effect gives rise to a claim" by Plaintiffs under the Sherman Act. F. Hoffman-La Roche Ltd. v. Empagran, S.A., 124 S. Ct. 2359, 2369 ("Empagran I").[1] "Gives rise to" is an active construction that connotes direct and original causation. This statutory language, as the D.C. Circuit held, "indicates a direct causal relationship, that is, proximate causation, and is not satisfied by [a] mere but-for 'nexus' . . . ." Empagran II, 2005 WL 1512951, at *3.

---

[1] The FTAIA provides, in relevant part:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless –
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect –
> (A) on trade or commerce which is not trade or commerce with foreign nations [*i.e.*, domestic trade or commerce], or on import trade or import commerce with foreign nations; or
> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States [*i.e.*, on an American export competitor]; and
> (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

Empagran I, 124 S. Ct. at 2364-65 (quoting 15 U.S.C. § 6a).

As such, even if Plaintiffs "paint a plausible scenario under which maintaining super-competitive prices in the United States might well have been a 'but-for' cause of [the plaintiffs'] foreign injury . . . 'but-for' causation . . . is simply not sufficient." Id. Rather, the language of the FTAIA requires proximate causation.[2] Id.

As the D.C. Circuit held, this is the only interpretation of the statutory language that accords with principles of prescriptive comity, under which courts must "ordinarily construe[] ambiguous statutes to avoid unreasonable interference with sovereign authority of other nations." Id. (citing Empagran I, at 2366). "To read the FTAIA broadly to permit a more flexible, less direct standard than proximate cause would open the door to just such interference with other nations' prerogative to safeguard their own citizens from anti-competitive activity within their own borders." Empagran II, at *3.

The theoretical link between the domestic effects and the foreign injury relied on by the plaintiffs in Empagran is identical to Plaintiffs' theory in this case. The D.C. Circuit's reasoning and analysis rejecting that theory of jurisdiction in Empagran II applies equally here. In both cases, Plaintiffs' bases for jurisdiction are the following: had the alleged conspirators not maintained prices in the United States at artificially high

---

[2] As the D.C. Circuit noted, Industria Siciliana Asfalti, Bitumi, S.p.A. v. Exxon Research & Eng'g Co., 1977 WL 1353 (S.D.N.Y. Jan. 18, 1977) and Caribbean Broad. Sys. v. Cable & Wireless PLC, 148 F.3d 1080 (D.C. Cir. 1998), are two cases that illuminate the requisite direct causal relationship between U.S. effect and foreign injury that must be present for there to be subject-matter jurisdiction under the narrow FTAIA exception. In those two cases, one anti-competitive act simultaneously and inextricably caused domestic injury and foreign harm. In other words, the plaintiff must have suffered a domestic harm that was part of the alleged foreign harm to that very plaintiff for there to be jurisdiction. It is this type of "direct causal relationship, that is, proximate causation" that the FTAIA's language of "gives rise to" requires. Empagran II, at *3. Plaintiffs do not allege such circumstances here.

levels, they would not have been able to charge super-competitive prices overseas. This is the so-called "arbitrage" theory, which the D.C. Circuit in Empagran II described as follows:

> Because the appellees' product (vitamins) was fungible and globally marketed, they were able to sustain super-competitive prices abroad only by maintaining super-competitive prices in the United States as well. Otherwise, overseas purchasers would have purchased bulk vitamins at lower prices either directly from U.S. sellers or from arbitrageurs selling vitamins imported from the United States, thereby preventing the appellees from selling abroad at the inflated prices. Thus, the super-competitive pricing in the United States 'gives rise to' the foreign super-competitive prices from which the appellants claim injury.

Id. at *2 (footnote omitted). Plaintiffs here allege the same connection between their foreign harms and the domestic effects of the alleged conspiracy as a basis for jurisdiction. See, e.g., Am. Compl. ¶ 56 ("the conspiracy's adverse foreign effect was dependent on its adverse U.S. effect" and "these [U.S.] effects comprised a necessary link in creating Plaintiffs' foreign injuries" because "if the conspiracy had not affected the U.S. sub-market, Plaintiffs and other foreign MSG and Nucleotide purchasers would have obtained product from the U.S. sub-market at competitive prices"); Am. Compl. ¶ 71 (the "U.S. effect was necessary for Defendants to cause Plaintiffs' antitrust injuries abroad"); Am. Compl. ¶ 72 ("as a result of this [U.S.] effect, Plaintiffs were injured by being precluded from purchasing competitively-priced MSG and Nucleotides"). See also May 2 Decision at 1-2 ("Defendants allegedly included the United States in the cartel precisely to extract cartel profits from purchasers around the world without risk of arbitrage.").

In short, even taking Plaintiffs' allegations as true (as this Court must for purposes of this motion), Plaintiffs cannot establish subject-matter jurisdiction through the

arbitrage theory because it is at best a "but for" nexus and not proximate causation. As the D.C. Circuit held:

> the domestic effects the [plaintiffs] cite did not give rise to their claimed injuries so as to bring their Sherman Act claim within the FTAIA exception. While maintaining super-competitive prices in the United States may have facilitated the [defendants'] scheme to charge comparable prices abroad, this fact demonstrates at most but-for causation. It does not establish . . . that the U.S. effects of the [plaintiffs'] conduct – i.e., increased prices in the United States – proximately caused the foreign [plaintiffs'] injuries.

Empagran II, at *3; see also Empagran I, at 2372 (noting that the arbitrage theory rests on only a "but for" relationship between higher domestic prices and the ability to sustain price-fixing abroad).

As in Empagran II, here "it was the foreign effects of price-fixing outside of the United States that directly caused or 'g[a]ve rise to' [Plaintiffs'] losses," Empagran II, at *3, when Plaintiffs made their MSG or Nucleotide purchases abroad at super-competitive prices. Accordingly, because Plaintiffs' theory amounts only to "but for" causation and Plaintiffs fail to identify the kind of direct tie to U.S. commerce necessary to establish subject-matter jurisdiction under the FTAIA, the Amended Complaint should be dismissed for the same reasons that the complaint in Empagran II was dismissed.

Finally, since the D.C. Circuit's decision in Empagran II was announced, Judge Hamilton of the Northern District of California held that the federal courts lack subject-matter jurisdiction over similar Sherman Act claims, rejecting the very arguments that Plaintiffs make here. See eMag Solutions LLC v. Toda Kogyo Corp., No. C 02-1611(PJH), 2005 WL 1712084, *1-8 (N.D. Cal. July 20, 2005).

## CONCLUSION

For all the foregoing reasons and for all the reasons set forth in Defendants' memoranda in support of the prior motion to dismiss, Defendants' motion for reconsideration should be granted and the Court should dismiss the Amended Complaint for lack of subject-matter jurisdiction.

Dated: July 28, 2005

William L. Greene (#198730)
Douglas R. Boettge (#237292)
LEONARD STREET AND DEINARD
Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Telecopier: (612) 335-1657

- and -

A. Paul Victor
James F. Lerner
Christopher V. Roberts
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007

Attorneys for Defendant Kyowa Hakko Kogyo Co., Ltd.

HENSON & EFRON, P.A.

By: S/ Joseph T. Dixon, Jr.
Joseph T. Dixon, Jr. (#23139)
Scott A. Neilson (#239951)
220 South Sixth Street, Suite 1800
Minneapolis, Minnesota 55402-4503
Telephone: (612) 339-2500
Telecopier: (612) 339-6364

- and -

Lawrence Byrne
Lance Croffoot-Suede
Ruth E. Harlow
Martin S. Bloor
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Telecopier: (212) 354-8113

Attorneys for Defendant Takeda Pharmaceutical Company Limited f/k/a Takeda Chemical Industries, Ltd.

Skip Durocher (#0208966)
Eric A. Ruzicka (#0313373)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600
Telecopier: (612) 340-2807

- and –

Barry F. McNeil
Texas State Bar No. 13829500
Ronald W. Breaux
Texas State Bar No. 02937200
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, TX 75202-3789
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

Attorneys for Defendants CJ Corp. f/k/a Cheil Jedang Corporation, and CJ America, Inc.

Michael A. Lindsay (#163466)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-7819
Telecopier: (612) 340-2868

- and -

Michael R. Lazerwitz
Steven J. Kaiser
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 974-1500
Telecopier: (202) 974-1999

Attorneys for Defendants Ajinomoto Co., Inc. and Ajinomoto U.S.A., Inc.