UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Monosodium Glutamate Antitrust Litigation

Civil File No. 00-MDL-1328 (PAM)

**MEMORANDUM AND ORDER**

This document relates to:
Inquivosa, S.A., et al. v. Ajinomoto Co., Inc., et al., Civ. No. 03-2997

---

This matter is before the Court on Defendants' Motion for Reconsideration of the May 2, 2005, Order, which denied Defendants' Motion to Dismiss. For the reasons that follow, the Court grants the Motion and dismisses the Amended Complaint.

## BACKGROUND

### A. The Parties

Plaintiffs are foreign corporations who purchased monosodium glutamate ("MSG") and/or nucleotides directly from one or more Defendants in transactions that occurred outside of the United States.[1] Plaintiffs allege that Defendants and an undetermined number of unnamed co-conspirators participated in a global price-fixing and market allocation scheme to increase the world-wide price of MSG and nucleotides. Plaintiffs also claim that Defendants' conduct in forming and implementing the global conspiracy exerted direct and substantial effects on United States trade and commerce by inflating the prices paid by purchasers in the United States. (Am. Compl. ¶¶ 13-28.) In addition, Plaintiffs allege that

---

[1] Plaintiffs are attempting to sue on behalf of themselves and all foreign purchasers of MSG or nucleotides from any of the named Defendants or Defendants' co-conspirators from January 1, 1984, through November 1, 1999. (Am. Compl. ¶ 45.)

price movements in one geographic sub-market were inextricably linked to all other markets so that the prices charged by Defendants and their co-conspirators in other countries were highly correlated with United States prices. (Id. ¶¶ 39-42.)

According to Plaintiffs, Defendants fixed United States prices and controlled United States markets not merely to capture cartel profits in the United States, but also to allow the cartel to be effective anywhere in the world. Because MSG and nucleotides are fungible commodities, Defendants and their co-conspirators allegedly "knew that their conspiracy would not succeed unless they coordinated their prices and market shares in markets across the world." (Id. ¶ 43.) Thus, Defendants allegedly included the United States in the cartel precisely to extract cartel profits from purchasers around the world without risk of arbitrage. (Id.)

Plaintiffs' alleged injury is that they purchased overpriced MSG and nucleotides abroad because Defendants' unlawful conspiracy prevented them from buying competitively priced MSG and nucleotides from the United States. (Id. ¶¶ 54-56.)

**B. Procedural History**

This action commenced in May 2003. Thereafter, the parties agreed to stay proceedings pending a decision by the United States Supreme Court in F. Hoffman-La Roche Ltd. v. Empagran, S.A., an antitrust class action brought on behalf of foreign and domestic purchasers of vitamins alleging an international price-fixing conspiracy by manufacturers and distributors. That case involved price-fixing conduct that significantly and adversely affected customers both within and outside the United States. However, the adverse foreign effect was

independent of any adverse domestic effect.

In June 2004, the Supreme Court decided Empagran and held that a plaintiff must show that the defendant's conduct affected United States commerce and that the domestic effect gave rise to the plaintiff's injury to invoke the protections of the Sherman Act. 124 S. Ct. 2359, 2366-72 (2004). However, the Supreme Court expressly declined to address the issue presented in this case: whether subject matter jurisdiction exists when a plaintiff's foreign injury is allegedly linked to the domestic effects of the allegedly anti-competitive conduct. Id. at 2372. Instead, it remanded the issue to the District of Columbia Circuit Court of Appeals.

In response to the Empagran decision, Plaintiffs filed an Amended Complaint in November 2004, and soon thereafter moved to stay proceedings in this action until the District of Columbia Circuit Court of Appeals had ruled on the remanded issue. However, this Court refused to stay the proceedings and entertained Defendants' Motion to Dismiss in early 2005. In its May 2, 2005, Order, the Court held that Plaintiffs alleged a sufficient link between the domestic effect caused by Defendants' anti-competitive conduct and Plaintiffs' injury.

**DISCUSSION**

**A. Standard of Review**

When claims against a party remain unresolved, a motion for reconsideration falls under the rubric of Federal Rule of Civil Procedure 54(b). See Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993). Although issues decided should not be subject to continued argument, the Court may revisit its earlier decision in extraordinary

circumstances. Conrod v. Davis, 120 F.3d 92, 95 (8th Cir. 1997). For example, a motion for reconsideration may be justified on the basis of an intervening change in law. Grozdanich v. Leisure Hills Health Ctr., 48 F. Supp. 2d 885, 888 (D. Minn. 1999) (Erickson, Mag. J.).

**B. The Foreign Trade Antitrust Improvements Act**

In its Motion to Dismiss, Defendants contend that the Court lacks subject matter jurisdiction over this action because the Sherman Act does not apply to Plaintiffs' antitrust claim. Plaintiffs counter that the Court has subject matter jurisdiction because the effect of Defendants' conspiracy on United States commerce gave rise to Plaintiffs' antitrust claims and injuries.

Congress enacted the Foreign Trade Antitrust Improvements Act ("FTAIA") in 1982 to clarify the application of United States antitrust laws to international business transactions. See 15 U.S.C. § 6a. Specifically, the FTAIA provides that the Sherman Act applies to foreign conduct only if: (1) the conduct has a "direct, substantial, and reasonably foreseeable effect" on United States commerce, and (2) "such effect gives rise to a claim" under the Sherman Act. Id. at § 6a(1)-(2); see also H.R. Rep. No. 97-686 (1982) (the purpose of the FTAIA is to "establish that restraints on export trade only violate the Sherman Act if they have a direct and substantial effect on commerce within the United States or a domestic firm competing for foreign trade"); id. (the FTAIA is not intended "to confer jurisdiction on injured foreign persons when that injury arose from conduct with no anti-competitive effects in the domestic marketplace").

**C. Empagran**

On June 28, 2005, a unanimous panel of the District of Columbia Court of Appeals held that the "gives rise to" language in the FTAIA requires a plaintiff to demonstrate a direct causal relationship between the domestic effects and the foreign injury. F. Hoffman-LaRoche Ltd. v. Empagran, S.A., No. 01-7115, 2005 WL 1512951, at *3 (D.C. Cir. June 28, 2005). Thus, a mere but-for nexus is insufficient. The Court of Appeals reasoned:

> To read the FTAIA broadly to permit a more flexible, less direct standard than proximate cause would open the door to [unreasonable interference with the sovereign authority of other nations] to safeguard their own citizens from anti-competitive activity within their own borders.

Id.

The Court of Appeals recognized that maintaining super-competitive prices in the United States may have facilitated the scheme to charge comparable prices abroad. Nevertheless, it found that "this fact demonstrates at most but-for causation" and does not establish that the domestic effects of the price-fixing scheme — i.e., increased prices in the United States — proximately caused the foreign purchasers' injuries.

The Court of Appeals also rejected the plaintiffs' global conspiracy theory, reasoning that the theory established only an indirect connection between the United States prices and the prices paid in foreign markets. It explained: "Under the appellants' theory, it was the foreign effect of price-fixing outside of the United States that directly caused, or gave rise to, their losses when they purchased vitamins abroad at super-competitive prices." Id. Thus, even a showing that the defendants knew or could foresee the effect of their allegedly anti-competitive conduct in the United States on the plaintiffs' injuries abroad, or a showing that

the defendants intended to manipulate United States trade, was insufficient. Instead, the plaintiffs had to show that the domestic effect proximately caused the plaintiffs' injury. Because the global conspiracy theory did not show that the foreign injury was inextricably linked to domestic restraints of trade, the Court of Appeals held that the domestic effect cited by the plaintiffs did not give rise to their claimed injuries so as to bring their Sherman Act claim within the FTAIA exception.

**D. This Action**

The theory Plaintiffs advance in this case is identical to that advanced in Empagran. In particular, Plaintiffs contend that MSG and nucleotides are fungible and globally marketed, which allowed Defendants to sustain super-competitive prices abroad only by maintaining super-competitive prices in the United States. Plaintiffs further allege that they would have purchased MSG and/or nucleotides at lower prices either directly from United States sellers or from arbitrageurs selling MSG and/or nucleotides imported from the United States, thereby preventing Defendants from selling abroad at inflated prices. Finally, Plaintiffs contend that Defendants accomplished their global price-fixing cartel by creating barriers to international commerce in the form of market division agreements.

This Court is persuaded by the decision and reasoning of the District of Columbia Circuit Court of Appeals in Empagran. The global price-fixing cartel theory establishes only an indirect relationship between United States prices and the prices paid in foreign markets. As such, Plaintiffs can only show that the foreign effect of price-fixing gave rise to their injuries. Because Plaintiffs are unable to show that the domestic effect proximately caused

their injuries, Plaintiffs cannot state a claim under the Sherman Act.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Reconsideration (Clerk Doc. No. 557) is **GRANTED**; and

2. The Amended Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 26, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge